1   Robert L. Lieff (CSB No. 037568)
    Elizabeth J. Cabraser (CSB No. 083151)
2   Robert J. Nelson (CSB No. 132797)
    **LIEFF CABRASER HEIMANN &**
3   **BERNSTEIN, LLP**
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111-3339
    Telephone: 415.956.1000
5   Facsimile: 415.956.1008

6   Lynn Lincoln Sarko
    *(Admitted Pro Hac Vice)*
7   Gretchen Freeman Cappio
    *(Admitted Pro Hac Vice)*
8   Daniel Mensher *(Admitted Pro Hac Vice)*
    **KELLER ROHRBACK L.L.P.**
9   1201 Third Ave, Suite 3200          A. Barry Cappello (CSB No. 037835)
    Seattle, WA 98101                  Leila J. Noël (CSB No. 114307)
10  Telephone: (206) 623-1900          Lawrence J. Conlan (CSB No. 221350)
    Facsimile: (206) 623-3384          **CAPPELLO & NOËL LLP**
11                                     831 State Street
    Juli Farris (CSB No. 141716)       Santa Barbara, CA 93101-3227
12  Matthew J. Preusch (CSB No. 298144) Telephone: (805)564-2444
    **KELLER ROHRBACK L.L.P.**          Facsimile: (805)965-5950
13  1129 State Street, Suite 8
    Santa Barbara, CA 93101            *Lead Trial Counsel for Plaintiffs*
14  Telephone: (805) 456-1496
    Facsimile: (805) 456-1497          *Additional Counsel for Plaintiffs on*
15                                     *Signature Page*
    *Interim Co-Lead Class Counsel for Plaintiffs*

16              **UNITED STATES DISTRICT COURT**
17              **CENTRAL DISTRICT OF CALIFORNIA**

18  STACE CHEVEREZ, individually and on    Case No.  **2:15-cv-04113-PSG-JEM**
    behalf of others similarly situated,
19                                         [Consolidated with Case Nos. 2:15-CV-
                     Plaintiffs,           04573 PSG (JEMx), 2:15-CV-4759 PSG
20  v.                                     (JEMx), 2:15-CV-4989 PSG (JEMx), 2:15-
                                           CV-05118 PSG (JEMx), 2:15-CV- 07051-
21  PLAINS ALL AMERICAN PIPELINE,          PSG (JEMx)]
    L.P., a Delaware limited partnership,
22  PLAINS PIPELINE, L.P., a Texas limited **CLASS ACTION**
    partnership, and JOHN DOES 1 through
23  10,                                    **PLAINTIFFS' NOTICE OF MOTION**
                                           **AND MOTION FOR AN ORDER**
24                   Defendants.           **LIMITING DEFENDANTS'**
                                           **COMMUNICATIONS WITH**
25                                         **PLAINTIFFS AND CLASS MEMBERS**
                                           **AND FOR OTHER RELIEF**
26                                         **PURSUANT TO FED. R. CIV. P. 23(D)**

27                                         **Date:        February 29, 2016**
                                           **Time:        1:30 PM**
28                                         **Location:    Roybal, Courtroom 880**
                                           **Judge:       Hon. Philip S. Gutierrez**

                              1

# NOTICE OF MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 29, 2016 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 880 of this Court, in the Edward R. Roybal Federal Building and United States Courthouse, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs, for themselves and on behalf of a putative nationwide class of persons or entities that claim losses or damages as a result of Defendants' May 19, 2015 oil spill, will seek an order from the Court pursuant to Federal Rule of Civil Procedure 23(d) and applicable law prohibiting Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P., and John Does 1 through 10 (collectively "Plains") from attempting to obtain improper releases from Plaintiffs and putative class members, and invalidating the releases Plains has already obtained from its misleading communications; directing Plains to produce the releases it has obtained; prohibiting further misleading communications with Plaintiffs and putative class members about the oil spill that is the subject matter of this Action; requiring Plains to issue corrective notices to all putative class members; and for other relief detailed herein relating to Plains' misleading communications with putative class members.

This Motion for an Order Pursuant to Fed. R. Civ. P. 23(d) shall be based on this Notice, the Memorandum of Points and Authorities set forth below, the Declarations of Robert Nelson, Matthew Preusch, and Mike Gandall, as well as the pleadings, records, and files in this Action, and such other further evidence and argument as may be presented prior to and at the time of the hearing.

///

///

1       This motion is made following conference of the parties' respective counsel

2 of record as provided under L.R. 7-3, which took place between July and December

3 2015.

4       DATED this 16th day of December, 2015.

5                     **KELLER ROHRBACK L.L.P.**

6

7            By:   */s/ Juli Farris*
           Juli Farris (CSB No. 141716)

8            Matthew J. Preusch (CSB No. 298144)
           KELLER ROHRBACK L.L.P.

9            1129 State Street, Suite 8
           Santa Barbara, CA 93101

10           Telephone:  (805) 456-1496
           Facsimile:  (805) 456-1497

11           Lynn Lincoln Sarko

12           *(Admitted Pro Hac Vice)*
           Gretchen Freeman Cappio

13           *(Admitted Pro Hac Vice)*
           Daniel Mensher

14           *(Admitted Pro Hac Vice)*
           KELLER ROHRBACK L.L.P.

15           1201 Third Ave, Suite 3200
           Seattle, WA 98101

16           Telephone:  (206) 623-1900
           Facsimile:   (206) 623-3384

17           Robert L. Lieff (CSB No. 037568)

18           Elizabeth J. Cabraser (CSB No. 083151)
           Robert J. Nelson (CSB No. 132797)

19           LIEFF CABRASER HEIMANN &
           BERNSTEIN, LLP

20           275 Battery Street, 29th Floor
           San Francisco, CA  94111-3339

21           Telephone:  415.956.1000
           Facsimile:  415.956.1008

22           A. Barry Cappello (CSB No. 037835)

23           Leila J. Noël (CSB No. 114307)
           Lawrence J. Conlan (CSB No. 221350)

24           CAPPELLO & NOËL LLP
           831 State Street

25           Santa Barbara, CA 93101-3227
           Telephone:  (805)564-2444

26           Facsimile:   (805)965-5950

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Audet (CSB No. 117456)
Jonas P. Mann (CSB No. 263314)
Theodore H. Chase (CSB No. 295823)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:  (415) 568-2555
Facsimile:  (415) 568-2556

Abbas Kazerounian (CSB No. 249203)
Matthew M. Loker (CSB No. 279939)
KAZEROUNI LAW GROUP APC
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Brett A. Boon (CSB No. 283225)
BENNER & BOON, LLP
1516 Front Street
San Diego, CA
Telephone:  (619) 358-9779
Facsimile:  (619) 810-2459

