DOWNEY BRAND LLP
STEVEN H. GOLDBERG (Bar No. 140039)
WILLIAM R. WARNE (Bar No. 141280)
MEGHAN M. BAKER (Bar No. 243765)
OLIVIA M. WRIGHT (Bar No. 240200)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone: 916.444.1000
Facsimile: 916.444-2100
sgoldberg@downeybrand.com
bwarne@downeybrand.com
mbaker@downeybrand.com
owright@downeybrand.com

AHMAD ZAVITSANOS ANAIPAKOS ALAVI
& MENSING PC
JOHN ZAVITSANOS (admitted pro hac vice)
ELIZABETH P. FLETCHER (admitted pro hac vice)
1221 McKinney, Suite 3460
Houston, TX  77010
Tel: 713.655.1101
Fax: 713.655.0062
jzavisanos@azalaw.com
efletcher@azalaw.com

Attorneys for Defendants
PLAINS ALL AMERICAN PIPELINE, L.P.,
PLAINS PIPELINE, L.P.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACE CHEVEREZ, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership<br><br>Defendant. | Case No.  2:15-cv-04113-PSG-JEM<br><br>[Consolidated with Case Nos.  2:15-cv-04440-PSG-JEM, 2:15-cv-04573-PSG-JEM, 2:15-cv-04759-PSG-JEM, 2:15-cv-04989-PSG-JEM, 2:15-cv-05118-PSG-JEM]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:        February 29, 2016<br>Time:        1:30 p.m.<br>Judge:       Hon. Philip S. Gutierrez<br>Courtroom:  880 |

DOWNEY BRAND LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  LEGAL STANDARD ............................................................................2

III.  ARGUMENT........................................................................................3

    A.  Plaintiffs Fail to State a UCL Claim Because They Have Not Alleged Facts Establishing a Right to Restitution or Disgorgement of Profits (Fourth Claim)..........................................3

        1.  Plaintiffs Do Not Have a Requisite Ownership Interest Sufficient to Support a Claim for Restitution ...........................3

        2.  Plaintiffs Cannot Recover Non-Restitutionary Disgorgement of Profits in a Class Action under the UCL........4

    B.  Negligence Per Se Is Not a Distinct Cause of Action (Fifth Claim)......................................................................................6

    C.  Plaintiffs Fail to State a Claim for Negligent Interference with Prospective Economic Advantage Because They Have Not Identified Any Specific, Pre-Existing Economic Relationships (Seventh Claim)...............................................................6

    D.  Plaintiffs Fail to State a Claim for Nuisance Per Se Because They Have Not Identified the Requisite Legislative Declaration and Premised this Claim on a Statute that Does Not Contain a Private Right of Action (Tenth Claim) ........................................8

    E.  Plaintiffs' Claims for Public Nuisance and Permanent Injunction Are Preempted by Federal Law (Sixth and Eleventh Claims).............9

        1.  Plaintiffs Seek Injunctive Relief Relating to Pipeline Safety and Operation that Is Expressly Preempted by the Pipeline Safety Act ...............................................................9

        2.  Plaintiffs Seek Injunctive Relief for Natural Resources Harm that Is Conflict Preempted by OPA ..............................12

            a.  OPA Grants Designated Governmental Natural Resources Trustees the Sole Authority and Discretion to Address Direct and Indirect Natural Resources Damages .......................................................12

            b.  Injunctive Relief Claims by Private Parties Directed at Natural Resources Restoration Conflict with OPA and Its Implementing Regulations ........................14

IV.  CONCLUSION ...................................................................................17

i

1

# TABLE OF AUTHORITIES

2

Page

3

**Federal Court Cases**

*ANR Pipeline Co. v. Iowa State Commerce Commission,*
828 F.2d 465 (8th Cir. 1987) .............................................................................11

*Arizona v. United States,*
567 U.S. ___, 132 S. Ct. 2492, 2500-2501 (2012) .....................................10, 14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................................................... 2

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................... 2

*BP America Inc. v. Chustz,*
33 F. Supp.3d 676 (M.D. La. 2014) .............................................................15, 16

*Carson v. Depuy Spine, Inc.,*
365 F. App'x 812 (9th Cir. 2010) ...................................................................... 6

*City & County of San Francisco v. U.S. Dept. of Transportation,*
796 F.3d 993 (9th Cir. 2015) .............................................................................11

*CSX Transportation, Inc. v. Easterwood,*
507 U.S. 658, 113 S. Ct. 1732 (1983) ................................................................10

*Freightliner Corp. v. Myrick,*
514 U.S., 280, 115 S. Ct. 1483 (1995) ...............................................................15

*Geier v. American Honda Motor Co. Inc.,*
529 U.S. 861, 120 S. Ct. 1913 (2000) ................................................................15

*Hill v. Opus Corp.,*
841 F. Supp. 2d 1070 (C.D. Cal. 2011) ..............................................................11

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.,*
487 F. App'x 362 (9th Cir. 2012) ....................................................................3, 4

