DOWNEY BRAND LLP
STEVEN H. GOLDBERG (Bar No. 140039)
WILLIAM R. WARNE (Bar No. 141280)
MEGHAN M. BAKER (Bar No. 243765)
OLIVIA M. WRIGHT (Bar No. 240200)
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
sgoldberg@downeybrand.com
bwarne@downeybrand.com
mbaker@downeybrand.com
owright@downeybrand.com

AHMAD ZAVITSANOS ANAIPAKOS ALAVI
& MENSING PC
JOHN ZAVITSANOS (admitted pro hac vice)
ELIZABETH PANNIL FLETCHER (admitted pro
hac vice)
1221 McKinney, Suite 3460
Houston, TX 77010
Tel: 713.655.1101
Fax: 713.655.0062
jzavisanos@azalaw.com
efletcher@azalaw.com

Attorneys for Defendants
PLAINS ALL AMERICAN PIPELINE, L.P.,
PLAINS PIPELINE, L.P.

DOWNEY BRAND LLP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACE CHEVEREZ, individually and on behalf of others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership<br><br>                Defendant. | Case No. 2:15-cv-04113-PSG-JEM<br><br>[Consolidated with Case Nos. 2:15-cv-04440-PSG-JEM, 2:15-cv-04573-PSG-JEM, 2:15-cv-04759-PSG-JEM, 2:15-cv-04989-PSG-JEM, 2:15-cv-05118-PSG-JEM]<br><br>**OPPOSITION TO PLAINTIFFS' RULE 23 MOTION**<br><br>Date:      February 29, 2016<br>Time:      1:30 p.m.<br>Judge:     Hon. Philip S. Gutierrez<br>Courtroom: 880 |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................1

II.   BACKGROUND ..................................................................................3

A.   Factual Background ..................................................................3

1.   Claims Process..............................................................5

2.   Advertising the Claims Process.....................................7

B.   Meet and Confer Efforts ..........................................................8

III.   LEGAL STANDARD..........................................................................11

A.   Only Serious Misconduct Justifies Restraints on Speech Under Rule 23 ....................................................................................11

B.   Speech-Limiting Rule 23 Orders Must Be Narrowly Tailored and Based on Specific Factual Findings .........................................11

IV.   ARGUMENT.......................................................................................12

A.   Plains Pipeline's Efforts Are Mandated by OPA and OSPRA...........12

B.   Plains Pipeline's Communications Are Not Misleading, Coercive, or Otherwise Improper ......................................................13

1.   Gandall Voluntarily Presented a Claim to Plains Pipeline on June 1, 2015 ...........................................................13

2.   OPA/OSPRA Advertisements Are Not Misleading or Coercive Simply Because They Do Not Advertise the Class Action..............................................................15

3.   OPA Settlement Agreements Are Not "Misleading" or "Coercive" Simply Because They Include A General Release ......................................................................16

a.   OPA Permits a General Release in Exchange for Payment of Full and Final Damages ..........................16

b.   Plaintiffs' Cited Authorities Are Insufficient to Establish that Plains Pipeline's Communications are Misleading or Coercive, and, Therefore, Justify Invalidating the Releases ...............................................17

C.   Invalidating the Releases Obtained to Date Is a Severe and Drastic Remedy that Is Neither Warranted Nor Appropriate ...........19

1.   Plaintiffs' Six-Month Delay in Filing the Instant Motion Cuts against Their Claims for Relief ..................................19

2.   Plaintiffs' Requested Relief for Nullification and Disclosure of the Releases Is Not Supported by the Record and Requires Individualized Inquiries..........................20

V.   CONCLUSION ..................................................................................24

i

DOWNEY BRAND LLP

# TABLE OF AUTHORITIES

**Page**

**Federal Court Cases**

*Behalf of N.L.R.B. v. California Pac. Med. Ctr.,*
   991 F.2d 536 (9th Cir. 1993) ..................................................................20

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.,*
   51 F.3d 235 (11th Cir. 1995) .................................................................12

*Camp v. Alexander,*
   300 F.R.D. 617 (N.D. Cal. 2014) ...........................................................17

*County of Santa Clara v. Astra USA, Inc.,*
   No. C 05-03740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ...............22

*Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.,*
   214 F.R.D. 696 (S.D. Ala. 2003) ............................................................18

*Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.,*
   59 F.3d 764 (8th Cir. 1995) ...................................................................11

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981) .................................................................................11

*In re Oil Spill by the Oil Rig* .......................................................... 16, 17

*Jenifer v. Delaware Solid Waste Auth.,*
   No. CIV.A. 98-270 MMS, 1999 WL 117762 (D. Del. Feb. 25, 1999) ...............15

*Johnson v. Colonial Pipeline Co.,*
   830 F. Supp. 309 (E.D. Va. 1993) ................................................. 12, 13, 16

*Kleiner v. First Nat. Bank of Atlanta,*
   751 F.2d 1193 (11th Cir. 1985) ..............................................................18

*Kobell v. Suburban Lines, Inc.,*
   731 F.2d 1076 (3rd Cir.1984) .................................................................20

*Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
   762 F.2d 1374 (9th Cir. 1985) ................................................................20

*Quezada v. Schneider Logistics Transloading & Distribution,*
   No. CV 12-2188 CAS DTBX, 2013 WL 1296761 (C.D. Cal. Mar. 25,
   2013).....................................................................................................18

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.,*
   No. 99 CIV. 4567(AGS), 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001).......20, 21

*Slavkov v. Fast Water Heater Partners I, LP,*
   No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ...............22

*The Court in Friedman v. Intervet Inc.,*
   730 F. Supp. 2d 758 (N. D. Ohio 2010).....................................................21

**Federal Statutory Authorities**

33 U.S.C. § 2702(a) .................................................................................. 4

33 U.S.C. § 2714(b)(1) ......................................................................15, 19

Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701-2761 ...............................1, 12, 16

**Federal Rules and Regulations**

Fed. R. Civ. P. 23(d) ...........................................................................11, 19

**Legislative Materials**

H.R.Rep. No. 242, 101st Cong., 1st Sess., pt. 2, at 66 (1989)) ...............12

**Additional Authorities**

Manual for Complex Litigation, Second ...............................................11

