UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiffs' Motion for an Order Limiting Defendants' Communications with Plaintiffs and Class Members and for Other Relief Pursuant to Federal Rule of Civil Procedure 23(d)

Before the Court is Plaintiffs' motion for an order limiting Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P's (together, "Defendants") communications with Plaintiffs and putative class members and for other relief pursuant to Fed. R. Civ. P. 23(d). Dkt. # 52. The Court heard oral argument on the matter on February 29, 2016. After considering the arguments made at the hearing, as well as the moving, opposing and reply papers, the Court GRANTS Plaintiffs' motion.

I. Background

On May 19, 2015, a 24-inch pipeline operated by Defendants ruptured, releasing crude oil onto Refugio State Beach in Santa Barbara County. As required by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-2761, Defendants immediately established a claims process to provide interim and short-term damages to individuals and businesses affected by the spill. *See* Dkt. # 58-3, *Declaration of William R. Warne* ["Warne Decl."] ¶ 3. Defendants retained Worley Catastrophe Response ("Worley"), an experienced claims management company, to administer the OPA-mandated claims process.

A number of class action complaints were filed with this Court beginning on June 1, 2015. On June 6, 2015, Plaintiffs' counsel sent Defendants a letter requesting that Defendants notify spill victims of the pending class actions when administering OPA claims. *Id.* ¶ 4. Counsel for the parties spent several months communicating about a possible stipulation regarding communication with spill victims, but were ultimately unable to come to an agreement. *Id.* ¶¶ 4-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

Since the spill, Defendants have notified victims of the claims process using online and print advertisements. Dkt. # 52-2, *Declaration of Matthew Preusch* ["Preusch Decl."], Exs. 1-2. Defendants' advertisements state that they are "committed to doing the right thing," including "making the appropriate financial reparations for any verified damages or losses directly caused by the spill." *Id.* at Ex. 1. The advertisements encourage victims to "call the claims line" and "visit [Defendants'] response site," but do not mention the pending litigation or advise victims to consult counsel before contacting Defendants. *Id.* at Exs. 1-4. Defendants also use online pop-up advertisements to direct victims to their claims site. *Id.* at Exs. 3, 4. Once on the site, a victim who clicks "Claims Information" is directed to a claim initiation form, which notifies claimants that "[o]nce approved, valid claims are paid in conjunction with receiving a completed release or interim release settlement agreement." *Id.* at Ex. 5. The claim initiation form also notifies victims that "[p]ayments are typically made within 10 business days following the submission of all documentation." *Id.* Like its advertisements, Defendants' claim site does not advise individuals to contact counsel before submitting a claim initiation form. *Id.*

Initially, the settlement form which a victim was required to sign before receiving payment made no reference to any pending class actions. *See id.* at Ex. 6 ["First Release"]. The First Release noted that in consideration for the payment, the payee agreed to "RELEASE, ACQUIT and FOREVER DISCHARGE [Defendants] of all Claims related to the above-described Injuries." *Id.* The First Release also contained a clause ensuring that the payee had not assigned its claims to any third party. *Id.*

After the Court consolidated the class actions, Plaintiffs filed a consolidated amended class action complaint on December 15, 2015. Dkt. # 50. Defendants then revised their settlement agreement and general release. *See Warne Decl.* Ex. K, ¶ D ["Second Release"]. The Second Release notifies claimants of the name of the consolidated class action and states: "Payee is informed and understands that Payee may be eligible to participate in the consolidated class action, but instead has chosen to enter into this Agreement." *Id.* The Second Release provides that the payee "has been informed by his, her, or its attorney" that the payee is waiving Cal. Civ. Code section 1542.[1] *Id.* ¶ 4.[2] In the middle of the third page, the Second Release notes that the Payee "has either been represented by independent counsel who has fully explained this Agreement; or has had an opportunity to become represented by independent counsel and has

---

[1] Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542.

[2] The Second Release contains two paragraphs labeled as paragraph 4. The provision mentioned here is located in the first of the two paragraphs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

declined to become represented." *Id.* ¶ 5a. The Release does not advise the payee to consult with counsel before signing the release or explicitly notify the payee of his right to do so. *See id.*

II.     Legal Standard

Federal Rule of Civil Procedure 23(d) ("Rule 23(d)") permits a court overseeing a class action to issue orders which "determine the course of proceedings" or "impose conditions on the representative parties." Fed. R. Civ. P. 23(d). Because class actions "present opportunities for abuse as well as problems for courts and counsel in the management of cases…a district court has both the duty and the broad authority" to supervise communication between the parties and potential class members. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981).

