UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#531/534

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** The Court GRANTS Plaintiffs' motion to amend the fisher class and DENIES Defendants' application to strike Plaintiffs' late-served expert reports

  Before the Court is a motion to amend the order certifying the fisher and fish industry class filed by Plaintiffs Keith Andrews; Tiffani Andrews; Baciu Family LLC; Robert Boydston; Morgan Castagnola; The Eagle Fleet, LLC; Zachary Frazier; Mike Gandall; Alexandra B. Geremia; Jim Guelker; Jacques Habra; Mark Kirkhart; Mary Kirkhart; Richard Lilygren; Hwa Hong Muh; Ocean Angel IV, LLC; Pacific Rim Fisheries, Inc.; Sarah Rathbone; Community Seafood LLC; Santa Barbara Uni, Inc.; Southern Cal Seafood, Inc.; TracTide Marine Corp.; Wei International Trading Inc.; and Stephen Wilson ("Plaintiffs"). *See* Dkt. # 531 ("*Mot.*"). Defendants Plains All American Pipeline, L.P. and Plains Pipeline, L.P. ("Defendants") oppose the motion, *see* Dkt. # 545 ("*Opp.*"), and Plaintiffs replied, *see* Dkt. # 563 ("*Reply*"). In addition, Defendants filed an ex parte application to enforce the scheduling order by striking Plaintiffs' late-served expert reports and precluding reliance on those reports. *See* Dkt. # 534 ("*App.*"). Plaintiffs filed an opposition, *see* Dkt. # 542 ("*App. Opp.*"), and Defendants replied, *see* Dkt. # 543 ("*App. Reply*"). The Court held a hearing on the matter on November 18, 2019. Having considered the moving, opposing, and reply papers, and the arguments made at the hearing, the Court **GRANTS** Plaintiffs' motion to amend the order certifying the fisher class, and **DENIES** Defendants' ex parte application.

I. Background

  A. Fisher Subclass

  This action stems from the May 2015 Santa Barbara oil spill, an incident that has been extensively recounted in the Court's prior orders in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

The operative Second Amended Complaint alleges claims on behalf of a nationwide class: "[a]ll persons or businesses in the United States that claim economic losses, or damages to their occupations, businesses, and/or property as a result of Defendants' May 19, 2015 oil spill from Line 901." *See Second Amended Complaint*, Dkt. 88 ("*SAC*"), ¶ 249. Plaintiffs moved for certification of the following fisher and fish industry subclass ("Fisher Subclass"):

> Persons or entities who owned or worked on a vessel that landed seafood within the California Department of Fish & Wildlife fishing blocks 651 to 657, 664 to 671, 681 to 683, as well as persons or entities who owned or worked on a vessel that landed groundfish, including but not limited to sablefish, halibut and rockfish, in fishing blocks 631 to 633, 637 to 639, 643 to 645, 658 to 659, and 684 to 690, between May 19, 2010 and May 19, 2015 and were in operation as of May 19, 2015, as well as those persons and businesses who purchased and re-sold commercial seafood so landed, at the retail or wholesale level, that were in operation as of May 19, 2015.

*Fisher Order*, Dkt. # 257 ("*Fisher Order*") at 14.

Plaintiffs based this definition on the information available to them at the time regarding the amount of oil released and the areas impacted. *See Mot.* 2:16–24. To propose the class definition, Plaintiffs' experts conducted preliminary analyses of where the oil traveled and the likely impact on fisheries. *See id.* at 3:1–3. Plaintiffs supplied a report from Dr. Igor Mezić, who explained how he would model how the oil from Line 901 dispersed once it left the pipeline on an hour-by-hour basis by identifying and computing the impact of phenomena that affect oil flow in the ocean. *See id.* 3:3–8; *Fisher Order* at 8. Dr. Mezić's analysis was preliminary at that time, as he waited for further information from other sources, including through the National Oceanic and Atmospheric Administration. *See Mot.* 3:8–11. Plaintiffs also supplied reports from other experts, including Dr. Hunter Lenihan, speaking to the likely effect on commercial fisheries from the spill. *See id.* 3:11–17; *Fisher Order* at 11–12. Plaintiffs' initial subclass definition identified geographic boundaries based on these initial reports.

