Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415)956-1000
Facsimile: (415) 956-1008

*Class Counsel*
(*additional counsel listed at signature*)

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Leila J. Noël (CSB No. 114307)
lnoel@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

*Lead Trial Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>Defendants. | **Case No.  2:15-cv-04113-PSG-JEMx**<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 1: EXCLUDE FROM EVIDENCE THE PRELIMINARY REPORTS OF DR. LENIHAN, DR. RUPERT, AND MR. ROBERTS**<br><br>Judge:    Hon. Philip S. Gutierrez |

# **TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ............................................................................3

II. LEGAL STANDARD......................................................................................5

III. ARGUMENT...................................................................................................6

    A. Argument and Evidence Concerning Superseded Class Definitions Would Be Wasteful, Confusing and Usurp the Court's Duty to Instruct the Jury Regarding the Law ........6

    B. Argument and Evidence Concerning the Preliminary Lenihan Reports Would Confuse and Potentially Mislead the Jury........................................................................6

    C. Argument and Evidence Concerning the Preliminary Lenihan Reports or Declarations Would Confuse the Jury and Waste Time .............................................................7

    D. Dr. Rupert's Incorporation of the Erroneous Data Is Not a Proper Basis to Challenge His Credibility, and Is Thus Irrelevant and Risks Undue Prejudice and Jury Confusion ................................................................................8

    E. Argument and Evidence Concerning the Preliminary Analysis of a Non-Testifying Expert (Mr. Steve Roberts) Would Be Confusing, Misleading and Wasteful.....11

    F. Plains Should be Precluded from Referring to the Fact that This Motion Was Filed or Decided ...............................11

IV. CONCLUSION ..............................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1996) ................................................................................ 10

*Borunda v. Richmond*,
  885 F.2d 1384 (9th Cir. 1988) .............................................................................. 5

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................... 9

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D. N.J. 2004) ..................................................................... 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ................................................................................ 8

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ..................................................................... 9

*Magadia v. Wal-Mart Assocs., Inc.*,
  No. 17-CV-00062-LHK, 2018 WL 6003376 (N.D. Cal. Nov. 15, 2018) ............. 5

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ................................................................................ 5

*Old Chief v. United States*,
  519 U.S. 172 (1997) ........................................................................................... 10

*Standard Oil Co. of Cal. v. Moore*,
  251 F.2d 188 (9th Cir. 1957) ................................................................................ 8

*Taylor v. Burlington N.R.R.*,
  787 F.2d 1309 (9th Cir. 1986) ............................................................................ 10

*United States v. Hearst*,
  563 F.2d 1331 (9th Cir. 1977) .............................................................................. 5

*United States v. Olano*,
  62 F.3d 1180 (9th Cir. 1995) ................................................................................ 5

**RULES**

Fed. R. Evid. 403 .............................................................................................. 5, 10

**OTHER AUTHORITIES**

Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Civil*
§ 7:4 (4th ed. 2019) ......................................................................................... 6, 11

## I.  INTRODUCTION

This motion in limine seeks to avoid jury confusion concerning the claims asserted by the certified Fisher Subclass. As the voluminous record demonstrates, much of the scientific evidence in this case has emerged slowly over time. Of necessity, some experts provided preliminary analyses for purposes of class certification that were modified as new facts emerged and methodologies evolved. The Court is well-equipped to understand those preliminary analyses for what they were: good faith efforts to address the requirements of Rule 23 even as discovery was proceeding and final opinions were still being developed.

This motion addresses the preliminary reports of Dr. Hunter S. Lenihan (who applied Dr. Mezić's oiled blocks analysis to determine impacts on specific fisheries), the superseded March 2019 and June 2019 reports of Dr. Peter Rupert, and the preliminary report of forensic accountant Mr. Steve Roberts (who designed a but-for analysis of lost earnings and profits for the proposed fisher subclass). Lenihan and Roberts both submitted preliminary reports in 2016 in the context of Plaintiffs' original motion for class certification. As more facts emerged, Dr. Lenihan issued an amended and supplemental (final) report in August 2019, and Plaintiffs engaged a different expert—Dr. Peter Rupert—to replace Mr. Roberts and conduct a difference-in-differences ("diff-in-diff") regression analysis rather than the methodology proposed by Mr. Roberts. Mr. Roberts never submitted a final report and will not testify at trial.

