1   Robert J. Nelson (CSB No. 132797)
    rnelson@lchb.com
2   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
4   Facsimile: (415) 956-1008

5   Juli E. Farris (CSB No. 141716)
    jfarris@kellerrohrback.com
6   KELLER ROHRBACK L.L.P.
    801 Garden Street, Suite 301
7   Santa Barbara, CA 93101
    Telephone: (805) 456-1496
8   Facsimile: (805) 456-1497

9   *Class Counsel*

10  A. Barry Cappello (CSB No. 037835)
    abc@cappellonoel.com
11  CAPPELLO & NOËL LLP
    831 State Street
12  Santa Barbara, CA 93101-3227
    Telephone: (805)564-2444
13  Facsimile: (805)965-5950

14  *Lead Trial Counsel*
    *(additional counsel listed at signature)*
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19  KEITH ANDREWS, an individual, et al.,          Case No. 2:15-cv-04113-PSG-JEMx
20
                                                    **NOTICE OF MOTION AND MOTION
21              Plaintiffs,                         FOR PRELIMINARY APPROVAL OF
                                                    CLASS ACTION SETTLEMENT AND
22      v.                                          DIRECTION OF NOTICE UNDER
                                                    RULE 23(E)**
23  PLAINS ALL AMERICAN
24  PIPELINE, L.P., a Delaware limited             Date:       June 10, 2022
    partnership, et al.,                           Time:       1:30 p.m.
25                                                  Judge:      Hon. Philip S. Gutierrez
                Defendants.                         Courtroom:  6A
26
27
28

TO ALL THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the Honorable Philip S. Gutierrez, in Courtroom 6A of the United States District Court, Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012-4565, has specially set a hearing on June 10, 2022, at 1:30 p.m. for Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e), unless the Court elects to decide this unopposed motion without a hearing. Plaintiffs, by and through their attorneys of record, will move and hereby do move the Court for an order pursuant to Fed. R. Civ. P. 23(e) (1) granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Direction of Notice Under Rule 23(e). Plaintiffs request that in this order the Court do the following:

A.  Grant preliminary approval of the proposed Settlement;

B.  Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

C.  Appoint JND Legal Administration as Settlement Administrator and direct JND Legal Administration to carry out the duties and responsibilities of the Settlement Administrator as specified in the Settlement;

D.  Enter a scheduling order consistent with the dates set forth in the below Memorandum.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Settlement, including

2

1   all exhibits thereto; the Declaration of Robert J. Nelson In Support of Preliminary

2   Settlement Approval filed herewith; the Declaration of Jennifer Keough In Support

3   of Motion for Preliminary Approval of Class Action Settlement and Direction of

4   Notice under Rule 23(e) filed herewith; the arguments of counsel; all papers and

5   records on file in this matter, and such other matters as the Court may consider.

6

7

8   Dated:  May 13, 2022                    Respectfully submitted,

9                                           LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP

10

11  By:_____*Robert J. Nelson*_____
                    Robert J. Nelson

12  Robert J. Nelson (State Bar No. 132797)
    rnelson@lchb.com
13  LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
14  275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
15  Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
16
    *Class Counsel*
17

18

19

20

21

22

23

24

25

26

27

28

2408870.9                                    3

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

*Lead Trial Counsel*
*(additional counsel listed at signature)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>Defendants. | Case No. 2:15-cv-04113-PSG-JEMx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(E)**<br><br>Date:       June 10, 2022<br>Time:       1:30 p.m.<br>Judge:      Hon. Philip S. Gutierrez<br>Courtroom: 6A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

    I.     Factual Background ...............................................................2

    II.    Procedural Background..........................................................2

         A.    Investigation and Consolidation ................................2

         B.    Discovery...................................................................3

         C.    Class Certification.....................................................3

              1.    Fisher Class ...................................................3

              2.    Property Class................................................5

         D.    Summary Judgment ...................................................6

         E.    Trial Preparation.......................................................7

         F.    Mediation and Settlement..........................................7

    III.   Summary of Settlement Terms ..............................................8

LEGAL STANDARD FOR PRELIMINARY APPROVAL AND DECISION TO GIVE NOTICE.........................................................................8

ARGUMENT....................................................................................................9

    I.     The Proposed Settlement is Fair, Reasonable, and Adequate. .............9

         A.    Plaintiffs and Class Counsel Have Adequately Represented the Classes..........................................10

         B.    The Settlement Is the Result of Arm's Length Negotiations. ...........................................................11

         C.    The Relief for the Classes is Substantial. ................12

              1.    The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal. ....................................13

**TABLE OF CONTENTS**
**(continued)**

Page

2.   The Settlement Will Effectively Distribute Relief to the Classes. ....................................................... 15

3.   Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses. ....................................... 18

4.   The Settlement Agreement is Distinct from the Plans of Distribution and Class Counsel's Request for Fees and Expenses. ................................................... 19

5.   No Other Agreements Exist. ......................................... 20

D.   The Proposal Treats Class Members Equitably Relative to Each Other. ................................................................. 20

1.   The Proposed Plans of Distribution are Equitable. ........ 20

2.   Plaintiffs Will Request a Service Award for Class Representatives. ............................................................. 21

II.   The Court Already Certified the Classes. ........................................... 21

III.   The Proposed Settlement Administrator Should Be Appointed and the Proposed Notice Plan Approved. ........................................... 22

IV.   The Court Should Schedule a Fairness Hearing and Related Dates. ........................................................................... 23

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ................................................ 11, 14

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .................................................... 18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........................................................................... 10

*Cheng Jiangchen v. Rentech, Inc.*,
No. 17-1490, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................... 12, 15

*Fleming v. Impax Lab'ys Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .................................................... 21

*Greer v. Dick's Sporting Goods, Inc.*,
2020 WL 5535399 (E.D. Cal. Sept. 15, 2020) .................................................... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 13

*Hawkins v. Kroger Co.*,
2021 WL 2780647 (S.D. Cal. July 2, 2021) ....................................................... 21