4

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 3

    A.  The Line 901 Oil Spill Class Action ...................................... 3

    B.  Defendants' Communication With a Named Plaintiff is Improper And Reveals Plains' Misleading Campaign. ......................................... 4

    C.  The Meet and Confer Process ................................................. 6

III.  SUMMARY OF RELIEF SOUGHT ..................................................... 7

IV.  ARGUMENT ........................................................................................... 7

    A.  This Court Has Broad Authority to Oversee this Putative Class Action by Restricting Communications with Class Members. .................................. 8

    B.  OPA May Not Be Used by Defendants to Require Class Members to Release All Potential Claims. ..............................................10

    C.  The Record Supports an Order Restricting Plains' Communications with Plaintiffs and Putative Class Members ....................................11

        1.    Plains Has Repeatedly Made and Continues To Make Misleading Communications That Jeopardize Putative Class Members' Rights ......................................................................11

        2.    Plains' Actions Interfere With and Harm the Class Action Process. ....................................................................13

    D.  This Court Should Invalidate Plains' Improperly Obtained Releases ......17

        1.    This Court Has the Authority to Invalidate Prior Releases. ...........17

        2.    The OPA Claims Process Does Not Mandate Such Broad Releases ......................................................................19

    E.  Defendants Must Disclose the Releases They Have Obtained and Related Information. ........................................................................22

    F.  The Requested Order Is Narrowly Tailored To Address Defendants' Misleading Communications, and Protects the Rights of the Parties to This Action ........................................................................23

V.   CONCLUSION.....................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ............................................................9, 14, 18

*Castaneda v. Burger King Corp.*,
   No. C 08-4262 WHA (JL), 2009 WL 2382688 (N.D. Cal. July 31,
   2009) ......................................................................................................................9

*Chelsea, LLC v. Regal Stone, Ltd.*,
   No. 07-5800 SC (N.D. Cal. May 4, 2008).................................................20, 21

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   No. C 05-03740WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ..........*passim*

*Crosson v. Volkswagen Group of Am., Inc.*,
   No. CV 15-7475-GW (C.D. Cal. Oct. 6, 2015) ...................................................12

*Dondore v. NGK Metals Corp.*,
   152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) *on reconsid.*, No. CIV. A.
   00-1966, 2001 WL 516635 (E.D. Pa. May 16, 2001) .........................................12

*Friedman v. Intervet Inc.*,
   730 F. Supp. 2d 758 (N.D. Ohio 2010) ............................................................12

*Gonzalez v. Preferred Freezer Servs. LBF, LLC*,
   No. CV 12-03467-ODW FMOX, 2012 WL 4466605 (C.D. Cal.
   Sept. 27, 2012)..................................................................................................*passim*

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   270 F.R.D. 509 (N.D. Cal. 2010) .....................................................................19

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)......................................................................................8, 9, 10

*Kleiner v. First Nat'l Bank of Atl.*,
   751 F.2d 1193 (11th Cir. 1985).........................................................................19

*Mevorah v. Wells Fargo Home Mortg., Inc.*,
   No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)..................9

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*,
   808 F. Supp. 2d 943 (E.D. La. 2011)..........................................................*passim*

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of
   Mexico, on Apr. 20, 2010*,
   No. 10-md-02179, 2011 WL 323866 (E.D. La. Feb. 2, 2011) .................8, 15, 17

*Parks v. Eastwood Ins. Servs., Inc.*,
   235 F. Supp. 2d 1082 (C.D. Cal. 2002) ..............................................................9

*Pollar v. Judson Steel Corp.*,
   No. C 82-6833 MHP, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984)................9, 22

*Quezada v. Schneider Logistics Transloading & Dist.*,
   No. CV 12-2188 CAS DTBX, 2013 WL 1296761 (C.D. Cal. Mar.
   25, 2013).............................................................................................................9

*In re Sch. Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) ................................................................................9

*Slavkov v. Fast Water Heater Partners I, LP*,
   No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2,
   2015) .................................................................................................................18

*Turner v. Murphy Oil USA, Inc.*,
   No. 05-4206, (E.D. La. Nov. 14, 2005) ..........................................15, 16, 17, 20

**Statutes**

33 U.S.C. § 2705.........................................................................................10, 11

33 U.S.C. § 2714(b) .........................................................................................11, 19

33 U.S.C. § 2715(b)(2) ........................................................................................11

**Rules and Regulations**

Fed. R. Civ. P. 23...................................................................................*passim*

Fed. R. Civ. P. 26(f)...........................................................................................13

Rules of Professional Conduct 4.2 .....................................................................12

iii

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Fourth Ed. 2007) § 21.12 ..............................14

2 MCLAUGHLIN ON CLASS ACTIONS § 11:1 (11th ed.) .....................................14, 15

NEWBERG ON CLASS ACTIONS § 9:7 (5th ed.) ........................................8, 13, 14, 17

# I.    INTRODUCTION

Plaintiffs, for themselves and on behalf of the putative class, seek an order under Federal Rule of Civil Procedure 23(d) and applicable law prohibiting Defendants Plains All American Pipeline, L.P., Plains Pipeline, L.P., and John Does 1 through 10 (collectively "Plains" or "Defendants") from attempting to obtain improper releases from Plaintiffs and putative class members, and invalidating the releases Plains has already obtained from its misleading communications; directing Plains to produce the releases it has obtained; prohibiting further misleading communications with Plaintiffs and putative class members about the oil spill that is the subject matter of this Action; requiring Plains to issue corrective notices to all putative class members; and for other relief detailed herein relating to Plains' misleading communications with putative class members.

For months, Defendants and their agents have pursued a campaign of phone calls, letters, newspaper advertisements, Internet "pop-ups," and other media in an effort to persuade victims of the Plains Oil Spill, including named Plaintiffs and putative class members in this litigation, to settle with Defendants in exchange for a full release of their existing and future rights. Using the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720 ("OPA") as a stalking horse, the Defendants have attempted and continue to attempt to improperly mislead the victims of the oil spill and to obtain broad releases from class members as a precondition to obtaining any payments mandated by Congress under OPA.

While Defendants' advertisements say Plains is "committed to doing the right thing," Plains' communications do not tell the whole story. As discussed more fully below, the OPA was enacted to provide for immediate, unconditioned payments to victims impacted by an oil spill. In this case, Plaintiffs have learned that Defendants are now using the mandate of OPA to circumvent Rule 23 and at the same time, require class members to waive future claims.  Plains'

1

communications fail to inform putative class members the OPA does not require an oil spill victim to release all rights in order to obtain the monetary relief Plains offers under that law, or that this putative class action exists as a vehicle to protect such rights, despite Class Counsel's repeated requests that Defendants do so.