*In re Burbank Environmental Litigation,*
42 F. Supp. 2d 976 (C.D. Cal. 1998) ..................................................................13

*In re First All. Mortgage Co.,*
471 F.3d 977 (9th Cir. 2006) ............................................................................ 4

*Lynam v. Nationstar Mortgage LLC,*
No. 15-CV-00992-DMR, 2015 WL 3863195 (N.D. Cal. June 19, 2015)............ 6

*Motor Coach Employees v. Lockridge,*
403 U.S. 274 (1971) ..........................................................................................15

*Mutual Pharmaceutical Co., Inc. v. Bartlett,*
___ U.S. ___, 133 S. Ct. 2466 (2013) ................................................................14

*Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.,*
319 F. Supp. 2d 1059 (C.D. Cal. 2003) ............................................................. 4

*New Mexico v. Gen. Elec. Co.,*
335 F. Supp. 2d 1185 (D.N.M. 2004) .................................................................15

*Olympic Pipe Line Co. v. City of Seattle,*
437 F.3d 872 (9th Cir. 2006) .............................................................................11

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,*
806 F.2d 1393 (9th Cir. 1986) ...........................................................................12

*Segura v. Wells Fargo Bank, N.A.,*
No. CV-14-04195-MWF AJWX, 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014).................................................................................................................. 6

*Shaw v. Delta Air Lines, Inc.,*
463 U.S. 85, 103 S. Ct. 2890 (1983) ..................................................................10

*SunPower Corp. v. SolarCity Corp.,*
No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012)............ 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wisconsin Dept. of Industry v. Gould, Inc.,*
    475 U.S. 282, 106 S. Ct. 1057 (1986).................................................................15

**State Court Cases**

*Beck Dev. Co. v. S. Pac. Transp. Co.,*
    44 Cal. App. 4th 1160 (1996).................................................................8, 9

*Blank v. Kirwan,*
    39 Cal. 3d 311 (1985) .............................................................................. 7

*Cruz v. PacifiCare Health Systems, Inc.,*
    30 Cal. 4th 303 (2003) ............................................................................ 5

*Feitelberg v. Credit Suisse First Boston, LLC,*
    134 Cal. App. 4th 997 (2005) .................................................................. 5

*Jones v. Union Pac. R.R. Co.,*
    79 Cal. App. 4th 1053 (2000) .................................................................. 8

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) ..................................................................3, 4, 5

*Madrid v. Perot Sys. Corp.,*
    130 Cal. App. 4th 440 (2005)...............................................................4, 5

*N. Am. Chem. Co. v. Superior Court,*
    59 Cal. App. 4th 764 (1997) .................................................................... 7

*Southern Cal. Gas Co. v. Occupational Safety & Health Appeals Bd.,*
    58 Cal. App. 4th 200 (1997)...................................................................11

*Westside Ctr. Associates v. Safeway Stores 23, Inc.,*
    42 Cal. App. 4th 507 (1996) .................................................................... 7

**Federal Statutory Authorities**

33 U.S.C. § 2701(20).................................................................................12
33 U.S.C. § 2702(b)(2)(A) ...................................................................12,13
33 U.S.C. § 2706...............................................................................12, 13
33 U.S.C. § 2706(a) .................................................................................13
33 U.S.C. § 2706(c) .................................................................................13
33 U.S.C. § 2706(d)(1) .............................................................................14
33 U.S.C. § 2706(f).................................................................................14
42 U.S.C. § 9607(f).................................................................................13
49 U.S.C. § 60101 et seq ........................................................................ 9
49 U.S.C. § 60102...................................................................................10
49 U.S.C. § 60102(a)(2)...........................................................................11
49 U.S.C. § 60104(c) ...............................................................................10
49 U.S.C. § 60106(a) ...............................................................................10
49 U.S.C. § 60117(c)...............................................................................10

**State Statutory Authorities**

Cal. Civ. Code  § 3479.............................................................................. 8
Cal. Civ. Code  §§ 3480 ............................................................................ 8
Cal. Civ. Proc. Code  § 384 ...................................................................... 5
Cal. Water Code  § 13050 ........................................................................ 9
Cal. Water Code  § 13050(m) ...............................................................8, 9

**Federal Rules and Regulations**

15 C.F.R. § 990.10.......................................................................12, 13, 16
15 C.F.R. § 990.14...................................................................................16
15 C.F.R. § 990.14(c)(4)...........................................................................14

DOWNEY BRAND LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOWNEY BRAND LLP

## TABLE OF AUTHORITIES
### (continued)

**Page**

15 C.F.R. § 990.20(a)......................................................................................13
15 C.F.R. § 990.21............................................................................................16
15 C.F.R. § 990.30....................................................................................12, 13
15 C.F.R. § 990.55............................................................................................14
15 C.F.R. § 990.62............................................................................................14
43 C.F.R. part 11..............................................................................................13
49 C.F.R. § 195.2..............................................................................................10

iv

# I. **INTRODUCTION**

This complex, consolidated putative class action litigation arises out of an accidental crude oil release in Santa Barbara County, California, on May 19, 2015, when a pipeline owned by Defendant Plains Pipeline L.P. ("Plains Pipeline"), known as Line 901, unexpectedly leaked.  Plaintiffs originally filed seven separate putative class action suits against Plains Pipeline and its parent company (collectively, "Defendants") on behalf of various classes.