DOWNEY BRAND LLP

ii

**I. INTRODUCTION**

Plaintiffs' Motion seeks not only to prohibit ongoing actions on the part of Plains Pipeline, it seeks to undo all of Plains' significant efforts (between the time of the Line 901 release and the filing of the Operative Complaint) to fulfill their obligations as the "Responsible Party" under the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701-2761.  In doing so, Plaintiffs ask this Court to convert Plains' statutorily mandated claims administration process into something else altogether. Both United States and California law require Plains to establish, advertise, and administer a claims process to help people and businesses injured by an oil release—essentially the same group as the current putative class—to recover compensation without the time and expense of litigation.  Nothing in Plaintiffs' motion suggests that Plains has been misleading as to the claims administration process; rather, Plaintiffs' complaint is that Plains has not advertised the class action.  But, this Court has an obligation to ensure that not only is the class action administered properly, but that the mandates of the Oil Pollution Act are implemented as well.[1]  Plaintiffs' request thwarts that implementation by asking the Court to prohibit Plains from effectively advertising and settling claims.

Additionally, by any standard, the relief Plaintiffs seek is extraordinary and overbroad, but it is particularly so under the circumstances of this case, where there has been no wrongdoing *and* where Plaintiffs themselves participated in and encouraged the delay which preceded their now belated Rule 23 Motion.  Despite Plaintiffs' attempt to suppress the details of what actually occurred among the parties between June and December of 2015, those suppressed facts are critical to this Court's review.  Not only did Plaintiffs allow nearly six months to pass before

---

[1] "The Court has the responsibility to ensure that the mandates of OPA are implemented. A responsible party's use of a third party to fulfill its statutory obligations is not only consistent with the intent of OPA but also highly commendable if those claims can be resolved even more efficiently and fairly." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL NO. 2179, 2011 WL 323866, at *4 (E.D. La. Feb. 2, 2011).

DOWNEY BRAND LLP

filing their Rule 23 Motion on December 16, 2015, they allowed this time to pass while knowing that Plains disagreed with their assessment of the law and that it was continuing to process claims in a manner with which Plaintiffs had taken issue.

Moreover, and perhaps more importantly, Plaintiffs fail to reveal to this Court that once Plaintiffs raised the notice issue with Plains by letter dated July 6, 2015, Plains Pipeline et and conferred in good faith for several weeks, and that, by August 17, 2015, Plains proposed a solution to the impasse: Plains would agree to notify claimants of the existence of the class actions so long as Plaintiffs' counsel, who Plains Pipeline argued had prematurely filed their claims, would agree to notify the putative class members with whom they were communicating of the existence of Plains Pipeline's streamlined claims process.[2]

But Plaintiffs' gamesmanship in this Motion does not stop there. The bare facts of Gandall's declaration—the sole basis for Plaintiffs' allegation of actual "improper" conduct by Plains—are plainly disproven by the attached documents and declarations from Worley Catastrophe Response, Plains' third-party claim administrator. As the evidence proves, Plains' communications with Gandall were initiated at *Gandall's* request after Gandall himself began the process of filing a claim. Once Gandall indicated that he was represented by counsel, Worley followed basic procedure to proceed with claims administration with a represented claimant. Plains has only used neutral public advertisements and neutral direct communication within the statutory claims administration process, and Plaintiffs never so much as allege otherwise.

Plaintiffs rely upon cases that have no relevance to Plains' good faith conduct

---

[2] Plaintiffs recast these efforts in their Motion by stating, "over several months, counsel for the parties exchanged proposed stipulations to govern these communications," creating the impression that Plaintiffs were dealing with Plains Pipeline's communications exclusively and, further, that Plains Pipeline's ultimate refusal to curb its own behavior caused them to file the Motion. They do this without revealing that in August Plains Pipeline offered to provide notice so long as Plaintiffs would provide notice to the putative class members of the existence of the very process Congress had set up to circumvent the need for those injured by oil spills to resort to the inefficient and time-consuming class action process.

DOWNEY BRAND LLP

throughout these proceedings.  Indeed, in contrast to those cases relied upon by Plaintiffs, Plains Pipeline has used only neutral and public advertisements.  Unlike the circumstances in Plaintiffs' cited cases, Plains has not secretly and hastily initiated direct communications by cold-calling putative class members, claiming that the claims process is the only means whereby a person or business affected by the spill can recover compensation for their losses; Plains has never stated the litigation will take years and the claimants will be forced to prove their individual damages to a much higher degree of certainty than the more lenient claims process; and Plains has not told putative class members that even if they are entitled to damages, the  plaintiffs' attorneys will receive a large percentage of any recovery.

For these reasons and others, as set forth herein, there is nothing for this Court to prohibit prospectively, and the retroactive relief requested by Plaintiffs is not supported by any evidence which shows any misconduct by Plains Pipeline, much less any evidence which meets the high standard provided under the case law of actual or threatened misconduct of a serious nature.

## II.  BACKGROUND

### A.    Factual Background

On May 19, 2015, Plains Pipeline became aware of a crude oil release from its 24-inch pipeline known as Line 901, from Las Flores to Gaviota, located in Santa Barbara County, California.  The accidental release allowed crude oil to escape from the pipeline, a portion of which flowed along a culvert leading to the Pacific Ocean and then flowing toward Refugio State Beach.  An estimated 2,934 barrels of oil was released from the pipeline, and a small portion reached the Pacific Ocean.  (ECF No. 51-2, Declaration of James L. Jacoby ("Jacoby Decl.") at ¶3.)[3]

Congress enacted OPA to impose liability for "removal costs and damages" resulting from oil spills like the Line 901 spill.  *See* 33 U.S.C. § 2702(a).  To

---

[3] The Declaration of James L. Jacoby filed in support of Motion to Stay, ECF No. 51-2, is incorporated herein in support of this Opposition.

DOWNEY BRAND LLP

facilitate efficient recovery and accomplish congressional goals, OPA provides that "all claims for removal costs or damages shall be presented first to the responsible party . . . ." *Id.* at § 2713(a).