The court's duty to supervise communications with potential class members exists even before a class is certified. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on Apr. 20, 2010*, No. 10-md-02179, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011). Communications which are misleading "pose a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally." *Id.* at *7 (quoting *In re School Asbestos Litigation*, 842 F.3d 671, 680 (3d Cir. 1988)). Accordingly, a court may "take action to cure the mis-communication and to prevent similar problems in the future" where "potential class members have received inaccurate, confusing or misleading communications." *Id.* at *6. The court's responsibility to monitor communications is heightened where potential class members are unrepresented by their own counsel. *Id.*

An order which limits communication between parties and potential class members "should be based on a clear record and specific findings that reflect weighing of the need for limitation and potential interference with rights of the parties." *Gulf Oil* at 101-02. However, "Rule 23(d) does not…require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" *In re Asbestos Litig.*, 842 F.3d at 683.

III.    Discussion

Plaintiffs request an order prohibiting Defendants from obtaining improper releases from Plaintiffs and putative class members; invalidating the releases Defendants have already obtained; prohibiting misleading communications with Plaintiffs and putative class members; and requiring Defendants to issue corrective notices disclosing the existence of this action. *Mot.* 2. Finally, Plaintiffs seek discovery of any releases Defendants have obtained or will obtain from putative class members, including settlement agreements and records of communications

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

made to such individuals in the context of negotiating such releases. *Id.* Defendants do not seek to limit Defendants' contact with putative class members altogether.

Plaintiffs argue that Court supervision is warranted because Defendants are using the OPA claims process to disadvantage the putative class and shrink their own liability. Specifically, Plaintiffs argue that Defendants have induced class members to prematurely release their claims through a campaign which "mislead[s] class members regarding the nature of the OPA process and the existence of the class action or other rights." *Mot.* 5. Plaintiffs challenge Defendants' direct communication with putative class members, advertisements and releases as misleading.

> *i.    Direct Contact with Putative Class Members*

Plaintiffs first allege that Defendants have impermissibly initiated contact with putative class members. However, Plaintiffs' only evidence is a statement from Plaintiff Michael Gandall ("Gandall") that in late September, he received an "unsolicited" call on his cell phone from a Worley representative, followed by several subsequent communications. *See Mot.* 4-5; Dkt. # 52-3, *Declaration of Mike Gandall ISO Motion*, ¶ 3. Defendants defend, and Gandall admits, that it was Gandall who initiated contact by calling the claims hotline and speaking with a representative for half an hour on June 1, 2015. Dkt. # 58-1, *Declaration of Don Cannon* ["Cannon Decl."] ¶ 9; Dkt. # 62-2, *Declaration of Mike Gandall ISO Reply*, ¶¶ 4-6. Standing alone, Worley's efforts to follow up with Gandall are not impermissible. *See Cannon Decl.* ¶¶ 11-15. Moreover, Defendants assure the Court that Worley does not cold call individuals or businesses who may have been injured by the spill, and Plaintiffs have presented no factual basis for the Court to doubt that assurance. *Cannon Decl.* ¶ 8.

In their reply, Plaintiffs raise anew that Defendants' direct communication with putative class members has resulted in actual confusion. Plaintiffs submit evidence that during his initial communication with Worley, the CFO of one local business believed he was communicating with someone representing victims' interests. *See* Dkt. # 62-3, *Declaration of Fraser Kersey ISO Reply*. The Court need not consider arguments raised for the first time in a reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Moreover, the Court finds that evidence irrelevant, because "Rule 23(d) does not…require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the 'likelihood of serious abuses.'" *In re Asbestos Litig.*¸ 842 F.2d at 683. Ultimately, as discussed below, the Court finds that Defendants' advertisements and settlement agreements are themselves likely to result in abuse of the class action process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

    *ii.    Advertisements*

    Plaintiffs criticize Defendants' advertisements as contributing to a misleading campaign because they do not advise claimants to seek advice of counsel before contacting the claims line. *Mot.* 5. Plaintiffs further challenge the advertisements' failure to mention the pending class action or an individual's right to obtain compensation through means other than the OPA claims process. *Mot.* 4.