On February 28, 2017 the Court certified this Fisher Subclass under Federal Rule of Civil Procedure 23(b)(3). *See Fisher Order* at 16–17, 29. The Court stated that the geographic boundaries of the subclass reflected the potential zone of the oil spill, but "the Court will not hesitate, as the case progresses, to winnow the class to only those fisherm[e]n that worked in the areas affected by the spill." *See id.* at 17. The Court also rejected Defendants' motion to strike the experts' declarations. *See id.* at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

    Plaintiffs now move to amend the order certifying the Fisher Subclass, on the grounds that Plaintiffs have finalized evidence of the areas affected by the oil spill. *See Mot.* 4–6. Based on this finalized evidence, Plaintiffs seek to amend the definition as follows:

> All persons and businesses (Fishers) who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish and Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; and All persons and businesses (Processors) in operation as of May 19, 2015 who purchased such commercial seafood directly from the Fishers and re-sold it at the retail or wholesale level. Excluded from the proposed Subclass are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, and (3) businesses that contract directly with Plains for use of the Pipeline.

Dkt. # 563-2, 4.

    B.    <u>Expert Reports</u>

    After the Court certified the Fisher Subclass in February 2017, the parties conducted discovery. *See Opp.* 2–3. Fact discovery closed on December 21, 2018. *See* Dkt. # 478 at 1. After a series of extensions, the deadline for opening expert reports was set for March 29, 2019, and parties served opening expert reports on that date. *See* Dkts. # 421, 456, 478, 505, 514; *Opp.* 3:9–10. The deadline for the exchange of rebuttal expert reports was set for June 14, 2019, and the parties exchanged such reports on that date. *See* Dkt. # 519; *Opp.* 3:17–18. On August 6, 2019, the Court ordered that expert discovery would close on September 20, 2019. *See* Dkt. # 524. The Court also set August 30, 2019 as the deadline for Plaintiffs to file their motion to expand the Fisher Subclass; September 30, 2019, as Defendants' deadline to oppose Plaintiffs' class expansion motion; and October 21, 2019 as the dispositive motion deadline. *See id.*

    On August 30, 2019 Plaintiffs filed their motion to amend the fisher class and served amended reports for two of their experts, Drs. Peter Rupert and Hunter Lenihan. *See Opp.* 3:27–4:3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

On September 3, 2019 Defendants filed an ex parte application to enforce the scheduling order by striking Plaintiffs' late-served expert reports and precluding reliance on those reports. *See generally App*.

II. Discussion

The Court first addresses whether it should strike Plaintiffs' expert reports, and then whether it should amend the class definition.

   A. Expert Reports

Defendants argue that there are a series of differences between Plaintiffs' expert reports served on March 29, 2019 and the expert reports served on August 30, 2019 that Plaintiffs' motion to amend relies on. The impetus for the new expert reports was a discovery that one of Plaintiffs' experts, Dr. Lenihan, made an arithmetic error: "misunderstanding the units of measurement of data" that Dr. Mezić had supplied him. *See Opp. App.* 4:25–5:2. In their opposition, Defendants argue that allowing Plaintiffs to rely on these reports would force Defendants to expend resources to analyze and respond to them. *See Opp.* 11. These arguments largely overlap with the arguments Defendants make in their ex parte application, in which Defendants argue that Plaintiffs' untimely expert reports contain new opinions and violate the requirements of Federal Rule of Civil Procedure 26. *See generally App.* The Court turns to Defendants' arguments to strike the use of these reports.

Dr. Lenihan's initial report offered an opinion of a "conservative threshold," that a block would be toxic to fish if its concentrations of polyaromatic hydrocarbons ("PAHs") exceeded 50 parts per billion ("ppb"). *See Declaration of Grant Davis-Denny*, Dkt. # 546 ("*Davis-Denny Decl.*"), Ex. 2 (July 6, 2019 Expert Report of Hunter S. Lenihan) ¶¶ 16–17, 19–20, 26 ("*Lenihan Report I*"). Dr. Lenihan identified those blocks exposed to at least those level of toxicity ("toxic blocks"), based on Dr. Mezić's model output. *Lenihan Report I* ¶ 27. Dr. Rupert then used these designated "toxic blocks" that Dr. Lenihan identified as "treated" blocks, compared with "non-treated" or control blocks, to perform his regression analysis to estimate the impact of the oil spill on seafood catch. *See Opp.* 8:16–19; *Davis-Denny Decl.*, Ex. 1 (March 29, 2019 Expert Report of Peter Rupert) ¶ 9 ("*Rupert Report I*").

After Dr. Mezić's deposition testimony revealed that Dr. Lenihan had misinterpreted Dr. Mezić's data, showing that Dr. Lenihan assumed PAH concentrations that were higher than what existed, Plaintiffs issued an amended Lenihan report on August 30 that omitted the faulty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

assumption. *See Opp.* 8:25–28; *Davis-Denny Decl.*, Ex. 3 (Amended and Supplemental Report of Hunter S. Lenihan) ("*Lenihan Report II*"). He removed any opinion about which blocks would be considered "toxic," and opined that lower PAH concentration levels could be harmful to fish, based on the same academic studies. *See Lenihan Report II* ¶ 27; *Opp. App.* 5:1–13.