The final expert opinions of Dr. Lenihan—and the corresponding opinions of defense experts Drs. Hal Sider, Ann Michele Morrison, and Avram S. Tucker—are complex, detailed, and will present a significant challenge for the jury in and of themselves. It would be unnecessarily confusing to compound the jury's task by introducing evidence or argument concerning Dr. Lenihan's *preliminary* opinions (expressed more than three years ago and since superseded) compared to his *final* opinions (expressed in August 2019). Injecting superseded opinions and analysis into the mix, that

relate to class definitions other than the version presently at issue, would not serve any useful purpose and would only foster unnecessary jury confusion.

Similarly, Dr. Rupert designed and will present at trial a diff-in-diff regression analysis. He did not rely on Mr. Roberts' preliminary "but-for" analysis. Dr. Rupert welcomes the opportunity to explain *his analysis* at trial, but it would be unfair and potentially confusing if he were cross-examined on the preliminary opinions of *another expert* (Mr. Roberts), who will not be at trial and upon whom Dr. Rupert did not rely. Moreover, analysis Dr. Rupert conducted and reports he prepared that relate to different class definitions from that currently certified are irrelevant to his current opinions and questions about such analysis would again, serve no purpose but to sow unnecessary confusion.

Plaintiffs respectfully move the Court for an Order in limine precluding any reference, argument or evidence at trial related to (1) any definitions of the Fisher Subclass other than the pending Subclass definition, as amended and certified by this Court (*see* Dkt. 577), to be presented at trial; (2) reports, analyses or opinions of Dr. Lenihan[1] or Dr. Rupert[2] other than those relating to the pending Subclass definition; (3) reports, analyses or opinions of Mr. Roberts; and (4) the fact that this motion in limine was filed and/or granted. Granting this motion would not preclude Plains from offering

---

[1] As to Dr. Lenihan, Plaintiffs seek to exclude any reference, argument or evidence at trial regarding Dr. Lenihan's opinions in this matter prior to the August 2019 Amended and Supplemental Expert Report of Hunter S. Lenihan, Ph.D., include specifically, the 2016 declarations prepared by Dr. Lenihan in support of class certification (Dkt. Nos. 127, 131, 146, 182, 183, 184, 218); the March 29, 2019 Expert Report of Hunter S. Lenihan, Ph.D., and corrections to the report, dated June 18, 2019 and July 14, 2019; and the June 21, 2019 Rebuttal Report of Expert Hunter S. Lenihan Ph.D.

[2] As to Dr. Rupert, Plaintiffs seek to exclude any reference, argument or evidence at trial regarding Dr. Rupert's opinions in this matter prior to the August 2019 Amended and Supplemental Expert Report of Peter Rupert, Ph.D., including specifically, the Expert Report of Peter Rupert, Ph.D., March 29, 2019; the Expert Report of Peter Rupert, Ph.D. (Corrected) March 29, 2019 (signed April 1, 2019); and Peter Rupert Ph.D.'s Rebuttal to the Expert Report of Ann Michelle Morrison, Sc.D. (signed June, 21, 2019), as well as alternative regressions (e.g. original class and all blocks analysis) contained in his August 2019 report.

argument and evidence regarding any alleged weaknesses in Lenihan's and Rupert's final opinions offered at trial.

## II. FACTUAL BACKGROUND

Plains has relentlessly attacked the Court's well-reasoned Orders granting certification of the Fisher Subclass. Plaintiffs originally moved for certification of a fisher class on August 22, 2016, (Mot. for Class Certification, Dkt. 122). The motion was supported, *inter alia*, by declarations from Dr. Igor Mezić (who modeled the "fate and transport" of Line 901 oil in the environment and identified specific "oiled blocks" where fisheries were impacted), Dr. Hunter Lenihan, and forensic accountant Steve Roberts.[3] Plains opposed the motion for class certification and moved to strike all of Plaintiffs' experts.[4] Plaintiffs replied.[5] The Court certified the Fisher Class and denied Plains' motions to strike Mezić, Lenihan and Roberts. Order Granting in Part and Den. in Part Pls.' Mot. for Class Certification, and Den. Mots. to Strike, Dkt. 257 ("Fisher Order I"). Fisher Order I defined the class with reference to specific fishing blocks. *Id*. at 28.