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................... 11

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ................................................... 17, 18

*Hudson v. Libre Tech. Inc.*,
2020 WL 2467060 (S.D. Cal. May 13, 2020) ..................................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ......................................................................... 12, 18

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 17-MD-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .............. 9

*In re Extreme Networks Inc. Sec. Litig.*,
2019 WL 32907708 (N.D. Cal. Jul. 22, 2018) .................................................... 21

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................................... 8

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. March 17, 2021) .............................................. 20, 21

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ............................................................................. 19

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
2019 WL 13020734 (N.D. Cal. May 14, 2019) .................................................. 13

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) ....................................................... 21

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Khoja v. Orexigen Therapeutics, Inc.*,
   2021 WL 1579251 (S.D. Cal. Apr. 22, 2021).......................................22

*Loomis v. Slendertone Distrib., Inc.*,
   2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ................................10, 21

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) .....23

*ODonnell v. Harris County*,
   2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .................................21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022)................................................15

*Retta v. Millennium Prod., Inc.*,
   No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .....19

*Rodriguez v. W. Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009)................................................21

*Soto v. Diakon Logistics (Del.), Inc.*,
   2015 WL 13344896 (S.D. Cal. Feb. 5, 2015) .................................11

*Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*,
   2019 WL 8647819 (C.D. Cal. Nov. 4, 2019)...................................11

*Victor Lopez v. The GEO Group, Inc., et al.*,
   14-CV-6639 (C.D. Cal. April 25, 2016) .......................................18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)...............................................18

**Statutes**

California Code Section 8670, *et seq.* ...............................................3

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*......3

**Rules**

Fed. R. Civ. P. 23(c) .........................................................9, 22

Fed. R. Civ. P. 23(e) ........................................................*passim*

Fed. R. Civ. P. 23(f).............................................................4, 5

**Treatises**

4 William B. Rubenstein, *Newberg on Class Actions* § 13:49 (5th ed. Dec. 2021
   update)....................................................................*passim*

# **INTRODUCTION**

After seven years of hard-fought litigation, Plaintiffs now move the Court to approve a proposed Settlement of $184 million for the Fisher Class and $46 million for the Property Class, inclusive of attorneys' fees and costs.[1] The proposed Settlement is an exceptional achievement for each Class, and readily satisfies the fair, reasonable, and adequate criteria for preliminary settlement approval. The proposed Settlement represents a substantial percentage of the Plaintiffs' recoverable damages, even assuming a successful trial and appeals – which was by no means a certainty given the complexity and scale of this litigation.

This Settlement is informed by an extraordinary degree of discovery and motion practice. The Parties hired no fewer than 17 substantive experts who exchanged more than 50 expert reports, document discovery resulted in the production of over 1.5 million pages of documents, and more than 100 depositions were taken. Plaintiffs' claims survived a motion to dismiss and two motions for summary judgment. Plaintiffs successfully certified two Rule 23(b)(3) classes, including the Fisher Class and the Property Class. These certifications also survived multiple motions for decertification and several Rule 23(f) petitions to the Ninth Circuit. In addition, the case was ready for trial in advance of the June 2022 trial date. Witness and exhibit lists had been exchanged, jury instructions prepared, and motions in limine ruled upon.

As a result, Plaintiffs are well-positioned to evaluate the strengths and weaknesses of their case, as well as the proposed Settlement. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges of proving their claims at trial, the uncertainty of what amounts the jury would award

---

[1] The Settlement Agreement (the "Settlement") is Exhibit 1 to the concurrently filed Declaration of Robert J. Nelson In Support of Preliminary Settlement Approval ("Nelson Decl."). Unless otherwise specified, capitalized terms herein refer to and have the same meaning as in the Settlement.

even if Plaintiffs prevail on liability, and the risk and potential for delay associated with preserving any favorable trial verdict and damage award on appeal.

Plaintiffs are also mindful that the oil spill occurred seven years ago, on May 19, 2015. Class members already have waited a substantial time to recover any monies, and any appeal of a successful trial verdict could potentially add several years before awards could be distributed. This proposed Settlement—which is the product of extensive, arm's length negotiations overseen by experienced and accomplished mediators Honorable Daniel Weinstein (Ret.) and Robert A. Meyer of JAMS—ensures substantial and meaningful relief for the Class Members once the Settlement is finally approved.

For the reasons set forth herein, Plaintiffs respectfully request that the Court find that the Settlement satisfies Rule 23(e)'s standard for preliminary approval, approve notice to each of the Classes, and set a schedule for final settlement approval.

## BACKGROUND

### I.    Factual Background

This litigation arises from an oil spill that occurred at Refugio State Beach in Santa Barbara County on May 19, 2015. Defendants owned and operated an onshore pipeline that runs along the coast near Santa Barbara. When the onshore pipeline ruptured, oil from the pipeline spilled into the Pacific Ocean, and spread along the coast of Santa Barbara County, Ventura County, and Los Angeles County. Dkt. 88 ¶¶ 1, 2.

### II.   Procedural Background

#### A.    Investigation and Consolidation

In the aftermath of the oil spill, and as early as June 1, 2015, certain plaintiffs filed the first of several class action complaints. On November 9, 2015, this Court consolidated many of the cases into this lead case, *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, and administratively closed all other related cases.

*See* Dkt. 40. The operative pleading in this lead case is now the Second Amended Complaint ("SAC"), filed on April 6, 2016. Dkt. 88.

Plaintiffs brought claims for strict liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (California Code Section 8670, *et seq.*) and under the common law for ultrahazardous activities. Plaintiffs also brought common law claims for negligence, public nuisance, negligent interference with prospective economic advantage, trespass, continuing private nuisance, and a permanent injunction. Finally, Plaintiffs brought a claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq. See* Dkt. 88 ¶¶ 261-359.