To protect oil spill victims from Plains' campaign of soliciting overbroad releases and to prevent Defendants from continuing their *ex parte* misleading communications with putative class members, Plaintiffs ask the Court for an order prohibiting Defendants from communicating with the named Plaintiffs directly or indirectly from now on, or from communicating misleadingly with members of the putative class, including by failing to convey to putative class members the full context of the waiver and release that Plains now requires, or the existence of this pending class action. Where Defendants have already provided misleading communications to the putative class, Plaintiffs ask that Defendants be required to issue corrective notices that provide the full context, including the existence and nature of this Action.

Further, Plaintiffs ask the Court to invalidate the releases Plains has obtained based on misleading communications, to the extent the releases purport to immunize Plains from paying full compensation to injured class members. Finally, Plaintiffs seek discovery of any releases of claims Plains has obtained (or will obtain) from putative class members, including settlement agreements and records of communications made to such individuals in the context of discussing and negotiating such releases.

The Court's intervention is necessary at this point to protect the putative class members' rights while this Action proceeds, preserve the status quo, and correct the record. Plaintiffs have conducted numerous meet and confers and efforts to reach resolution of the issue, but have been unable to reach an agreement with Defendants. Accordingly, this motion seeks immediate relief as outlined above.

## II.   STATEMENT OF FACTS

### A.   The Line 901 Oil Spill Class Action

After the May 19, 2015 oil spill from Line 901, an oil pipeline owned and operated by Defendants in Santa Barbara County, a number of class action complaints were filed in this Court. Those now consolidated Actions allege that Line 901 ruptured, discharging more than 140,000 gallons of crude oil. Much of that oil flowed into the Pacific Ocean at Refugio State Beach, coating the shoreline and floating out to sea. As a result, oil stuck to rocks, sand, wild animals, and marine life; created an oil slick that stretched for miles; contaminated several State Marine Conservation Areas; invaded coastal private properties; forced the closure of beaches, fishing grounds, and a variety of shellfish and fishing operations; and left many in the region's oil services industry without work.

This Action alleges that Defendants failed to prevent the May 19 oil spill by inadequately designing and maintaining Line 901 to make it less susceptible to corrosion and rupture, and that Plains failed to promptly respond to the spill. As the result of Defendants' inadequate maintenance, Line 901 was and is severely corroded. Defendants were aware of this extensive corrosion, having repaired three parts of Line 901 adjacent to the rupture before the oil spill. Indeed, Defendants have a lengthy history of pipeline safety and maintenance lapses and have been cited for more than 175 such violations since 2006. In fact, since the May 19 Refugio disaster, Plains' pipelines have ruptured again, as recently as October 28, 2015, releasing more than 1,400 gallons of oil and water in Orange County, California.[1]

Defendants acknowledge their responsibility for the May 19 oil spill. On June 26, 2015, Patrick Hodgins, Defendant Plains All American Pipeline's Senior

---

[1] Louis Casiano Jr. & Alyssa Duranty, ORANGE COUNTY REGISTER, *Cypress leak spilled about 1,400 gallons of oil, water mixture* (Oct. 29, 2012), *available at* http://www.ocregister.com/articles/oil-689600-public-avenue.html.

Director of Safety and Security, testified before the California State Senate Select Committee and the California Assembly Committee on Natural Resources on the Refugio Oil Spill on behalf of Defendants that, "we fully recognize that we are the responsible party."[2]

Yet their actions to date make clear that Plains intends little more than lip-service and Band-Aids when it comes to restoring the environmental health of Santa Barbara County and the economic injuries of residents, workers, and small businesses there and elsewhere who are victims of the spill. This Action therefore seeks relief on behalf of a proposed class of persons or entities that claim losses or damages now or in the future as a result of Plains' May 19 oil spill. The Action requests monetary and injunctive relief, including injunctive relief to protect the class from suffering further economic losses, to protect the public health and welfare, and to remediate the environmental harm caused by the spill.

**B.    Defendants' Communication With a Named Plaintiff is Improper And Reveals Plains' Misleading Campaign.**

Mike Gandall is one of the named Plaintiffs in Plaintiffs' Consolidated Amended Class Action Complaint dated September 21, 2015. Plaintiff Gandall fishes for a variety of species, including rock crab and California spiny lobster, almost exclusively in the areas closed as a result of the May 19 oil spill for which Defendants are responsible. *See* Declaration of Mike Gandall in Support of Plaintiffs' Rule 23 Motion ("Gandall Decl.") filed herewith at ¶ 2.

On or about September 27, 2015, approximately one week after Plaintiffs' filed their Consolidated Amended Class Action Complaint, Plaintiff Gandall received an unsolicited call on his cell phone from an individual who identified himself as an agent of Plains All American Pipeline, L.P. *Id.* at ¶¶ 3-4. This

---

[2] Prepared Oral Testimony of Patrick Hodgins (June 26, 2015), *available at* http://www.plainsline901response.com/go/doc/7266/2552586/Prepared-Oral-Testimony-of-Patrick-Hodgins-June-26-2015.

4

individual stated that he was calling because Plaintiff Gandall had not filed a claim with Defendants. *Id.* at ¶ 4. Moreover, Plaintiff Gandall has received multiple unsolicited letters from or on behalf of Defendants instructing him to submit a claim to Defendants and requesting information regarding his damages. *Id.* at ¶¶ 6-8, Exs. 1, 2. One of these letters even misleadingly indicates that a claim *had already been filed* on behalf of Mr. Gandall, although he has never filed such a claim. *Id.* at ¶ 6, Ex. 2 ("As of the date of this correspondence we have not received any documentation to support the claim you submitted."). In all of these *ex parte* communications, Plains made no mention of the proceedings in this Court, provided no information regarding the rights of spill victims to participate in the class action proceeding, and gave no indication that the person should seek advice from any attorney(s).  Gandall Decl. ¶ 6.