After receiving permission from the Court to file a consolidated action on November 9, 2015, Plaintiffs filed their "Consolidated Amended Class Action Complaint" ("Consolidated Complaint") on December 15, 2015, therein defining their putative class as all persons and businesses in the United States that claim economic losses, or damages to their occupations, businesses, and/or property as a result of the Line 901 release.  Plaintiffs' Consolidated Complaint asserts eleven claims for relief.

This Motion to Dismiss focuses on six of Plaintiffs' claims and seeks this Court's dismissal of each one of them as required by law, a process that will greatly streamline the pleadings before the parties embark on discovery, class certification briefing, and other litigation tasks.  As detailed herein, each of these six claims should be dismissed under Rule 12(b)(6)[1] of the Federal Rules of Civil Procedure for failure to state a claim.  Generally stated, the reasons for dismissing these six claims are summarized as follows:

- Unfair Competition Law ("UCL") (Fourth Claim): Plaintiffs have not pled facts establishing a right to restitution, the only monetary remedy available under the UCL.

- Negligence Per Se (Fifth Claim): Plaintiffs are precluded from asserting this as a separate, standalone claim under California law.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

DOWNEY BRAND LLP

- Negligent Interference with Prospective Economic Advantage (Seventh Claim): Plaintiffs have not pled specific, existing economic relationships that are required to state this claim.

- Nuisance Per Se (Tenth Claim): Plaintiffs have failed to identify an express legislative declaration that the activity or circumstance at issue constitutes a nuisance.

- Public Nuisance (Sixth Claim) and Injunctive Relief (Eleventh Claim): The injunctive relief sought through these claims is expressly preempted by the federal Pipeline Safety Act. The relief is also conflict preempted by the Oil Pollution Act of 1990.

For these reasons, and others discussed more fully herein, Defendants respectfully request that the Court dismiss the Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh claims for relief.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Claims for relief are plausible only when the plaintiff alleges facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Factual allegations need not be detailed in most cases, but "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted).  Moreover, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  In other words, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

2

DOWNEY BRAND LLP

# III. ARGUMENT

**A. Plaintiffs Fail to State a UCL Claim Because They Have Not Alleged Facts Establishing a Right to Restitution or Disgorgement of Profits (Fourth Claim).**

Plaintiffs seek "awards of restitution and/or disgorgement" of profits in connection with their UCL claim. (Compl. at p. 60; *see also id.* ¶ 319.) Plaintiffs have not alleged facts that would entitle them to either form of relief; thus, their UCL claim should be dismissed pursuant to Rule 12(b)(6).

### 1. Plaintiffs Do Not Have a Requisite Ownership Interest Sufficient to Support a Claim for Restitution.

"While the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003) (citation omitted). Indeed, "restitution is the only monetary remedy expressly authorized by . . . [the UCL]." *Id.* at 1146. "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* An "order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest **from whom the property was taken**, that is, **to persons who had an ownership interest in the property or those claiming through that person**.'" *Id.* at 1149 (citations omitted) (emphasis added).

Plaintiffs have failed to allege facts suggesting that they or the putative class have any ownership interest in the profits of Plains Pipeline or its parent company. Plaintiffs do "not allege that [Defendants] took money or property directly from [Plaintiffs], nor do Plaintiffs "claim a vested interest in the money" they seek to recover. *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487 F. App'x 362, 363 (9th Cir. 2012). As a result, "[a]ny award that [Plaintiffs] would recover from [Defendants] would not be restitutionary as it would not replace any money or property that [Defendants] took *directly* from [Plaintiffs]." *Korea Supply*, 29 Cal. 4th at 1152 (italics added).

3

DOWNEY BRAND LLP

DOWNEY BRAND LLP

"At bottom, Plaintiffs are essentially seeking damages, not the return of money in which they have an identifiable property interest." *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003). Damages, however, "are simply not available under the UCL*." Ice Cream Distributors,* 487 F. App'x 362, 363 (9th Cir. 2012); *see also In re First All. Mortgage Co.*, 471 F.3d 977, 998 (9th Cir. 2006) (explaining that the "remedies provided under the UCL do not include the monetary relief"). Because Plaintiffs have not alleged a cognizable basis for restitutionary relief under the UCL, this claim should be dismissed.