As the designated "Responsible Party" under OPA, Plains Pipeline immediately began working with Worley Catastrophe Response ("Worley") to establish the statutorily mandated claims process.  Worley is an experienced claims management and administration company that has responded to and worked on projects of varying sizes and complexity throughout the United States.  (Declaration of Kile Anderson ("Anderson Decl.") ¶ 2; Jacoby Decl. ¶ 7.)  Worley delivers centralized claims management and third-party claims administrative programs for insurance companies, private and public corporations, and municipal/governmental bodies.  (Anderson Decl. ¶2.)  Worley is one of the leading claims administrators involved in environmental related services and, therefore, is constantly working to improve its procedures and systems, and provide important and adequate disclosure to claimants.  (*Id.* at ¶ 2.)  In fact, the particular individuals managing the Line 901 claims process each have over seventeen (17) years' experience working with Worley and have both been involved in numerous claims administration programs under the Oil Pollution Act.  (Anderson Decl. ¶ 2; Declaration of Don Cannon ("Cannon Decl.") ¶ 2.)

### 1.    *Claims Process*

Within one hour of learning of the Line 901 release, Worley, working with Plains Pipeline, established a telephone hotline open 24-hours a day, seven days a week, to allow individuals and businesses affected by the Line 901 release to present claims.  (Anderson Decl. ¶ 5.)  Worley received all calls made to this hotline.  (*Id.*)  Plains Pipeline also created an informational website accessible at www.plainsline901response.com to allow individuals and businesses to receive up to date information about the incident and about making a claim.  (*Id.* ¶ 6.)  The website informs potential claimants that they can initiate the claims process by

4

DOWNEY BRAND LLP

telephone via the claims hotline or by completing a form on the website.  (*Id.*)  The claim initiation form on the website requests that the claimant provide his/her name, address, telephone numbers, and email address; to indicate whether the claimant previously submitted a claim and, if so, the claims number; to check a box regarding the type of claim; and to provide a brief description of the claim.  (*Id.*)

When a person calls the hotline, Worley's general procedure is for its representatives to identify themselves as claims representatives for Plains Pipeline, ask the claimant for his or her name and contact information, and immediately inquire whether the claimant is represented by counsel.  (*Id.* ¶ 9.)  If the claimant is represented by counsel, Worley representatives ask the claimant to provide the contact information for his/her attorney and a letter of representation.  (*Id.*)  No further information is requested.  (*Id.*)  If the claimant is not represented, Worley representatives ask for a brief description of the claim.  (*Id.*)  Worley representatives then inform the claimant that an adjuster will be assigned to his/her claim and will be in touch as soon as possible.  (*Id.*)  Similarly, once a claim is initiated online through the website, the claim is assigned to a Worley claims adjuster who will contact the claimant to investigate and evaluate the claim.  (*Id.* ¶ 10.)

Worley does not "cold-call" any individuals and businesses suspected to have been affected by the Line 901 release.  (Anderson Decl. ¶ 12; Cannon Decl. ¶ 8.)  Worley representatives only contact those persons who have already initiated the claims process through one of the methods described above.  (*Id.*)  Moreover, the decision to present a claim is strictly voluntary.  (Anderson Decl. ¶ 18.)

Once assigned to a claim, a Worley claims adjuster contacts the claimant, identifies himself as a claims representative for Plains Pipeline and, again, immediately asks whether the claimant is represented by counsel.  (*Id.* ¶ 10.)  If the claimant is represented by counsel, Worley's general procedure is to ask the claimant to provide the contact information for his/her attorney and a letter of

5

representation.  (*Id.*)  In those circumstances, Worley does not ask the claimant for any further information regarding the claim.  (*Id.*)  If the claimant is not represented by counsel, Worley proceeds to investigate and evaluate the claim.  (*Id.*)  In order to evaluate a claim, the claims adjuster asks the claimant for documentation to support or otherwise substantiate the claim.  (*Id.* ¶ 13.)  The type of documentation requested varies depending on the type of claim.  (*Id.*)  However, regardless of the type of claim and the documents requested, Worley makes it a point to not deny any claim until the claimant has an opportunity to submit whatever documentation he/she feels may help to substantiate the claim.  (*Id.* ¶ 16.)

Once a claimant submits the requested documentation and substantiates the claim, he/she will be offered either an interim payment or a full and final payment.  (*Id.* ¶ 21.)  For example, if a loss is ongoing and the claimant is in need of immediate compensation (e.g. to assist with cash flow and ongoing expenses), the claims adjuster will arrange for Plains Pipeline to provide an interim payment, representing less than the full amount to which the claimant may ultimately be entitled.  (*Id.*)  The claimant will *not* be asked to sign a settlement agreement or release in order to receive an interim payment, but will be asked to sign a document acknowledging receipt of the interim funds.  (*Id.*)

On the other hand, if a claimant has only suffered a one-time loss, or is aware of his/her full and final damages, Plains will issue payment for substantiated claims and will ask the claimant to sign a settlement and release.  (*Id.* ¶ 25.)  For example, an out-of-town family who paid to reserve a campsite at Refugio beach and who had to cancel their trip after the campsite was closed, did not and would not be expected to incur any additional out-of-pocket losses as a result of the Line 901 release.  (*Id.* ¶ 22.)  As another example, a restaurant that experienced a decline in its profits for two months after the incident while some beaches were closed, but then returned to normal after the beaches reopened, did not and would not be expected to incur any future out-of-pocket losses either.  (*Id.*)

DOWNEY BRAND LLP

If during the claims process, a claimant asks about litigation against Plains Pipeline regarding the Line 901 release, Worley confirms that class actions are currently pending against Plains Pipeline in federal court.  (*Id.* ¶ 30.)  Worley tells claimants to contact a lawyer if they have any questions or concerns about the claims administration process or the litigation.  (*Id.*)

### 2.   *Advertising the Claims Process*

After establishing the claims process, Plains Pipeline began advertising, as required by OPA and the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("OSPRA"), the procedures by which claims may be presented and resolved.  In an effort to comply with OPA and OSPRA and in furtherance of its commitment to resolving all valid claims, Plains Pipeline has extensively advertised the availability of the statutory claims process. (Jacoby Decl. ¶ 9.)  Advertising has appeared in local print publications such as the Santa Barbara News-Press, the Santa Barbara Independent, the Santa Barbara Sentinel, and Montecito.  (*Id.*)  Advertising has also appeared in electronic newsletters and online, including on community-based websites.  (*Id.*)

Advertisements of the OPA/OSPRA claims administration process are not "misleading" or "coercive" simply because they do not also market Plaintiffs' counsel's class action litigation.