    Although the advertisements are not facially misleading, they raise suspicion that Defendants are abusing OPA's claims process to mislead claimants regarding the full scope of their potential recovery. OPA requires that within 15 days of a spill, the responsible party must advertise its designation as the responsible party and the procedures by which claims may be presented. 33 U.S.C. § 2714(b)(1). OPA explicitly requires those advertisements to state that "claimants may bring a claim for interim, short term damages representing less than the full amount of damages to which the claimant may ultimately be entitled" and "payment of such a claim shall not preclude recovery for damages not reflected in the paid or settled partial claim." 33 U.S.C. § 2714(b)(2).

    Defendants' advertisements do not comply with OPA. The advertisements omit any reference to the claims process as a vehicle for short-term damages or any indication that victims may have a right to recover more than the claims process can provide. Because the Court is not assessing OPA claims, its duty falls short of forcing Defendants to amend their advertisements so as to comply with the OPA's explicit requirements. However, the Court does have a duty under Rule 23(d) to limit advertisements which are misleading. Defendants assert that they have "extensively advertised the availability of the statutory claims process…[i]n an effort to comply with OPA…and in furtherance of [their] commitment to resolving all valid claims," but that assertion is undermined by Defendants' blatant disregard for OPA's express requirements. *Opp.* 7. Put plainly, the Court is unpersuaded that the purpose of Defendants' advertisements is to comply with OPA because those advertisements do not comply with OPA. Instead, the Court finds that Defendants' advertisements are part of a misleading campaign to steer putative class members towards unknowingly waiving their rights.

    *iii.    Settlement Agreements and Releases*

    The settlement agreements themselves establish the likelihood that the fairness of the litigation process has been compromised. *See Deepwater Horizon* , 2011 WL 323866 at *2. Defendants have used two different releases in advertising their claims process: one before the Court consolidated the class actions, and one after. The First Release altogether failed to mention any pending class action. *See First Release*. Although Plaintiffs did not file their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

consolidated first amended complaint until December, class actions were filed in this case as early as June 1, 2015. *See* Dkt. # 1. Plaintiffs' counsel notified Defendants to the existence of these class actions on June 6, 2015. *Warne Decl.* ¶ 4. The First Release was misleading because it failed to notify victims that these class actions existed. *See Burford v. Cargill*, No. 05-0283, 2007 WL 81667, at *2 (W.D. La. 2007) ("[u]se of [a] general receipt and release…by [a] Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law"); *see also Friedman v. Intervet Inc.*, 730 F.Supp.2d 758, 762-63 (N.D. Ohio 2010) (holding that "[a] defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may be 'misleading'") (collecting cases).

Although the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as an explanation of the Plaintiffs' claims or the contact information for Plaintiffs' counsel. Courts routinely hold that releases are misleading where they do not permit a putative class member to fully evaluate his likelihood of recovering through the class action. *See County of Santa Clara v. Astra USA, Inc*., No. C 05-03740 WHA, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (invalidating an accord and satisfaction which precluded participation in a class action where the letter accompanying the check only included the name of the case and an explanation that it was a putative class action; defendant "was required to provide enough information so that recipients would not be misled about the strength or extent of the [class] claims"); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. Apr. 15, 2014) (ex parte solicitation for opt-outs was misleading where it "omitted key information, such as contact information for plaintiffs' counsel and a full description of the claims or the complaint"); *c.f. Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-01429 JSW, 2007 WL 2572349 at *3 (N.D. Cal. Sept. 4, 2007) (court did not find intervention necessary because defendant enclosed the class action complaint with releases mailed to putative class members, so that putative class members knew this would not be their only opportunity to collect on their claims).

Instead, the Second Release names the consolidated class action, defines the proposed class, and states that "Payee is informed and understands that Payee may be eligible to participate in the consolidated class action, but instead has chosen to enter into this Agreement." *Second Release*. By suggesting that recovery through the claims process is mutually exclusive from recovery through the consolidated class action, Defendants portray the processes as fair alternatives to one another. They are not. Whereas a victim can recover long-term damages under a variety of state claims by participating in the class action, the compensation he receives through Defendants' claims process is capped at the damages he was able to prove at the time he submitted a claim. Defendants have an obligation not to conceal the difference between participating in the class action and accepting short-term payment through the claims process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

*See Santa Clara*, 2010 WL 2724512 at *4 (defendant's release "should not have concealed material information," and "at a minimum should have explained…how closely [defendant's settlement] calculations aligned with plaintiff's allegations").

Moreover, Congress did not intend that OPA force victims to choose between partial payment now and full payment later.  In mandating that the responsible party make immediate payments to spill victims, Congress expressly preserved the victim's right to recover more than the short-term damages provided through the OPA claims process.  OPA states:

> The responsible party shall establish a procedure for the payment or settlement of claims **for interim short-term damages**.  Payment or settlement of a claim for interim-short term damages representing less than the full amount of damages to which the claimant ultimately may be entitled shall not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim.