Plaintiffs also issued an amended Rupert report on August 30. *Declaration of Juli Farris*, Dkt. # 532 ("*Farris Decl.*"), Ex. 4 (Amended and Supplemental Report of Peter Rupert) ("*Rupert Report II*"). Where Dr. Rupert's initial report had relied on Dr. Lenihan to identify the "toxic" blocks, the amended report relied on Dr. Mezić's definition of oiled blocks, without consideration of the level of PAHs present in those blocks. *Compare Rupert Report I* ¶¶ 8–9 *with Rupert Report II* ¶¶ 9–10. Thus, Rupert used his same difference-in-differences model but substituting which blocks were designated "treated" and "controlled": comparing trends in *Mezić's "oiled" blocks*, rather than *Lenihan's "toxic" blocks*, to trends in control blocks. *See App.* 11:3–6; *Opp. App.* 6:6–21.

Defendants point to other changes in Dr. Rupert's amended report, including an analysis of the minimum average monthly seafood price in a given year; a regression analysis reclassifying fishing blocks from the "oiled" category to the "non-oiled control block category"; and the elimination of groundfish and highly migratory species. *See Opp.* 10:14–11:9; *App.* 11. Plaintiffs argue that the new Rupert report is not materially different, because it does not change the method of analysis, the difference-in-differences regression runs are performed in the same model, "the only variation is which blocks are considered 'treated' versus 'control.'" *See Opp. App.* 6:6–21. Plaintiffs also argue that Dr. Lenihan's report is consistent inasmuch as the initial report proposed 50 ppb as a conservative measure and recognized that harm to fish could occur at lower concentrations of oil. *See Opp. App.* 5:8–13; *Lenihan Report I* ¶ 26.

Federal Rule of Civil Procedure 26 requires parties to disclose all expert evidentiary material that may be relied upon at trial, and further provides that these disclosures be made at the times directed by the court. Fed. R. Civ. P. 26(a)(2). Expert disclosures must include "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). In addition, the Rule requires a party "who has made a disclosure under Rule 26(a)" to "supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or inaccurate[.]" Fed. R. Civ. P. 26(e). Any "additions or changes" to information produced by an expert "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. Proc. 26(e)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The Rule thus excludes untimely expert witness testimony, unless the "part[y's] failure to disclose the required information is substantially justified or harmless." *Yeti*, 259 F.3d at 1106.

The parties disagree over whether Drs. Lenihan's and Rupert's August 30 reports were appropriately "supplemental." A supplemental report that seeks to "'strengthen' or 'deepen'" opinions expressed in the original expert report is improper under Rule 26(e) and subject to exclusion under Rule 37(c). *Jarrow Formulas, Inc. v. Now Health Grp, Inc.*, 2012 WL 3186576, No. CV 10-8301 PSG, at *15 (C.D. Cal. Aug. 2, 2012). However, proper supplementation includes "correcting inaccuracies." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009); *see also Kennis v. Metro. W. Asset Mgmt., LLC*, No. CV 15-8162, 2018 WL 9440483, at *5 (C.D. Cal. Nov. 29, 2018) ("The Court also recognizes that a supplement of an incomplete report is proper if the supplemental information was not previously available to the offering party or if there was some kind of inaccuracy in the original reports.").

For instance, in *Federal Deposit Insurance Corp. v. Van Dellen*, the court struck a plaintiff's untimely supplemental report from its damages expert which was an attempt to rebut an opponent's damages expert's opinions. No. CV 10-4915 DSF (SHX), 2012 WL 12886825 (C.D. Cal. Nov. 6, 2012). The plaintiff admitted that the supplemental report provided "an alternative analysis of losses." *Id.* at *1. The court explained that the plaintiff's admission made "clear that this is a new and deeper analysis aimed at strengthening the opinions expressed in the original expert report," and was clearly "an attempt to provide a substantive rebuttal" to the opposing expert report. *Id.* at *2. In addition, the report was submitted after his expert deposition was taken, almost two months after the close of expert discovery, and less than a month and half before trial was set to begin. *Id.* at *1. In contrast, in *Alfen v. Toyota Motor Sales, U.S.A., Inc.*, the court denied a motion to strike where "to the extent the sur-rebuttal reports 'supplement' the experts' original reports, they merely correct or clarify the experts' opinions in recognition of [] the admitted error in testing of Toyota's source code." No.CV-11-08120, 2012 WL 12930737, at *2 (C.D. Cal. Nov. 9, 2012).