After the Court entered Fisher Order I, Plaintiffs conducted significant discovery and expert work to comply with the Court's directive to match their Subclass definition to the evidence. Dr. Mezić completed his oil transport analysis, which demonstrated that Plains spilled significantly more oil into the Pacific Ocean than had been publicly reported, affecting a significantly greater number of fishing blocks.[6] Dr. Mezić's analysis revealed that the original class definition was both over- and under-inclusive. The original definition included some blocks that Dr. Mezić's study demonstrated were unoiled or

---

[3] Dkt. 127 (Lenihan Decl.); Dkt. 128 (Mezić Decl.); and Dkt. 129 (Roberts Decl.). *See also* Dkt. 146 (Corrected Lenihan Decl.).

[4] Dkt. 150 (Motion to Strike Decls. of Mezić, Lenihan, Roberts, and Randall Bell); Dkt. 153 (Defs.' Mem. Opp. Mot. for Class Certification).

[5] Dkt. 207 (Pls.' Reply In Support Of Mot. Class Certification).

[6] In Dr. Mezić's preliminary analysis in support of Plaintiffs' first motion for class certification, Dkt. 122, he used Plains' own estimate of the spill volume to determine where the oil went. Subsequent analysis, corroborated by Plains' own internal documents, demonstrates that Plains spilled significantly more oil than it has admitted to date.

received only small amounts of oil, but excluded many others for which Dr. Mezić's study revealed significant oiling. *See* Order Granting Pls.' Mot. to Am. the Fisher Class, Dkt. 577 ("Fisher Order II") at 9. Dr. Lenihan submitted a supplemental report accounting for the new information provided by Dr. Mezić. Dkt. 606-14.

Rather than rely on Mr. Steve Roberts to determine damages individually for class members, Plaintiffs engaged Dr. Peter Rupert, UCSB Professor of Economics and the Director of the Economic Forecast Project, to determine the impact of the spill on the Subclass and, importantly, the aggregate damages to fishers who fished in the blocks oiled by Plains and processors who bought fish caught there. Dr. Rupert applied a diff-in-diff regression methodology to aggregate commercial fish landing data (data that each fisher supplies to the CDFW in the form of fish tickets for every day of commercial catch)[7] for each of the blocks in Plaintiffs' original definition, as well as the additional blocks that Dr. Mezić's model determined were oiled by Plains. Dr. Rupert's diff-in-diff regression not only confirmed the correlation between the amount of oiling and reduction in catch, it isolated the impact of the oil spill from other factors that could affect the amount of catch.

Armed with Dr. Mezić's fate and transport analysis, Dr. Lenihan's supplemental report and Dr. Rupert's confirmation that oiled fishing blocks lost significant fishing harvests as a result of Plains' spill, Plaintiffs moved to amend the Fisher and Fish Industry Subclass definition so that it conformed to the evidence of oiling and class-wide damages. In response, on November 22, 2019, the Court certified the amended Subclass. *Fisher Order II.*

A few months later, Plains moved to decertify the amended Fisher and Fish Processors' Subclass, yet again, challenging the updated reports of Dr. Lenihan and Dr. Rupert. Dkt. 647 (Mot. to Decertify Fish Ind. Subclass). This Court denied the motion to

---

[7] CDFW data is collected on a transaction-by-transaction basis and the data used by Dr. Rupert can be sorted by species, by transaction, and by block, to match the class definition. Fisher Order II at 14 n.2.

decertify and denied the renewed motions to strike Drs. Lenihan and Rupert. Order Den. Mots. To Strike, Defs.' Mot. to Decertify, Dkt. 714 ("Fisher Decert. Denial") at 6-9, 9-12.[8]

### III. LEGAL STANDARD

The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties. *Navellier v. Sletten*, 262 F.3d 923, 941-42 (9th Cir. 2001). In addition, the Federal Rules of Evidence "confer broad discretion on the trial judge to exclude evidence on any of the grounds specified in Rule 403." *United States v. Hearst*, 563 F.2d 1331, 1349 (9th Cir. 1977); *see also United States v. Olano*, 62 F.3d 1180, 1204 (9th Cir. 1995) ("[T]rial courts have very broad discretion in applying Rule 403[.]") (alteration in original) (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1388 (9th Cir. 1988)). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Magadia v. Wal-Mart Assocs., Inc.*, No. 17-CV-00062-LHK, 2018 WL 6003376, at *1 (N.D. Cal. Nov. 15, 2018) (alteration in original) (quoting Fed. R. Evid. 403).