**B.    Discovery**

By any measure, an extraordinary amount of discovery was conducted in this action. Inclusive of third party discovery, the parties obtained and exchanged more than 360,000 documents totaling over 1.5 million pages, including numerous highly technical documents and data sets relating to pipeline integrity. Nelson Decl. ¶ 3. The parties disclosed a total of 17 experts who produced 52 reports. *Id.*, ¶ 4. Each expert was deposed at least once, and many were deposed multiple times; for example, Plaintiffs' oil transport expert Dr. Igor Mezić, was deposed four times. *Id.*, ¶ 5. Plains also filed well over a dozen motions to strike Plaintiffs' experts' reports throughout the long life of this litigation. *Id.*, ¶ 6.

The parties also took more than 100 depositions. *Id.*, ¶ 7. In addition to the depositions of the experts described above, all 14 Class Representatives sat for day-long depositions prior to class certification, and Plaintiffs deposed 28 current and former Plains employees. *Id.*, ¶¶ 8-9.

**C.    Class Certification**

**1.    Fisher Class**

On August 22, 2016, Plaintiffs moved to certify a Class of fishers and fish processors impacted by Plains' spill, supported by reports from five experts. Dkt.

123. Plains deposed each Class representative, deposed each Plaintiffs' expert (and moved to strike three of them), and submitted nine expert reports in support of its opposition. After extensive briefing and oral argument, on February 28, 2017, this Court certified a Fisher and Fish Industry Class based on initial estimates of where the oil traveled and which fishing blocks were impacted. Dkt. 257.

Following two years of additional fact and expert discovery, on August 31, 2019, Plaintiffs sought to amend the Fisher Class definition to conform to the evidence of the fishing blocks actually impacted by the oil spill, supported by amended reports from two of their experts. Dkt. 531. Plains again deposed Plaintiffs' experts, moved to strike their reports, and opposed certification, serving amended reports from two of its own experts. Dkt. 545. Following voluminous briefing, this Court granted Plaintiffs' motion to amend the Fisher Class, certified the Fisher Class under Plaintiffs' proposed amended definition, and denied Plains' *ex parte* application to strike the reports of Plaintiffs' experts. Dkt. 577.[2]

Following that order, Plains petitioned the Ninth Circuit Court of Appeals to review the certification decision pursuant to Fed. R. Civ. P. 23(f). Plaintiffs opposed, and the Ninth Circuit denied the petition. *See Andrews et. al., v. Plains All American Pipeline, et. al*, Case No. 19-80167, Dkt. 3 (July 27, 2020).

---

[2] The amended and operative definition is: "All persons and businesses (Fishers) who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish and Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; and All persons and businesses (Processors) in operation as of May 19, 2015 who purchased such commercial seafood directly from the Fishers and re-sold it at the retail or wholesale level. Excluded from the proposed Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, and (3) businesses that contract directly with Plains for use of the Pipeline." *Id*. at 3.

4

Plains moved to decertify the Fisher Class no less than three times. Plains moved to decertify the original Fisher Class and moved to exclude the opinions of two of Plaintiffs' experts, filing three expert reports in support of that motion. Dkts. 566, 567, 568. Plaintiffs opposed (Dkts. 595-597), and this Court denied Plains' motion as moot after it granted certification of the amended Fisher Class in January 2020. Dkt. 630. Plains then filed a decertification motion as to the amended Fisher Class in 2020, along with a motion to strike the expert reports of Plaintiffs' economics expert Dr. Peter Rupert and Plaintiffs' fish toxicity expert Dr. Hunter Lenihan. Dkts. 647, 649. Plaintiffs opposed. Dkts. 668-670. After extensive briefing and oral argument, the Court issued an order denying Plains' motion to decertify and motion to strike. Dkt. 714. In June 2021, Plains filed a third motion to decertify the Fisher Class, which this Court also denied. Dkt. 874.

In recent weeks, after its most recent motion to exclude testimony of Dr. Rupert regarding damages after 2017 was denied, Plains advised that it intended to seek a six month extension of the June 2022 trial date in order to re-depose each of the Class Representatives, as well as Drs. Rupert and Lenihan, to submit additional supplemental and rebuttal reports from its own experts, and to potentially file renewed motion to strike testimony of Plaintiffs' experts, and to again seek to decertify the Fisher Class. Dkt. 939.

## 2.   <u>Property Class</u>

On March 5, 2018, Plaintiffs moved to certify a Property Class, based on their experts' analyses of where Plains' oil traveled and which coastal properties were impacted. Dkt. 428-1. Plains opposed, submitting reports from three of its own experts in support of its opposition, and moved to strike Plaintiffs' two expert reports. Dkts. 430, 440. On April 17, 2018, this Court granted Plaintiffs' motion for certification of the Property Class and denied Plains' motions to strike. Dkt. 454.

Plains petitioned the Ninth Circuit Court of Appeals pursuant to Fed. R. Civ. P. 23(f), Plaintiffs opposed, and the Ninth Circuit denied the petition. *See Andrews*

*et. al., v. Plains All American Pipeline, et. al*, Case No. 18-80054, Dkt. 4 (June 27, 2018).

Like the Fisher Class, the Property Class was subject to three decertification motions. Plains filed its first motion to decertify in October, 2019 (Dkt. 555-1), and another round of motions to exclude the reports of Dr. Igor Mezić and Plaintiffs' real estate economist expert Dr. Randall Bell. Dkt. 556-1 (Mezić), Dkt. 557-1 (Bell). Plaintiffs opposed, and this Court denied Plains' motion to decertify and denied Plains' motions to strike the reports of these experts. Dkt. 624. In 2020, Plains again moved to decertify the Property Class, which Plaintiffs opposed, and this Court denied. Dkts. 663, 718, 720. A year later, in June 2021, Plains filed a third motion to decertify the Property Class, which this Court denied. Dkt. 874.