Plains' inappropriate contact with Plaintiff Gandall appears to be part of a larger attempt to mislead class members regarding the nature of the OPA process and the existence of the class action or other rights. *See* Declaration of Matthew J. Preusch in Support of Plaintiffs' Rule 23 Motion ("Preusch Decl.") filed herewith at Exs. 1-4. The Defendants' 'open' communications with the community are no better. For example, on Sunday, September 27, 2015, Defendants placed a full-page advertisement in the *Santa Barbara News-Press* that purports to advertise their claims process, urging potential class members to "CALL THE CLAIMS LINE" or "VISIT PLAINS RESPONSE SITE." Preusch Decl., Ex. 1. Likewise, on Thursday, October 29, 2015, Defendants placed a half page advertisement in the *Santa Barbara Independent* that advertised their OPA claims process in the same manner. Preusch Decl., Ex. 2. Those advertisements made no mention of this litigation, or of the individual's right to obtain compensation through other means, or need to seek advice of counsel before making a decision on how to proceed. *Id.* at Exs. 1-2. Nor do they adequately describe the manner in which Plains will accept, process, and

pay claims. Plains continues to place such misleading advertisements, both in the printed press and online. *Id.* at Exs. 2-4, 7. Defendants also advertise their claims process through a website set up for this purpose, www.plainsline901response.com.[3]

Finally, and most troublingly, Defendants are clearly attempting to induce putative class members to "resolve" all of their current and future claims against Defendants by way of a "release" that seeks to prohibit those class members from seeking any remedy for as-yet-unknown future damages. Preusch Decl., Ex. 6. Although Plains claims that the settlements they have offered and continue to offer are consistent with OPA, the scope of the purported release would extinguish all rights, something that is contrary to the plain meaning of OPA; Plains cannot require a class member to release all claims for past and future damages as a condition of receiving any payments mandated by OPA, as explained in greater detail below. In short, despite the class action proceedings and the limited scope of the OPA process in an oil spill, the Defendants seek to extinguish the claims of the class members and circumvent this Court's jurisdiction.

**C.    The Meet and Confer Process**

Plaintiffs had hoped to reach an agreement with Plains' counsel to govern communications with putative class members. *See generally* Declaration of Robert J. Nelson in Support of Plaintiffs' Rule 23 Motion ("Nelson Decl.") filed herewith. Beginning in July 2015, Plaintiffs' counsel contacted Plains' counsel to express Class Counsel's concern that Plains or its agents were communicating in a potentially misleading way with members of the putative class and seeking releases. *Id.* at 4. Over several months, counsel for the parties exchanged proposed stipulations to govern those communications. *Id.* at 5-6. Unfortunately, Plains'

---

[3] In an effort to counter some of Plains misleading communications, Plaintiffs' counsel has begun placing advertisements in some local publications. *See* Preusch Decl., Ex. 10.

PLAINTIFFS' RULE 23 MOTION

1  misleading communications continued throughout the discussions, and the parties

2  have not been able to reach an agreement, prompting this motion.

### III.  SUMMARY OF RELIEF SOUGHT

4  To ensure that putative class members receive complete and accurate

5  information about the full nature of their injuries and damages, as well as the full

6  scope of requested relief, Plaintiffs seek an order pursuant to Fed. R. Civ. P. 23(d):

7  (1) nullifying releases Plains has obtained that prevent class members from

8  seeking full compensation from Plains;

9  (2) requiring Plains to provide to Plaintiffs a list of all class members who

10  have signed a release and copies of any documents sent to or from the class

11  members by Plains or its agents, including settlement agreements where

12  applicable and records of communications made to such individuals;

13  (3) directing Plains to send corrective communications to putative class

14  members with the above information;

15  (4) prohibiting any misleading communications with members of the

16  proposed class by requiring Plains to inform putative class members in any

17  written communication about the pendency of this litigation, the nature of the

18  litigation and the claims sought, and their right to contact class counsel or an

19  attorney of their choosing; and

20  (5) prohibiting Defendants from any communications with any of the named

21  Plaintiffs.

### IV.  ARGUMENT

23  This Court has both the authority and the duty to impose limited restrictions

24  on Defendants' communications with putative class members under Rule 23(d) and

25  to invalidate releases Plains has obtained based on misleading communications.

26  Those steps are necessary here because Plains has made and continues to make

27  misleading communications to members of the putative class, communications that

28

7

1  fail to inform them of this Action and the nature and strength of claims alleged, and

2  do not adequately or accurately inform putative class members about their rights or

3  their options for protecting those rights. Defendants' apparent goal is to use that

4  information vacuum to induce class members to compromise their claims or

5  otherwise opt-out of the pending Action, without Court supervision or oversight.

6  For those reasons, this Court should protect putative class members and the class

7  action process by ordering the limited, proportionate relief Plaintiffs request.

8  **A.    This Court Has Broad Authority to Oversee this Putative Class Action by Restricting Communications with Class Members.**

9        Rule 23(d) provides that "[i]n conducting an action under this rule, the court

10  may issue orders that . . . impose conditions on the representative parties." Fed. R.

11  Civ. P. 23(d). Among the stated purposes of this Rule is "to protect class members

12  and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B). Under this Rule, "a

13  district court has both the duty and the broad authority to exercise control over a

14  class action and to enter appropriate orders governing the conduct of counsel and

15  parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

16        The "long-established law" that justifies court intervention where defendants

17  provide false, misleading, or incomplete communications protects the fairness of

18  the litigation process. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the*

19  *Gulf of Mexico, on Apr. 20, 2010*, No. 10-md-02179, 2011 WL 323866, at *6-7

20  (E.D. La. Feb. 2, 2011) ("*Deepwater Horizon*") (citing *In re Sch. Asbestos Litig.*,

21  842 F.2d 671, 680 (3d Cir. 1988); *see also* NEWBERG ON CLASS ACTIONS § 9:7 (5th

22  ed.) ("NEWBERG") ("[C]ourts will restrict defendant communications with putative

23  class members in two sets of circumstances: after a finding of either misleading,

24  deceptive, or coercive communications or a finding of communications that

25  undermine the class action by convincing potential class members to avoid the

26  representative suit."). Courts exercise their authority in such circumstances because

27  "[m]isleading communications to class members concerning the litigation pose a

28

serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *In re Sch. Asbestos Litig.*, 842 F.2d at 680 (holding that, under *Gulf Oil*, a district court has broad powers to regulate class member communications, particularly those that seek to influence a class member's choice of remedy).

In California, District Courts restrict even pre-certification contact with class members or putative class members where a defendant's communications are misleading or improper. *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal. 2014); *see also Quezada v. Schneider Logistics Transloading & Dist.*, No. CV 12-2188 CAS DTBX, 2013 WL 1296761, at *4 (C.D. Cal. Mar. 25, 2013) ("[A] limitation on pre-certification communications is appropriate when misleading, coercive, or improper communications have taken place."); *Castaneda v. Burger King Corp.*, No. C 08-4262 WHA (JL), 2009 WL 2382688, at *6 (N.D. Cal. July 31, 2009) (citing *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002)); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) (same). For example, in *Pollar v. Judson Steel Corp.*, a plaintiff requested an order restricting the defendant's publication of a notice regarding the subject matter of the suit. No. C 82-6833 MHP, 1984 WL 161273, at *1 (N.D. Cal. Feb. 3, 1984). The court granted the application because the notice, among other things, did "not disclose the pendency or scope of this class action lawsuit nor [did] it provide the identity of class counsel[.]" *Id.*

In addition, where a party has already provided misleading information to putative class members, a court "can order a corrective action[.]" *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, No. CV 12-03467-ODW FMOX, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012). The court's ruling in *Cnty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740WHA, 2010 WL 2724512 (N.D. Cal. July

9

8, 2010), provides guidance on that issue. There, the defendant sent letters to the putative class members that included a release form. The court found corrective notice was necessary because the letters did not include "a summary of the plaintiffs' complaint, … an explanation of the claims of the plaintiffs, the plaintiffs' counsel's contact information, or the current status of the case." *Id.* at *4.