### 2.  Plaintiffs Cannot Recover Non-Restitutionary Disgorgement of Profits in a Class Action under the UCL.

Plaintiffs also seek disgorgement of profits, which in light of the analysis above, would be non-restitutionary in nature. In *Korea Supply*, 29 Cal. 4th 1134, the California Supreme Court granted review to decide "whether disgorgement of profits allegedly obtained by means of an unfair business practice is an authorized remedy under the UCL where these profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest." *Id.* at 1140. The Court began its analysis by noting that "the remedy of nonrestitutionary disgorgement is not expressly authorized by the statute…." *Id.* at 1146. The Court also found that the language of the UCL "indicates that the Legislature intended to limit the available monetary remedies under the act." *Id.* at 1148. Consequently, the Court concluded that "disgorgement of such profits is not an authorized remedy in an individual action under the UCL." *Id.* at 1140.

While *Korea Supply* applied to individual actions brought under the UCL, its reasoning is equally controlling to UCL claims in a class action as confirmed by subsequent case law. For example, in *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005), the plaintiff sought to pursue a class action lawsuit alleging claims for violation of the unfair competition law. *Id.* at 455. Similar to here, the plaintiff

4

could not establish the requisite ownership interest.  In an attempt to work around this shortcoming, the plaintiff argued that "because he filed the lawsuit as a class action . . . he is entitled to pursue nonrestitutionary disgorgement of wrongfully obtained profits, because 'fluid recovery' of disgorgement is a remedy available in class actions."[2]  *Id.* at 459.  Analyzing the case law, the court recognized that *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 318 (2003) noted in "dictum" that "[i]t *may* be the case that under the UCL, a class action would allow for disgorgement into a fluid recovery fund."  *Madrid*, 130 Cal. App. 4th at 460 (italics added).  The court thus recognized that "[a]n open question exists as to the availability of nonrestitutionary disgorgement in a properly certified UCL class action."  *Id.*

After extensively analyzing the issue, the court ultimately rejected the plaintiff's argument, concluding that nonrestitutionary disgorgement into a fluid recovery fund is not allowed in the class action context.  Specifically, the court explained that "[t]he UCL is a substantive statute and the class action statute [Cal. Civ. Proc. Code § 384] is a procedural device for collectively litigating substantive claims."  *Id.* at 461.  In other words, "[f]luid recovery in class actions . . . is merely a method of paying out damages after they have been awarded."  *Id.* (internal citations omitted).  "Thus, the use of the class action vehicle to litigate a UCL claim does not expand the substantive remedies available."  *Id.*

Additional case law agrees.  For example, in *Feitelberg*, the plaintiff argued, notwithstanding the holding in *Korea Supply*, that "nonrestitutionary disgorgement is available in class actions."  *Feitelberg*, 134 Cal. App. 4th at 1017.  The court disagreed and concluded that *Korea Supply's* rationale controls "regardless of the nature of the UCL proceeding as a class action."  *Id.* at 1020.  Indeed, although

---

[2] "The term 'fluid recovery' refers to the application of the equitable doctrine of cy prés in the context of a modern class action."  *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1015 (2005) (internal citations omitted).

DOWNEY BRAND LLP

"there is another statute in play here, which specifically permits fluid recovery in class actions – section 384 of the Code of Civil Procedure," that "procedural provision does not override the substantive remedial provisions of the unfair competition law." *Id.* Simply stated, "[t]he tail does not wag the dog." *Id.*

Therefore, because Plaintiffs cannot recover non-restitutionary-disgorgement in this class action, the UCL claim should be dismissed.

## B. Negligence Per Se Is Not a Distinct Cause of Action (Fifth Claim).

Separate from their negligence claim, Plaintiffs assert a standalone cause of action for negligence per se. However, negligence per se is not a separate cause of action under California law. *See Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010). Instead, the "doctrine of negligence per se . . . creates an evidentiary presumption that affects the *standard of care* in a cause of action for negligence." *Lynam v. Nationstar Mortgage LLC*, No. 15-CV-00992-DMR, 2015 WL 3863195, at *4 (N.D. Cal. June 19, 2015) (emphasis in original). Because California recognizes negligence per se only as an evidentiary presumption, and not a separate cause of action, this standalone claim should be dismissed from the Consolidated Complaint. *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195-MWF AJWX, 2014 WL 4798890, at *14 (C.D. Cal. Sept. 26, 2014) (granting a motion to dismiss without leave to amend because negligence per se is not a separate and distinct claim for relief under California law).

## C. Plaintiffs Fail to State a Claim for Negligent Interference with Prospective Economic Advantage Because They Have Not Identified Any Specific, Pre-Existing Economic Relationships (Seventh Claim).

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to

6

DOWNEY BRAND LLP

1   lose in whole or in part the probable future economic benefit or advantage of the

2   relationship; (3) the defendant was negligent; and (4) such negligence caused

3   damage to plaintiff in that the relationship was actually interfered with or disrupted

4   and plaintiff lost in whole or in part the economic benefits or advantage reasonably

5   expected from the relationship." *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App.

6   4th 764, 786 (1997).

7        The Consolidated Complaint alleges that "Plaintiffs and the Class have

8   existing or prospective economic relationships with citizens of Santa Barbara

9   County, visitors to Santa Barbara County, and other individuals and organizations

10  doing business in and related to Santa Barbara County."  (Compl. at ¶ 340.)