Rather, the advertisements publicize the claims administration process—as they are required to do by statute.  The advertisements explain that every individual and business has the opportunity to file a claim for losses, give information on how to file a claim, and explain that "Plains is committed to making the appropriate financial reparations for any verified damages or losses directly caused by the spill."  (Warne Decl. ¶ 22, Ex. L.)  The advertisements conclude by providing information on how to file a claim, if claimants voluntarily choose to do so.  (*Id.*)

### 3.   *Operative Complaint and Settlement Agreement/Release*

Plaintiffs' Operative Complaint was filed on December 15, 2015.  See

7

1  Complaint [Dkt. No. 50]. Immediately thereafter, Plains Pipeline began including

2  the following language in its settlement documents with all claimants (the "Release

3  Disclosure Language"):

> Payee is further informed and understands that a variety of law firms
> filed class actions in the Central District of California regarding the
> Event.  On November 9, 2015, the federal district court gave these
> firms and the plaintiffs they represent approval to file an amended and
> consolidated putative class action complaint. On December 15, 2015,
> plaintiffs did so.  The name of this consolidated complaint is Stace
> Cheverez v. Plains All American Pipeline, L.P., et al. It is identified
> within the Central District of California as Case No. 2:15-cv-04113-
> PSG-JEM.  The December 15, 2015, consolidated complaint generally
> defines the proposed class as those persons or business in the United
> States that claim economic losses, or damages to their occupations,
> businesses, and/or property due to the Event. Payee is informed and
> understands that Payee may be eligible to participate in the
> consolidated class action, but has instead chosen to enter into this
> Agreement.

12  (Warne Decl. ¶ 20.)  The Release Disclosure Language accurately describes the

13  Operative Complaint.

14  **B.**    **Meet and Confer Efforts**

15      Plaintiffs and Plains Pipeline's "meet and confer" efforts have been extensive

16  as more fully detailed in the Declaration of William R. Warne filed simultaneously

17  herewith. On July 6, 2015, Robert J. Nelson of Lieff Cabraser Heimann &

18  Bernstein, who at that time was the attorney in three of the five lawsuits that had

19  been filed, sent a letter to counsel for Plains Pipeline.  The letter requested, on

20  behalf of the Plaintiffs on a going forward basis, that any communications Plains

21  Pipeline has with potential claimants include both the existence of the lawsuits as

22  well as the contact information of counsel, which was contact information only for

23  Mr. Nelson and his co-counsel even though there were two lawsuits on file at the

24  time in which Mr. Nelson did not represent the plaintiffs.[4]  (Warne Decl. ¶ 4.)

25  Counsel also requested that Plains Pipeline send a tailored message to persons from

26  whom it had obtained releases explaining that the lawsuits had been filed and that

27

28  [4] Thereafter, two additional class action lawsuits were filed: one on July 7, 2015 and another on September 4, 2015.

DOWNEY BRAND LLP

OPPOSITION TO PLAINTIFFS' RULE 23 MOTION

supplemental relief may be available through them.

On July 8, 2015, Mr. Warne telephoned Mr. Nelson regarding his July 6, 2015, letter to discuss the research that counsel for Plains Pipeline had conducted and its duties and responsibilities under OPA.  In this call, Mr. Warne expressed concern that the case law cited by Mr. Nelson did not apply to the federally mandated statutory claims process required by OPA, in part because the OPA process requires communications between the Responsible Party and claimants in order to process their claims.

Communications continued, and on August 17, 2015, in a good faith attempt to resolve their differences, Plains Pipeline proposed a compromise:  Plains Pipeline would agree to include a reference to the existence of  class actions in its settlement agreements so long as Mr. Nelson and the other Plaintiffs' counsel would agree to inform in writing each of the individuals who contact them about claims relating to the Line 901 release that Plains Pipeline is presently engaged in a congressionally mandated and expedited process under OPA to pay off such claims without the need for litigation.  (Warne Decl. ¶ 9.)

In the ensuing weeks and months, Mr. Warne had numerous telephone calls with Mr. Nelson about Plains Pipeline's reciprocal notice proposal, each time inquiring into Mr. Nelson's efforts to navigate the issue with the numerous plaintiffs' counsel with whom he was working and whether he could provide a written proposal acceptable to his group.  Those calls were followed by an exchange of emails on September 20 and 21, 2015, wherein Mr. Warne again attempted to move the ball forward by reiterating Plains Pipeline's willingness to compromise, an effort which was precipitated in part by trying to resolve the potential conflict between a Responsible Party's obligations under OPA and class action practice in a case still in the very early stages.  (Warne Decl. ¶ 12.) Specifically, on September 21, 2015, Mr. Warne sent an email to Mr. Nelson again confirming that "we remain willing to talk about the communication with OPA

9

claimants and putative class plaintiffs.  We think the Court would appreciate our suggested approach – that you tell your client's and putative class plaintiffs about OPA's claim procedure and Plains' involvement in paying claims and that Plains, in turn informs the claimants of your existence and the pending class action suits."  Roughly 15 minutes later, Mr. Nelson replied by email, writing, "[y]es, I do think we should try to negotiate the details of an agreement re:  communications with putative class members."  (*Id*.)

Thereafter, Mr. Nelson and Mr. Warne continued to discuss their efforts in this regard.  The parties also attended a case management conference with the court on the next day, November 9, 2015, and Mr. Warne discussed the proposal he had provided to Mr. Nelson the day before and asked that Mr. Nelson provide any additional input so that they could finalize their negotiations. (*Id.* ¶ 17.)