33 U.S.C. § 2705(a) (emphasis added).  Elsewhere throughout the statute, Congress echoed its intention to preserve a victim's ability to recover fully for his injury.  *See* 33 U.S.C. § 2715 (a responsible party's "payment of...a claim shall not foreclose a claimant's right to recovery of all damages to which the claimant otherwise is entitled...under any other law"); *see also* 33 U.S.C. § 2718 ("Nothing in this Act…shall affect…the authority of any State…from imposing any additional liability…with respect to the discharge of oil"); *see also United States v. Locke*, 529 U.S. 89, 105 (2000) ("The evident purpose of the saving clauses is to preserve state laws which...establish liability rules and financial requirements relating to oil spills.").  The inclusion of these provisions suggests not only Congress's expectation that oil spill victims would have damages beyond those which are interim or short-term, but also its apprehension that responsible parties would use OPA's claims process to shield themselves from the full scope of their liability.  That is precisely what has occurred here.[3]

Defendants have advertised their claims process by alleging that they are "committed to doing the right thing," including "making the appropriate financial reparations for any verified damages or losses directly caused by the spill."  The advertisements do not inform victims that those financial reparations represent only short-term damages, that there are class actions pending, or that victims should consult a lawyer before contacting Defendants.  If a victim clicks on an ad or visits the claims site, he is presented with a claims initiation form and an assurance

---

[3] At oral argument, Defendants' counsel suggested that the claims Defendants have been paying through the claims process represent more than the short-term damages which a victim is entitled to recover under OPA.  That suggestion is in tension with Defendants' own admission that payments are made (or rejected) according to the proof of financial loss submitted with victims' claims.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

that he will be paid within 10 days of submitting documentation. If a victim calls the claims line, Worley takes down that victim's contact information and follows up repeatedly if no claim is submitted. Once a claim is approved, Defendants state that they will pay victims within 10 days – so long as victims waive their right to participate in the uncertified class action, where the certainty of any recovery is presented as murky at best. At no point is the victim informed about the OPA claims process, the details surrounding the class litigation, or the difference between the short-term damages available through the former and the long-term damages available through the latter.

The Court finds that Defendants are engaged in misleading conduct by using the OPA claims process – a process intended to compensate oil spill victims – to steer those victims towards unwittingly waiving their rights to full recovery. *See Deepwater Horizon*, 2011 WL 323866 at *8 (requiring defendants to "[f]ully disclose to claimants their options under OPA if they do not accept a final payment [through the OPA claims process], including filing a claim in the pending…litigation"); *see also Santa Clara*, 2010 WL 2724512 at *4 (finding that letter was misleading where putative class members were "unable to make an informed choice about whether to accept the settlement payment"). At no point throughout the process do Defendants expressly advise victims to consult with counsel before releasing their claims. Although Defendants bury references to claimants being represented by counsel in the second and third pages of the Second Release, they do little to ensure that victims have consulted with counsel – or at least considered the importance of doing so – before broadly waiving their claims. Defendants' failure to advise victims that they should consult with an attorney or to emphasize their right to do so convinces the Court that a likely result of Defendants' misleading conduct has been the premature release of claims by putative class members who do not fully comprehend their rights. *See Deepwater Horizon*, 2011 WL 323866 at *12 (noting how the nature of the claims process can "[lead] to confusion and misunderstanding by claimants, especially those who are unrepresented by their own counsel" and ordering defendant to *begin* any communication with a putative class member with a statement that the individual has a right to consult an attorney before accepting settlement); *see also Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 498 (E.D. Penn. Feb. 28, 1995) ("[C]ourts have recognized that the extent of harm resulting from a campaign to solicit opt-outs cannot be quantified with any precision, and hence the Court must make its best estimate, taking into account the likely effect of the solicitation program based on its nature.").