Defendants characterize the amended reports as including "new" models, and as an attempt to strengthen and deepen the experts' prior reports. *See generally App.* Plaintiffs, on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | | Date | November 22, 2019 |
|---|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | | |

other hand, describe the amended reports as using the same models, but responding to the discovery of an arithmetic error: a mistake regarding units of measurement. *See Opp. App.* 4:24–5:1, 10.

      The Court agrees with Plaintiffs that the August 30 reports of Drs. Lenihan and Rupert are properly supplemental in that they correct an arithmetic error that was discovered, rather than strengthen or deepen opinions. *See id.* 10:17–26. Plaintiffs point out that the attacks Defendants' experts leveled at Dr. Rupert's initial report "can be applied equally" to his same methodology in his amended report, applied to a different set of fishing blocks. *See id.* 11:8–10. The amended August 30 reports are efforts to address an error and to conform the damages measure to the proposed new class definition, rather than new or contradictory opinions that introduce new methodologies altogether, and thus striking the reports is not appropriate. *Compare Alfen*, 2012 WL 12930737, at *2 *with Hamilton v. Wal-Mart Stores, Inc.*, 2019 WL 1949457, at *9 (C.D. Cal. Mar. 4, 2019) (report not supplemental where expert's original methods are "fundamentally different than the methods he proposes in his supplemental report").

      Moreover, unlike the cases on which Defendants rely, Plaintiffs submitted their supplemental and amended expert reports well before the deadline for expert discovery. Plaintiffs produced the amended reports on August 30, 2019: the Court had not yet set a trial date, the period for conducting expert discovery was not yet closed, and Drs. Lenihan and Rupert had yet to be deposed. *Cf. Fed. Deposit Ins, Corp.*, 2012 WL 12886825, at *2 (striking new expert report submitted nearly two months after the close of expert discovery, more than two months after the experts' deposition, and less than a month and a half before trial was set to begin); *Luke*, 323 Fed. App'x. at 499 (expert declaration submitted in response to summary judgment motion, more than three months after the deadline for initial expert disclosures, and ten weeks before trial).

      Even if Plaintiffs' amended reports were untimely in violation of Rule 26, the Court concludes that the untimely service of their reports is harmless. Defendants argue that their experts will incur significant time and expense in analyzing the "multiple new regression models," which will require a "multi-week, perhaps multi-month undertaking." *See App.* 17–20. Plaintiffs respond that "re-running the model on the new block categorizations can take no more than a handful of hours as evidenced by the fact that Dr. Rupert prepared his supplemental report within less than two weeks," and that Defendants' experts have already had the same regression model and underlying data which Rupert used in both his initial and amended report for months and have used that data in various reports. *See Opp. App.* 11:10–17, 16; *Reply* 9–10. Defendants still have the opportunity to prepare responses to these reports, and depose these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

experts with an extended deadline, thereby solving the problem short of striking the reports.[1] Other courts have denied Rule 37 requests in circumstances similar to this. *See Jarrow Formulas*, 2012 WL 3186576, at *15 (rejecting one challenge to an amended expert report because "the report was served four weeks before [the expert's] deposition, Defendants had ample opportunity to review the report and question [the expert] regarding its contents, and therefore have not been prejudiced") *see also UMG Recordings, Inc. v. Am. Home Assurance Co.*, No. CV 04-04756 DDP (RNBx), 2006 WL 8451158, at *2 (C.D. Cal. Feb. 27, 2006) (where expert reports were received after the discovery cut-off date, the court allowed a modification of the scheduling order, because "modifying the scheduling order cures any harm to American by allowing it the opportunity to depose the three expert witnesses and to designate any rebuttal expert witnesses"). The Court therefore is not convinced that permitting Plaintiffs to utilize the amended reports would prejudice Defendants.

For these reasons, the Court **DENIES** Defendants' request to strike Plaintiffs' late-served expert reports. And, because the Court is not convinced that Defendants are prejudiced by these reports, Plaintiffs' August 30 reports do not provide a basis to deny Plaintiffs' motion to amend the Fisher Subclass.