A motion in limine is not restricted to evidentiary matters and may be used to prevent unwanted behaviors at trial, challenge evidence or practices that might be confusing to the jury, or to maintain the status quo at trial until the court can decide a disputed matter. For example, the motion may be used to prohibit reference to matters during voir dire, to prevent a party or witness from engaging in expected bad behaviors or demonstrations, or to prevent the jury from hearing objectionable questions and statements, the prejudicial effect of which might not be cured by a court's admonishment or limiting instruction. The Court may order a party and its counsel not to mention the

---

[8] Plains also moved for summary judgment against the Fisher Subclass, which the Court largely denied. Dkt. 714 at 12-19.

fact a motion in limine was filed or granted. Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Civil* § 7:4 (4th ed. 2019).

## IV. ARGUMENT

### A. Argument and Evidence Concerning Superseded Class Definitions Would Be Wasteful, Confusing and Usurp the Court's Duty to Instruct the Jury Regarding the Law

The Court has determined that class certification is proper and has defined the Class accordingly. There is no legitimate reason to allow Plains to argue or insinuate that the Court's ruling on this issue is incorrect.

Moreover, any reference to the procedural history of class certification motion practice and/or superseded class definitions would have no salutary purpose. Parsing the evolution of the class definition would be wasteful and inherently confusing. There is no probative value in superseded class definitions that were based on incomplete data or since-updated assumptions.

Plains should be precluded from presenting any evidence or argument related to definitions of the Fisher Subclass other than the class definition presented at trial.

### B. Argument and Evidence Concerning the Preliminary Lenihan Reports Would Confuse and Potentially Mislead the Jury

Dr. Lenihan's August 2019 and later supplemental and amended reports (jointly, "August 2019 Reports") represent his final determination on the relevant issues based on the current class definition and are the only opinions he will offer as part of Plaintiffs' case-in-chief. Any argument or evidence introduced to impeach Dr. Lenihan should be directed to the actual opinions set forth in the August 2019 reports—not his preliminary opinions expressed at an early stage of the litigation based on incomplete facts and analysis. Allowing opposing counsel to present evidence or argument concerning Dr. Lenihan's preliminary reports or declarations will create the risk of misleading or confusing the jury and create confusion with conflicting class definitions. The jury might incorrectly infer that evolving facts and evolving expert analysis that is normal in the

course of pretrial proceedings and common in cases of this scope and complexity, indicates lack of reliability or integrity, which would be highly misleading and unfair. As this Court has acknowledged, the supplemental Lenihan report is not defective simply because it represents an updated, more targeted analysis than that presented in Dr. Lenihan's prior reports. *See generally* Dkts. 577, 714. To avoid confusion and misleading insinuations, the case presented to the jury should be limited to the August 2019 Reports issued by Dr. Lenihan and presented at trial.

### C. Argument and Evidence Concerning the Preliminary Lenihan Reports or Declarations Would Confuse the Jury and Waste Time

At trial, Plaintiffs will present Dr. Lenihan's final opinions and the support for those opinions. Plains undoubtedly will offer evidence designed to rebut Dr. Lenihan, but that evidence should not include his preliminary and since-superseded reports. It is the jury's duty to consider the evidence on both sides and decide the facts, which will be a significant challenge given the technical nature of the expert opinion testimony.

Anything beyond this would be a waste of time and detract from the jury's proper focus. The Court's time—and that of the jury—is precious. Plaintiffs contend that justice will be best served by limiting the evidence and argument at trial to the real issues in dispute, and excluding evidence and argument that is irrelevant or tangential at best. Questions about Dr. Lenihan's preliminary reports or declarations—since superseded—that do not relate to the currently certified class, would be confusing and should be excluded in the interest of avoiding needless detours by Plains and the additional time Plaintiffs would then be forced to expend explaining to the jury why Plains' misdirection should not be deemed persuasive.