### D.    Summary Judgment

Plains also filed multiple summary judgment motions. As to the Fisher Class, Plains moved for summary judgment in 2019. Dkt. 646. After extensive briefing, with thousands of pages of documents in support of and in opposition to the motion, and lengthy oral argument, the Court denied Plains' motion for summary judgment in large part. Dkt. 714.[3]

As to the Property Class, Plains moved for summary judgment on October 21, 2019. Dkt. 554. After Plaintiffs opposed and Plains replied, the Court ordered supplemental briefing, which both Parties submitted. Dkts. 635, 636. After additional oral argument, the Court issued an order on March 17, 2020, largely denying Plains' motion. Dkt. 720.[4]

---

[3] The Court granted summary judgment against a subset of the Fisher Class, the fish processors, as to their ultrahazardous liability, negligence, and public nuisance claims. *Id.* at 19.

[4] The Court granted summary judgment only as to certain claims for certain groups within the Property Class. The Court dismissed the trespass claims for the Unoiled Properties, because the Court held that the group of properties did not suffer physical oiling and could not state a trespass claim. The Court similarly granted Plains' motion for summary judgment as to negligent interference with prospective economic advantage, violation of the UCL, and a permanent injunction, following

In June 2020, Plains moved for reconsideration of the Court's summary judgment order. Plaintiffs opposed, and the Court denied Plains' motion. Dkt. 720.

### E.    Trial Preparation

This case was originally set to go to trial in September of 2020. The Parties had prepared the case for trial, exchanging witness lists, a joint exhibit list with 4,705 entries, jury instructions, deposition designations, and contentions of law and fact. The Parties also fully briefed 16 motions in limine and submitted multiple briefs regarding the trial plan.

The trial was postponed because of the COVID pandemic and was then re-set for June 2, 2022. This Court has since ruled on all 16 motions in limine and numerous other motions, including motions to amend witness and exhibit lists, motions to submit additional supplemental expert reports and to strike other reports. *See, e.g.,* Dkts. 891-900 (orders on motions in limine), Dkts. 857, 867 (order on amending witness list and exhibits for trial). The Court also adopted Plaintiffs' proposed trial plan over Plains' opposition. Dkt. 911.

In sum, to say this case was mature at the time the Parties reached the proposed Settlement is an understatement.  Plaintiffs were fully prepared to try the case, and the case was ready for trial. There should be no doubt that Plaintiffs and the Court are fully able to evaluate the case and the adequacy of the proposed Settlement.

### F.    Mediation and Settlement

The proposed Settlement is the product of arm's length negotiations. The parties and their counsel participated in three formal full-day mediations over the course of three years with Judge Daniel Weinstein (Ret.) and Robert Meyer of JAMS, in addition to informal negotiations and innumerable telephone conferences over this same time. The first mediation was held in the fall of 2019. The second mediation was held in the fall of 2020. The third full-day mediation took place on

Plaintiffs' concessions on these claims. *Id.* at 16.

March 22, 2022, after which the Parties still had not reached agreement. On April 13, 2022, the mediators submitted a so-called mediator's proposal that both Parties ultimately accepted. Since reaching an agreement in principle, the parties have worked diligently to draft the Settlement Agreement, notices, and other settlement exhibits, and to select the proposed Settlement Administrator. Nelson Decl. ¶ 10.

## III.   Summary of Settlement Terms

Under the proposed Settlement, Plains will pay $184 million to the Fisher Class. The Fisher Class Settlement Amount, together with interest earned thereon, will constitute the Fisher Class Common Fund. Separately, Plains will pay $46 million to the Property Class. The Property Class Settlement Amount, together with interest thereon, will constitute the Property Class Common Fund. The total combined value of the two Funds is $230 million. No portion of the combined $230 million will revert to Defendants. After deduction of notice-related costs and any Court-approved award of attorneys' fees, reimbursement of litigation expenses, and service awards to Class Representatives, the monies will be distributed to the Class members in accordance with plans of distribution to be submitted to, and approved by, the Court (the "Net Settlement Fund(s)").

Per the Settlement Agreement, Plaintiffs are entrusted with developing Plans of Distribution for each Common Fund, to be submitted to this Court for review and approval within 30 days of preliminary approval. Descriptions of the Plans of Distribution are described in Part I.C.2 below.

## LEGAL STANDARD FOR PRELIMINARY APPROVAL
## AND DECISION TO GIVE NOTICE

Class actions "may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  The Ninth Circuit has a "strong judicial policy . . . favor[ing] settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citation

omitted). Rule 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval:

> *First*, the court must make a "preliminary fairness determination" that it is likely to "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig*., No. 17-MD-02777-EMC, 2019 WL 536661, at \*7-8 (N.D. Cal. Feb. 11, 2019). *Second*, the court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the class, to give them an opportunity to object to or (in some cases) to opt out of the proposed settlement.[5] *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). *Third*, after a fairness hearing, the court may grant final approval to the proposed settlement on a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

## ARGUMENT

## I.   The Proposed Settlement is Fair, Reasonable, and Adequate.

A court should preliminarily approve a settlement and direct notice to the class if it finds that it is likely to approve the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B)(i); (e)(2). Rule 23 sets out the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms-length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).[6] The proposed Settlement readily satisfies these criteria.

---

[5] As discussed below, because class members have already been notified of the Court's certification and given the opportunity to opt out, no further opt-outs should be permitted in this case. *See* Argument III, *infra*.

[6] The amended Rule 23(e)(2) was not intended "to displace any factor" courts have articulated as relevant to the decision whether to approve a class settlement as fair

### A.   Plaintiffs and Class Counsel Have Adequately Represented the Classes.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis includes "the nature and amount of discovery" undertaken in the case. Fed. R. Civ. P. 23(e), 2018 adv. comm. note.