An order that limits or conditions communications with class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101.

**B.   OPA May Not Be Used by Defendants to Require Class Members to Release All Potential Claims.**

Plaintiffs do not dispute that, under OPA, a defendant that is deemed a responsible party for an oil spill may communicate with putative class members. But what Congress envisioned in OPA and what Plains is doing are not the same. OPA was enacted to supplement existing law by expanding the remedies available to oil spill victims, not as a shield for Plains to limit its liability. This Court should not allow Plains to use OPA as "cover" to disseminate misleading information and as a platform to extinguish class members' rights to full compensation.

Congress enacted OPA following the Exxon Valdez oil spill in Alaska's Prince William Sound. One purpose of the law was to provide relief under the federal statutory scheme in existence at the time to any claimant who suffered economic loss "resulting from" or "due to" an oil spill, without limits as to whether the claimant suffered physical damage. *See generally In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d 943, 958-59 (E.D. La. 2011). Another critical purpose of OPA was to give short-term relief to an area damaged by an oil spill by providing a quick infusion of cash to the affected community. OPA therefore has procedures for a responsible party to pay claimants "interim, short-term damages." 33 U.S.C. § 2705.

These "interim, short-term" payments are not intended to foreclose an injured person's right to full compensation for injuries caused by an oil spill. The statute provides that the payment of "short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled *shall not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim*." 33 U.S.C. § 2705(a) (emphasis added). As noted in another section of OPA, when a responsible party makes a payment to a claims for interim damages, "[p]ayment of such a claim *shall not foreclose a claimant's right* to recovery of *all damages* to which the claimant otherwise is entitled under this Act *or under any other law*." 33 U.S.C. § 2715(b)(2) (emphases added).

To publicize the claims process, OPA also requires that a responsible party "shall advertise . . . the procedures by which claims may be presented," and it requires that those advertisements "state that a claimant may present a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled and *that payment of such a claim shall not preclude recovery for damages not reflected in the paid or settled partial claim*." 33 U.S.C. § 2714(b) (emphasis added).

In this case, as explained below, Plains has ignored OPA's requirements in its advertisements, and, more importantly, in the broad release it is now using, despite Plaintiffs' objections. Because Plains' claims process violates the text and purpose of OPA, and Plains has refused to correct its conduct, this Court should intervene.

## C.   The Record Supports an Order Restricting Plains' Communications with Plaintiffs and Putative Class Members

### 1.   Plains Has Repeatedly Made and Continues To Make Misleading Communications That Jeopardize Putative Class Members' Rights

Plains' phone calls, letters, advertisements, and other communications are improper and misleading in many respects.

First, Defendants have directly—and repeatedly—communicated with a represented party as to matters at issue in this litigation. Plains' "intentional and unauthorized communication between a defendant and a named class action plaintiff"—namely, the telephone call on or around September 27, 2015 to Plaintiff Gandall—raises "serious concerns[.]" Ruling on Pls.' Appl. for a TRO at 4, *Crosson v. Volkswagen Group of Am., Inc.*, No. CV 15-7475-GW (C.D. Cal. Oct. 6, 2015), Dkt. No. 33.[4]

Second, Plains' communications appear to be misleading attempts to coax Plaintiff Gandall and putative class members toward one particular "remedy"—the remedy selected by Defendants—without first advising putative class members of the full extent of their rights and potential claims, as well as the range of remedies that might be appropriate to address those harms. For example, Plains' release form requires a victim to "RELEASE, ACQUIT and FOREVER DISCHARGE Plains of all Claims related to the above-described Injuries[,]" including "past, present, or future, known or unknown[.]" Preusch Decl., Ex. 6. That global release runs contrary to OPA's purpose of providing short-term cash to injured parties while preserving their rights to full compensation at a later date, and neglects to inform claimants of their rights to seek additional damages. In addition, the letters Plains has sent to Plaintiff Gandall and presumably to putative class members, as well as Plains' ongoing advertising campaign, are misleading because they wholly omit any reference to the pending class action litigation against Defendants regarding the May 19 oil spill. *See Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 762-63 (N.D. Ohio 2010) ("A defendant's failure to mention even an uncertified class action in

---

[4] At least one court has concluded that communications with putative class members raises the same concerns as communications with named parties. *See Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) *on recons.*, No. CIV. A. 00-1966, 2001 WL 516635 (E.D. Pa. May 16, 2001) ("The 'truly representative' nature of a class action suit affords its putative members certain rights and protections including, we believe, the protections contained in Rule 4.2 of the Rules of Professional Conduct.").

1    securing settlements or releases from putative class members may be

2    'misleading.'").

3         The above examples are based on only the sample of Plains' communications

4    provided in the documents supporting this motion. Plains has not provided

5    Plaintiffs' counsel with information regarding this issue, but based on the limited

6    information Plaintiffs' counsel has been able to obtain, it appears Plains is in a race

7    to obtain as many improper releases as possible while it simultaneously seeks to

8    stay this Action. Indeed, Counsel for Plains has represented to this Court that it has

9    already obtained and processed hundreds of claims, and is accelerating its process

10   of seeking releases from putative class members. *See* Joint Rule 26(f) Report, ECF

11   No. 42 at 8, 22-23; Tr. of Hr'g on Status Conference, Nov. 9 2015. This Court's

12   intervention is urgently needed to protect putative class members' rights.

13        **2.      Plains' Actions Interfere With and Harm the Class Action Process.**

14        Plains' communications appear to be designed to induce putative class

15   members to settle with Defendants and essentially "opt-out" of the pending Action,

16   without first providing them with complete and accurate information, and without

17   court oversight. A complete and accurate release would inform putative class

18   members of their right to accept payment under OPA without relinquishing all

19   potential claims, that a class action has been filed to protect their rights, and that

20   they have a right to make an individual decision and seek advice of counsel before

21   relinquishing all potential claims. Without that information concerning their rights,

22   Plains' settlement letters and release forms do not provide the "necessary context to

23   allow potential class members to make informed decisions between individual and

24   collective litigation." NEWBERG § 9:7. Without the Court's intervention, Plains will

25   succeed in eviscerating the rights of putative class members and eliminating their

26   remedies under Federal Rule 23.