11  Plaintiffs, however, fail to identify any specific, pre-existing customer relationships,

12  which is a prerequisite to state a claim for negligent interference with prospective

13  economic advantage under California law.  *See SunPower Corp. v. SolarCity Corp.*,

14  No. 12-CV-00694-LHK, 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012)

15  (dismissing claim for negligent interference with prospective economic advantage

16  because the plaintiff failed to identify "any specific customer relationship with

17  which [defendant] interfered").  Although Plaintiffs allege that they and the putative

18  class have economic relationships with Santa Barbara County citizens, visitors and

19  businesses, the loss of unspecified "as yet unknown" third parties is insufficient.

20  *See Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985).  "Without an *existing* relationship

21  with an identifiable" third party, any purported expectation is "at most a hope for an

22  economic relationship and a desire for future benefit."  *See Westside Ctr. Associates*

23  *v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996).  Simply put, the

24  alleged "conduct must have interfered with a specific existing relationship, not

25  simply with the formation of one in the future."  *Id.*  Accordingly, the seventh claim

26  for relief should be dismissed for failure to state a claim.

27  / / /

28

DOWNEY BRAND LLP

7

**D.   Plaintiffs Fail to State a Claim for Nuisance Per Se Because They Have Not Identified the Requisite Legislative Declaration and Premised this Claim on a Statute that Does Not Contain a Private Right of Action (Tenth Claim).**

A "nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance." *Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1206 (1996).  To "rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." *Id.* at 1207; *see also Jones v. Union Pac. R.R. Co.*, 79 Cal. App. 4th 1053, 1068 (2000) ("To support a claim of nuisance per se, plaintiffs must point to a statutory provision that declares [the] alleged conduct a nuisance.").

In their Consolidated Complaint, Plaintiffs allege Defendants discharged crude oil into the Pacific Ocean and onto the California coastline, and assert that the resulting contamination constitutes a continuing nuisance within the meaning of California Water Code Section 13050(m), and Section 3479 of California Civil Code.  (Compl. ¶ 373.)  Plaintiffs' reliance on these two provisions is misplaced.

Civil Code section 3479 generally describes "what constitutes a nuisance." The statute does not *expressly declare* that oil contamination constitutes a nuisance. Therefore, this statute cannot serve as the predicate for a nuisance per se claim.  *See Beck*, 44 Cal. App. 4th at 1206; *Jones*, 79 Cal. App. 4th at 1068.

The same is true of Water Code section 13050(m).  That statute provides that a nuisance means anything which effectively meets the definition of a private and public nuisance under Civil Code sections 3479 and 3480, and occurs during, or as a result of, the treatment or disposal of wastes.  Cal. Water Code § 13050(m). "Waste" is defined to include "sewage and any and all other waste substances, liquid, solid, gaseous, or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing

8

DOWNEY BRAND LLP

operation, including waste placed within containers of whatever nature prior to, and for purposes of, disposal." *Id.* at § 13050(d).  Accordingly, Water Code section 13050 also does not expressly declare oil contamination a nuisance.

California courts have reached the same conclusion.  In *Beck Development*, 44 Cal. App. 4th 1160, the plaintiff argued (and the trial court agreed) that oil contamination constitutes a nuisance pursuant to Water Code section 13050(m). The appellate court reversed, finding that assertion "unavailing because the Water Act does not declare the circumstances existing on the property to be a nuisance without the need for further inquiry." *Id.* at 1208.  The appellate court further explained that Water Code section 13050(m) "does not expressly declare anything to be a nuisance by its very existence; rather, it incorporates the general factual inquiry relating to and defining nuisances, limits its application to public nuisances, and establishes additional limiting factors." *Id.*  Accordingly, the appellate court concluded "that reliance upon the Water Act does not support a finding of nuisance per se." *Id.* at 1207.  This Court should find the same.

**E.  Plaintiffs' Claims for Public Nuisance and Permanent Injunction Are Preempted by Federal Law (Sixth and Eleventh Claims).**

**1.  Plaintiffs Seek Injunctive Relief Relating to Pipeline Safety and Operation that Is Expressly Preempted by the Pipeline Safety Act.**

Through their claims for public nuisance and permanent injunction, Plaintiffs seek an injunction that would order Defendants to operate Line 901 and other pipelines in California in accordance with unspecified "reasonable" safety standards.  (*See* Comp. ¶¶ 66-94, 337, 381, p. 60 ¶¶ B, G.)  As discussed below, this relief is expressly preempted by the Pipeline Safety Act.[3]

---

[3] Four Acts provide the framework for the federal pipeline safety program, collectively set forth at 49 U.S.C. § 60101 *et seq.*: (1) Natural Gas Pipeline Safety Act of 1968 (Pub. Law 90-481 Aug. 12, 1968)); (2) Federal Pipeline Safety Act consists of the Hazardous Liquid Pipeline Safety Act of 1979 (Pub. Law 96-129 (96th Cong. Nov. 30, 1979)); (3) Pipeline Inspection, Protection, Enforcement and Safety Act of 2006 (Pub. Law 109-468 (109th Cong. Dec. 29, 2006)); and (4)

9

State law is preempted to the extent Congress has expressly stated its intent to supersede state law. *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492, 2500-2501 (2012); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98, 103 S. Ct. 2890, 2899-2901 (1983).  To assess preemptive effect, courts "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."  *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 (1983).