Ultimately, Plaintiffs did not agree to Mr. Warne's November 8 proposal and failed to provide any counter-proposal.[5]

### III.  LEGAL STANDARD

### A.    <u>Only Serious Misconduct Justifies Restraints on Speech Under Rule 23.</u>

Before a class is certified, counsel for both plaintiffs and defendants may communicate *ex parte* with putative class members.  In certain circumstances, however, such as where the communications are misleading or coercive, the court may impose narrow limits on such communications under Federal Rule of Civil Procedure 23(d).  "[A] district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by <u>actual or threatened misconduct of a serious nature</u>." *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (citing Manual for Complex Litigation, Second § 30.24 at 232 (1985) (emphasis added).  Indeed, "the mere possibility of abuses does not

---

[5] Given that the parties communications began on July 6, 2015 (and that Plains Pipeline continued to publicly advertise during that period), it would appear that had Mr. Nelson genuinely believed that Plains Pipeline's advertisements were misleading, this issue would have been brought to the attention of the Court much sooner.  It is almost as if Plaintiffs strategically waited, hoping the passage of time would give them a stronger position.

DOWNEY BRAND LLP

justify routine adoption of a communications ban." *Gulf Oil Co.*, 452 U.S. at 104.

**B.    Speech-Limiting Rule 23 Orders Must Be Narrowly Tailored and Based on Specific Factual Findings.**

An "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). "In addition, such a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.

## IV.  ARGUMENT

Plaintiffs have wholly failed to carry their burden of presenting evidence to establish a serious abuse warranting this Court's interference with Plains Pipeline's efforts to process and resolve claims pursuant to Congress' intent by and through the statutorily mandated OPA claims process.  Consequently, and for the reasons set forth below, Plaintiffs' Motion should be denied in its entirety.

**A.    Plains Pipeline's Efforts Are Mandated by OPA and OSPRA.**

"The purpose of the claim presentation procedure is to promote settlement and avoid litigation." *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993).  Indeed, "Congress believed that lawsuits against parties are appropriate only 'where attempts to reach a settlement with the responsible party . . . were unsuccessful.'" *Id.* (citing H.R.Rep. No. 242, 101st Cong., 1st Sess., pt. 2, at 66 (1989)).  Congress "therefore mandated a 90–day period in which the parties would attempt to resolve monetary disputes arising from oil spills **prior to** commencing litigation." *Id.* at 310-11 (emphasis added); *see also* 135 Cong.Rec. at H 7962, 7965 (statements of Rep. Hammerschmidt and Rep. Lent); *see also Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238 (11th Cir. 1995).

With respect to the Line 901 release, the OPA claims process is working as it

11

DOWNEY BRAND LLP

1   should.  As of January 14, 2016, Plains Pipeline had received 432 claims.  Of those

2   claims, 179 have been settled, and 184 are still in the process of evaluation.

3   (Anderson Decl. ¶ ¶ 27 and 29.)  Thus, unlike the hundreds of thousands of claims

4   made in connection with the Deepwater Horizon release, the universe of claims

5   related to the Line 901 release is relatively limited.  Moreover, Plains Pipeline's

6   experience has been that the majority of the claims reflect a limited or one-time

7   only out-of-pocket loss, whether those losses are for cancelled campground

8   reservations, a decline in restaurant profits for a limited time while some beaches

9   were closed, or other claims that fall within a one-time only loss category.[6]

10   (Anderson Decl. ¶22.)  Because of this, Plains has been able to resolve the vast

11   majority of claims for a full and final payment, thus fulfilling the purpose and intent

12   of OPA to "promote settlement" and "avoid costly and cumbersome litigation."  *See*

13   *Johnson*, 830 F. Supp. at 311.  Plains Pipeline's efforts, which are fair and open, are

14   mandated by OPA, and Plaintiffs are not entitled to retroactive relief to undo those

15   efforts without a clear record and specific findings, which as discussed below, they

16   have not provided.

17   **B.   Plains Pipeline's Communications Are Not Misleading, Coercive, or
       Otherwise Improper.**

18

19   Plaintiffs claim Plains' "phone calls, letters, advertisements and other

20   communications are improper and misleading in many respects" because Plains

21   allegedly: (1) cold-called Plaintiff Mike Gandall in an effort to make him submit a

22   claim; (2) published "misleading" advertisements; and (3) obtained "improper"

23   general releases from certain claimants.  (*See* Mot. at 11.)  Plaintiffs hope to create

24   smoke where there is no fire. These contentions are not supported by the facts or

25   the law.

26

27

28

[6] Plains Pipeline believes that the majority of claims fall into this category because the cleanup occurred fairly quickly over an approximate two month period.

DOWNEY BRAND LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOWNEY BRAND LLP

### 1.    *Gandall Voluntarily Presented a Claim to Plains Pipeline on June 1, 2015.*

Plaintiffs–evidently unable to find any additional named Plaintiffs or putative class members to support their contentions–rely exclusively on the declaration of Mike Gandall to craft their narrative of wrongdoing.  Gandall declares, "under penalty of perjury," that he has "never filed a claim with Plains or its claims processor." (Declaration of Mike Gandall in Support of Plaintiffs' Rule 23 Motion (ECF No. 52-3) at ¶ 6.)   Yet Gandall neglects to mention that he personally initiated a claim with Plains Pipeline by calling the claims hotline telephone number on June 1, 2015, providing his name, address, and telephone number, and submitting specific information related to his circumstances vis-a-vis the Line 901 release.  (Cannon Decl. ¶ 9.) Gandall also fails to advise the Court that a claims adjuster called him on Saturday, June 13, 2015, twelve days after his June 1 call to the claims hotline.  At that time, Gandall indicated his continuing interest in the claims process by telling the adjuster he was out of town but would call him back on Monday.  (Cannon Decl. ¶ 11.)   While Gandall declares that he received a call on his cell phone on September 27 and then attests: "I do not know how the person got my cell phone number" (Gandall Decl. ¶ 3.), as he well knows, Worley obtained his cell phone number by virtue of his own call to Worley.  (Cannon Decl. ¶ 10.)  In subsequent communications, Worley merely followed up on the initial claim call, in compliance with the claims process Gandall himself proactively and voluntarily initiated.