Defendants' actions are all the more suspicious in light of their own representation that continuing the process will foreclose the need for a class action.[4] *See* Dkt. # 51. Defendants have used a statutorily-mandated process which explicitly preserves a victim's claims to pick off

---

[4] Defendants made this representation in moving to stay the case pending resolution of the administrative claims process. *See* Dkt. # 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

unrepresented victims in hopes of defeating numerosity down the line. The Court finds that Defendants' misleading actions clearly frustrate the purpose of Rule 23. The Court therefore invalidates the releases, to the extent they purport to immunize Defendants from paying full compensation to injured class members. *See Santa Clara*, 2010 WL 2724512 at *4 (release was invalid under Rule 23 where it was sent "after the litigation arose – and while [defendant] knew good and well that a Rule 23 certification was still on the table" because "to rule otherwise would allow defendants to shift control of one proceeding from the district judge to the defense counsel"); *see also Camp*, 300 F.R.D. at 626 (invalidating opt-out declarations obtained *ex parte* before class certification and requiring corrective notice because "obtaining opt-out forms ex parte at this stage of the litigation – before a class has been certified by the Court – unquestionably frustrates the purpose of Rule 23") (citations and internal quotation marks omitted); *Friedman,* 730 F.Supp.2d at 767 n. 8 (noting that nullifying releases can be appropriate where the number of releases obtained under misleading circumstances is capable of frustrating the numerosity requirement of class actions).

Additionally, Defendants are ordered to provide curative notice informing claimants of their right to participate in the litigation. *See* Fed. R. Civ. P. 23(d)(1)(B) ("to protect class members and fairly conduct the action," a court may issue orders that "require…giving appropriate notice to some or all class members of any step in the action"). Defendants are also prohibited from engaging in misleading communications with putative class members. Specifically, Defendants may not obtain further releases without explicitly notifying Plaintiffs that this class action is pending, including a description of the claims, and expressly advising class members to seek the advice of counsel before waiving any claims. The Court finds these cures necessary to guard against the likelihood that the class action process has been abused. *In re Asbestos Litig.*, 842 F.3d at 683.

In contrast to the likely harm which the putative class will suffer if the releases are allowed to stand, Defendants are not seriously disadvantaged by their invalidation. *See Gulf Oil*, 452 U.S. at 101-02. Because double recovery is not permitted, the Court leaves open the possibility that Defendants' total damages amount will be credited for payments they have already made pursuant to the claims process. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 950 (E.D. La. Dec. 21, 2012) (concluding that a "fair and reasonable method to avoid double compensation" was to deduct claim payments from payments received through the court-supervised settlement process). Moreover, Defendants' efforts to continue resolving claims will not be frustrated because Defendants are not prohibited from contacting putative class members altogether. Defendants are only prohibited from doing so in a way which is misleading.

Finally, the Court addresses the point, raised by Defense counsel at oral argument, that invalidating the releases will dissuade future defendants from compensating victims without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

court involvement. To the extent Defendants mean that responsible parties will abstain from paying claims for short-term damages to oil spill victims, Defendants' threats are empty because responsible parties under OPA do not have that discretion. OPA legally obligates responsible parties to pay victims short-term damages, and responsible parties cannot shirk that obligation out of fear that they will later be forced to answer for the full extent of their liability. If Defendants mean that defendants in general will be dissuaded from settling claims, that argument lacks merit. Responsible parties should not be dissuaded from settling claims, but encouraged to do so in an honest manner with fully informed claimants. To be clear, the Court does not invalidate Defendants' releases merely because they represent a partial settlement of the putative class members' claims. The Court invalidates the releases because Defendants obtained them by denying Plaintiffs information and representation to which they were entitled. *Gonzalez v. Preferred Freezer Serv's LBF, LLC,* CV12-03467-ODW (FMOx), 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (noting that although settlements are "usually encouraged," "public policy demands that potential plaintiffs receive appropriate notice before entering into any release agreement").

Because the Court finds this relief sufficiently curative, Defendants are not ordered to amend their advertisements or to provide Plaintiffs with special discovery of their communications with putative class members, beyond that which they would be able to seek through ordinary discovery.

IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion is GRANTED. The Court orders the following:

- Releases purporting to immunize Defendants from paying full compensation to injured class members are invalidated;

- Defendants will provide curative notice to that effect to claimants who signed such a release;

- Defendants are prohibited from engaging in misleading communications with putative class members, including obtaining releases without (1) notifying claimants that this class action is pending and describing the claims asserted within it; and (2) expressly advising claimants to seek the advice of counsel before waiving any claims.

Because the Court finds that this relief sufficiently curative, the Court DENIES Plaintiffs' request for:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV15-4113 PSG (JEMx) | Date | March 3, 2016 |
|---|---|---|---|
| Title | Stace Cheverez v. Plains All American Pipeline, LP | | |

- Defendants to alter their advertisements; and

- Special discovery.

**IT IS SO ORDERED.**