    B.    <u>Amend Class Definition</u>

Federal Rule of Civil Procedure 23 provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Under Rule 23(c)(1)(C), the district court has broad authority to alter or amend a class certification order at any time before final judgment. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 983 (9th Cir. 2007). "Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010) (internal quotation marks and citations omitted). This discretion specifically includes the ability of the court to modify the class definition. *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) (granting a motion to modify the class definition). "In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ms. L v. U.S. Immigration and Customs Enfo't ("ICE")*, 330 F.R.D. 284,

---

[1] On October 22, 2019 the deadline to file motions related to the fisher class was extended to November 14, 2019, to allow Defendants to depose Drs. Rupert and Lenihan prior to the deadline, per the parties' stipulation which was entered by the Court. *See* Dkt. # 560.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | | Date | November 22, 2019 |
|---|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | | |

287 (2019) (quoting *Roy v. Cty. of Los Angeles*, No. CV 13-04416-AB (FFMx), 2018 WL 3435417, at *2 (C.D. Cal. July 11, 2018)).

Plaintiff moves to amend the Fisher Subclass definition because of the completion of various experts' work regarding the exact area impacted by the oil spill. Dr. Mezić has completed his work determining where the oil went, "the geographic area the spill's oil covered, where it submerged and re-emerged, and the duration and volume of the oil in each fishing block." *See Mot.* 4:7–14; *Farris Decl.*, Ex. 3 (Expert Report of Igor Mezić) ¶¶ 3, 6, 40–41, 57 ("*Mezić Report*"). Dr. Mezić concluded that the actual volume of the oil spilled into the Pacific Ocean was between 8,000 and 11,500 barrels, and the "most probable" volume is 10,750 barrels of oil reaching the Pacific Ocean as a result of the spill. *See Mezić Report* ¶ 59. In addition, by applying difference-in-differences regression techniques to commercial fish landings data, Dr. Rupert computed damages for the original certified 165 blocks identified by Dr. Mezić, and the blocks in the proposed amended class definition. *See id.*, *Rupert Report II* ¶¶ 8–9. Plaintiffs explain that Dr. Mezić's analysis, conducted in the time since the class was certified, revealed that the original class boundaries were both over- and under-inclusive. For instance, some of the "groundfish only" fishing blocks included in the original class boundaries were not likely impacted; Dr. Rupert's analysis failed to discern any difference in groundfish catch attributable to the spill in those blocks. *See Mot.* 5:9–16; *Farris Decl.*, Ex. 7 (Map of Fishing Blocks: Original and Amended Definitions) ("*Map of Current and Proposed Classes*"); *Rupert Report II* ¶¶ 23–25, Table 3.

The proposed amended definition differs from the original definition in the location and quantity of fishing blocks included: the original definition contained 36 blocks while the amended definition contains 56. *See Map of Current and Proposed Classes*. The amended definition is limited to the 50 blocks that contained the highest volumes of oil identified by Dr. Rupert, using Dr. Mezić's model, plus six additional blocks that do not meet that criteria but are surrounded by "top 50" blocks. *See Reply* 1 n.2. It also eliminated 17 blocks from the original definition that, based on Plaintiffs' experts' research, were not among the most contaminated, including all the groundfish-only blocks. *See Mot.* 7:15–18. It adds blocks south and east of the Channel Islands that, based on Dr. Mezić's model, were among the most contaminated. *See id.* 7:18–21; *Reply* 1 n.2. The amended definition is limited to fishers who harvest species that "primarily live and breed in shallow water, near the coast line, or in the top layer of the water column"; it excludes landings for species found in deep-water or far offshore. *See Mot.* 8:21–26. The result, Plaintiffs assert, is "a class definition that closely aligns with the area most impacted by the Spill and includes those for whom Plaintiffs can demonstrate and quantify loss on a class-wide basis." *Id.* 9:2–4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | | Date | November 22, 2019 |
|---|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | | |

Plaintiffs argue that granting its motion is warranted because courts routinely enlarge classes to add new alleged victims, and class definition amendments are particularly suitable to environmental cases where it is important that the class boundary be tethered to reliable scientific evidence. *See id.* 9–11.