### D. Dr. Rupert's Incorporation of the Erroneous Data Is Not a Proper Basis to Challenge His Credibility, and Is Thus Irrelevant and Risks Undue Prejudice and Jury Confusion

Plaintiffs also move to exclude any reference on cross-examination to Dr. Peter Rupert's superseded March and June 2019 initial and rebuttal reports. Dr. Rupert proffered an initial expert report and opinion on March 29, 2019, which incorporated toxicity analysis performed by another expert, Dr. Hunter S. Lenihan. Dr. Lenihan's toxicity analysis was later discovered to contain a numerical error due to an incorrect assumption about units of measurement, and was subsequently corrected, as required by Federal Rule of Civil Procedure 26. Accordingly, Dr. Rupert's opinion was also amended to reflect changes required by correction of Dr. Lenihan's mistake. Nothing in Dr. Rupert's March 2019 report relates to the class definition that this Court ultimately certified and so references to analysis in that report would merely create confusion by introducing evidence regarding conflicting class definitions. Moreover, the superseded March report prepared by Dr. Rupert was not relied upon in any dispositive motion briefing by Plaintiffs and does not provide a basis for any claim upon which the jury will be asked to decide. Since the mistake was not Dr. Rupert's, any reference to the superseded report would only unnecessarily confuse the jury and risk undue prejudice if a juror mistakenly discredits Dr. Rupert as the result of a mathematical error by another expert.

The universe of appropriate subjects to challenge an expert witness on cross-examination is broad. *See Standard Oil Co. of Cal. v. Moore*, 251 F.2d 188 (9th Cir. 1957), *cert. denied*, 356 U.S. 975 (1958). However, Dr. Rupert's March report is irrelevant as to the "soundness of his methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995). Dr. Rupert's methodology did not depend upon Dr. Lenihan's toxicity figures, either in the March or August report, other than determining which blocks would be included in the control and treatment groups.

The March 2019 diff-in-diff regression showed that there was a substantial reduction in fish harvest within the original class of fishing blocks that resulted from the Spill, and the August amended report was not performed to correct any errors in the underlying methodology or that showing, but to update the blocks included in the diff-in-diff analysis to reflect the proposed class definition, as required by law. *See* Dkt. 577 at 7 ("The Court agrees with Plaintiffs that the August reports of Drs. Lenihan and Rupert are properly supplemental in that they correct an arithmetic error that was discovered."); *Comcast Corp. v. Behrend,* 569 U.S. 27, 35 (2013) ("[A] plaintiff's damages case must be consistent with its liability case . . .") (internal quote omitted). The August report contained a diff-in-diff for the original certified class blocks (because, at that time the Court had not yet agreed to the proposed modified class definition), a diff-in-diff for fishing blocks that were projected to have been oiled based on Dr. Igor Mezić's updated expert report, and a diff-in-diff for the then-proposed, subsequently-approved, amended certified class blocks. Dr. Rupert utilized "the same methodology in his amended report, applied to a different set of fishing blocks." Dkt. 577 at 7.

Second, Dr. Rupert is not a marine biologist, and his use of the original class blocks or any other universe of potentially affected blocks in his March report is not relevant as to the weight of his testimony as an economist. While in some instances it may be proper for an expert to review the underlying conclusions of an expert on whose opinions she relies, *see Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011), here, Dr. Rupert's opinion was not duplicative of Dr. Lenihan's, and he never purported to analyze the toxicity of fishing blocks based on Dr. Mezić's data.

Third, the mere fact of a correction or amendment alone does not impact the credibility of an expert. "There is no stigma attached to such error correction, nor should there be. If anything, it strengthens the quality of the expert report." *Crowley v. Chait*, 322 F. Supp. 2d 530, 540 (D. N.J. 2004). Dr. Rupert's ability to perform the same analysis with similar conclusions while using updated fishing blocks shows, if anything, the

widespread and pervasive effects of the Spill on the marine waters off of the Refugio Coast.