The Class Representatives and Class Counsel have prosecuted this action on behalf of the Classes with vigor and dedication for seven years, such that this factor is readily satisfied. *See* Fed. R. Civ. P. 23(e)(2)(A); 4 William B. Rubenstein, *Newberg on Class Actions* § 13:49 (5th ed. Dec. 2021 update) ("*Newberg*"). As detailed in § II.B., *supra*, Class Counsel aggressively pursued fact and expert discovery, obtaining more than one million pages of documents, preparing and defending numerous experts, and closely scrutinizing Plains' expert proof. Class Counsel also managed the extensive motion practice required by this case: they successfully certified both Classes and defeated Rule 23(f) petitions and three motions for decertification as to each Class; defeated summary judgment motions, supported by thousands of pages of documentation; and defeated countless other motions for reconsideration and motions to strike Plaintiffs' experts over this lengthy litigation. *See also Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*,

---

and adequate.  Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note.  In the Ninth Circuit, these factors are: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation omitted). The amended Rule 23(e)(2) "overlap[s]" with and "substantively track[s]" the Ninth Circuit's test for evaluating a settlement's fairness.  *Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at *4 n.4 (S.D. Cal. Mar. 9, 2021); *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020).  As such, Plaintiffs' analysis of Rule 23(e)(2) accounts for the Ninth Circuit's factors and discusses them where applicable.

2019 WL 8647819, at *6 (C.D. Cal. Nov. 4, 2019); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (class counsel "vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

The Class Representatives were also actively engaged in the case—each produced numerous documents, sat for a deposition, and regularly communicated with Class Counsel up to and including evaluating and approving the proposed Settlement. Nelson Decl., ¶ 8.

Finally, the Rule 23(e)(2)(A) "analysis is redundant of the requirements of Rule 23(a)(4) and Rule 23(g)," *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (Curiel, J.) (quotation marks omitted), which this Court previously held were satisfied in certifying both Classes, appointing Plaintiffs as Class Representatives, and appointing Lieff Cabraser, Keller Rohrback, Cappello & Noël, and Audet & Partners as Class Counsel. *See* Dkts. 257, 454, 577. It follows from these prior rulings that "the adequacy factor under Rule 23(e)(2)(A) is also met." *Hudson*, 2020 WL 2467060, at *5.

## B. <u>The Settlement Is the Result of Arm's Length Negotiations.</u>

The Court must also consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This "procedural concern[]" requires the Court to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. There is "no better evidence" of "a truly adversarial bargaining process . . . than the presence of a neutral third party mediator." *Newberg*, *supra*, § 13:50.

Here, the parties engaged in vigorous and contested settlement negotiations with the aid of Hon. Daniel Weinstein (Ret.) and Robert A. Meyer, Esq., both "neutral and experienced mediators." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020); *Soto v. Diakon Logistics (Del.), Inc.*, 2015 WL 13344896, at *3 (S.D. Cal. Feb. 5, 2015). The mediation efforts spanned three

11

years, punctuated by three all-day mediation sessions. Nelson Decl. ¶ 11. With Judge Weinstein and Mr. Meyer's assistance, the Parties separately negotiated the Fisher Class Settlement Amount and the Property Class Settlement Amount, and were only able to agree when the mediators finally issued their own "mediators' proposal" as to each Class to resolve the case. *Id.*, ¶ 12.

Class Counsel will apply for an award of attorneys' fees of up to 33 percent of both Common Funds. This award will be "separate from the approval of the Settlement, and neither [Plaintiffs nor Class Counsel] may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees." *Cheng Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). In addition, there is no "clear sailing" arrangement whereby Plains has agreed in advance not to oppose Class Counsel's request for fees. Finally, no portion of the Common Funds will revert to Defendants or their insurers. *See generally In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). For these reasons, no signs of collusion are present here. *Id.*

In summary, this Settlement is the result of strenuous, arm's length settlement negotiations, after years of hard-fought litigation.

### C.   <u>The Relief for the Classes is Substantial.</u>

The Court must "ensure the relief provided for the class is adequate," taking into account (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed distribution plan, including the claims process; (3) the terms of any proposed award of attorney's fees; and (4) any agreement made in connection with the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). These factors also overwhelmingly support preliminary approval.

1    1.    **The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal.**

2

3    In order to assess "the costs, risks, and delay of trial and appeal," Fed. R.

4    Civ. P. 23(e)(2)(C)(i), the Court must "evaluate the adequacy of the settlement in

5    light of the case's risks." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2019

6    WL 13020734, at *5 (N.D. Cal. May 14, 2019). This requires weighing "'[t]he

7    relief that the settlement is expected to provide'" against "'the strength of the

8    plaintiffs' case[ and] the risk, expense, complexity, and likely duration of further

9    litigation.'" *Id*. (alteration adopted) (first quoting Fed. R. Civ. P. 23(e)(2), 2018

10   adv. comm. note; and then quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026

11   (9th Cir. 1998)).

12   Here, the $46 million Property Class settlement represents over half of

13   claimed compensatory damages, and the $184 million Fisher Class settlement is

14   nearly 100 percent of the claimed damages through 2017 and more than one-third

15   of the total amount of claimed compensatory damages once the damages period was

16   extended to 2020. Dkt. 929 at 5-6. In light of the myriad challenges and years of

17   delay the Classes would have each faced in obtaining their maximum claimed

18   damages – essentially requiring them to run the table on complex issues of liability,

19   injury, damages, and class certification at trial and all the way through appeal – the

20   Settlement represents an exceptional result for these Classes.

21   For both Classes, Plains' liability for negligence and any possible punitive

22   damage exposure was hotly contested and turned on technical issues regarding

23   Plains' integrity management of its pipeline. Plaintiffs, through their experts,

24   contended that Plains should have known about the pipeline's corrosion years

25   before it ruptured, including through inspections performed in 2007 and 2012.

26   However, in the view of Plains and its experts, Plains acted reasonably by

27   performing in-line inspections and the required digs and repairs.