27

28

1   While class settlements are generally encouraged, "public policy demands
2   that potential plaintiffs receive appropriate notice before entering into any release
3   agreement." *Gonzalez*, 2012 WL 4466605, at *1; *see also* MANUAL FOR COMPLEX
4   LITIGATION (Fourth Ed. 2007) § 21.12 at 336 (questioning propriety of defendants
5   seeking releases without providing information about pending class action)
6   NEWBERG § 9:7 ("Courts are wary . . . of communications—frequently in the form
7   of settlement attempts—that fail to convey the necessary context to allow potential
8   class members to make informed decisions between individual and collective
9   litigation[.]"). The class action process is inherently undermined when absent class
10  members are solicited by defendants *ex parte* and encouraged to essentially opt-out
11  of an action. *See Camp*, 300 F.R.D. at 626 ("Obtaining opt-out forms ex parte at
12  this stage of the litigation—before a class has been certified by the Court—
13  unquestionably frustrates the purposes of Rule 23."); *see also, e.g.*, *Cnty. of Santa
14  Clara*, 2010 WL 2724512 at *5-6 (invalidating releases obtained through
15  misleading *ex parte* communications with putative class members, before class
16  certification). To protect that process, courts use their authority under Rule 23 to
17  regulate "communications that are likely to interfere with the proper administration
18  of a class action or may impair the rights of members of the class." 2 MCLAUGHLIN
19  ON CLASS ACTIONS § 11:1 (11th ed.).

20  United States District Judge Carl Barbier was faced with a strikingly similar
21  situation during the *Deepwater Horizon* litigation. In that case, plaintiffs—victims
22  of the 2010 oil spill that followed the explosion of BP's offshore oil rig—
23  challenged the communications pursuant to OPA made by BP's claims agent,
24  Kenneth Feinberg. Pl's Mem. Supp. Mot. Supervise Ex Parte Communications 24,
25  Dec. 21, 2010, ECF No. 912-1. The district court held that, while BP was bound by
26  OPA to administer claims, its communications and proffered release through Mr.
27  Feinberg were false and misleading because, among other things, BP and its agent
28

PLAINTIFFS' RULE 23 MOTION

failed to identify the existence of litigation or explain that the claimants were putative class members. *Deepwater Horizon*, 2011 WL 323866, at *6-8.

The court recognized that if "potential class members have received inaccurate, confusing or misleading communications, the Court may take action to cure the mis-communication and to prevent similar problems in the future." *Id.* at *6. The court therefore took action: it ordered that "BP, through its agents[,]" refrain from contacting any claimant "they know or reasonably should know is represented by counsel," and "[b]egin any communication with a putative class member with the statement that the individual has a right to consult with an attorney of his/her choosing prior to accepting any settlement or signing a release of legal rights[,]" among other prohibitions. *Id.* at *7; *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 11:1 (11th ed.) (recommending that defendants include in any submission to putative class members a letter describing the lawsuit and the complaint); *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, (E.D. La. Nov. 14, 2005), Dkt. No. 39, Order and Reasons, at 8 (ordering that defendants "begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney prior to any settlement or waiver of legal rights").

Similarly, as Judge Wright explained in the *Gonzalez* case, a state employment law collective action, pre-certification communications with putative class members are generally permitted, but there is the risk that "a defendant could mislead putative class members through 'omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." 2012 WL 4466605, at *1 (quoting *Cnty. of Santa Clara*, 2010 WL 2724512, at *3). There, the court found that the release form defendant provided to the putative class members was misleading because it did not include adequate information about the pending case, it did not attach the complaint, and it

did not include the contact information for plaintiff's counsel. *Id.* It therefore "misleadingly failed to provide the potential plaintiffs with adequate notice of this case in order to make an informed decision regarding waiver of their rights." *Id.*

In this Action, Plains' communications suffer from the same and additional defects as those in *Gonzalez*, *Santa Clara*, and *Deepwater Horizon*. Plains' communications include none of the prophylactic language the *Deepwater Horizon* court ordered BP's agent to provide in *Deepwater Horizon* to remedy the very abuses Plains is guilty of here. The releases, letters, claim forms, websites, advertisements, and other communications Plains is providing do not mention this Action, they do not attach the complaint, they do not provide contact information for Plaintiffs' counsel, and they do not begin by communicating to putative class members with a statement that they have a right to consult with an attorney of their own choosing prior to accepting a settlement or signing a release of legal rights.

Plains' communications with putative class members also do not contain the simple prophylactic language the court ordered BP's agent in *Deepwater Horizon* to include to prevent false and misleading communications, namely informing individuals that they have the right to talk to an attorney before signing a release. *See* Preusch Decl., Ex. 6.  Indeed, given the misleading language Plains uses, it might appear to putative class members that the claims information coming from Plains is related to the pending class action, and they could inadvertently extinguish their rights while they believe they are filing a claim in the context of the class action. *See Deepwater Horizon*, 2011 WL 323866, at *12 (noting how nature of claims process there has "led to confusion and misunderstanding by claimants, especially those who are unrepresented by their own counsel").[5]

_____

[5] Plains will likely argue that it *must* communicate with class members pursuant to a claims process under OPA. BP made the same argument. As in *Deepwater Horizon*, that does not justify Plains' misleading communications and overreaching releases; indeed, there is no justification for either. Whether or not

16

The release form Plains is using does not even include the minimal cautionary language that BP's agent utilized in the original release in *Deepwater Horizon* and that the court held was insufficient to protect plaintiffs from inaccurate, confusing, or misleading communications. *Deepwater Horizon*, 2011 WL 323866, at *6. There, the release informed claimants that "if a claimant has an attorney, he or she should confer with the attorney before submitting a . . . claim or signing a release" and "claimants have the right to be represented by lawyers of their own choosing[.]" *Id.* at *4; *see also Turner*, No. 05-4206, Dkt. No. 39 at 11 (ordering in an oil spill class action that defendant's "Settlement and Release Agreement should contain a statement that the individual signing the agreement should seek independent legal advice prior to any settlement or waiver of his or her legal rights").

Without that basic information or those sensible protections, putative class members cannot make an informed decision regarding waiver of their rights. In the future, Plains' communications with class members must notify them of the pending Action, provide them a means to learn fully about the nature and strength of the Action's pending claims, and limit the scope of any release.