In enacting the Pipeline Safety Act (hereinafter "PSA"), Congress gave the Department of Transportation (hereinafter "DOT') exclusive regulatory authority over interstate pipeline safety.[4]  49 U.S.C. § 60102.  Thus, the PSA leaves interstate hazardous liquid[5] pipelines "to exclusive Federal regulation and enforcement."  49 C.F.R., Part 195, App. A (Delineation Between Federal and State Jurisdiction -- Statement of Agency Policy and Interpretation).  Specifically, the PSA provides: "a State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."[6]  49 U.S.C. § 60104(c).  Importantly, this provision expressly applies to *any* standards that "may apply to

Pipeline Safety, Regulatory Certainty, and Job Creation Act of 2011 (Pub. Law 112-90 (112th Cong. Jan. 3, 2012)).  These Acts are collectively referred to herein as the "Pipeline Safety Act" or "PSA."

[4] In order to implement this interstate pipeline safety law, DOT has created comprehensive regulatory scheme regarding pipeline safety. *See* 49 C.F.R., Part 195.

[5] Crude oil is included within the definition of "hazardous liquid" for purposes of the PSA and its implementing regulations.  49 C.F.R. § 195.2.

[6] There are only two narrow exceptions.  First, a state authority may enter into a pipeline safety agreement with DOT that authorizes the state authority to participate in the oversight of interstate pipeline facilities, 49 U.S.C. § 60106(a).  Second, DOT may delegate to a state agent the authority to conduct inspections of pipeline operators and facilities to ensure compliance with federal safety standards, 49 U.S.C. § 60117(c).  Clearly neither of these exceptions applies to the twenty-five private individuals and businesses who filed this consolidated class action.

DOWNEY BRAND LLP

the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities." 49 U.S.C. § 60102(a)(2); *Southern Cal. Gas Co. v. Occupational Safety & Health Appeals Bd.*, 58 Cal. App. 4th 200, 204 (1997).

Both federal and California courts have confirmed that Congress intended to encompass the entire field of interstate pipeline safety. *Southern Cal. Gas*, 58 Cal. App. 4th at 204 (holding that "it was the 'clear and manifest purpose of Congress' to occupy the field" of interstate pipeline safety "in the broadest sense possible"); *ANR Pipeline Co. v. Iowa State Commerce Commission*, 828 F.2d 465, 469-470 (8th Cir. 1987) (explaining "Congress intended to preclude states from regulating *in any manner* whatsoever with respect to the safety of interstate transmission facilities," and in so doing, Congress has left "'*nothing* to the states with respect to regulation and control' of interstate pipeline safety") (emphasis added); *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 878 (9th Cir. 2006).

Line 901 is an interstate pipeline. (*See* Request for Judicial Notice.) Therefore, the pipeline is subject to the PSA and the exclusive regulatory authority of DOT. As a result, this Court cannot impose an injunction under California state law requiring Defendants to adopt or implement any pipeline safety standards and procedures proposed by Plaintiffs. *See City & County of San Francisco v. U.S. Dept. of Transportation*, 796 F.3d 993, 1004 (9th Cir. 2015) (PSA "commits the decision of what is 'reasonably required' to carry out a safety program to the expertise of the Agency," and a court has "no authority to compel agency action merely because the agency is not doing something we may think it should do").

In sum, Plaintiffs' requested injunctive relief relating to the operation of the Line 901 pipeline is expressly preempted. Preempted state law claims are subject to dismissal without leave to amend under Rule 12(b)(6). *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1103 (C.D. Cal. 2011) (finding leave to amend would be futile given the court's conclusion that the challenged claim was preempted by federal

law); *see Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend properly denied where additional fact allegations will not cure the defect).  Accordingly, this Court should dismiss with prejudice the request for injunctive relief relating to the operation of Line 901.

### 2. Plaintiffs Seek Injunctive Relief for Natural Resources Harm that Is Conflict Preempted by OPA.

Through their claims for public nuisance and permanent injunction, Plaintiffs also seek an injunction ordering Defendants to remedy various alleged injuries to natural resources (e.g. to restore fisheries) and to repair property values, reputations, and tourism.  (*See* Compl. at p. 60 ¶¶ B, G.)  Because this relief directly conflicts with the statutory scheme of the Oil Pollution Act of 1990 ("OPA"), this relief is also preempted by federal law.

#### a. OPA Grants Designated Governmental Natural Resources Trustees the Sole Authority and Discretion to Address Direct and Indirect Natural Resources Damages.