When Gandall advised the claims adjuster that he had retained an attorney, Worley, in keeping with its procedures, explained that Gandall's counsel could send a letter of representation directly to Worley, and provided contact information so that the attorney could do so.  (Cannon Decl. ¶ 14.)  On August 17, 2015, Plains Pipeline sent a follow-up letter stating "We have attempted to contact you to determine if you are pursuing your claim."  (Cannon Decl. ¶ 13, Exhibit C.)

13

1  Though Plaintiffs attempt to use these routine interactions to gin up the

2  spectre of serious misconduct by Plains, Plains and Worley's contacts with Gandall

3  were uncontroversial and completely above-board.[7]

4      **2.**    ***OPA/OSPRA Advertisements Are Not Misleading or Coercive Simply Because They Do Not Advertise the Class Action.***

5

6  Plaintiffs' only indictment of Plains' advertisements of the OPA/OPSPRA

7  claims administration process is the mere fact that they do not also advertise

8  Plaintiffs' counsel's class action. . While it would certainly benefit Plaintiffs'

9  counsel to Plains simultaneously advertise both the class action and the

10  OPA/OSPRA claims administration process, no statute obligates Plains to do so.

11  Moreover, as the Court can see for itself, Plains' advertisements and

12  communications are neutral and dispassionate in their discussion of both the release

13  and the claims administration process. All Plains Pipeline's advertisements do is

14  inform those affected by the spill of the availability of the claims process and how

15  to file a claim, if they voluntarily choose to do so. (*See Jenifer v. Delaware Solid*

16  *Waste Auth.*, No. CIV.A. 98-270 MMS, 1999 WL 117762, at *5 (D. Del. Feb. 25,

17  1999) (finding that "the evidence does not establish that putative class members

18  would be threatened or coerced into foregoing any claims in the present lawsuit"

19  and explaining that the "test for coercion is whether the conduct somehow

20  overpowers the free will or business judgment of the potential class members").

21  Plains Pipeline's advertisements do nothing more than comply with its

22  obligations under OPA and OSPRA. *See* 33 U.S.C. § 2714(b)(1) (the responsible

23  party shall advertise "the procedures by which claims may be presented); *see also*

24  Cal. Gov't Code § 8670.51.1(a)(1) (the responsible party shall "widely advertise the

25

26  ────────────

[7] The information Gandall provided when he called the hotline demonstrated that his losses had not yet begun to
occur, because lobster season runs from October to March. Nevertheless, Worley treated Gandall's claim with the

27  same importance that it would any other claim. Worley makes it a point to not deny any claim until the claimant has
an opportunity to submit whatever documentation he/she feels may help to substantiate the claim. (Cannon Decl. ¶

28  18.)

1    manner in which it shall accept and pay claims").  No provision in OPA or OSPRA

2    demands that the advertisements rise to the level of a solicitation for plaintiffs'

3    counsel.[8]  Indeed, Congress envisioned that the claims process would occur and

4    take its course "prior to commencing litigation."  *See Johnson v. Colonial Pipeline*

5    *Co.*, 830 F. Supp. at 311.

6         Finally, Plaintiffs are free to engage in their own advertising, and in fact,

7    have done so.  (Warne Decl. ¶ ¶ 23 and 24.)  Plaintiffs also fail to identify any

8    claimants who have actually *been* misled, most likely because they cannot.

9         ***3.    OPA Settlement Agreements Are Not "Misleading" or "Coercive"
          Simply Because They Include A General Release.***
10

11        Plaintiffs' suggestion that the Settlement Agreement and Release forms are

12   misleading and coercive lacks any support in the record. A majority of claimants

13   have incurred one-time-losses which have been paid in full. General releases are

14   permitted under the OPA in connection with payments for full and final damages.

15   As discussed above, the remaining claimants who receive payments for interim

16   damages do not sign general releases.

17        a.    OPA Permits a General Release in Exchange for Payment of
                Full and Final Damages.
18
          Courts have recognized that the OPA permits releases in exchange for the
19
     payment of full and final damages.  Indeed, there is no provision in OPA that bars
20
     the use of a release in exchange for payment of full and final damages.  Such
21
     releases are consistent with OPA's statutory language and ensure that Congress'
22
     goal of avoiding protracted litigation can be achieved through a full and final
23
     settlement.
24
          The Deepwater Horizon court found that "nothing prohibits Defendants from
25

26   _____
     [8]  This concern is reflected in the communications between Mr. Warne and Mr. Nelson.  On July 6, Mr. Nelson
27   requested that, in any future communications with OPA claimants, Plains Pipeline include information on the
     existence of his firm's lawsuits as well as the contact information for his firm.  He did not mention or include the two
28   other putative class action lawsuits in his request or request that Plains provide their contact information as well.
     (Warne Decl. ¶ 4.)

DOWNEY BRAND LLP

DOWNEY BRAND LLP

settling claims for economic loss." *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2:10-md-02179 (E.D. La. August 26, 2011), Dkt. No. 3830, Order and Reasons, at 34.  The court further explained that "[w]hile OPA does not specifically address the use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it."  (*Id.* at 34-35.)  Thus, in light of OPA's goal to allow for speedy and efficient recovery, Responsible Parties are permitted to use waivers and releases in connection with settling claims.  *See also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2:10-md-02179 (E.D. La. October 10, 2012), Dkt. No. 7615, Order, at 1 (denying Plaintiffs' Motions to Nullify Each and Every Gulf Coast Claims Facility 'Release and Covenant Not to Sue.'").

In sum, there is no provision in OPA that bars the use of a release in exchange for payment of full and final damages.  Such releases are consistent with OPA's statutory language and ensure that Congress' goal of avoiding protracted litigation can be achieved through a full and final settlement.

        b.    <u>Plaintiffs' Cited Authorities Are Insufficient to Establish that Plains Pipeline's Communications are Misleading or Coercive, and, Therefore, Justify Invalidating the Releases.</u>

The facts in this case do not bear any resemblance to those in the cases on which Plaintiffs rely.  And, in reality, the authorities cited by Plaintiffs underscore the fairness and evenhandedness with which Plains Pipeline has communicated with claimants.