The Court agrees with Plaintiffs that this amendment to the class definition to conform to newly-discovered evidence, specifically, to ensure that the class corresponds to the area impacted by the spill based on Plaintiffs' experts' evidence, is appropriate. *See id.* 11:17–20. Courts have permitted modification of a certified class to conform to newly-discovered evidence. *See In re Whirlpool Crop. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 460 (N.D. Ohio 2014) (modifying the class definition of a certified class, in a product liability action to reflect new evidence regarding which washing machine models have the alleged design defect). In addition, courts have permitted the enlargement of a certified class to include new alleged victims where the new victims excluded from the class definition share common factual circumstances and have the same legal claims. For instance, in *Ms. L v. U.S. Immigration & Customs Ef't ("ICE")*, the court initially certified a class of parents detained by ICE whose children were to be separated from them after a preliminary injunction issued, but did not include those parents whose children were released from custody before the date the preliminary injunction was issued. 330 F.R.D. at 287. Subsequently, counsel for plaintiffs learned of parents detained by ICE whose children were separated from them even before a preliminary injunction issued, and the court granted plaintiffs' subsequent motion to expand the class. *Id.* The court pointed out that the common questions of the illegality of the government's practice of separating migrant families applies equally to the proposed modified class, because the new parents who had been excluded from the prior class definition, "were also subject to this common practice." *Id.*; *see also Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244, 246–47 (D. Md. 2012) (granting motion to modify certified class to include consumers who obtained loans within the RICO statute of limitations, in order "to avoid excluding borrowers with timely RICO claims that meet all other class criteria," and noting that the new class did not open the door to new legal theories or proof that was not already part of the case); *Barnes*, 273 F.R.D. at 569 (modifying the ERISA class to include deferred annuitants, in addition to lump-sum benefit recipients, after the defendant clarified that deferred annuitants were treated the same as lump-sum benefit recipients under its pension plan). Here, as in those cases, the proposed definition seeks to include those class members affected by the same allegedly illegal conduct, who would be excluded under the prior definition.

Defendants contend that this Court should deny Plaintiffs' request to amend their class definition because (1) it does not match that in the complaint; (2) it would delay the case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

schedule and prejudice Defendants; and (3) predominance is not satisfied because Dr. Rupert has not shown that he can establish causation and injury for each proposed class member through a common method of proof. *See generally Opp.* The Court addresses each argument in turn, and finally addresses the remaining requirements of Rule 23.

    *i.    Definition in Complaint*

Defendants argue that because Plaintiffs failed to amend their complaint, and because the class definition in the complaint is defined broadly and does not include a specific fisher subclass, the Court should deny this motion to amend the class definition. *See Opp.* 6:20–7:18. Defendants point to *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009), in which the court stated that it was bound to class definitions provided in the complaint and, absent an amended complaint, would not consider certification that attempted to expand the class beyond the definition provided in the complaint. *See id.* Plaintiffs respond that Rule 23 does not preclude an amendment to a class definition which is narrower than that in the complaint. *See Reply* 1:22–27.

The Court agrees with Plaintiffs that consideration of the revised class definition is not inappropriate. The class definition in the complaint is: "[a]ll persons or business in the United States that claim economic losses, or damages to their occupations, businesses, and/or property" as a result of the spill. *See Compl.* ¶ 44. Plaintiffs' proposed amended definition of the Fisher Subclass is narrower than and encompassed within the complaint's broader definition, and Plaintiffs have been diligent. *See Trujillo v. UnitedHealth Grp., Inc.*, No. 17-2547, 2018 WL 4694041, at *5 (C.D. Cal. Sept. 14, 2018); *Wolf v. Hewlett Packard Co.*, No. 15-01221, 2016 WL 7743692, at *8 n.4 (C.D. Cal. Sept. 1, 2016). Amendment of the class definition to conform the pleadings to the facts is consistent with Rule 23. *See Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) ("Class actions are hard work for the Court and the parties; the Court and the parties need to conform the pleadings to the reality of discovery, a lengthy class certification hearing, and the judicial resources expended in analyzing all of the extensive evidence on record. Some flexibility—not more formality—is needed in crafting a class action where one is warranted."); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("[H]olding plaintiffs to the plain language of their [class] definition would ignore the ongoing refinement and give-and-take inherent in class action litigation."). The Court will consider the class definition in the motion.

    *ii.    Untimeliness and Prejudice*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

Defendants argue that permitting Plaintiffs to expand the class after the close of expert discovery will result in delay to the case schedule and prejudice to Defendants. *See Opp.* 6, 12–13. Defendants point to a variety of harms: the delay associated with the requirement to ascertain and provide notice and an opportunity to opt out to the new class members; allowing Defendants' experts to serve new opening and rebuttal reports addressing the new class definition; time for expert depositions; and delaying dispositive motions and motions to decertify the class. *See id.* 12. Defendants also argue that Plaintiffs have no legitimate reason for their delay in bringing this motion. *See Opp.* 13:8–16:2.