Evidence of Dr. Rupert's superseded March report is also inadmissible under Federal Rule of Evidence 403, which provides that a court may exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This Court has broad discretion to exclude evidence when its probative value is outweighed by the danger of misleading the jury or confusing issues. *See Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1315 (9th Cir. 1986); *In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir. 1996). Given the similarity between, and complexity of, the March and August diff-in-diff analyses, a juror could easily conflate the results.

Further, it is highly likely that a juror could mistakenly attribute the unit-conversion error to Dr. Rupert, and errantly discredit his opinion as result of Dr. Lenihan's mistake, unfairly prejudicing Plaintiffs. *See Old Chief v. United States*, 519 U.S. 172, 173 (1997) (unfair prejudice occurs when a factfinder is lured to decide an issue based on an improper basis). Dr. Rupert's August report performs the same diff-in-diff analyses as his March report, but with updated treatment and control groups that reflect the amended class definition. As this Court has previously found, the "attacks Defendants' experts leveled at Dr. Rupert's initial report 'can be applied equally' to his same methodology in his amended report." Dkt. 577 at 7. Thus, the August report has "substantially the same or greater probative value but a lower danger of unfair prejudice," *Old Chief* at 173, and should be used instead of the March report.

Given the extremely low relevancy of the March report, any probative value gained by referencing the earlier report would be dwarfed by the potential for unfair prejudice or juror confusion. As a result, it should be barred under Fed. R. Evid. 403's balancing test.

### E. Argument and Evidence Concerning the Preliminary Analysis of a Non-Testifying Expert (Mr. Steve Roberts) Would Be Confusing, Misleading and Wasteful

Mr. Roberts is not a testifying expert. He offered a preliminary but-for analysis for purposes of class certification, which was sufficient for the purpose it was offered. As the litigation proceeded, Plaintiffs hired Dr. Rupert as a testifying expert using diff-in-diff regression analysis to determine classwide damages and prove causation, and the Court relied on Dr. Rupert's testimony in its orders amending the class definition (Fisher Order II) and denying decertification (Fisher Decert. Denial).

Plains is free to offer evidence and argument concerning Dr. Rupert's expert opinions, but it should not be permitted to muddy the waters by offering evidence or argument concerning Mr. Robert's no-longer-relevant opinions that proposed using an entirely different methodology to that used by Dr. Rupert. Any such efforts would be confusing, potentially misleading, and waste valuable time at trial.

### F. Plains Should be Precluded from Referring to the Fact that This Motion Was Filed or Decided

Whether or not this motion is granted, Plains should not be allowed to offer evidence or argument referring to the fact this motion was filed and decided. Plaintiffs are entitled to file motions in limine to narrow and clarify the evidence that will be presented at trial, and it would be highly improper for Plains to insinuate that there is any negative inference to be drawn. *See* Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook Civil* § 7:4 (2019) ("The court may order a party and its counsel not to mention the fact a motion in limine was filed or granted.").

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs move to preclude any reference, argument, or evidence at trial relating to any definitions of the Fisher Subclass other than the pending Subclass definition to presented at trial, any analyses or opinions of Dr. Lenihan or Dr.

Rupert other than those relating to the pending Subclass definition, and any analyses or opinions of Mr. Roberts.

Dated: July 17, 2020

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By: */s/ Juli E. Farris*

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
Alison Chase (CSB No. 226976)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Lynn Lincoln Sarko
(*Admitted Pro Hac Vice*)
Gretchen Freeman Cappio
(*Admitted Pro Hac Vice*)
Michael D. Woerner
(*Admitted Pro Hac Vice*)
Raymond Farrow
(*Admitted Pro Hac Vice*)
Daniel Mensher
(*Admitted Pro Hac Vice*)
Laura R. Gerber
(*Admitted Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900

Robert L. Lieff (CSB No. 037568)
Elizabeth J. Cabraser (CSB No. 083151)
Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
Jacob H. Polin (CSB No. 311203)
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956.1000
Facsimile: (415) 956.1008

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*

**CERTIFICATE OF SERVICE**

I, Juli Farris, hereby certify that on July 17, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Juli E. Farris*
Juli E. Farris