28

Apart from Plains' conduct, the Classes also faced arguments from Plains on both liability and damages proof. As reflected in Plains' many *Daubert* and summary judgment motions, Plains submitted expert opinions that the spill volume was a fraction of what Plaintiffs' asserted, which, if credited, potentially could have adversely impacted the liability case and limited the scope of damages for the Property Class. This spill volume dispute similarly could have affected liability and damages for the Fisher Class. Plains also attacked the Fisher Class damages model itself, focusing on confounding factors and the purported impact of the individual business decisions of Fisher Class members. Plains also made clear that it would use these same factual disputes to continue its attack on class certification, which it intended to bring yet again in these proceedings. In recent weeks, Plains previewed its requests for re-depositions of Class Representatives and Plaintiffs' experts, renewed *Daubert* motions, renewed decertification motions, and a request to delay the trial by another six months. Dkt. 939.

Had Plaintiffs secured a complete victory at trial (both on liability and damages), it is a near certainty that Defendants would have engaged in "vigorous post-trial motion practices . . . and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker*, 2020 WL 4260712, at \*7. Plains has arguably preserved all of its myriad arguments for appeal, which would therefore likely include a broad attack on every aspect of this seven-year-long litigation. Of course, Class Counsel were prepared to defend their clients' case against each of these challenges, just as they have repeatedly done in the face of the dozen or more case-dispositive challenges to date. Nonetheless, risks remained, and significant and painful delays to recovery would have been inevitable.[7]

---

[7] This case could very well have ended up at the Supreme Court, adding additional years of delay to an already seven-year-old case. For example, Plains continued to argue that the Court did not evaluate the number of class members who suffered injury, and could not do so on the basis of Plaintiffs' evidence. While the Ninth Circuit recently held that a court need not determine what percentage of class members suffered injury in order to certify a class, *see Olean Wholesale Grocery*

14

Finally, experienced counsel's support for the proposed Settlement also weighs in favor of preliminary approval. *See Cheng Jiangchen*, 2019 WL 5173771, at *6 ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." (citation omitted)). This is especially true given that extensive discovery and motion practice allowed both sides to gain "a good understanding of the strengths and weaknesses of their respective cases," reinforcing "that the settlement's value is based on . . . adequate information." *Newberg*, *supra*, § 13:49. Here, Class Counsel strongly support the proposed Settlement. *See generally* Nelson Decl., ¶¶ 19-20.

In summary, the proposed Settlement offers substantial monetary relief and simultaneously avoids the inevitable years-long delays the Classes would have suffered if the case were successfully tried and then appealed. This reality, and the potential risks outlined above underscore the strength of the proposed Settlement.

### 2. <u>The Settlement Will Effectively Distribute Relief to the Classes.</u>

Second, the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. If the Settlement is approved by the Court, the Fisher Class and Property Class Common Funds will be distributed to eligible Class Members who timely submit valid Claim Forms in accordance with the Court-approved Plans of Distribution. Claim Forms will be available to Class Members both on the settlement website and by calling the Settlement Administrator to request a Claim Form. Class Members who do not

---

*Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), the dissent in that case asserts that the circuits are split on this issue. Thus, the propriety of certification here could conceivably have led to U.S. Supreme Court review.

timely submit valid Claim Forms will not share in the Common Funds, but will otherwise be bound by the Settlement.

Plaintiffs will submit Plans of Distribution to the Court within 30 days, and summarize their key features below. Once the plans are submitted, they will be posted on the case website, www.PlainsOilSpill.com. As a part of the notice plan, Class members will be instructed to review the Plans of Distribution on the case website. Class members will be afforded the opportunity to review these plans well before they must decide whether to object to the Settlement.

*Fisher Class*. As to the Fisher Class, the Plan of Distribution is based upon the pro rata share and value of the catch attributable to each vessel and each fishing license, based on landing records from the California Department of Fish and Wildlife (CDFW). The Fisher Class Net Settlement Fund will be distributed among the Fisher Class Members proportionately, based on these landing records. The Plan also provides for the distribution of the Net Settlement Fund to fish processors based on the proportional share and value of fish purchased by each processor, based upon CDFW landing records.

After receiving the Claim Forms, the Settlement Administrator will determine whether Class Members are qualified to receive money, as well as the amount of any such distribution. The Settlement Administrator will be tasked with ensuring that all Settlement proceeds from the Fisher Net Settlement Fund are distributed consistent with the Plan of Distribution. Claimants will have the opportunity to object to their award, which will ultimately be subject to the Court's review pursuant to the Court's continuing jurisdiction over the Settlement of this action.

*Property Class*. As to the Property Class, Plaintiffs' expert Dr. Igor Mezić's oil transport model along with Dr. Bell's analysis projects that approximately 3,000 coastal properties experienced oiling. For these properties, Dr. Mezić's model determined that these properties experienced of heavy, moderate, and light oiling

according to NOAA categories for a specific number of days. *Id.*, ¶ 13. There are also coastal properties that did not directly experience oiling, but were adjacent to beaches that Dr. Mezić's projects did experience oiling. *Id.*, ¶ 14. As with the coastal oiled properties, Dr. Mezić's model determined what degree of, and how many days of oiling these beaches experienced according to the same NOAA categories. Accordingly, Plaintiffs can determine which properties were adjacent to heavily oiled, moderately oiled, or lightly oiled beaches on which days.

Plaintiffs' damages expert Dr. Randall Bell has determined the value of the beach amenity—the premium paid to live on the beach—for each class property, and the value of the loss of use of the beach amenity due to oiling, through a regression analysis.

The Plan of Distribution for the Property Class Net Settlement Fund will consider the value of the property's beachfront premium and the number of days and the level of oiling in allocating the award to each Class member. The Plan of Distribution will value more highly the losses to those properties that experienced oiling, and, of those properties that experienced oiling, will value more highly the properties that experienced heavier oiling.

As with the Fisher Class, the Settlement Administrator shall have the primary task of determining whether Class Members are qualified to receive money as well as the amount of any such distribution from the Property Class Net Settlement Fund to Class Members, subject to the Court's ultimate review.