**D.  This Court Should Invalidate Plains' Improperly Obtained Releases**

The releases Plains has obtained from putative class members based on misleading information should be invalidated. Courts resort to that remedy in cases like this, and nothing in OPA supports Plains' efforts to evade full responsibility for the damages it owes to putative class members.

**1.  This Court Has the Authority to Invalidate Prior Releases.**

Where misleading communications have allowed defendants to improperly obtain settlement releases, courts may order that such releases be invalidated. *See* NEWBERG § 9:7 (noting that one of the remedies available to courts where improper

_____

OPA affects the claims asserted in this case—it does not—Plains must be required to communicate in a non-misleading way with putative class members.

1    communications have been made, though "severe," is "the invalidation of

2    improperly obtained materials or advantages, such as declarations, settlement

3    agreements, or other contract provisions") (citing *Santa Clara*, 2010 WL 2724512).

4         Using that authority, the court in *Santa Clara* held invalid a settlement

5    release obtained through defendant's misleading communications. 2010 WL

6    2724512, at *6. The communications at issue were misleading because defendant

7    "omitted material information," in that the communications "did not contain the

8    complaint . . . , did not describe the claims, did not contain the current status of the

9    case, did not provide contact information for the plaintiffs' attorneys," and

10   "offer[ed] a potentially much decreased settlement." *Id.* Invalidating the releases

11   did not undermine the settlement or allow for "double-dipping" by claimants

12   because the court ordered "[a]ny checks cashed will be deducted from any recovery

13   obtained . . . by the recipients." *Id.*

14        Similarly, in a recent order, the court in *Slavkov v. Fast Water Heater

15   Partners I, LP*, held invalid settlement releases that were improperly obtained by

16   defendants. No. 14-CV-04324-JST, 2015 WL 6674575, at *7 (N.D. Cal. Nov. 2,

17   2015). In *Slavkov*, although the communications at issue were made in the context

18   of an employer-employee relationship, the court found that the communications

19   were misleading because they "confusingly suggest[ed]" that absent class members

20   "could not contact Plaintiffs' counsel," and also failed to mention that certain

21   claims could be released without judicial approval, creating "'potential

22   interference' with the rights of the putative class that require[d] judicial intervention

23   under Rule 23(d)." *Id.* at *7.

24        Numerous courts have similarly invalidated opt-out declarations that have

25   resulted from misleading communications. *See*, *e.g.*, *Camp*, 300 F.R.D. at 625

26   (holding invalid opt-out declarations where "no explanation of Plaintiffs' claims,

27   copy of the complaint, or contact information for Plaintiffs' counsel was included"

28

in the communications at issue); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (ordering the invalidation of opt-out forms and requiring the issuance of a corrective notice, where the opt-out forms had been signed in misleading and "inherently coercive" meetings); *Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1203 (11th Cir. 1985) (affirming the trial court's "ample discretion" under Rule 23 to ban defendant from "[u]nsupervised, unilateral communications with the plaintiff class" in an attempt to obtain opt-outs, reasoning that such attempts "sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal," and vacating as moot the trial court's order that all exclusion requests received pursuant to such efforts be voidable).

It is well within this Court's authority to invalidate the settlement releases obtained by Plains through its misleading and incomplete communications to putative class members. This remedy is warranted in light of Plains' misleading attempts to obtain settlement releases from putative class members, while concealing the very existence of this Action, and is necessary to remedy the harm caused by such communications to putative class members who have signed such releases without being informed of their rights.

**2.     The OPA Claims Process Does Not Mandate Such Broad Releases**

Any release that requires spill victims to release all claims against Plains in exchange for immediate payment is inconsistent with OPA and invalid.

As a threshold matter, the "OPA" claims process Plains is touting is not even compliant with statutory requirements. For example, the full- and half-page advertisements Plains has been running for months do not disclose that an injured party may make a claim for interim damages and that payment of such a claim "shall not preclude recovery for damages not reflected in the paid or settled partial claim." 33 U.S.C. § 2714(b) (emphasis added). *Cf.* Preusch Decl., Exs. 1-4, 7. Such

1   opaque advertisements and guidance do not adequately inform potential claimants

2   of their actual rights under OPA.[6] And if a claimant sees those misleading

3   advertisements and contacts Plains, Plains then requires the claimant to sign a

4   release of *all* potential claims, in exchange for compensation of only short-term

5   losses; *i.e.*, "sustained during the six months following" the spill, unlike the claims

6   process that followed the Deepwater Horizon disaster in 2010.[7]

7        Plains' purported "OPA" process also has some of the same flaws as the

8   claims process that followed the crash of the *Cosco Busan* and subsequent oil spill

9   in San Francisco Bay in 2007. In the litigation that followed that spill, the

10   defendant's claim form also included a broad release, so United States District

11   Judge Samuel Conti ordered the defendants to inform claimants who had signed the

12   defendant's so-called Prepayment Advance Form that "by signing a release form,

13   claimants have in no manner waived or prejudiced their right to join any lawsuit or

14   class action against Defendants for the oil spill damages resulting from the crash of

15   the Cosco Busan[.]" *Chelsea, LLC v. Regal Stone, Ltd.*, No. 07-5800 SC (N.D. Cal.

16   May 4, 2008), ECF No. 12, Order re: Defs.' Communication, at 2. The court also

17   ordered defendants to amend their release form "so that it clearly states that

18

19

---

20   [6] Plains might also have failed to comply with the requirements of the Lempert-

21   Keene-Seastrand Oil Spill and Response Act, which requires responsible parties to "immediately, widely advertise the manner in which it shall accept and pay

22   claims." Cal Gov't Code § 8670.51.1(a)(1).

23   [7] BDO CONSULTING, INDEPENDENT EVALUATION OF THE GULF COAST CLAIMS

24   FACILITY REPORT OF FINDINGS & OBSERVATIONS TO THE U.S. DEPARTMENT OF JUSTICE 29 (June 5, 2012), *available at*

25   http://www.justice.gov/sites/default/files/opa/legacy/2012/06/06/gccf-rpt-find-

26   obs.pdf; *see also id.* at 29-30 ("A claimant who received a payment during Phase I was not required to execute a release and covenant not to sue BP or any other

27   party; and loss calculations were not decreased by any amounts received from the

28   BP-operated facility.").

1  acceptance of any payment is without prejudice to pursuit of any legal action in a

2  court of law, or join any class action concerning this matter." *Id.*

3       In sum, the process Plains has been using to obtain releases from putative

4  class members is flawed, and it includes none of the safeguards courts have found

5  appropriate in similar contexts. Plains cannot therefore rely on its misuse of OPA—

6  a statute intended to aid victims of an oil spill—as a shield to protect it from the full

7  liability state law imposes as a result of Plains' oil spill.