Plaintiffs seek to redress the same injuries defined under OPA as "natural resource" damage.  Under OPA, natural resource damage refers to injuries to wildlife and habitat, as well as injuries or damages resulting from lost ability to use those resources, which includes lost opportunities for use by the public (referred to as "natural resource services").  *See* 33 U.S.C. § 2701(20); 15 C.F.R. § 990.30.

The goal of OPA "is to make the environment and the public whole for injuries to natural resources and services resulting from an incident involving a discharge or substantial threat of a discharge of oil."  15 C.F.R. § 990.10.  To accomplish this goal, OPA and its implementing regulations provide a comprehensive process for designated "representative natural resource trustees" to restore injured public resources and services, and make the environment and the public whole for interim losses.  *See* 33 U.S.C. §§ 2702(b)(2)(A), 2706; 15 C.F.R. §§ 990.10, 990.30.  The natural resource trustees ("NRD Trustees") consist of government and Indian tribal representatives that own, manage, hold in trust, or

DOWNEY BRAND LLP

12

otherwise control the injured natural resources, and "act on behalf of the public." 33 U.S.C. § 2706(a), (b); 15 C.F.R. § 990.30.

OPA expressly limits the parties who may seek to remedy natural resources harm to these NRD Trustees. *See* 33 U.S.C. §§ 2702(b)(2)(A). Individuals and businesses (*i.e.*, members of the general public) do not have standing to assert claims for natural resource damages. 33 U.S.C. §§ 2702(b)(2)(A), 2706; *see generally In re Burbank Environmental Litigation*, 42 F. Supp. 2d 976, 981 (C.D. Cal. 1998) (dismissing private party claims for natural resource damages under substantially similar natural resource damages provision of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)).[7]

Under OPA, the NRD Trustees are required to assess the natural resources damages resulting from an oil spill, to develop a plan for restoration of injured natural resources and services, and to pursue implementation or funding of the plan by the responsible parties. 33 U.S.C. § 2706(c); 15 C.F.R. § 990.10. The statutory and regulatory requirements applicable to natural resources damage assessments and remedies are comprehensive. In brief, the applicable statutes and regulations provide an administrative process for involving interested parties in the assessment, which includes a range of procedures for identifying and evaluating injuries to natural resources and services, and a means for selecting restoration actions from a reasonable range of alternatives, including public review and comment on the draft and final restoration plans. 15 C.F.R. §§ 990.10, 990.55.

---

[7] Case law interpreting substantially similar CERCLA provisions is instructive in the OPA context. As is the case with OPA, under CERCLA only natural resource trustees acting on behalf of the federal government, the state, and certain Indian tribes may bring an action for damages to natural resources. 42 U.S.C. § 9607(f). In fact, these CERCLA regulations for assessing natural resource damages resulting from hazardous substances releases, codified at 43 C.F.R. part 11, were the precursor to the OPA regulations discussed in this motion. Thus, prior to February 5, 1996, the CERCLA regulations directly applied to natural resource damages resulting from oil discharges. 15 C.F.R. § 990.20(a).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

DOWNEY BRAND LLP

DOWNEY BRAND LLP

Once a restoration plan has been developed, the responsible parties either implement the plan or pay an estimate of the costs for implementation, measured by "(A) the cost of restoring, rehabilitating, replacing, or acquiring the equivalent of, the damaged natural resources; (B) the diminution in value of those natural resources pending restoration; plus (C) the reasonable cost of assessing those damages." 33 U.S.C. § 2706(d)(1); 15 C.F.R. § 990.62. Any sums recovered for natural resources damages are required under OPA to be retained by the NRD Trustees "in a revolving account, without further appropriation, for use only to reimburse or pay costs incurred by the trustee" to conduct the natural resources damages assessment, and to develop and implement the natural resources damages restoration plan referenced above. 33 U.S.C. § 2706(f). "Final authority to make determinations regarding injury and restoration rest *solely with the trustees*." 15 C.F.R. § 990.14(c)(4) (emphasis added). [8]

        b.   <u>Injunctive Relief Claims by Private Parties Directed at Natural Resources Restoration Conflict with OPA and Its Implementing Regulations.</u>

Although only the NRD Trustees have the authority to make determinations regarding natural resource damages and restoration, Plaintiffs attempt to usurp that Congressionally-mandated role through their state law claims for public nuisance and injunctive relief. However, state law claims are preempted to the extent they conflict with federal statutes, regulations, or the Constitution. *Mutual Pharmaceutical Co., Inc. v. Bartlett*, ___ U.S. ___, 133 S. Ct. 2466, 2473 (2013); *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492, 2501 (2012). Conflict

---

[8] Notably, this process is well underway regarding the Line 901 release. The NRD Trustees for the Line 901 release are: (i) California Department of Fish and Wildlife; (ii) California State Lands Commission; (iii) California Department of Parks and Recreation; (iv) University of California; (v) U.S. Fish and Wildlife Service; (vi) National Park Service; (vii) Bureau of Land Management; and (viii) National Oceanic and Atmospheric Administration ("NOAA") (collectively, "NRD Trustees").