The most apparent factual circumstance in Plaintiffs' cited cases is that the defendants in those cases are affirmatively initiating the communications, if not mandating the communications, with putative class members.  For example, in *Camp*, the defendant employer sent a letter to employee putative class members explaining the lawsuit was motivated by greed and that the plaintiff's attorney is "seeking a very large sum of money by attempting to convince other employees to join the lawsuit."  *Camp v. Alexander*, 300 F.R.D. 617, 620 (N.D. Cal. 2014).  The

16

letter further stated that "if the lawsuit continues because employees participate in it, the business will close and the employees will lose their jobs." *Id.* at 621. Accompanying the letter, the defendant employer also provided an opt-out declaration for employees to sign.

Not surprisingly, the court found the statements in the letter coercive and ordered defendant employer to send a curative notice to putative class members. *See also Quezada v. Schneider Logistics Transloading & Distribution*, No. CV 12-2188 CAS DTBX, 2013 WL 1296761, at *6 (C.D. Cal. Mar. 25, 2013) ("interviews were conducted in a coercive manner because the employees did not attend the interviews on their own initiative, but instead were summoned into attendance over a loudspeaker or directly ordered to attend by their supervisors"); *see also Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (holding that opt-outs secured by defendant employer at mandatory one-on-one meetings between employees and their managers during work hours at the workplace were obtained through coercion).

In contrast, Plains Pipeline, by and through Worley, does not "cold-call" any individuals and businesses suspected to have been affected by the Line 901 release. (Anderson Decl. ¶ 12.)  Worley only contacts those persons who have already initiated the claims process.  Moreover, the decision to initiate the claims process is strictly voluntary and entirely up to the claimants.  (*Id.* at ¶ 18.)

Plaintiffs' cited cases also involve an ongoing business relationship or an employer-employee relationship between the defendant and putative class members.  Case law establishes that these relationships are particularly prone to coercion.  *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."); s*ee Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003) (holding that the settlement offers communicated to plaintiffs

were not abusive communications and explaining that the "discovered cases in which the court conditioned the transmission of settlement offers involved class members in an inherently coercive dependent relationship with the defendant"). Here, there is no such relationship between Plains Pipeline and claimants.

Similarly, unlike the communications described in many of the cases cited by Plaintiffs, where the communications were implemented after and as a result of the litigation in an attempt to reduce the size of the class, Plains Pipeline is not communicating with putative class members in an attempt to affect the litigation. Plains Pipeline would still be required to advertise and communicate with claimants if no litigation was pending. *See* 33 U.S.C. § 2714(b)(1); *see also* Cal. Gov't Code § 8670.51.1(a)(1). In sum, Plaintiffs cannot cite a single authority, whether binding or not, that even remotely supports its Rule 23 relief under the circumstances of this case. More importantly, Plaintiffs have produced no evidence that any particular individual or business was misled or confused when signing a release. Without such a "clear record and specific findings," Plaintiffs' requested relief is clearly improper.

## C. Invalidating the Releases Obtained to Date Is a Severe and Drastic Remedy that Is Neither Warranted Nor Appropriate.

Plaintiffs ask the Court to invalidate or nullify each and every release that was purportedly obtained improperly. But Plaintiffs' request is legally improper and inequitable. First, Plaintiffs have known about the claims process and Plains Pipeline's communications since June 2015. Whether Plaintiffs' delay was strategic or simply the consequence of a change in position, it is highly prejudicial to Plains Pipeline in light of the fact that it continued to receive and settle claims over the past six months. Moreover, the record is wholly insufficient to support a claim for nullification.

### 1. *Plaintiffs' Six-Month Delay in Filing the Instant Motion Cuts against Their Claims for Relief.*

OPPOSITION TO PLAINTIFFS' RULE 23 MOTION

DOWNEY BRAND LLP

Although brought under Rule 23(d), Plaintiffs' Motion is effectively seeking injunctive relief. Indeed, Plaintiffs request an order prohibiting Plains Pipeline from obtaining releases and limiting communications with putative class members. Given that Plaintiffs' Motion is seeking such relief, Plaintiffs' six-month delay in filing the instant Motion must be considered. In other words, the inquiry into whether Plaintiffs could have sought relief by this Motion at an earlier date is relevant. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *see also Miller for & on Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n. 27 (3rd Cir.1984) ("[T]he district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim relief has allowed the status quo to change through unexplained delay.").

As stated in the Declaration of Robert J. Nelson, Plaintiffs sent a letter to counsel for Plains Pipeline on July 6, 2015 expressing the identical concerns that Plaintiffs now allege in the instant Motion. (ECF No. 52-1 at ¶ 4.) Accordingly, and at a minimum, Plaintiffs could have brought this motion at least six months ago. Instead, before seeking to invalidate the settlement and releases, Plaintiffs not only sat on their hands while Plains Pipeline expended significant time and money to process and settle claims, but Plaintiffs at the same time led Plains Pipeline to believe that they were willing to avoid such a motion by negotiating and signing a reciprocal notice agreement. Plaintiffs' delay and their decision to pursue a negotiation with Plains Pipeline to implement reciprocal notice should prevent the granting of any relief. *See Oakland Tribune,* 762 F.2d at 1377 (9th Cir. 1985).

### 2. Plaintiffs' Requested Relief for Nullification and Disclosure of the Releases Is Not Supported by the Record and Requires Individualized Inquiries.

Plaintiffs claim that they are "not asking this Court to completely nullify the

19

DOWNEY BRAND LLP

private settlements Plains has reached with putative class members," but are instead, only asking "the court [to] nullify the releases that Plains has obtained based on providing inaccurate information…." (ECF No. 52 at p. 23-24.) But Plaintiffs present no evidence whatsoever indicating that any claimant who signed a release was otherwise misled. *See Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 CIV. 4567 (AGS), 2001 WL 1035132, at *7 (S.D.N.Y. Sept. 7, 2001) (declining to void releases that had already been executed because, among other reasons, "there is nothing in the record indicating, one way or the other, what most of the [persons] who signed the releases did or did not know about this action").

The Court in *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 767 (N. D. Ohio 2010), a case cited by Plaintiffs, correctly identified this issue and declined to avoid releases on the following grounds identified in *Ralph Oldsmobile, Inc.*:

> 1)    the putative class members who signed the releases did not ask the court to void them;
>
> 2)    there was inadequate evidence in the record of the release-signers' knowledge regarding the pending class action; and
>
> 3)    even if the release-signers knew nothing of the pending litigation at the time they executed the releases, there was no evidence that they would not still sign the releases.

These exact circumstances exist here. No claimant who signed a release has asked the Court to void it, and there is no evidence in the record of any release-signers' knowledge (or lack of knowledge) regarding the pending class action. Indeed, Worley representatives have worked with claimants who have said or indicated that they prefer the claims process as opposed to seeking redress for their claims through the litigation process. (Anderson Decl. ¶ 27.) Likewise, there is no evidence that the release-signers would not still sign the releases. Consequently,

DOWNEY BRAND LLP

20

1    there is no basis in the record to invalidate the releases, and nullification and

2    disclosure of the releases obtained to date is therefore an inappropriate remedy

3    based on the instant record.  Indeed, many claimants may well prefer the certainty

4    of receiving full and final compensation now, rather than the uncertainty of

5    protracted litigation.

6         Even assuming Plaintiffs could produce evidence of misleading

7    communications that resulted in releases, the requested relief is nevertheless

8    overbroad and ignores the confidential nature of the releases.  Some releases were

9    obtained before litigation commenced.  Once the litigation was filed, each class

10   action added or modified the class definition; however, many claimants still did not

11   fit into any of the initial class action definitions until an overly broad nationwide

12   class was alleged.  Plaintiffs nonetheless ask the Court to invalidate the releases

13   because Plains Pipeline did not inform claimants about litigation in which, at that

14   time, the claimants may not have been able to participate.  Additionally, several

15   claimants presented and negotiated a claim through counsel.  (Anderson Decl. ¶

16   29.)  Surely, a release negotiated by counsel cannot be invalidated on the instant

17   record.[9]

18        Plaintiffs' cited authorities do not lead to a different conclusion.  For

19   example, Plaintiffs cite *County of Santa Clara* in support of their contention that the

20   Court can invalidate previously obtained settlement and release agreements.  (ECF

21   No. 52 at p. 18.)  Plaintiffs fail to mention, however, that the release obtained in

22   *County of Santa Clara* was held invalid under California law as failing to satisfy the

23   components for a valid accord and satisfaction agreement.  *County of Santa Clara*

24   *v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *5 (N.D. Cal.

25   July 8, 2010).  Plaintiffs also cite *Slavkov*, but once again, omit the court's actual

DOWNEY BRAND LLP

[9] If this Court determines that any action at all is necessary on the part of Plains Pipeline, the more appropriate solution is for Plains Pipeline to notify and inform claimants who previously executed a release that the Court will consider an application to void a settlement agreement and release if the individual claimants feel they were not fully compensated or otherwise misled.

1    and limited holding.  (ECF No. 52 at p. 18.)  In *Slavkov*, the court invalidated the

2    releases because: (1) the releases suggested that the putative class members could

3    not contact plaintiff's counsel; and (2) the releases attempted to waive FLSA claims

4    that require judicial approval to be released.  *Slavkov v. Fast Water Heater Partners*

5    *I, LP*, No. 14-CV-04324-JST, 2015 WL 6674575, at *6-7 (N.D. Cal. Nov. 2, 2015).

6         Essentially conceding the individualized inquiry necessary to invalidate any

7    release as acknowledged in *Freidman*, Plaintiffs contend that they "must be able to

8    review the releases Plains Pipeline has obtained to determine whether and to what

9    extent Defendants have been successful in their apparent attempts to obtain releases

10   in a misleading manner."  (ECF No. 52 at p. 22.)  However, Plaintiffs' request for

11   an order disclosing the identity of those claimants who settled a claim "as well as a

12   list of putative class members Plains has sought releases from" is nothing more than

13   a disguised discovery motion.

14        Indeed, when considered in connection with their delay in bringing this

15   Motion and their long-running participation in a far fairer alternative, Plaintiffs'

16   tactics becomes abundantly clear.  Plaintiffs allowed Plains Pipeline to expend

17   significant time and incur substantial costs in advertising and settling claims.  Now,

18   Plaintiffs seek to take advantage of the mandated OPA claims process and Plains

19   Pipeline's efforts by opening a backdoor to obtain the contact information for these

20   claimants.  Needless to say, Plaintiffs should not be permitted to circumvent the

21   well-established discovery rules.

22        Forcing Plains Pipeline to disclose each and every release, which for many

23   claimants contain confidential and propriety business information, would not only

24   second-guess the judgment and conscious decisions of the claimants, including

25   those who were represented by counsel, but would also ignore concerns of

26   confidentiality and violate many claimants' constitutional right to privacy.[10]  For

27

28   _____

[10] Plaintiffs recognize the need for confidentiality and the privacy rights of claimants as evidenced by their redaction of claimant's identifying information in the settlement and release submitted in support of Plaintiffs' Motion (See

DOWNEY BRAND LLP

22

1   that reason, and the others discussed above, this Court should deny Plaintiffs'

2   disguised discovery request.

3   / / /

4   / / /

5   ## V. CONCLUSION

6         Underlying Plaintiffs' entire Motion is their failure to accept that Plains

7   Pipeline's communications are not motivated by litigation, but rather by its

8   obligations under OPA and OSPRA. Accordingly, and for the reasons set forth

9   above, Plains Pipeline respectfully requests that the Court deny Plaintiffs' Motion

10  in its entirety.

11  DATED: January 20, 2016                    DOWNEY BRAND LLP

12

13                                             By: */s/ William R. Warne*

14                                                 WILLIAM R. WARNE
                                                   Attorney for Defendants
15                                                 PLAINS ALL AMERICAN
                                                   PIPELINE, L.P.,
16                                                 PLAINS PIPELINE, L.P.

17

18

19

20

21

22

23

24

25

26

27

28
ECF No. 52-2 at p. 18-19).

DOWNEY BRAND LLP

23