Plaintiffs respond that their motion is timely under Rule 23(c)(1)(C) and that Defendants will not be prejudiced because they have agreed to dates for the two remaining expert depositions and have set a filing deadline for related dispositive motions after the conclusion of these depositions, and that Defendants have not identified any reason why the current schedule would preclude a trial in 2020. *See Reply* 3:13–4:24. Plaintiffs also argue that the prospect of issuing notice to the additional class members does not preclude a 2020 trial, as "the proposed definition does not significantly increase class size and any additional names and addresses can be obtained from the California Department of Fish and Wildlife ("CDFW"), and the amended notice can be issued promptly." *Id.*

The Court concludes that the timing of Plaintiffs' request and the alleged delay are not reasons to deny Plaintiffs' motion. Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982) ("Consequently, before the entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative."). Plaintiffs brought this motion to amend the class prior to the close of expert discovery, prior to the dispositive motions deadline, and in accordance with a scheduling order set by this Court, and with no trial date set. The cases that Defendants cite are distinguishable: in *Belmont*, the court rejected a motion to amend a complaint sought "more than five months after the Court's summary judgment ruling" and which asserted "new claims" as well as a new class definition, and in *Smith*, the court rejected the proposed class because the plaintiffs sought to add a new theory of recovery and proposed a class significantly broader than that originally pled in the complaint and was sought after the close of expert discovery. *See Smith v. Seeco, Inc.*, No. 4:15CV00147 BSM, 2016 WL 3541412 (E.D. Ark. Mar. 11, 2016); *Belmont v. BP Am. Prod. Co.*, No. 13-CV-63-F, 2014 WL 11456766, at *4 (D. Wyo. Dec. 8, 2014). In contrast, here, Plaintiffs have not sought to bring new claims, have not sought to expand the class definition beyond that in the complaint, and have brought their motion prior to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

the close of expert discovery. While the Court recognizes that Defendants would be required to depose Plaintiffs' experts Drs. Lenihan and Rupert, and to modify their reports to respond to the changed class, the Court is not convinced that any delay associated with this would prejudice Defendants or significantly delay the case.

  *iii.*  *Predominance*

Defendants argue that Plaintiffs have not met their burden of establishing predominance as to the new class definition. *See Opp.* 17:24–21:19.

To certify a class under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual class members." Fed. R. Civ. P. 23(b)(3). Courts have a duty to take a "close look" at whether common questions predominate over individual ones. *Comcast Corp. v. Behrand*, 569 U.S. 27, 33–34 (2013).

This Court previously concluded the predominance requirement was satisfied at the initial class certification stage. In Defendants' briefing opposing the initial motion to certify the Fisher Subclass, Defendants argued that both causation and injury are individualized inquiries that defeat predominance, citing the need for individual financial information. *See Fisher Order* at 6; Dkt. # 153. The Court recognized that to succeed on their claims, including negligence, the Subclass must demonstrate common methods of showing causation and harm from Defendants' conduct. *See Fisher Order* at 14–17. The Court concluded that predominance was satisfied, based on Plaintiffs' experts' methodology of identifying fisheries in ocean blocks that expended more and earned less in the aftermath of the oil spill, and which controlled for variables other than the oil spill, such as natural weather patterns, that may impact fisheries' profits. *See id.* at 14. As discussed above, the changes to the class definition seek to track more precisely the area impacted by the spill.

Defendants now argue again that common issues do not predominate over individual issues of causation and injury. Defendants attack Dr. Rupert's method for analyzing the impact of the spill on the Fisher Subclass members, and argue that the Rupert report is impermissible under *Comcast* and the Ninth Circuit's recent opinion decertifying the oil worker class.

Dr. Rupert's report relies on specific data of fishers' individual catch statistics compiled by month, block, and species, and purports to determine the extent to which the oil spill reduced the amount of fish caught in those blocks where oil was present. *See Mot.* 4:25–5:5; *Rupert*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

*Report II* ¶¶ 8–10, 43; *Reply* 6:14–18. The report uses government and industry data to compute lost revenue and profits to fishers and processors in the Fisher Subclass. *See Rupert Report II* ¶¶ 15–20. Dr. Rupert's "difference-in-differences regression analysis" thus purports to establish "a common method to establish the aggregate lost profits of the Subclass, using common sources of proof." *See Mot.* 17:5–8. The amended definition is an attempt to modify the class definition to track more closely the evidence of where the oil from the spill went and the species it affected. *See generally Mot.*; *Reply* at 6:14–21. This Court has previously determined that a regression model, and aggregate data, is a valid means of determining class-wide injury and causation here. *See Reply* 5:1–16 (citing Federal Judicial Center, Reference Manual on Scientific Evidence 308 (3d ed. 2011) (discussing district courts' wide acceptance of regression models); *Kurtz v. Kimberly-Clark Corp.*, No. 14-1142, 2019 WL 5483510, at *13 (E.D.N.Y. Oct. 25, 2019) (finding common issues predominate because regression analysis provided common proof of causation and damages)); *Fisher Order* at 14.[2] Based on the expert reports and arguments presently before the Court, the Court concludes at this time that there is a basis to allow Plaintiffs to amend their class definition to more closely match the evidence of the geographic bounds of the spill as identified by their experts.

The Court also notes that both *Comcast* and the Ninth Circuit's decision to decertify the Oil Industry Class are distinguishable. First, in *Comcast*, the expert's model failed because it measured damages which were not attributable to the particular theory of recovery. 569 U.S. at 32. In that case, the district court had accepted only one theory of antitrust impact – the

---

[2] Defendants attempt to poke holes in Dr. Rupert's method, arguing that it cannot analyze the financial situation and thus the decline in profit of *each* individual fisherman in the class because, for instance, it cannot assess whether a member of the class caught some seafood in blocks outside of the class blocks, or participated in other income-generating activities "such as oil cleanup work." *See Opp.* 18:19–19:12. The Court is not convinced that these issues do not go to an economic damages inquiry, and this Court extensively considered these issues in its prior Order. *See Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) ("Comcast did not alter our holding that individualized damages issues do not alone defeat certification."); *Fisher Order* 15–16. Moreover, Plaintiffs explained at the hearing that the individual identification of the vessel number, the species caught, the date of the catch, etc., can be provided by the CDFW at a later phase for each member who intends to participate, or either party could have requested that the CDFW release this information. And Plaintiffs stated that the CDFW data was collected on a transaction-by-transaction basis and can be sorted by species, by transaction, and by block, to match the class definition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

overbuilder theory – as capable of classwide proof and rejected the other theories, but the model used "did not isolate damages resulting from any one theory of antitrust impact," and thus it "failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised." *Id.* at 31–32, 36. The Court explained that the model failed because it "identifies damages that are not the result of the wrong." *Id.* at 37. Here, Rupert's difference-in-differences regression method purports to specifically control for variables other than oil from the spill that might impact fisheries' profits, and thus, unlike *Comcast*, purports to "isolate damages caused by the spill." *See Reply* at 6:1–4; *Fisher Order* at 14. Second, the Oil Worker Subclass that was the subject of the Ninth Circuit's opinion included all "individuals and entities who were employed, or contracted, to work on or to provide supplies, personnel, or services for the operations of" certain off-shore oil drilling platforms. *See* Dkt. # 419. There, the Ninth Circuit concluded that Dr. Rupert's economic loss model for the Oil Worker class, a class that included a "diverse collection of parties potentially scattered across the globe," numerous members "not injured as a result of the shutdown," and those "subject to varying factors other than the oil spill that might affect their success and profitability," was insufficient to establish predominance. *See Andrews v. Plains All American Pipeline, L.P.*, 2019 WL 2880970, at *2 (9th Cir. July 3, 2019). This was because the model, which was based on general industry statistical and survey data, purported to show "the Pipeline shutdown's general impact: a 34 percent decrease in employment in the local oil and gas industry due to the shutdown," indicating that more than half of the employees within the class were not injured at all, and this generalized approach did not "address whether businesses within the class suffered *any* economic injury or whether the shutdown caused that injury." *Id.* (emphasis added). That broad class definition, and the highly general data, were insufficient. But the CDFW data used here includes the identity of individual fishers and vessels who landed catch, and Plaintiffs' definition is tailored to track the exact blocks impacted by the spill. *Reply* 7:2–21, n.8; *see generally Rupert Report II*. The Court is thus not convinced that the Ninth Circuit decision controls the Court's determination here.

The Court thus concludes at this time that Plaintiffs' experts have supplied a method for determining causation and injury as a common inquiry, and that predominance is satisfied, sufficient to support their amended class definition.

    *iv.*    *Remaining Rule 23 Requirements*

To justify class certification, Plaintiffs must satisfy all of Rule 23(a)'s requirements – numerosity, commonality, typicality, and adequacy – and at least one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-4113 PSG (JEMx) | Date | November 22, 2019 |
|---|---|---|---|
| Title | Keith Andrews et al. v. Plains All American Pipeline, L.P et al. | | |

2011). This Court has previously determined that each of the elements of Rule 23 are met with respect to the Fisher Subclass. *See Fisher Order* at 22–27. Defendants do not contest that these requirements, other than predominance, are satisfied. *See generally Opp.* The minimal changes to the class definition do not alter the Court's conclusions as to the remaining Rule 23 requirements. For the same reasons that the original definition did, the Court concludes that the amended definition satisfies these requirements. *See Fisher Order*; *Mot.* 12–19.

III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to amend the order certifying the Fisher Subclass. The Court **CERTIFIES** the Fisher Subclass under Plaintiffs' proposed amended definition. The Court **DENIES** Defendants' ex parte application.

**IT IS SO ORDERED.**