Even as described in these general terms, the proposed Plans of Distribution readily satisfy Rule 23(e)(2)(c)(ii)'s requirement that settlement funds be distributed "in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (quoting *Newberg*, *supra*, § 13:53). In addition, no settlement funds will revert to Defendants; after payment of attorneys' fees, expenses, service awards, and notice administration, all money will be distributed to Class Members. Settlement

Agreement, IV. b. This is a "[s]ignificant[]" fact that further demonstrates the Settlement's fairness and effectiveness. *Hilsley*, 2020 WL 520616, at *7.

### 3. Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses.

The terms of Class Counsel's "proposed award of attorney's fees, including timing of payment," are also reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel will move the Court for an award of attorneys' fees of up to 33% of both Common Funds (approximately $75,900,000), plus costs of no more than $6.5 million. "Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award," but are empowered to adjust the award where there is an "adequate explanation in the record of any 'special circumstances,'" such as "exceptional results for the class," the "absence of supporting precedents," and the risk undertaken by Class Counsel. *Compare In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Courts in the Ninth Circuit "routinely" award fees that exceed the 25 percent benchmark where these factors are present. *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017); *Victor Lopez v. The GEO Group, Inc., et al*., 14-CV-6639 (C.D. Cal. April 25, 2016) (Gutierrez, J.) (awarding fee award of 33% of total recovery); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award of 33% of total recovery).

As noted, Class Counsel will seek a fee no greater than 33 percent of the recovery, given the exceptional results obtained for the Classes, the absence of supporting precedents in this type of litigation, and the risks undertaken by Class Counsel over the last seven years. Class Counsel's actual fee request, whatever it is, will be supported by Class Counsel's lodestar in the matter, which is currently estimated to equal approximately $58 million. Nelson Decl. ¶ 15.[8] Were Class

---

[8] These lodestar and expense figures are subject to the firms' continuing review.

18

Counsel to seek a 33 percent fee, Class Counsel would recover a 1.3 multiplier on their lodestar based on current estimates, and that multiplier will reduce over time as Class Counsel oversee the settlement approval and administration process. Multipliers of two or more are not uncommon. *See, e.g., Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *13 (C.D. Cal. Aug. 22, 2017) (Gutierrez, J.) (approving a 3.5 multiplier, and citing cases where multipliers of 6.85, 3.65, and 4.3 were found to be reasonable). Class Counsel will also seek reimbursement of litigation expenses of up to $6.5 million, which includes, among other things, expert witness costs, deposition costs, and previous class notice costs. Nelson Decl. ¶ 16.

Class Counsel will file their fee and expense application (along with Plaintiffs' request for service awards, discussed below) sufficiently in advance of the deadline for Class Members to object to the request. Class Members will thus have the opportunity to comment on or object to the fee application prior to the hearing on final settlement approval, as the Ninth Circuit and Rule 23(h) require. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 895 F.3d 597, 614–15 (9th Cir. 2018).

### 4. The Settlement Agreement is Distinct from the Plans of Distribution and Class Counsel's Request for Fees and Expenses.

Approval of the Settlement Agreement is meant to be separate and distinct from the Court's approval of the Plans of Distribution as well as Class Counsel's request for attorneys' fees and costs. As a result, a Class member might object to the Plans of Distribution or to Class Counsel's request for fees, or to the service awards to Class Representatives, and still the Settlement could nonetheless become final and effective. The purpose of this is to protect the Class and to help ensure that the Settlement becomes final and effective as soon as possible.

---

Nelson Decl. ¶ 15. Class Counsel will provide final lodestar and expense figures when they move for attorneys' fees and costs.

### 5.   No Other Agreements Exist.

Finally, Plaintiffs must identify any agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); *see* Fed. R. Civ. P. 23(e)(2)(C)(iv). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note.  Plaintiffs have not entered into any such agreements.

### D.   The Proposal Treats Class Members Equitably Relative to Each Other.

The final Rule 23(e)(2) factor asks whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Relevant considerations may include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note.

### 1.   The Proposed Plans of Distribution are Equitable.

As noted, Plaintiffs will submit two Plans of Distribution to the Court detailing how the monies will be distributed to the Class Members. While the plans are still being fine-tuned, the disbursement of the awards to both Classes will be based on transparent and objective criteria that reflect the Class members' recognized losses. *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *4–5 (S.D. Cal. March 17, 2021) (approving plan of distribution that "correlates each Settlement Class members' recovery to . . . each Settlement Class member's Recognized Loss"). As to the Fisher Class, the awards will be based on fish catch as measured by CDFW records; as to the Property Class, the awards will be based on how heavily and for how long each claimant's beachfront was impacted by oil.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:15-CV-04113-PSG

### 2. **Plaintiffs Will Request a Service Award for Class Representatives.**

Plaintiffs will request service awards of up to $15,000 to compensate the Class Representatives for the time and effort they spent pursing the matter on behalf of the Class, including participating in discovery and settlement. Nelson Decl. ¶ 17. Such awards "are fairly typical in class action cases." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  *See also Illumina*, 2021 WL 1017295, at *8 (granting $25,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff). The anticipated service awards do not raise any equitable concerns about the Settlement itself. *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (service awards "are not per se unreasonable" and "this factor weighs in favor of preliminary approval"); *see Loomis*, 2021 WL 873340, at *8 (granting final approval to settlement with service award for lead plaintiff); *In re Extreme Networks Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2018) (same).

## II. **The Court Already Certified the Classes.**

The Settlement resolves claims on behalf of the previously-certified Classes. *See* Dkts. 257, 454, 577; Settlement Article VII, 2. As a result, the Court "does not need to re-certify [the Class] for settlement purposes." *Newberg*, *supra*, § 13:18; *accord ODonnell v. Harris County*, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019). Because "the proposed settlement [does not] call[] for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted," Fed. R. Civ. P. 23(e)(1), 2018 adv. comm. note; *ODonnell*, 2019 WL 4224040, at *7, the Court need not take any further action under Rule 23(e)(1). *See, e.g.*, *Hawkins v. Kroger Co.*, 2021 WL 2780647, at *2–3 (S.D. Cal. July 2, 2021) (granting preliminary approval to previously certified class); *ODonnell*, 2019 WL 4224040, at *7 (same).

21

**III.    The Proposed Settlement Administrator Should Be Appointed and the Proposed Notice Plan Approved.**

Plaintiffs propose that the Court appoint JND Legal Administration ("JND") to be the Settlement Administrator. Before deciding to recommend JND as Settlement Administrator, Class Counsel sought bids from several leading class action settlement administration firms and notice providers. *See* Nelson Decl., ¶ 21. Counsel reviewed the bids and selected JND based on JND's track record in large class action settlements, including, among many other cases, the Deepwater Horizon settlement. JND's qualifications are set forth in the Declaration of Jennifer Keough in Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice under Rule 23(e) ("Keough Decl."), as well as in Exhibit A to the Keough Declaration, which includes the firm's resume. In addition to having a track record of success and experience in handling similar types of claims, JND's bid to perform the notice and to serve as settlement administrator was competitive economically with the other bids, in the mid-range of the bids. Nelson Decl., ¶ 22.

Before a class settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 1579251, at *8 (S.D. Cal. Apr. 22, 2021) (quotation marks omitted); *see also* Fed. R. Civ. P. 23(c)(2)(b) (describing "the best notice that is practicable under the circumstances").

The proposed notice program here is described in detail in the concurrently-filed Keough Declaration, and is based largely on the notice program Class Counsel previously implemented following the certification of the Classes. Accordingly, the notice program is reasonable here for the same reasons. *See* Dkt. 710 (Order finding

the Fisher Class Plan of Notice reasonable and approving same); Dkt. 463 (Order finding the Property Class Plan of Notice reasonable and approving same).

As set forth in the Keough Declaration, the notice program includes direct notice to all known Settlement Class Members via U.S. Mail, which directs Class Members to the case website where Class Members can view the Settlement, the long-form Class Notice, and other key case documents. The direct notice and the website also direct Class Members to a Toll-Free Number where Class Members can get additional information and communicate directly with the Settlement Administrator, as well as with Class Counsel. Moreover, the proposed forms of notice (*see* Keough Decl., Exs. B - E) inform Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights. The Court should approve the proposed notice program.

As a result of the prior Court-approved notice, Class members were afforded an opportunity to opt out of the Classes, so their due process rights have been protected. *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1305-06 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018). Accordingly, class members who did not opt out remain members of the Classes, and no further opt out opportunity is warranted. *Id.* (holding that a second opt-out period was not necessary to protect absent class members' due process rights, and permitting it would be contrary to the policy of encouraging settlement).

## IV.  The Court Should Schedule a Fairness Hearing and Related Dates.

The next steps in the settlement approval process are to notify Class Members of the proposed Settlement, submit the proposed plan of distribution for the Court's review, post that plan of distribution on the case website, then allow Class Members to file comments or objections, and hold a Fairness Hearing. Assuming the Court were to sign the Preliminary Approval Order on June 10, 2022, the Parties propose the following schedule:[9]

---

[9] In the event the Court signs the Preliminary Approval Order before June 10, 2022,

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:15-CV-04113-PSG

| | |
|---|---|
| Last Day for the Plaintiffs to file Plan of Distribution | **July 10, 2022 (30 days after Preliminary Approval)** |
| Notice to be Completed | **August 9, 2022 (60 days after Preliminary Approval)** |
| Last day for Plaintiffs to File motion for Final Approval of Settlement and Approval of Plans of Distribution, and for Class Counsel to file Application for Fees and Expenses and for Service Awards | **August 12, 2022** |
| Last day to file Objections | **September 2, 2022** |
| Last day to file replies in support of Final Approval, Plans of Distribution, Attorneys' Fees and Expenses, and Service Awards | **September 16, 2022** |
| Final Approval Hearing | **September 30, 2022** |

These dates are set forth in the proposed Order, attached as Exhibit A to the Settlement.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

A.  Grant preliminary approval of the proposed Settlement;

B.  Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

C.  Appoint JND Legal Administration as Settlement Administrator and direct LND Legal Administration to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

---

each of these dates can be moved up accordingly. For example, if the Court were to sign the Preliminary Approval Order by May 20, 2022, each of the dates could be moved up by 21 days.

1          D.      Enter a scheduling order consistent with the dates set forth

2                  above.

3

4   Dated:  May 13, 2022                    Respectfully submitted,

5
                                            By:  ___/s/Robert J. Nelson_____
6                                                    Robert J. Nelson

7                                           Robert J. Nelson (CSB No. 132797)
8                                           Nimish Desai (CSB No. 244953)
                                            Wilson M. Dunlavey (CSB No. 307719)
9                                           LIEFF CABRASER
10                                          HEIMANN & BERNSTEIN, LLP
                                            275 Battery Street, 29th Floor
11                                          San Francisco, CA 94111-3339
12                                          Telephone: (415) 956.1000
                                            Facsimile: (415) 956.1008
13

14                                          Juli E. Farris (CSB No. 141716)
15                                          Matthew J. Preusch (CSB No. 298144)
                                            KELLER ROHRBACK L.L.P.
16                                          801 Garden Street, Suite 301
                                            Santa Barbara, CA 93101
17                                          Telephone: (805) 456-1496
18                                          Facsimile: (805) 456-1497

19

20

21

22

23

24

25

26

27

28

Lynn Lincoln Sarko
(*Admitted Pro Hac Vice*)
Gretchen Freeman Cappio
(*Admitted Pro Hac Vice*)
Michael D. Woerner
(*Admitted Pro Hac Vice*)
Raymond Farrow
(*Admitted Pro Hac Vice*)
Daniel Mensher
(*Admitted Pro Hac Vice*)
Laura R. Gerber
(*Admitted Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

26

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:15-CV-04113-PSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*