8       The release and communications here are far more troubling than those the

9  court accepted in *Deepwater Horizon. See In re Oil Spill by the Oil Rig Deepwater*

10  *Horizon in the Gulf of Mexico*, 808 F. Supp. 2d at 966-67. In *Deepwater Horizon*,

11  the BP releases plaintiffs sought to nullify were more limited and already included

12  court-ordered language advising class members of their rights. *See*, *supra*, Part

13  IV.C.2. Specifically, the court-corrected "Quick Payment Claim Form" that BP's

14  agent provided to claimants in that litigation, unlike the release Plains' agent has

15  used, provided that a claimant "may pursue other means of compensation. If you

16  want to file a lawsuit regarding the Incident . . . do not sign this release." Preusch

17  Decl., Ex. 9 at 1. That form also advised the claimant to consult with an attorney, if

18  they had one, before signing the release. *Id.* Plains' release does not include those

19  caveats. In short, BP apparently obtained releases in the context of a court-approved

20  OPA process and based on court-approved communications. Plains' program falls

21  far short of those standards applied in BP.[8]

22       Plains has been using misleading communications to coax putative class

23  members into signing overly broad releases. Those releases threaten class members'

24

25

26  _____

27  [8] Furthermore, that district court's one paragraph analysis did not discuss the
    statutory text before concluding that OPA does "not clearly prohibit" the use of

28  waivers and releases by responsible parties. *Id.*

rights and the integrity of the class action process. This Court should invalidate them to the extent they purport to limit class members' full rights.

### E.  Defendants Must Disclose the Releases They Have Obtained and Related Information.

Where Defendants have obtained releases based on misleading information, it is appropriate for the Court to order Defendants to disclose those releases as well as a list of putative class members Plains has sought releases from.

Given Plains' months-long campaign to solicit releases from putative class members—all done without providing any notice of this Action—Plaintiffs must be able to review the releases Plains has obtained to determine whether and to what extent Defendants have been successful in their apparent attempts to obtain such releases in a misleading manner. That information is necessary so that Plaintiffs may "correct the damage wrought by [Plains'] misleading, unilateral communications." *See Gonzalez*, 2012 WL 4466605, at *2; *see also Pollar*, 1984 WL 161273, at *1 (ordering defendants to promptly turn over all claim forms and written communications from class members they have received to class counsel" where the defendants provided a notice that could "seriously prejudice the rights of the absent class members by failing to disclose the existence of the class case and by causing confusion concerning their rights"). Because Plains has refused to accurately inform putative class members, Class Counsel ought to be able to identify those individuals to ensure that they are provided with complete and accurate information.

Plaintiffs are not seeking full-blown discovery through this motion. Rather, Plaintiffs request an order narrowly tailored to the harms that Defendants have created through their misleading communications, information that bears directly on future class certification and other issues.

PLAINTIFFS' RULE 23 MOTION

**F.   The Requested Order Is Narrowly Tailored To Address Defendants' Misleading Communications, and Protects the Rights of the Parties to This Action**

This requested order is narrowly tailored to address the harms caused by the misleading communications and unfair releases that Defendants have made to Plaintiffs and members of the putative class, and to prohibit any further misconduct.

Plaintiffs are not requesting that the Court "ban" Plains from communicating with putative class members. Rather, under Plaintiffs' requested order, Defendants would remain free to communicate with Plaintiffs through their counsel, and would remain free to communicate with putative class members, provided that such communications are not misleading. Plaintiffs ask only that Defendants simultaneously provide accurate and adequate information to such individuals, in the form of a one or two sentence script during each communication summarizing this action and providing contact information for class counsel, so that putative class members have sufficient information with which to evaluate their legal rights. That would preserve Defendants' right to any legitimate commercial speech, foreclosing only Defendants' apparent attempts to obtain releases from Plaintiffs and putative class members in a misleading manner.

Given the incomplete and misleading communications Defendants have *already* made to potential class members, the requirement that this Court require such a script and review and approve the proposed language before it is implemented is not unreasonably burdensome. Further, to the extent that Defendants would be required to issue corrective communications, such communications would only be required to the extent that Defendants have chosen to make misleading communications in the past.

Nor would the requested order impinge on the OPA process by prohibiting Defendants from obtaining *limited* releases in exchange for the early payments OPA contemplates. Plaintiffs are also not asking this Court to completely nullify

23

the private settlements Plains has reached with putative class members, or to restrict future settlements. Rather, Plaintiffs only ask that the court nullify the releases Plains has obtained based on providing inaccurate information, to the extent those releases purport to absolve claims of the *full* liability it bears under state statutory and common law to the victims of the Line 901 oil spill.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court exercise its authority and duty to protect the rights of putative class members by issuing the proposed order lodged herewith.

Dated:  December 16, 2015          Respectfully submitted,

By:    */s/ Juli Farris*
                                         Juli Farris

Juli Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
1129 State Street, Suite 8
Santa Barbara, CA 93101
Telephone:  (805) 456-1496
Facsimile:  (805) 456-1497

Lynn Lincoln Sarko
*(Admitted Pro Hac Vice)*
Gretchen Freeman Cappio
*(Admitted Pro Hac Vice)*
Daniel Mensher
*(Admitted Pro Hac Vice)*
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone:  (206) 623-1900
Facsimile:   (206) 623-3384

Robert L. Lieff (CSB No. 037568)
Elizabeth J. Cabraser (CSB No. 083151)
Robert J. Nelson (CSB No. 132797)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

William M. Audet (CSB No. 117456)
Jonas P. Mann (CSB No. 263314)
Theodore H. Chase (CSB No. 295823)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Abbas Kazerounian (CSB No. 249203)
Matthew M. Loker (CSB No. 279939)
KAZEROUNI LAW GROUP APC
245 Fischer Ave, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Brett A. Boon (CSB No. 283225)
BENNER & BOON, LLP
1516 Front Street
San Diego, CA
Telephone: (619) 358-9779
Facsimile: (619) 810-2459

*Attorneys for Plaintiffs*

25

**CERTIFICATE OF SERVICE**

I, Elizabeth Gibson, hereby certify that on this 16th day of December, 2015, I electronically filed Plaintiffs' **NOTICE OF MOTION AND MOTION FOR AN ORDER LIMITING DEFENDANTS' COMMUNICATIONS WITH PLAINTIFFS AND CLASS MEMBERS AND FOR OTHER RELIEF PURSUANT TO FED. R. CIV. P. 23(D)** with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Elizabeth E. Gibson*
Elizabeth E. Gibson, Legal Assistant