14

preemption is found where it is "impossible for a private party to comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S., 280, 287, 115 S. Ct. 1483, 1487 (1995) (internal quotes omitted); *Geier v. American Honda Motor Co. Inc.*, 529 U.S. 861, 873, 120 S. Ct. 1913, 1921 (2000).

The Supreme Court has observed that "conflict is imminent whenever two separate remedies are brought to bear on the same activities." *Wisconsin Dept. of Industry v. Gould, Inc.*, 475 U.S. 282, 286, 106 S. Ct. 1057 (1986); *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1185, 1226-27 (D.N.M. 2004) (noting that a collision between state tort claims and a federal statutory and regulatory scheme would appear "inevitable" if state tort claims could be used to remedy natural resource damages regardless of an ongoing administrative remedy because "[r]egardless of the type of tort suit brought by plaintiffs, the defendant is required by federal law . . . to comply with the methodology provided in the [agency's decision]"); *see also Motor Coach Employees v. Lockridge*, 403 U.S. 274, 287 (1971) ("Conflict in technique can be fully as disruptive to the system [of centralized administration of specially designed procedures] Congress erected as conflict in overt policy.").

*BP America Inc. v. Chustz*, 33 F. Supp.3d 676 (M.D. La. 2014) is instructive. That case, which involved the major Deepwater Horizon spill off the Gulf Coast, involved numerous federal and state agencies working on spill response activities, with the final, regulatory decision-making authority vested in the Federal On-Scene Coordinator ("FOSC"). *Id.* at 679-680. In the course of that work, the FOSC issued a decision regarding an anchor and vessel ramp. A Louisiana state agency took issue with that decision, and issued a cease and desist order to BP. The order directed BP to undertake various activities beyond what was directed by the FOSC, including applying for a Coastal Use Permit to remove the offending anchor and

15

ramp and to provide a recovery plan for all abandoned anchors and ramps. *Id.* at 680-681. The court found that this state order was preempted under principles of conflict preemption "as these actions would 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' through the CWA [Clean Water Act] and the OPA." *Id.* at 696. The court observed that the state order would interfere with the authority delegated to the FOSC to direct all federal, state, and private actions to remove a substantial spill. *Id.* at 695.

As was the case in *BP America*, allowing Plaintiffs to maintain injunctive relief claims to redress natural resource damage would frustrate the Congressional goal in enacting OPA to "make the environment and the public whole for injuries to natural resources and services resulting from an incident of involving . . . a discharge of oil." 15 C.F.R. § 990.10. Congress provided this discretion to the NRD Trustees, and it is their charge alone to exercise that discretion here. The relief sought by Plaintiffs through their state law claims would inappropriately disrupt OPA's clear delineation of authority to the NRD Trustees to coordinate, assess, and remedy natural resources harm.

In addition, the injunctive relief sought by Plaintiffs would require this Court to make judgment calls regarding the appropriate actions for addressing natural resources harm. OPA requires that these technically and scientifically complex judgments be made by the NRD Trustees in compliance with a comprehensive regulatory process, which includes public comment, compliance with the National Contingency Plan, compliance with the National Environmental Policy Act and the Council on Environmental Quality Regulations, and detailed assessment procedures. 15 C.F.R. §§ 990.14, 990.21, 990.23, 990.27, 990.40-990.66. Plaintiffs seek to circumvent this process, including the rights of the public to participate in the decision-making process, and seek to substitute their own judgment for the reasoned judgment of the NRD Trustees.

/ / /

DOWNEY BRAND LLP

16

Moreover, if private parties could obtain state law injunctions requiring natural resource injury assessment and response, Defendants could be potentially subject to numerous injunctions that may impose varied and potentially conflicting requirements, in addition to (and, again, almost certainly in conflict with) the requirements imposed by the NRD Trustees.  The NRD Trustees must be able to comply with their duties under OPA without the interference of potentially conflicting requirements and judgments relating to natural resources damages imposed by courts in private suits.  These conflicts further underscore the reason Congress precluded individuals and businesses from seeking to remedy public natural resources-related harms in OPA, and further demonstrate that Plaintiffs' Sixth and Eleventh Claims are barred under conflict preemption principles.

In sum, Plaintiffs are not entitled to injunctive relief directed at natural resource injuries, as doing so would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as embodied in OPA.  For these reasons, Plaintiffs' Sixth and Eleventh Claims, including the entirety of the remedy sought, are preempted and should be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss the Fourth, Fifth, Sixth, Seventh, Tenth, and Eleventh claims for relief for failure to state a claim upon which relief can be granted.

DATED:  December 16, 2015          DOWNEY BRAND LLP


By: _/s/ William R. Warne_____
WILLIAM R. WARNE
Attorney for Defendants
PLAINS ALL AMERICAN
PIPELINE, L.P., and PLAINS
PIPELINE, L.P

DOWNEY BRAND LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS