1   Robert J. Nelson (CSB No. 132797)
    rnelson@lchb.com
2   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
4   Facsimile: (415) 956-1008

5   Juli E. Farris (CSB No. 141716)
    jfarris@kellerrohrback.com
6   KELLER ROHRBACK L.L.P.
    801 Garden Street, Suite 301
7   Santa Barbara, CA 93101
    Telephone: (805) 456-1496
8   Facsimile: (805) 456-1497

9   *Class Counsel*

10  A. Barry Cappello (CSB No. 037835)
    abc@cappellonoel.com
11  CAPPELLO & NOËL LLP
    831 State Street
12  Santa Barbara, CA 93101-3227
    Telephone: (805)564-2444
13  Facsimile: (805)965-5950

14  *Lead Trial Counsel*
    *(additional counsel listed at signature)*
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19  KEITH ANDREWS, an individual, et    Case No. 2:15-cv-04113-PSG-JEMx
    al.,
20                                       **DECLARATION OF JENNIFER
21              Plaintiffs,              KEOUGH IN SUPPORT OF MOTION
                                         FOR PRELIMINARY APPROVAL OF
22       v.                             CLASS ACTION SETTLEMENT AND
                                         DIRECTION OF NOTICE UNDER
23  PLAINS ALL AMERICAN                  RULE 23(E)**
    PIPELINE, L.P., a Delaware limited
24  partnership, et al.,                 Date:        June 10, 2022
                                         Time:        1:30 p.m.
25              Defendants.              Judge:       Hon. Philip S. Gutierrez
                                         Courtroom: 6A
26

27

28

I, Jennifer Keough, declare as follows:

1.    I am the CEO, President and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of experience creating and supervising notice and claims administration programs and have personally overseen well over 1,000 matters. JND's resume, which includes the bios of JND legal notice expert, Gina Intrepido-Bowden, and claims administration expert, Gretchen Eoff, both of whom will be assisting me in this important matter, and a comprehensive description of my experience is attached as <u>Exhibit A</u>.

2.    JND is a leading legal administration services provider with headquarters located in Seattle, Washington, and multiple offices throughout the United States. JND has extensive experience with all aspects of legal administration and has administered hundreds of class action matters.

3.    I submit this Declaration regarding the Parties' proposed program for providing notice to Fisher and Property Class Members (the "Notice Plan"), and to address why it is consistent with other best practicable court-approved notice programs and the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the Due Process Clause of the United States Constitution, and the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## **BACKGROUND AND EXPERIENCE**

4.    JND's class action division provides all services necessary for the effective administration of class actions including:  (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and

(10) all other functions related to the secure and accurate administration of class actions.

5.     JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC") and we have worked with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). We also have Master Services Agreements with various corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams.[1] Finally, JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times* and the *New York Law Journal*, for excellence in class action administration.

6.     The principals of JND, including me, collectively have over 80 years of experience in class action legal and administrative fields. We have personally overseen the administration of some of the most complex administration programs in the country and regularly prepare and implement court-approved notice campaigns throughout the United States. For example, my team and I handled all aspects of mailed notice, website activities, call center operations, claim intake, scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-appointed claims administrator, in overseeing all inbound and outbound mail activities, all call center operations, all claim intake,

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

1    scanning and data entry and all check distributions for the program. I also oversaw

2    the entire administration process in the $3.4 billion Cobell Settlement.

3        7.    JND was appointed as the notice and claims administrator in the

4    landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we

5    mailed over 100 million postcard notices; sent hundreds of millions of email notices

6    and reminders; placed notice via print, television, radio, internet; staffed the call

7    center with 250 agents during the peak of the notice program; and received and

8    processed more than eight million claims. We have also handled the settlement

9    administration of the following matters: the $1.3 billion Equifax Data Breach

10   Settlement, the largest class action ever in terms of the number of claims received

11   (over 18 million); a voluntary remediation program in Canada on behalf of over 30

12   million people; the $1.5 billion Mercedes-Benz Emissions settlements; the $120

13   million GM Ignition class action economic settlement, where we sent notice to

14   nearly 30 million class members, and the $215 million USC Student Health Center

15   Settlement on behalf of women who were sexually abused by a doctor at USC, as

16   well as hundreds of other matters.

17       8.    Similar to the situation here, JND also designed and implemented the

18   notice program for *Bruzek v. Husky Oil Operations Limited and Superior Refining

19   Co. LLC*., which notified property owner class members harmed by the Superior,

20   WI oil refinery explosion.

21       9.    Our notice campaigns are regularly approved by courts throughout the

22   United States.

23       10.    JND's Legal Notice Team, which operates under my direct

24   supervision, researches, designs, develops, and implements a wide array of legal

25   notice programs to meet the requirements of Rule 23 and relevant state court rules.

26   In addition to providing notice directly to potential class members through direct

27   mail and email, our media campaigns have used a variety of media including

28   newspapers, press releases, magazines, trade journals, radio, television, social

1   media and the internet depending on the circumstances and allegations of the case,

2   the demographics of the class, and the habits of its members, as reported by various

3   research and analytics tools. During my career, I have submitted several hundred

4   affidavits to courts throughout the country attesting to our role in the creation and

5   launch of various media programs.

6                                **CASE BACKGROUND**

7        11.    I have been asked by the Parties to assist in preparing a Notice Plan to

8   reach members of the previously certified Fisher Class and Property Class, to

9   inform them about the recent Settlement, and their rights and options. The class

10  action lawsuit involves a coastal oil spill in 2015, near Santa Barbara.

11       12.    The Court has previously certified two Classes, a Fisher Class and a

12  Property Class.

13       13.    The **Fisher Class** consists of Commercial Fishers and Fish Processors.

14              A.    <u>Commercial Fishers</u> include all persons and businesses who

15       owned or worked on a vessel that was in operation as of May 19, 2015 and

16       that: (1) landed any commercial seafood in California Department of Fish &

17       Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any

18       commercial seafood, except groundfish or highly migratory species (as

19       defined by the CDFW and the Pacific Fishery Management Council), in

20       CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-

21       746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive.

22              B.    <u>Fish Processors</u> include all persons and businesses in operation

23       as of May 19, 2015 who purchased such commercial seafood directly from

24       the Fishers and re-sold it at the retail or wholesale level.

25       14.    It is my understanding that the Fisher Class includes approximately

26  1,200 vessel, fishing, and fish processing license holders, and each vessel may also

27  include  unlicensed crew members.

28

15.     The **<u>Property Class</u>** consists of residential beachfront properties on a beach and residential properties with a private easement to a beach (collectively "Included Properties") where oil from the 2015 Santa Barbara oil spill washed up, and where the oiling was categorized as Heavy, Moderate or Light, as identified in Exhibit A to Plaintiffs' renewed motion [ECF 300-3, Ex. 14 of the Action]. It is my understanding that the Property Class includes approximately 8,000 properties in Santa Barbara, Ventura, and Los Angeles counties ("Class Counties"), as of May 2015.

16.     Excluded from both Classes are Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; the judge to whom this case is assigned, the judge's staff, and any members of the judge's immediate family; and all persons and businesses who previously filed an exclusion during the initial notice period, or entered a separate settlement with Defendants for which a full release was signed. Also excluded from the Fisher Class are businesses that contract directly with Plains for use of the Pipeline.

<u>**NOTICE PLAN OVERVIEW**</u>

17.     The objective of the proposed Notice Plan is to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The Notice Plan includes efforts to reach both the Fisher and Property Class.

18.     This proposed Notice Program includes the same components that were used in the Fisher and Property Notice Programs previously approved by this Court, along with the addition of email notice.

19.     The proposed Notice Program consists of direct notice, published notice in local and ethnic language newspapers with distribution along the Central Coast of California, an outreach effort to relevant influential

bloggers/reporters/online outlets and organizations, and the distribution of a press release in English and Spanish to media outlets throughout California.

20.   The notice documents will direct Class Members to the previously established case website, www.PlainsOilSpill.com, where the Fisher Class Long Form Notice, attached as Exhibit B, and the Property Class Long Form Notice, attached as Exhibit C, will be posted and accessible in English, Spanish, Vietnamese, and Mandarin.

21.   Under my direction, JND will maintain a toll-free number, post office box, and email address for this matter.

22.   Based on my experience in developing and implementing class notice programs, I believe the proposed Notice Plan will provide the best notice practicable under the circumstances.

## **DIRECT NOTICE EFFORT**

23.   For this case, at my direction, JND staff will effectuate the sending of the Fisher Class Long Form Notice and the Property Class Long Form Notice via U.S. mail to known Class Members. In addition, the Fisher Class Short Form Notice, attached as Exhibit D, and Property Class Short Form Notice, attached as Exhibit E, will be formatted for email and sent to Fisher and Property Class Members for whom email addresses are available.

24.   It is my understanding that Fisher Class contact information, including the names, mailing addresses, and email addresses for the 1,200 vessel, fishing, and fish processing license holders, will be provided by Class Counsel and CDFW databases. In addition, Class Counsel will provide names and mailing addresses for property owners as of May 2015.

25.   Upon receipt of the Class Member data, JND will promptly load the information into a secure case-specific database for this case. JND employs appropriate administrative, technical and physical controls designed to ensure the confidentiality and protection of Class Member data, as well as to reduce the risk of

loss, misuse, or unauthorized access, disclosure or modification of Class Member data.

26.     Prior to mailing, JND staff will perform advanced address research using skip trace databases and the United States Postal Service ("USPS") National Change of Address ("NCOA") database[2] to update addresses. At my direction, JND staff will track all notices returned undeliverable by the USPS and will promptly re-mail notices that are returned with a forwarding address. In addition, with my oversight, JND staff will also take reasonable efforts to research and determine if it is possible to reach a Class Member for whom a notice is returned without a forwarding address, either by mailing to a more recent mailing address or using available skip-tracing tools to identify a new mailing address and/or an email address by which the potential Class Member may be reached, if an email already has not been sent.

27.     JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure the highest possible deliverability of the email campaign so that more potential Class Members receive notice.

28.     Prior to emailing the Notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing software, DKIM for sender identification and authorization,

---

[2] The NCOA database is the official USPS technology product which makes changes of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.

and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists.

29. For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

30. To ensure readability of the email, our team will review and format the body content into a structure that is applicable to all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected.

31. Additionally, JND will include an "unsubscribe" link at the bottom of the email to allow Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

32. Emails that are returned to JND are generally characterized as either "Soft Bounces" or "Hard Bounces." Hard Bounces are when the ISP rejects the email due to a permanent reason such as the email account is no longer active. Soft Bounces are when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

33. When an email is returned due to a soft bounce, JND attempts to re-email the email notice up to three additional times in an attempt to secure deliverability. The email is considered undeliverable if it is a Hard Bounce or a Soft Bounce that is returned after a third resend.

34. It is our understanding that the direct notice effort alone will reach a significant portion of the Class Members.

9

1

## PUBLICATION NOTICE

2      35.    To supplement the direct notice effort, JND will publish the

3  Fisher/Property Class "Dual" Notice, attached as <u>Exhibit F</u>, in community and

4  ethnic newspapers along the Central Coast.

5      36.    These papers include the *Bakersfield Californian*, *Lompoc Record*, *Los*

6  *Angeles Daily News, OC Weekly, San Louis Obispo News Times*, *Santa Barbara*

7  *Independent*, *Santa Barbara News Press, Santa Maria Sun*, *Ventura County*

8  *Reporter*, and *Ventura County Star* community papers and *El Latino* (Spanish

9  language paper covering Oxnard, Carpinteria, Santa Barbara, Goleta, Isla Vista, and

10  Santa Maria), *La Opinion* (Spanish language paper covering Los Angeles area),

11  *Zhong Guo Daily News* (Chinese language paper covering Los Angeles, Orange

12  County, San Diego, San Bernardino, Riverside, Santa Barbara, and Las Vegas

13  counties), and *Saigon Times* (Vietnamese language covering Los Angeles, San

14  Fernando, Riverside, San Gabriel, and Orange County) ethnic newspapers.

15

## PRESS RELEASE

16      37.    To further assist in getting "word of mouth" out about the Settlement,

17  the Fisher/Property Class "Dual" Notice (attached as <u>Exhibit F</u>) will be formatted as

18  a press release and distributed at the start of the campaign to more than 900 English

19  and Spanish media outlets throughout California.

20

## THIRD PARTY OUTREACH

21      38.    JND will contact commercial fishing organizations in the affected

22  areas, as well as influential bloggers, reporters, and online outlets that cover

23  relevant topics, such as fishing and real estate and housing, and ask them to share

24  news of the Settlement with their members/readers.

25

## CASE WEBSITE

26      39.    An informational case website has already been established to enable

27  Class Members to receive more information about the case. The website provides

28  links to download the Long Form Class Notices in English, Spanish, Vietnamese,

and Mandarin, the Claim Form, and other important court documents. In addition, Class Members will be able to file an electronic claim at the case website.

### **TOLL-FREE NUMBER, P.O. BOX, AND EMAIL ADDRESS**

40.     JND will maintain an Interactive Voice Recorded (IVR) toll-free telephone number for Class Members to call for information related to the case. Class Members will also be able to leave a message for a return call. The telephone line will be available 24 hours a day, seven (7) days a week.

41.     JND will also maintain a dedicated Post Office Box and email address where Class Members may send claims and inquiries.

### **NOTICE DESIGN AND CONTENT**

42.     The proposed notice documents are designed to comply with the Rule 23's guidelines for class action notices, as well as the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. The notices contain easy-to-read summaries of the settlement and instructions on how to obtain more information about the case.

43.     Courts routinely approve notices that have been written and designed in a similar manner.

### **CONCLUSION**

44.     In my opinion, the proposed Notice Plan provides the best notice practicable under the circumstances; is consistent with the requirements of Rule 23; and is consistent with other similar court-approved best notice practicable notice programs. The Notice Plan is designed to reach as many Class Members as possible and inform them about the settlement and their rights and options.

1

2          I declare under penalty of perjury under the laws of the United States of

3   America that the foregoing is true and correct.

4

5          Executed this 13th day of May, 2022, at Seattle, Washington.

6

7

8                                                    _____

9                                                    Jennifer Keough

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:15-CV-04113-PSG

# - EXHIBIT A -



# JND CLASS ACTION ADMINISTRATION CV

1.800.207.7160        |        CA • MN • NY • WA        |        **www.jndla.com**

> **JND Legal Administration (JND) is the foremost administrator in the United States when it comes to handling large and complex class action matters. Our team comprises renowned leaders and veterans of the industry, and our systems and technology are built not just for functionality but also based on a strict adherence to information security and privacy best practices.**

## OVERVIEW

JND handles a broad spectrum of cases in the class action administration arena including matters involving antitrust, securities, consumers, automobiles, employment, human rights, ERISA, product defects, insurance, healthcare, TCPA and false advertising, among others.

We perform all services necessary for the successful implementation of class action administration starting with client consultation regarding settlement terms; design and implementation of notice programs, including direct mail, media plans and email notification; website development and deployment, including the ability to process on-line claims; mailroom intake services; telephone services, including through recorded messages and live operators; handling, review and processing of claims; data collection and database management; Qualified Settlement Fund management; building and testing calculation programs; determining payment awards; and distribution of settlement funds, through various payment methodologies including checks, PayPal, Venmo, debit cards and other means.

All JND systems and processes have been audited for compliance with applicable information security standards including HIPAA. We are SOC 2 certified every year.

JND's expertise is called upon in equal measure by the top plaintiff and defendant law firms in the Country, as well as by large corporate clients. JND is also routinely hired by important government agencies and is an approved vendor for both the United States Securities and Exchange Commission ("SEC") and the Federal Trade Commission ("FTC").  JND also works with the following other government agencies: EEOC, OCC, CFPB, FDIC, FCC, DOJ and DOL.

JND has been voted the #1 Administrator in the country by readers of at least one of the following publications every year of our existence: the *New York Law Journal*, the *Legal Times* and the *National Law Journal*.

JND is headquartered in Seattle Washington in a state-of-the-art 35,000 square foot facility including a 10,000 square foot mail-processing center and an in-house call center. We have more than 250 employees, not including call center personnel, located in four offices across the country – Seattle, Washington; New Hyde Park, New York; Minneapolis, Minnesota; and Los Angeles, California.

We have four different call centers across the United States that can accommodate 2,500 contact agent seats.

JND is backed by private Equity Firm Stone Point Capital and can tap into deep resources through its portfolio of companies.

Finally, JND offers several other business lines including: eDiscovery, which offers targeted discovery requests, highly secure cost-effective hosting, technology solutions, data analytics, corporate documentation, data recovery and email examination, evidence consultation, testimony and timeline generation; and mass tort, which offers intake, screening, and retention, medical record retrieval and review, plaintiff fact sheet preparation, claims and settlement administration, lien resolution and distribution.

## PEOPLE

JND's Founders – Jennifer Keough, Neil Zola and David Isaac -- have some 80 years collective experience in class action and administration fields. All are trained lawyers, with Jennifer having worked for nationally recognized defense firm Perkins Coie, and Neil and David having worked on the plaintiff side at Wolf Haldenstein Adler Freeman & Herz in New York City. They have personally worked on some of the largest administrations in the United States including the $20 billion Gulf Coast Claims Facility, the $10$^+$ billion Deepwater Horizon Gulf Oil Spill class action, the $6.15 billion WorldCom securities settlement, the $3.4 billion Cobell Indians settlement and the $2.67 billion Blue Cross Blue Shield antitrust settlement.

JND talent runs deep and includes many other officers with significant experience in class action administration, including, among others, the following:

### 1.   Derek Dragotta

As JND's Vice President of Information Security, Derek is responsible for protecting the confidentiality, integrity, and availability of the organization's information, assets, and

systems. Derek oversees the development, implementation, and monitoring of the company's Information Security Program, including the policies, standards, procedures, and controls required to achieve corporate objectives.

Derek also provides oversight of JND's Incident Response, Disaster Recovery, and Business Continuity capabilities, as well as the provisioning of privacy and security awareness and training to the workforce.

He has worked on some of the largest settlements in the industry and, throughout his career, frequently collaborated with clients and auditors on a variety of assessments, including FISMA, SOX, HIPAA, PCI-DSS, and the AICPA's SOC II certification.

Derek is a member of the ISACA and ISC² professional organizations and holds the Certified Information Systems Security Professional (CISSP®) and Certified Information Security Manager (CISM®) certifications.

## 2.    Gretchen Eoff

Based in JND's West Coast Headquarters, Gretchen Eoff is responsible for complex case oversight and supervision of high-profile JND matters. Among other important matters, Gretchen has played a major role in JND's handling of the $215 million USC Student Health Center Settlement and the JPMorgan Stable Value Fund Erisa Litigation Settlement. She has also overseen much of the operation for JND's landmark Equifax Data Breach Settlement administration.

Throughout her 12-year legal administration career, Gretchen has held critical operational roles in complex cases including the $1.425 billion Stryker Modular Hip Settlements, the $125 million Takata Individual Restitution Fund, the $500 million GM Ignition Compensation Claims Resolution Facility, and the $20 billion Gulf Coast Claims Facility, among many others.

Gretchen is admitted to practice law in Washington State. She earned her JD at the University of Denver College of Law where she was Managing Editor of the Denver University Law Review and interned for U.S. Magistrate Judge Craig B. Shaffer (Ret.) (U.S. District Court, District of Colorado). She also received a Masters of Public Administration from Seattle University, where she was named a Presidential Management Fellow, and a B.A. in Law, Societies and Justice from the University of Washington.

### 3.    Shandy Garr

Shandy has administered thousands of cases and has worked on some of the largest and most complex settlements in history, including the $6.15 billion WorldCom securities litigation settlement and the $10+ billion Deepwater Horizon Economic class action settlement. In demonstration of her versatility and breadth of expertise, Shandy has advanced through many prominent senior management positions over the course of her class action administration career. During her 18-year tenure with another major provider in the legal services and claims administration space, she served as SVP of Communications and Diversity & Inclusion, VP of Securities, VP of Midwest Operations and VP of East Coast Operations.

Active in consumer rights advocacy and access to justice initiatives arenas, she is a former administrator for the National Association of Shareholder & Consumer Attorneys (NASCAT) and has been a Mobilization for Justice (MFJ) board member since 2016. Black Enterprise Magazine has named Shandy as an Executive to Watch, and Profiles in Diversity Journal recognized her with the Diversity Leader Award in 2018.

### 4.    Gina Intrepido-Bowden

Gina Intrepido-Bowden is Vice President of JND Legal Administration. She is a court recognized legal notice expert who has been involved in the design and implementation of hundreds of legal notice programs reaching class members/claimants in both the U.S. and international markets with notice in over 35 languages. Some notable cases in which Gina has been involved include the $2.67 billion Blue Cross Blue Shield Antitrust Settlement, the groundbreaking $1.9 billion Indian Residential Schools Settlement Agreement (IRSSA), the $1.1 billion Royal Ahold Securities Settlement, the $215 million USC Student Health Center Settlement, and the $60 million FTC Suboxone Antitrust Settlement.

Gina is an accomplished author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

## 5.   Matthew Potter

Matthew Potter is Senior Strategic Advisor for JND and responsible for helping drive the company's business development initiatives, sales and marketing strategy, and client relationship management.

As an accomplished leader in the legal administration industry, Matt brings nearly 20 years' experience to the design, implementation, and management of complex and time-sensitive projects including class action settlements, regulatory agency enforcement actions, and urgent communications such as data breach responses. During his career, Matt effectively managed a notable Attorney General settlement involving mortgage borrowers in virtually every state against financial institutions resulting in over 1,000 customer service representatives trained, over 1,000,000 claims processed, and over $1 billion distributed to eligible claimants.

## 6.   Lorri Staal

As JND's Vice President of Operations, Lorri provides day-to-day oversight of the company's internal processes and high-profile matters. With more than 20 years of complex litigation and claims administration operations expertise, Lorri has overseen numerous matters involving securities and consumer class actions, financial remediations, and federal and state government administrations. A few notable matters include the $20 billion BP Oil Spill Gulf Coast Claims Facility, the $140 million Takata Airbag Tort Compensation administration, and the $50 billion Yukos Oil asset distribution,

Prior to her career in legal administration, Lorri was a practicing attorney, including at the global law firm Dechert, LLP, where she litigated complex cases for more than 10 years. Lorri was a featured speaker at the DRRT International Investor Global Loss Recovery in Frankfurt, Germany in 2018 and has authored several articles about administration issues.

Lorri earned her J.D. from Northwestern University Law School, where she was an editor for the Journal of Criminal Law and Criminology. She received her A.B. degree, cum laude, from Cornell University.

## 7.   Darryl Thompson

As Chief Information Officer, Darryl is responsible for providing the vision and leadership for developing and implementing Information Technology initiatives at JND. Darryl oversees all IT staff and vendors and also initiates the planning and implementation of enterprise IT systems in order to most effectively enable all of JND's divisions to be successful.

Reporting directly to and working in unison with Jennifer Keough, President and Co-Founder of JND,  Darryl ensures the IT organization is prioritizing initiatives and delivering secure, high value systems, infrastructure and technical support.

Prior to entering the Legal Administration realm, Darryl spent 12 years in Health Care IT, where he was the Managing Director of IT for Adaptis, a Health Care BPO that provided Systems, claims processing and administration services to insurance companies.

*    *    *

Bios of other key JND Executives and further information about our company can be found at www.JNDLA.com.

# LANDMARK CASES

JND and its Founders have worked on some of the largest administrations in our Country's history, among the many thousands that we have handled. Below are details about ten of our most important matters. This list represents mostly recent cases because we believe that it is important to understand that the firm you are hiring still has the personnel that worked on these matters. Where we list matters that are more than five years old, it is only because they were worked on and supervised by JND Founders or other officers who are still with the company.

## 1.    In re Blue Cross Blue Shield Antitrust Litig.

Master File No.:  2:13-CV-20000-RDP (N.D. Ala.)

JND was recently appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. In approving the notice plan designed by Jennifer Keough, United States District Court Judge R. David Proctor, wrote:

*After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters… JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts…The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

## 2.    In re Equifax Inc. Customer Data Sec. Breach Litig.

Master File No.:  17-md-2800-TWT (N.D. Ga.)

JND was appointed settlement administrator for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. JND handled all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

*JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)…JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

### 3.    Allagas v. BP Solar Int'l, Inc.

Master File No.:  14-cv-00560 (N.D. Cal.)

Jennifer Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. JND devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. The program included a team of operators to answer claimant questions, a fully interactive dedicated website with on-line claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court as to the progress of the administration. Honorable Susan Illston recognized the complexity of the settlement when appointing Ms. Keough as ICA (December 22, 2016):

*The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the*

*merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

### 4.   Cobell v. Salazar

No. 96 CV 1285 (TFH) (D. D.C.)

As part of the largest government class action settlement in our nation's history, Jennifer Keough and Neil Zola worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Under our supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of 1 percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay… the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

…that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class…. Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

### 5.   Gulf Coast Claims Facility (GCCF)/In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

No. 2179 (MDL) (E.D. La.)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which the JND Founders helped develop,

processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, we coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. We also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. Jennifer Keough and Neil Zola built a brand new, 400,000 square foot, center in Hammond, Louisiana with over 200 employees, which handled all of the back-office mail and processing for this multi-billion dollar settlement program. The Hammond center, which was the hub of the program, was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 6.   In re Mercedes-Benz Emissions Litig.

No. 16-cv-881 (D.N.J.)

JND Legal Administration was appointed as the Settlement Administrator in this $700 million plus settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving.  As part of its appointment, the Court approved the proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services:

*The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B).  The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)…JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.*

### 7.    In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.

No. 13-2441 (MDL) (D. Minn.)

Jennifer Keough and JND Vice President Gretchen Eoff ran the administration efforts for this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. The team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

### 8.    In re The Engle Trust Fund

No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)

Jennifer Keough and David Isaac played key roles in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

*The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

### 9.    Loblaw Card Program

JND was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program as a result of a price-fixing scheme by some employees of the company involving bread products. The program offered a $25 Card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. JND's team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing

and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 10. USC Student Health Ctr. Settlement

No. 18-cv-04258-SVW (C.D. Cal.)

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. JND designed a notice effort that included mailed and email notice to potential Class members, digital notices on Facebook, LinkedIn, and Twitter, an internet search effort, notice placements in USC publications/eNewsletters, and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. We ensured the establishment of an all-female call center, fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. JND staff also handled all lien resolution work for this case.

# JENNIFER KEOUGH

## CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and Co-Founder of JND Legal Administration ("JND"). She is the *only* judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $2.67 billion Blue Cross Blue Shield antitrust settlement, $1.5 billion Mercedes-Benz Emissions Settlements; $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $240 million Signet Securities Settlement, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country.

She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing, Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where

she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II. LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

## 1. Allagas v. BP Solar Int'l, Inc.

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits…The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.

## 2. *Chester v. The TJX Cos.*

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

> ...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.

## 3. *Cobell v. Salazar*

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision,

the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> ...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

## 4.  *FTC v. Reckitt Benckiser Grp. PLC*

**No. 19CV00028 (W.D. Va.)**

Ms. Keough and her team designed a multi-faceted notice program for this $50 million settlement resolving charges by the FTC that Reckitt Benckiser Group PLC violated antitrust laws by thwarting lower-priced generic competition to its branded drug Suboxone.

The plan reached 80% of potential claimants nationwide, and a more narrowed effort extended reach to specific areas and targets. The nationwide effort utilized a mix of digital, print, and radio broadcast through Sirius XM. Extended efforts included local radio in areas defined as key opioid markets and an outreach effort to medical professionals approved to prescribe Suboxone in the U.S., as well as to substance abuse centers; drug abuse and addiction info and treatment centers; and addiction treatment centers nationwide.

### 5.    Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

### 6.    Health Republic Ins. Co. v. United States

**No. 16-259C (F.C.C.)**

For this $1.9 billion settlement, Ms. Keough and her team used a tailored and effective approach of notifying class members via Federal Express mail and email. Opt-in notice packets were sent via Federal Express to each potential class member, as well as the respective CEO, CFO, General Counsel, and person responsible for risk corridors receivables, when known. A Federal Express return label was also provided for opt-in returns. Notice Packets were also sent via electronic-mail. The informational and interactive case-specific website posted the notices and other important Court documents and allowed potential class members to file their opt-in form electronically.

### 7.    In re Air Cargo Shipping Servs. Antitrust Litig.

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency

notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

## 8.   *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 13-CV-20000-RDP (N.D. Ala.)**

JND was recently appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. To notify class members, we mailed over 100 million postcard notices, sent hundreds of millions of email notices and reminders, and placed notice via print, television, radio, internet, and more. The call center was staffed with 250 agents during the peak of the notice program. More than eight million claims were received. In approving the notice plan designed by Jennifer Keough and her team, United States District Court Judge R. David Proctor, wrote:

> *After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters... JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts...The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

## 9.   *In re Classmates.com*

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to

the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice... together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process...

### 10. *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional

*supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.*

## 11. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

<u>GM Ignition Switch Compensation Claims Resolution Facility</u>

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 12. *In re General Motors LLC Ignition Switch Litig.*

**No. 2543 (MDL) (S.D.N.Y.)**

Ms. Keough was appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.

> The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...

Under Ms. Keough's direction, JND mailed notice to nearly 30 million potential class members.

On December 18, 2020, Honorable Jesse M. Furman granted final approval:

> The Court confirms the appointment of Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein...The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

## 13. *In re Mercedes-Benz Emissions Litig.*

**No. 16-cv-881 (D.N.J.)**

JND Legal Administration was appointed as the Settlement Administrator in this $1.5 billion settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving. As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

> *The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)…JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.*

On July 12, 2021, the Court granted final approval of the settlement:

> *The Court has again reviewed the Class Notice Program and finds that Class Members received the best notice practicable under the circumstances.*

### 14. *In re MyFord Touch Consumer Litig.*

**No. 13-cv-3072 (EMC) (N.D. Cal.)**

Ms. Keough was retained as the Notice Expert in this $17 million automotive settlement. Under her direction, the JND team created a multi-faceted website with a VIN # lookup function that provided thorough data on individual car repair history. To assure all of the data was safeguarded, JND hired a third-party to attempt to hack it, demonstrating our commitment to ensuring the security of all client and claimant data. Their attempts were unsuccessful.

In his December 17, 2019 final approval order Judge Edward M. Chen remarked on the positive reaction that the settlement received:

> *The Court finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process... The Court notes that the reaction of the class was positive: only one person objected to the settlement although, by request of the objector and in the absence of any opposition from the parties, that objection was converted to an opt-out at the hearing.*

### 15. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by

Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 16. *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*

### No. 13-2441 (MDL) (D. Minn.)

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

## 17. *In re The Engle Trust Fund*

### No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

### 18. *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 19. *King v. Bumble Trading Inc*

**No. 18-cv-06868-NC  (N.D. Cal.)**

Ms. Keough served as the notice expert in this $22.5 million settlement that alleged that Bumble's Terms & Conditions failed to notify subscribers nationwide of their legal right to cancel their Boost subscription and obtain a refund within three business days of purchase, and for certain users in California, that Bumble's auto-renewal practices violated California law.

JND received two files of class member data containing over 7.1 million records. Our team analyzed the data to identify duplicates and then we further analyzed the unique records, using programmatic techniques and manual review, to identify accounts that had identical information in an effort to prevent multiple

notices being sent to the same class member. Through this process, JND was able to reduce the number of records to less than 6.3 million contacts.

Approving the settlement on December 18, 2020, Judge Nathanael M. Cousins, acknowledged the high success of our notice efforts:

> *Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator... JND sent court-approved Email Notices to millions of class members...Overall, approximately 81% of the Settlement Class Members were successfully sent either an Email or Mailed Notice...JND supplemented these Notices with a Press Release which Global Newswire published on July 18, 2020... In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.*

## 20. *Linneman v. Vita-Mix Corp.*

No. 15-cv-748 (S.D. Ohio)

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class

members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> *JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 21. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 22. *McWilliams v. City of Long Beach*

**No. BC261469 (Cal. Super. Ct.)**

Ms. Keough and her team designed and implemented an extensive notice program for the City of Long Beach telephone tax refund settlement. In addition to sending direct notice to all addresses within the City of Long Beach utility

billing system and from its GIS provider, and to all registered businesses during the class period, JND implemented a robust media campaign that alone reached 88% of the Class. The media effort included leading English and Spanish magazines and newspapers, a digital effort, local cable television and radio, an internet search campaign, and a press release distributed in both English and Spanish. The 12% claims rate exceeded expectations.

Judge Maren E. Nelson acknowledged the program's effectiveness in her final approval order on October 30, 2018:

> It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.

### 23.  *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 24. *USC Student Health Ctr. Settlement*

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.

## 25.  *Williams v. Weyerhaeuser Co.*

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the administration firm handling the case. The claims program was extensive and went on for nine years, with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding.  The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1.  Judge William M. Conley

**Bruzek v. Husky Oil Operations Ltd., (January 31, 2022**) No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice… the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

## 2.  Judge Timothy J. Corrigan

**Levy v. Dolgencorp, LLC,** (December 2, 2021) No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court…The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

## 3.  Honorable Nelson S. Roman

**Swetz v. GSK Consumer Health, Inc.,** (November 22, 2021) No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members; notice through electronic*

*media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 4.  Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)
No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator... JND mailed notice to approximately 2,678,266 potential Non-Statutory Subclass Members and 119,680 Statutory Subclass Members.  Id. ¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered, and 81% of mailings to Statutory Subclass Members were deemed delivered.  Id. ¶ 9. Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass Members and 170,333 Statutory Subclass Members, of which 91% and 89% were deemed delivered, respectively.  Id. ¶ 12.  A digital advertising campaign generated an additional 5,195,027 views.  Id.  ¶ 13...Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.*

### 5.  Judge Mark C. Scarsi

***Patrick v. Volkswagen Grp. of Am., Inc.,*** (September 18, 2021)
No. 19-cv-01908-MCS-ADS (C.D. Cal.):

*The Court finds that, as demonstrated by the Declaration of Jennifer M. Keough and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with Fed. R. Civ. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

### 6.   Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice administrator, as the Settlement Administrator.*

### 7.   Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.,*** (July 21, 2021) No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator... The Court finds that the proposed notice program meets the requirements of Due Process under the U.S. Constitution and Rule 23; and that such notice program— which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

### 8.   Judge Mark H.Cohen

***Pinon v. Mercedes-Benz USA, LLC and Daimler AG,*** (March 29, 2021)
No. 18-cv-3984 (N.D. Ga.):

*The Court finds that the content, format, and method of disseminating the Notice Plan, as set forth in the Motion, the Declaration of the Settlement Administrator (Declaration of Jennifer M. Keough Regarding Proposed Notice Plan) [Doc. 70-7], and the Settlement Agreement, including postcard notice disseminated through direct U.S. Mail to all known Class Members and establishment of a website: (a) constitutes the*

*best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed Settlement Agreement, and their rights under the proposed Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfies all requirements provided Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designated to be readily understandable by the Settlement Class...This Court also approves the Postcard Notice, the Long Form Notice, the Reimbursement Claim Form, and the Qualified Future Repair Claim Form in substantially the form as attached as Exhibits B to E to the Declaration of Jennifer M. Keough Regarding Proposed Notice Plan.*

## 9.  Honorable Daniel D. Domenico

***Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,*** (January 29, 2021) No. 18-cv-01897-DDD-NYW (D. Colo.):

*The court approves the form and contents of the Short-Form and Long Form Notices attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on January 26, 2021...The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.*

## 10.  Honorable Virginia A. Phillips

***Sonner v. Schwabe N. Am., Inc.,*** (January 25, 2021) No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign.  (Dkt. 203-5).  The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option.  (Id., Ex. E).*

*During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).*

*Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.*

## 11. Honorable R. Gary Klausner

***A.B. v. Regents of the Univ. of California,*** (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

*The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

## 12. Judge Vernon S. Broderick, Jr.

***In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*** (December 16, 2020)
No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator. JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement. (Doc. 1115 ¶ 5.) JND also has extensive experience in handling claims administration in the antitrust context. (Id. ¶ 6.) Accordingly, I appoint JND as Claims Administrator.*

### 13. Honorable Laurel Beeler

**Sidibe v. Sutter Health,** (November 5, 2020)
No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator. JND shall provide notice of pendency of the class action consistent with the procedures outlined in the Keough Declaration.*

### 14. Judge Carolyn B. Kuhl

**Sandoval v. Merlex Stucco Inc.,** (October 30, 2020)
No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign outlined by the Keough/JND Legal declaration...the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

### 15. Honorable Louis L. Stanton

**Rick Nelson Co. v. Sony Music Ent.,** (September 16, 2020)
No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation...The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 16.  Judge Steven W. Wilson

***Amador v Baca,*** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

## 17.  Judge Stephanie M. Rose

***Swinton v. SquareTrade, Inc.,*** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective.  The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

## 18.  Judge Joan B. Gottschall

***In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods.,*** (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 19. Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)

No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 20. Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)

No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 21. Judge Cormac J. Carney

***In re ConAgra Foods Inc.,*** (October 8, 2019)

No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*Following the Court's preliminary approval, JND used a multi-pronged notice campaign to reach people who purchased Wesson Oils...As of September 19, 2019, only one class member requested to opt out of the settlement class, with another class member objecting to the settlement. The reaction of the class has thus been overwhelmingly positive, and this factor favors final approval.*

## 22.  Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)

No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

## 23.  Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)

No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 24.  Honorable James Donato

***In re Resistors Antitrust Litig.,*** (May 2, 2019)

No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable*

*under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 25. Honorable Leigh Martin May

***Bankhead v. First Advantage Background Serv. Corp.,*** (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator... The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 26. Honorable P. Kevin Castel

***Hanks v. Lincoln Life & Annuity Co. of New York,*** (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

## 27. Judge Cormac J. Carney

***In re ConAgra Foods Inc,*** (April 4, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*The bids were submitted to Judge McCormick, who ultimately chose JND Legal Administration to propose to the Court to serve as the settlement administrator.*

*(Id. ¶ 65.) In addition to being selected by a neutral third party, JND Legal Administration appears to be well qualified to administer the claims in this case... The Court appoints JND Legal Administration as Settlement Administrator... JND Legal Administration will reach class members through a consumer media campaign, including a national print effort in People magazine, a digital effort targeting consumers in the relevant states through Google Display Network and Facebook, newspaper notice placements in the Los Angeles Daily News, and an internet search effort on Google. (Keough Decl. ¶ 14.) JND Legal Administration will also distribute press releases to media outlets nationwide and establish a settlement website and toll-free phone number. (Id.) The print and digital media effort is designed to reach 70% of the potential class members. (Id.) The newspaper notice placements, internet search effort, and press release distribution are intended to enhance the notice's reach beyond the estimated 70%. (Id.)*

## 28. Judge Kathleen M. Daily

***Podawiltz v. Swisher Int'l, Inc.,*** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

## 29. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 30. Honorable Thomas M. Durkin

*In re Broiler Chicken Antitrust Litig.,* (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 31. Judge Maren E. Nelson

*Granados v. Cnty. of Los Angeles,* (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 32. Judge Cheryl L. Pollak

*Dover v. British Airways, PLC (UK),* (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

### 33. Judge Edward J. Davila

*In re Intuit Data Litig.,* (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator...The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

### 34. Judge Ann D. Montgomery

*In re Wholesale Grocery Prod. Antitrust Litig.,* (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*

### 35. Honorable David O. Carter

*Hernandez v. Experian Info. Sols., Inc.,* (April 6, 2018)
No. 05-cv-1070 (C.D. Cal.):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of*

*Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*



# IV.   CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Aaland v. Contractors.com and One Planet Ops* | 19-2-242124 SEA | Wash. Super. Ct. |
| *A.B. v. Regents of the Univ. of California* | 20-cv-09555-RGK-E | C.D. Cal. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wash. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.* | 18-cv-01897-DDD-NYW | D. Colo. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Avila v. LifeLock Inc.* | 15-cv-01398-SRB | D. Ariz. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Servs. Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barclays Dark Pool Sec. Litig.* | 14-cv-5797 (VM) | S.D.N.Y. |
| *Barrios v. City of Chicago* | 15-cv-02648 | N.D. Ill. |
| *Beezley v. Fenix Parts, Inc.* | 17-cv-7896 | N.D. Ill. |
| *Belanger v. RoundPoint Mortg. Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *BlackRock Core Bond Portfolio v. Wells Fargo* | 65687/2016 | N.Y. Super. Ct. |
| *Bland v. Premier Nutrition Corp.* | RG19-002714 | Cal. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Bruzek v. Husky Oil Operations Ltd.* | 18-cv-00697 | W.D. Wis. |
| *Careathers v. Red Bull N. Am., Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carillo v. Wells Fargo Bank, N.A.* | 18-cv-03095 | E.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Cecil v. BP Am. Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chamblee v. TerraForm Power, Inc.* | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| *Chester v. TJX Cos.* | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| *Chieftain Royalty Co. v. BP Am. Prod. Co.* | 18-cv-00054-JFH-JFJ | N.D. Okla. |
| *Chieftain Royalty Co. v. Marathon Oil Co.* | 17-cv-334 | E.D. Okla. |
| *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.* | 17-cv-00336-KEW | E.D. Okla. |
| *Chieftain Royalty Co. v. SM Energy Co.* | 18-cv-01225-J | W.D. Okla. |
| *Chieftain Royalty Co. v. XTO Energy, Inc.* | 11-cv-00029-KEW | E.D. Okla. |
| *Christopher v. Residence Mut. Ins. Co.* | CIVDS1711860 | Cal. Super. Ct. |
| *City of Los Angeles v. Bankrate, Inc.* | 14-cv-81323 (DMM) | S.D. Fla. |
| *Cline v Sunoco, Inc.* | 17-cv-313-JAG | E.D. Okla. |
| *Cline v. TouchTunes Music Corp.* | 14-CIV-4744 (LAK) | S.D.N.Y. |
| *Cobell v. Salazar* | 96-cv-1285 (TFH) | D.D.C. |
| *Common Ground Healthcare Coop. v. United States* | 17-877C | F.C.C. |
| *Cooper Clark Found. v. Oxy USA* | 2017-CV-000003 | D. Kan. |
| *Corker v. Costco Wholesale Corp.* | 19-cv-00290-RSL | W.D. Wash. |
| *Corona v. Sony Pictures Entm't Inc.* | 14–CV–09600–RGK–E | C.D. Cal. |
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *Dahy v. FedEx Ground Package Sys., Inc.* | GD-17-015638 | C.P. Pa. |
| *Dargoltz v. Fashion Mkting & Merch. Grp.* | 2021-009781-CA-01 | Fla. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Davis v. State Farm Ins.* | 19-cv-466 | W.D. Ky. |
| *Davis v. Yelp Inc.* | 18-cv-00400-EMC | N.D. Cal. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Deora v Nanthealth* | 17-cv-01825-TJH-MRWx | C.D. Cal. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *Engquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Grp. Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Farris v. Carlinville Rehab and Health Care Ctr.* | 2019CH42 | Ill. Cir. Ct. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fishon v. Premier Nutrition Corp.* | 16-CV-06980-RS | N.D. Cal. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Franklin v. Equity Residential* | 651360/2016 | N.Y. Super. Ct. |
| *Fresno Cnty. Employees Ret. Assoc. v. comScore Inc.* | 16-cv-1820 (JGK) | S.D.N.Y. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *FTC v. Reckitt Benckiser Grp. PLC* | 19CV00028 | W.D. Va. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gonzalez v. Banner Bank* | 20-cv-05151-SAB | E.D. Wash. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Gormley v. magicJack Vocaltec Ltd.* | 16-cv-1869 | S.D.N.Y. |
| *Graf v. Orbit Machining Co.* | 2020CH03280 | Ill. Cir. Ct. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |
| *Granados v. Cnty. of Los Angeles* | BC361470 | Cal. Super., Ct. |
| *Gudz v. Jemrock Realty Co., LLC* | 603555/2009 | N.Y. Super. Ct. |
| *Guevoura Fund Ltd. v. Sillerman* | 15-cv-07192-CM | S.D.N.Y. |
| *Hahn v. Hanil Dev., Inc.* | BC468669 | Cal. Super. Ct. |
| *Haines v. Washington Trust Bank* | 20-2-10459-1 | Wash. Super. Ct. |
| *Halperin v. YouFit Health Clubs* | 18-cv-61722-WPD | S.D. Fla. |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harrington v. Wells Fargo Bank NA* | 19-cv-11180-RGS | D. Mass. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Hawker v. Pekin Ins. Co.* | 20-cv-00830 | S.D. Ohio |
| *Hay Creek Royalties, LLC v. Roan Res. LLC* | 19-cv-00177-CVE-JFJ | N.D. Okla. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Henry Price Trust v Plains Mkting* | 19-cv-00390-RAW | E.D. Okla. |
| *Hernandez v. Experian Info. Sols., Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Wells Fargo Bank, N.A.* | 18-cv-07354 | N.D. Cal. |
| *Herrera v. Wells Fargo Bank, N.A.* | 18-cv-00332-JVS-MRW | C.D. Cal. |
| *Hill v. Valli Produce of Evanston* | 2019CH13196 | Ill. Cir. Ct. |
| *Holmes v. LM Ins. Corp.* | 19-cv-00466 | M.D. Tenn. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC* | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Hoyte v. Gov't of D.C.* | 13-cv-00569 | D.D.C. |
| *Hufford v. Maxim  Inc.* | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Akorn, Inc. Sec. Litig.* | 15-c-1944 | N.D. Ill. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (Am. Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re AXA Equitable Life Ins. Co. COI Litig.* | 16-cv-740 | S.D.N.Y. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re Bofl Holding, Inc. Sec. Litig.* | 15-cv-02324-GPC-KSC | S.D. Cal. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Chaparral Energy, Inc.* | 20-11947 (MFW) | D. Del. Bankr. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re Cognizant Tech. Solutions Corp. Sec. Litig.* | 16-6509 | D.N.J. |
| *In re ConAgra Foods Inc.* | 11-cv-05379-CJC-AGR | C.D. Cal. |
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Equifax Inc. Sec. Litig.* | 17-cv-03463-TWT | N.D. Ga. |
| *In re General Motors LLC Ignition Switch Litig.* | 14-md-2543 | S.D.N.Y. |
| *In re Glob. Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Helios and Matheson Analytics, Inc. Sec. Litig.* | 18-cv-06965JGK | S.D.N.Y. |
| *In re Illumina, Inc. Sec. Litig.* | 16-cv-03044-L-MSB | S.D. Cal. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Mylan N.V. Sec. Litig* | 16-cv-07926-JPO | S.D.N.Y. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.* | 14-cv-10318 | N.D. Ill. |
| *In re Novo Nordisk Sec. Litig.* | 17-cv-00209-BRM-LHG | D.N.J. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resideo Tech., Inc. Sec. Litig.* | 19-cv-02863 | D. Minn. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Rev Grp., Inc. Sec. Litig.* | 18-cv-1268-LA | E.D. Wis. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Saks Inc. Shareholder Litig.* | 652724/2013 | N.Y. Super. Ct. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Signet Jewelers Ltd, Sec. Litig.* | 16-cv-06728-CM-SDA | S.D.N.Y. |
| *In re Snap Inc. Sec. Litig.* | 17-cv-03679-SVW-AGR | C.D. Cal. |
| *In re Spectrum Brand Sec. Litig.* | 19-cv-347-JDP | W.D. Wis. |
| *In re Stellantis N.V. v. Sec. Litig.* | 19-CV-6770 (EK) (MMH) | E.D.N.Y. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re Tesla Inc. Sec. Litig.* | 18-cv-04865-EMC | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Vale S.A. Sec. Litig.* | 15 Civ. 09539 (GHW) | S.D.N.Y. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jet Capital Master Fund L.P. v. HRG Grp. Inc.* | 21-cv-552-jdp | W.D. Wis. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. Hyundai Capital Am.* | BC565263 | Cal. Super. Ct. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnston v. Camino Natural Res., LLC* | 19-cv-02742-CMA-SKC | D. Colo. |
| *Jordan v. WP Co. LLC, d/b/a The Washington Post* | 20-cv-05218 | N.D. Cal. |
| *Kennedy v. McCarthy* | 16-cv-2010-CSH | D. Conn. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kernen v. Casillas Operating LLC* | 18-cv-00107-JD | W.D. Okla. |
| *Khona v. Subaru of Am., Inc.* | 19-cv-09323-RMB-AMD | D.N.J. |
| *King v. Bumble Trading Inc.* | 18-cv-06868-NC | N.D. Cal. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Kommer v. Ford Motor Co.* | 17-cv-00296-LEK-DJS | N.D.N.Y. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Lambert v. Navy Fed. Credit Union* | 19-cv-00103-LO-MSN | E.D. Va. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Larson v. Allina Health Sys.* | 17-cv-03835 | D. Minn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Levy v. Dolgencorp, LLC* | 20-cv-01037-TJC-MCR | M.D. Fla. |
| *Linderman v. City of Los Angeles* | BC650785 | Cal. Super. Ct. |
| *Linkwell Corp. Sec. Litig.* | 16-cv-62506 | S.D. Fla. |
| *Linneman v. Vita-Mix Corp.* | 15-cv-748 | S.D. Ohio |
| *Lion Biotechnologies Sec. Litig.* | 17-cv-02086-SI | N.D. Cal. |
| *Liotta v. Wolford Boutiques, LLC* | 16-cv-4634 | N.D. Ga. |
| *Lippert v. Baldwin* | 10-cv-4603 | N.D. Ill. |
| *Lloyd v. CVB Fin. Corp.* | 10-cv-6256 (CAS) | C.D. Cal. |
| *Loblaw Card Program* | Remediation Program | |
| *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.* | 16-cv-112 | D. Del. |
| *Mabrey v. Autovest* | CGC-18-566617 | Cal. Super. Ct. |
| *Machado v. Endurance Int'l Grp. Holdings Inc.* | 15-cv-11775-GAO | D. Mass. |
| *Macias v. Los Angeles County Dept. of Water and Power* | BC594049 | Cal. Super. Ct. |
| *Malin v. Ambry Gentics Corp.* | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| *Malone v. Western Digital Corp.* | 20-cv-03584-NC | N.D. Cal. |
| *Marical  v. Boeing Employees' Credit Union* | 19-2-20417-6 | Wash. Super. Ct. |
| *Martinelli v. Johnson & Johnson* | 15-cv-01733-MCE-DB | E.D. Cal. |
| *McClellan v. Chase Home Fin.* | 12-cv-01331-JGB-JEM | C.D. Cal. |
| *McClintock v. Continuum Producer Serv., LLC* | 17-cv-00259-JAG | E.D. Okla. |
| *McClintock v Enter.* | 16-cv-00136-KEW | E.D. Okla. |
| *McGann v. Schnuck Markets Inc.* | 1322-CC00800 | Mo. Cir. Ct. |
| *McGraw v. Geico Gen. Ins. Co.* | 15-2-07829-7 | Wash. Super. Ct. |
| *McKibben v. McMahon* | 14-2171 (JGB) (SP) | C.D. Cal. |
| *McKnight Realty Co. v. Bravo Arkoma, LLC* | 17-CIV-308 (KEW) | E.D. Okla. |
| *McNeill v. Citation Oil & Gas Corp.* | 17-CIV-121 (KEW) | E.D. Okla. |
| *McWilliams v. City of Long Beach* | BC361469 | Cal. Super. Ct. |
| *Messner v. Cambridge Real Estate Servs., Inc.* | 19CV28815 | Or. Cir. Ct. |
| *Mild v. PPG Indus., Inc.* | 18-cv-04231 | C.D. Cal. |
| *Miller Revocable Trust v DCP Operating Co., LP* | 18-cv-00199-JH | E.D. Okla. |
| *Miller v. Carrington Mortg. Serv., LLC* | 19-cv-00016-JDL | D. Me. |
| *Miller v. Guenther Mgmt. LLC* | 20-2-02604-32 | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Miller v. Mut. of Enumclaw Ins. Co.* | 19-2-12357-1 | Wash. Super. Ct. |
| *Milstead v. Robert Fiance Beauty Sch., Inc.* | CAM-L-328-16 | N.J. Super. Ct. |
| *Moeller v. Advance Magazine Publishers, Inc.* | 15-cv-05671 (NRB) | S.D.N.Y. |
| *Mojica v. Securus Techs., Inc.* | 14-cv-5258 | W.D. Ark. |
| *Molnar v. 1-800-Flowers Retail, Inc.* | BC 382828 | Cal. Super. Ct. |
| *Monteleone v. Nutro Co.* | 14-cv-00801-ES-JAD | D.N.J. |
| *Moodie v. Maxim HealthCare Servs.* | 14-cv-03471-FMO-AS | C.D. Cal. |
| *Muir v. Early Warning Servs., LLC* | 16-cv-00521 | D.N.J. |
| *Murphy v. Precision Castparts Corp.* | 16-cv-00521-sb | D. Or. |
| *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd.* | 12-3824 | E.D. Pa. |
| *Nasseri v. Cytosport, Inc.* | BC439181 | Cal. Super. Ct. |
| *Nesbitt v. Postmates, Inc.* | CGC-15-547146 | Cal. Super. Ct. |
| *New Orleans Tax Assessor Project* | Tax Assessment Program | |
| *New York v. Steven Croman* | 450545/2016 | N.Y. Super. Ct. |
| *NMPA Late Fee Program Grps. I-IVA* | Remediation Program | CRB |
| *Noble v. Northland* | UWY-CV-16-6033559-S | Conn. Super. Ct. |
| *Novoa v. The GEO Grp., Inc.* | 17-cv-02514-JGB-SHK | C.D. Cal. |
| *Nozzi v. Housing Auth. of the City of Los Angeles* | CV 07-0380 PA (FFMx) | C.D. Cal. |
| *Nwabueza v. AT&T* | C 09-01529 SI | N.D. Cal. |
| *Nwauzor v. GEO Grp., Inc.* | 17-cv-05769 | W.D. Wash. |
| *O'Donnell v. Fin. Am. Life Ins. Co.* | 14-cv-01071 | S.D. Ohio |
| *Ollila v. Babcock & Wilcox Enter., Inc.* | 17-cv-00109 | W.D.N.C. |
| *Ostendorf v. Grange Indem. Ins. Co.* | 19-cv-01147-ALM-KAJ | S.D. Ohio |
| *Paetzold v. Metro. Dist. Comm'n* | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| *Paggos v. Resonant, Inc.* | 15-cv-01970-SJO | C.D. Cal. |
| *Palazzolo v. Fiat Chrysler Auto. NV* | 16-cv-12803 | E.D. Mich. |
| *Palmer v City of Anaheim* | 30-2017-00938646 | Cal. Super. Ct. |
| *Parker v. Time Warner Entm't Co.* | 239 F.R.D. 318 | E.D.N.Y. |
| *Parker v. Universal Pictures* | 16-cv-1193-CEM-DCI | M.D. Fla. |
| *Parmelee v. Santander Consumer USA Holdings Inc.* | 16-cv-783-K | N.D. Tex. |
| *Patrick v. Volkswagen Grp. of Am., Inc.* | 19-cv-01908-MCS-ADS | C.D. Cal. |
| *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.* | 19-cv-00514-JFH-JFJ | N.D. Okla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Pearlstein v. BlackBerry Ltd. | 13-cv-7060 | S.D.N.Y. |
| Pemberton v. Nationstar Mortg. LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Pena v. Wells Fargo Bank | 19-cv-04065-MMC-TSH | N.D. Cal. |
| Perez v. DIRECTV | 16-cv-01440-JLS-DFM | C.D. Cal. |
| Perez v. Wells Fargo Co. | 17-cv-00454-MMC | N.D. Cal. |
| Perrigo Sec. Litig. | 16-CV-2805-MCA-LDW | D.N.J. |
| Peterson v. Apria Healthcare Grp., Inc. | 19-cv-00856 | M.D. Fla. |
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Phillips v. Hobby Lobby Stores, Inc. | 18-cv-01645-JHE; 16-cv-837-JHE | N.D. Ala. |
| Pierce v Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |
| Pine Manor Investors v. FPI Mgmt., Inc. | 34-2018-00237315 | Cal. Super. Ct. |
| Pinon v. Mercedes-Benz USA, LLC and Daimler AG | 18-cv-3984 | N.D. Ga. |
| Plymouth Cnty. Ret. Sys. v. GTT Commc'n, Inc. | 19-cv-00982-CMH-MSN | E.D. Va. |
| Podawiltz v. Swisher Int'l, Inc. | 16CV27621 | Or. Cir. Ct. |
| Prause v. TechnipFMC PLC | 7-cv-2368 | S.D. Tex. |
| Press v. J. Crew Grp., Inc. | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| Purcell v. United Propane Gas, Inc. | 14-CI-729 | Ky. 2nd Cir. |
| Quezada v. ArbiterSports, LLC | 20-cv-05193-TJS | E.D. Pa. |
| Raider v. Archon Corp. | A-15-712113-B | D. Nev. |
| Ramos v. Hopele of Fort Lauderdale, LLC | 17-cv-62100 | S.D. Fla. |
| Rayburn v. Santander Consumer USA, Inc. | 18-cv-1534 | S.D. Ohio |
| RCC, P.S. v. Unigard Ins. Co. | 19-2-17085-9 | Wash. Super. Ct. |
| Reirdon v. Cimarex Energy Co. | 16-CIV-113 (KEW) | E.D. Okla. |
| Reirdon v. XTO Energy Inc. | 16-cv-00087-KEW | E.D. Okla. |
| Rhea v. Apache Corp. | 14-cv-00433-JH | E.D. Okla. |
| Rice v. Insync | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| Rice-Redding v. Nationwide Mut. Ins. Co. | 18-cv-01203 | N.D. Ga. |
| Rich v. EOS Fitness Brands, LLC | RIC1508918 | Cal. Super. Ct. |
| Rick Nelson Co. v. Sony Music Ent. | 18-cv-08791 | S.D.N.Y. |
| Rocchio v. Rutgers, The State Univ. of New Jersey | MID-L-003039-20 | N.J. Super. Ct. |
| Rollo v. Universal Prop. & Cas. Ins. | 2018-027720-CA-01 | Fla. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Rosado v. Barry Univ., Inc.* | 20-cv-21813 | S.D. Fla. |
| *Rose v Array Biopharma Inc.* | 17cv2789 | D. Colo. |
| *Roth v. GEICO Gen. Ins. Co. and Joffe v. GEICO Indem. Co.* | 16-cv-62942 | S.D. Fla. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Russett v. Nw. Mut. Life Ins. Co.,* | 19-cv-07414-KMK | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *Salgado v. UPMC Jameson* | 30008-18 | C.P. Pa. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanchez v. Centene Corp.* | 17-cv-00806-AGF | E.D. Mo. |
| *Sanders v. Glob. Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Santa Barbara Channelkeeper v. State Water Res. Control Bd.* | 37-2020-00005776 | Cal. Super. Ct. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schulte v. Liberty Ins. Corp.* | 19-cv-00026 | S.D. Ohio |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Schwartz v. Opus Bank* | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| *SEB Inv. Mgmt. AB v. Endo Int'l PLC* | 17-cv-3711-TJS | E.D. Pa. |
| *SEC v. Brian Lines, Fair Fund* | 07-cv-11387 (DLC) | S.D.N.Y |
| *SEC v. Henry Ford and Fallcatcher, Inc.* | 19-cv-02214-PD | E.D. Pa. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| *Shah v Zimmer Biomet Holdings, Inc.* | 16-cv-00815-PPS-MGG | N.D. Ind. |
| *Sidibe v. Sutter Health* | 12-cv-4854-LB | N.D. Cal. |
| *Smith v. Pulte Home Corp.* | 30-2015-00808112-CU-CD-CXC | Cal. Super. Ct. |
| *Snap Derivative Settlement* | 18STCV09365; BC720152; 19STCV08413 | Cal. Super. Ct. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solberg v. Victim Serv., Inc.* | 14-cv-05266-VC | N.D. Cal. |
| *Sonner v. Schwabe N. Am., Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Staats v. City of Palo Alto* | 2015-1-CV-284956 | Cal. Super. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stein v. Eagle Bancorp, Inc.* | 19-cv-06873-LGS | S.D.N.Y. |
| *Steinberg v. Opko Health, Inc.* | 18-cv-23786-JEM | S.D. Fla. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stier v. PEMCO Mut. Ins. Co.* | 18-2-08153-5 | Wash. Super. Ct. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Strickland v. Carrington Mortg. Servs., LLC* | 16-cv-25237 | S.D. Fla. |
| *Strougo v. Lannett Co.* | 18-cv-3635 | E.D. Pa. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sudunagunta v. NantKwest, Inc.* | 16-cv-01947-MWF-JEM | C.D. Cal. |
| *Sullivan v Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |
| *Swafford v. Ovintiv Exploration Inc.* | 21-cv-00210-SPS | E.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Tile Shop Stockholders Litig.* | 2019-0892-SG | Del. Ch. |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tyus v. Gen. Info. Sols. LLC* | 2017CP3201389 | S.C. C.P. |
| *Udeen v. Subaru of Am., Inc.* | 10-md-196 (JZ) | D.N.J. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Van Jacobs v. New World Van Lines, Inc.* | 2019CH02619 | Ill. Cir. Ct. |
| *Vasquez v. Libre by Nexus, Inc.* | 17-cv-00755-CW | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Vassalle v. Midland Funding LLC* | 11-cv-00096 | N.D. Ohio |
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Watson v. Checkr, Inc.* | 19-CV-03396-EMC | N.D. Cal. |
| *Weimar v. Geico Advantage Ins. Co.* | 19-cv-2698-JTF-tmp | W.D. Tenn. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *White Family Minerals, LLC v. EOG Res., Inc.* | 19-cv-409-KEW | E.D. Okla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilner v. Leopold & Assoc,* | 15-cv-09374-PED | S.D.N.Y. |
| *Wilson v. LSB Indus., Inc* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Wright v. Southern New Hampshire Univ.* | 20-cv-00609 | D.N.H. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D. Cal. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |

# - EXHIBIT B -

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
*Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-cv-04113 (PSG:JEM)

# If you are a Commercial Fisher or Fish Processor that was in operation as of May 19, 2015, and fished or purchased fish from certain southern California fishing blocks, you may be entitled to a payment from a class action settlement.

*A Federal Court authorized this Notice. You are <u>not</u> being sued.*
*This is not a solicitation from a lawyer.*

*Para una notificación en español, visite: www.PlainsOilSpill.com*
*(Vietnamese)*
*(Mandarin)*

- A Settlement has been reached in a class action lawsuit involving a coastal oil spill in 2015, near Santa Barbara.

- Plaintiffs claim that Plains All American Pipeline L.P. and Plains Pipeline L.P. ("Defendants") caused an underground pipeline to rupture, resulting in an oil spill along the coast in Santa Barbara County on May 19, 2015. Plaintiffs also claim that the oil spill caused damage to the fishing industry and caused residents of coastal homes to lose the use and enjoyment of their homes.

- A Fisher Class was previously certified by this Court. This Notice provides information regarding the $184 million Fisher Class Settlement. The Settlement is also on behalf of certain property owners and lessees ("the Property Class Settlement"). The Fisher and Property Class Settlement, if approved by the Court, will resolve all remaining claims in the class action litigation pending in the United States District Court for the Central District of California.

- You are a Fisher Class Member if you are a person or business who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish & Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; or if you are a person or business in operation as of May 19, 2015 who purchased such commercial seafood directly from the Commercial Fishers and re-sold it at the retail or wholesale level. You can find out if you are a Fisher Class Member by going to www.PlainsOilSpill.com.

- You are no longer a Fisher Class Member if you previously excluded yourself from the Fisher Class during the initial notice period, or entered a separate settlement with Defendants for which you signed a full release.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

1

**PLEASE READ THIS NOTICE CAREFULLY. THE SETTLEMENT WILL AFFECT YOUR RIGHTS IF YOU ARE A MEMBER OF THE FISHER CLASS.**

| YOUR LEGAL RIGHTS AND OPTIONS | | |
|---|---|---|
| **FILE A CLAIM** | • Receive a payment from the Settlement<br>• Be bound by the Settlement | Submit online or postmarked by **Month x, 2022** |
| **OBJECT** | • Tell the Court what you do not like about the Settlement<br>• You and any lawyer(s) representing, advising, or in any way assisting you in connection with your objection <u>must appear and speak</u> at the Final Approval Hearing<br>• You will still be bound by the Settlement, and you may still file a Claim | Served/Filed no later than **Month x, 2022** |
| **DO NOTHING** | • Receive no payment from the Settlement<br>• Be bound by the Settlement | |

• This Notice explains your rights and options **and the deadlines to exercise them**.

• The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be distributed to all qualifying Class Members who timely submit a Claim Form, only if the Court approves the Settlement and after potential appeals are resolved.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2

2414409.1

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ............................................................................ **PAGE 4**

    1.   Why was this Notice issued?
    2.   What is this case about?
    3.   Why is there a Settlement?

**WHO'S INCLUDED IN THE SETTLEMENT?**.................................... **PAGE 5**

    4.   How do I know if I am in the Class?

**THE SETTLEMENT BENEFITS**.......................................................... **PAGE 6**

    5.   What does the Settlement provide?
    6.   How will the lawyers be paid?
    7.   What are the reasons for the Settlement?

**HOW TO GET BENEFITS** .................................................................... **PAGE 8**

    8.   How will I find out how much money I am personally getting?
    9.   How can I get a payment?
    10.  Am I definitely going to get money from this Settlement?

**THE LAWYERS REPRESENTING YOU** .......................................... **PAGE 9**

    11.  Do I have a lawyer in the litigation?

**EXCLUSIONS** ...................................................................................... **PAGE 10**

    12.  Can I exclude myself from this Settlement?

**OBJECTING TO THE SETTLEMENT** .............................................. **PAGE 10**

    13.  How do I object to the Settlement?

**OBLIGATIONS AND RELEASED CLAIMS** ...................................... **PAGE 11**

    14.  What are my rights and obligations under the Settlement?
    15.  What claims will be released by the Settlement?

**FINAL APPROVAL HEARING** .......................................................... **PAGE 12**

    16.  May I attend the Final Approval Hearing?
    17.  Do I have to come to the Final Approval Hearing?

**GETTING MORE INFORMATION** .................................................... **PAGE 12**

    18.  How can I get more information?

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2414409.1

## Basic Information

| 1. Why was this Notice issued? |
|---|

A Federal Court authorized this Notice because you have a right to know about this proposed Settlement and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the proposed Fisher Class Settlement Amount of $184,000,000, your legal rights, and the hearing ("Final Approval Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement between the certified Fisher Class (as defined above) and Defendants.

The Honorable Chief Judge Philip S. Gutierrez of the United States District Court for the Central District of California is overseeing this case. The case is called *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, Case No. 2:15-cv-04113. The persons who have filed the class action suit and were appointed by the Court as Fisher Class Representatives are Keith Andrews, Tiffani Andrews, Morgan Castagnola, Mike Gandall, Hwa Hong Muh, Ocean Angel IV LLC, Pacific Rim Fisheries, Inc., Sarah Rathbone, Community Seafood LLC, Santa Barbara Uni, Inc., Southern Cal Seafood, Inc., and Wei International Trading, Inc. (The Court appointed additional Class Representatives to represent the Property Class.) As explained above, the Defendants in the lawsuit are Plains All American Pipeline, L.P. and Plains Pipeline, L.P. ("Plains").

| 2. What is this case about? |
|---|

On May 19, 2015, an underground pipeline known as Line 901 ruptured, resulting in a discharge of crude oil along the coast near Refugio State Beach in Santa Barbara County. As a result, the CDFW closed a 138-square-mile zone from Canada de Alegria by Gaviota State Beach to Coal Oil Point in Isla Vista to fishing for 41 days. Plaintiffs allege the spill also caused long-term harm to commercial fishing in the affected class blocks.

Plaintiffs allege that the oil spill caused reduced catch for certain species of seafood and an impact on all fishing in the affected class blocks after the spill resulting in commercial fishers and fish processors suffering significant financial losses. See Question X below. The lawsuit is not about personal injuries or other claims, such as damage to fishing equipment or other types of business losses. Plains denies any claims of wrongdoing and disputes Plaintiffs' claims.

Plaintiffs filed this case in 2015, and this case has been actively litigated since then. Trial was set to begin on June 2, 2022.

| 3. Why is there a Settlement? |
|---|

The Court has not decided whether Plaintiffs or Defendants should win this litigation. Plaintiffs and Defendants do not agree on whether Plaintiffs would have prevailed on any of their claims against Plains at trial. They also do not agree on the amount of damages, if any, that would be recoverable if the Class prevailed on the claims alleged at trial. Instead, both sides agreed to the Settlement. That way, they avoid the uncertainties and expenses associated with continuing the litigation, and Class Members will get compensation sooner rather than later, if at all. Here, the $184 million Fisher Class Settlement represents nearly 100 percent of the claimed damages through 2017 and more than one-third of the total amount of claimed compensatory damages once the damages period was extended to 2020. Counsel appointed by the Court to represent the Fisher Class believe that this is an

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

4

exceptionally strong Settlement given the claims and defenses at issue in this long-fought litigation. For more information, please see Question X, below.

## WHO'S INCLUDED IN THE SETTLEMENT?

| **4.    How do I know if I am in the Class?** |
| --- |

The Court has decided that everyone who fits either of the following descriptions is a member of the Fisher Class:

- **Commercial Fishers**: All persons and businesses who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish & Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; and

- **Fish Processors**: All persons and businesses in operation as of May 19, 2015 who purchased such commercial seafood directly from the Commercial Fishers and re-sold it at the retail or wholesale level.

You can find out if you are a Fisher Class Member by going to www.PlainsOilSpill.com.

The fishing blocks included in the Fisher Class are highlighted in this diagram below:

### Map of Fishing Blocks: Amended Definition



QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

5

2414409.1

As described in the Settlement Agreement, those excluded from the Fisher Class are Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; the judge to whom this case is assigned, the judge's staff, and any members of the judge's immediate family; and businesses that contract directly with Plains for use of the Pipeline.

In addition, you are no longer a Fisher Class Member if you previously excluded yourself from the Fisher Class during the initial notice period, or entered a separate settlement with Plains for which you signed a full release.

The proposed Settlement, if approved by the Court, will settle all claims of the Fisher Class against Plains.

**PLEASE NOTE:** Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement. **If you are a Class Member and you wish to participate in the distribution of proceeds from the Settlement, you are required to submit a Claim Form** available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you. Your Claim Form and, if necessary, any required supporting documentation as set forth therein must be postmarked (if mailed) or submitted online on or before XXX, 2022. See Question X for more information.

### THE SETTLEMENT BENEFITS

| 5. What does the Settlement provide? |
| --- |

The Fisher Class Settlement, if approved, will result in the creation of a cash settlement fund of $184,000,000 (the "Fisher Class Settlement Amount"). The Fisher Class Settlement Amount, together with any interest earned thereon, is the "Fisher Class Common Fund." The Fisher Class Common Fund less (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; and (c) any attorneys' fees and costs and any service awards to Class Representatives in connection with their representation of the Class, awarded by the Court (the "Net Settlement Fund"), will be distributed to eligible Class Members pursuant to a proposed plan of distribution ("Plan of Distribution") that is described in the next section of this Notice.

If you are entitled to relief under the Fisher Class Settlement, the Settlement Administrator will determine the portion of the Net Settlement Fund payable to you pursuant to the Court-approved Plan of Distribution.

A more detailed description of the Fisher Class Settlement can be found in the Settlement Agreement at www.PlainsOilSpill.com.

| 6. How will the lawyers be paid? |
| --- |

Class Counsel (see Question X below) will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the total amount of the Fisher Class Settlement, (or $60,720,000), plus their litigation expenses (not to exceed $5.2 million from the Fisher Settlement), and interest earned on these amounts, at the same rate as earned by the Fisher Class Common Fund. (Class Counsel's fee and litigation expenses application will also include a request for an equivalent percentage from the Property Class Settlement, plus additional litigation expenses.) Since the first case was filed in June 2015, Class Counsel have expended considerable time and effort prosecuting this case, including

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

6

preparing for trial, retaining and working with specialized experts on a variety of issues, including the pipeline's integrity, how much oil spilled, where the oil traveled, how the spill reduced fish catch, the impact of oil spills on fisheries and ecosystems, and how much damage the spill caused. These specialized experts included scientists, engineers, an economist, and a marine biologist. Class Counsel have advanced all of the expenses incurred during the litigation of this case, with the expectation that they would be reimbursed if they succeeded in obtaining a recovery for the Class. Class Counsel will also ask the Court to award up to $15,000 to each Class Representative as a service award, in recognition of their considerable time and effort spent on behalf of the Class in achieving this Settlement. Each Class Representative assisted Class Counsel with building the factual record and case strategy, cooperated with discovery, including the production of records, submitted to depositions and travel to the district in which the lawsuit was filed.

The Court may award less than the amount requested by Class Counsel. Under the Settlement Agreement, any amount awarded to Class Counsel or Class Representatives will be paid out of the Fisher Class Common Fund.

Class Counsel will file their motion for attorneys' fees and expenses no later than [insert date] and a copy of the motion will also be available at www.PlainsOilSpill.com.

| 7. | What are the reasons for the Settlement? |
|---|---|

The Settlement was reached after years of contested litigation, including at the motion to dismiss, class certification, and summary judgment stages. The Parties also completed fact and expert discovery and were preparing for trial to commence on June 2, 2022. Nevertheless, a jury has not rendered any verdict in connection with Plaintiffs' claims against Plains. Instead, Plaintiffs and Plains have agreed to this Settlement to avoid the cost, delay, and uncertainty of further litigation.

As in any litigation, Plaintiffs and the Class would face an uncertain outcome if they did not agree to a Settlement. If Plaintiffs succeeded at trial, Plains would likely file appeals that would postpone final resolution of the case for years. Continuation of the litigation against Plains could result in a judgment greater than this Settlement. Conversely, continuing the case could result in no recovery at all or a recovery that is less than the amount of the Settlement.

Plaintiffs' principal reason for entering into the Settlement with Plains is the substantial benefit to the Class now, without further risk or the delays inherent in continued litigation. The $184 million Fisher Class Settlement Amount must be considered against the significant risk that a smaller recovery—or, indeed, no recovery at all—might be achieved after trial, and likely appeals, a process that could last several years into the future. The Settlement provides a substantial award for Class Members, without protracted delay.

Plaintiffs and Class Counsel believe that this Settlement is fair and reasonable to the Class for several reasons. First, Plaintiffs and Class Counsel believe that $184 million is a significant recovery. Second, if the Settlement becomes final, the Class will receive a certain and prompt monetary recovery. Third, Class Counsel believe that the significant and immediate benefits of the Settlement, when weighed against the significant risk, delay, and uncertainty of continued litigation, are a very favorable result for the Class.

Plains has denied and continues to deny the claims alleged by Plaintiffs. Plains admits that oil leaked from Line 901, and that some of that oil reached the Pacific Ocean, but disputes the amount of oiling and the amount of damage that the oiling caused. For Plains, the principal reason for the Settlement

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

7

is to eliminate the burden, expense, uncertainty and risks inherent in any litigation, especially in complex cases such as this. Plains has determined that it is desirable and beneficial that the lawsuit be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

**THE COURT HAS NOT RULED AS TO WHETHER PLAINS PIPELINE IS LIABLE TO PLAINTIFFS OR TO THE CLASS. THIS NOTICE IS NOT INTENDED TO BE AN EXPRESSION OF ANY OPINION BY THE COURT WITH RESPECT TO THE TRUTH OF THE ALLEGATIONS IN THE LAWSUIT OR THE MERITS OF THE CLAIMS OR DEFENSES ASSERTED. THIS NOTICE IS SOLELY TO ADVISE YOU OF THE PROPOSED SETTLEMENT OF THIS LAWSUIT AS TO PLAINS PIPELINE AND YOUR RIGHTS IN CONNECTION WITH THAT SETTLEMENT.**

### HOW TO GET BENEFITS

| 8. How will I find out how much money I am personally getting? |
| --- |

Class Counsel will submit the proposed Plan of Distribution to the Court xx days before Final Approval and post it at www.PlainsOilSpill.com.

The Plan of Distribution is based upon the pro rata share and value of catch attributable to each vessel and each fishing license, based on landing records obtained from the CDFW. The Fisher Class Net Settlement Fund will be distributed among the Fisher Class Members proportionately, based on these landing records. The Plan also provides for the distribution of the Net Settlement Fund to fish processor Class Members based on the proportional share and value of fish purchased by each processor, based upon CDFW landing records.

If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Class Members who timely submit valid Claim Forms, in accordance with a Court-approved Plan of Distribution. Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will otherwise be bound by the Settlement. The Court may approve the proposed Plan of Distribution, or modify it, without additional notice to the Class. The Plan of Distribution will be made available at www.PlainsOilSpill.com, and any order modifying the Plan of Distribution will be posted on that website. The Plan of Distribution is intended to compensate Fisher Class Members who lost income as a result of the 2015 Line 901 oil spill.

The Settlement Administrator will determine your qualifications to receive money from the Fisher Class Settlement and will also determine the amount of any distribution you will receive from the Settlement based upon your Claim Form and other available information, including data available from CDFW. Distributions will be made to Fisher Class Members after all claims have been processed, after the Court has finally approved the Settlement, and after any appeals are resolved.

If you are dissatisfied with the distribution determinations, you may ask the Court, which retains jurisdiction over all Fisher Class Members and the claims administration process, to decide the issue by submitting a written request. The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

| 10. How can I get a payment? |
| --- |

In order to get a payment from the Settlement, Class Members must timely complete and return a Claim Form. Claim Forms are available at www.PlainsOilSpill.com, or by calling the toll-free number

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2414409.1

[insert call number] to request that a hard copy Claim Form be mailed to you by the Settlement Administrator. Read the instructions carefully; fill out the Claim Form; sign it; and mail or submit it online so that it is postmarked (if mailed) to the address below or received (if submitted online) no later than **XXX Date, 2022**. You do not need to contact Class Counsel.

*Plains Oil Spill Settlement*
c/o Settlement Administrator
Mailing Address
City, State, Zip
Email: [insert]
www.PlainsOilSpill.com
Telephone: [insert call number]

If you do not submit a timely Claim Form with all of the required information, you will not receive a payment, but you will still be bound in all other respects by the Settlement, the Judgment, and the release contained in them.

| 11.   Am I definitely going to get money from this Settlement? |
| :-- |

No. There will be no payments if the Settlement Agreement is not approved by the trial court and the appellate court, if it is appealed. If the Settlement Agreement is not approved, the lawsuit will proceed against Plains as if the Settlement Agreement had not been entered. If the Settlement is approved, you might not get money because you might not be a Class Member.

### THE LAWYERS REPRESENTING YOU

| 12.   Do I have a lawyer in the Litigation? |
| :-- |

The Court has appointed Lieff Cabraser Heimann Bernstein LLP, Keller Rohrback L.L.P., Cappello & Noël LLP, and Audet & Partners, LLP ("Class Counsel") to be the attorneys representing the Fisher Class and Property Class. Class Counsel believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this Litigation, you may hire one at your own expense. If you wish to contact your Court-appointed lawyers, their contact information is below.

Robert J. Nelson
LIEFF CABRASER HEIMANN BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000

Juli E. Farris
KELLER ROHRBACK L.L.P.
801 Garden Street
Santa Barbara, CA  93101
(805) 456-1497

A. Barry Cappello
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101
(805) 564-2444

William M. Audet
AUDET & PARTNERS, LLP.
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
(415) 568-2555

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2414409.1

EXCLUSIONS

| |
|---|
| **13.   Can I exclude myself from this Settlement?** |

No. If you are a Class Member because you satisfy the Fisher Class definition and you did not previously opt out of the Class, or enter a separate settlement with Plains for which you signed a full release, you are a member of the Class and you will be bound by the release of claims as part of the Settlement. The Fisher Class was first certified on February 28, 2017, and later amended on November 22, 2019 to conform to finalized evidence, and you previously had an opportunity exclude yourself. If you did not exclude yourself then, you may not exclude yourself now.

OBJECTING TO THE SETTLEMENT

| |
|---|
| **14.   How do I object to the Settlement?** |

If you are a Class Member, you can object to the Settlement in writing if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file your letter or brief with the Clerk of the Court, at United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012-4565, stating that you object to the Settlement in *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 15-4113 (PSG) and identify all your reasons for your objections. You should include citations and supporting evidence and attach any materials that you rely on for your objections.

If you have a lawyer, they must file an appearance and submit your objection through the Court's e-filing system. Your letter or brief must also include:

(1) Your name, current address, and telephone number;
(2) Proof of class membership including documents such as fish landing records;
(3) A statement indicating whether the objection is to the proposed Settlement, the Plan of Distribution, the application for attorneys' fees and expenses, and/or the Class Representative service award;
(4) A statement of the factual and legal reasons for your objection and whether it applies only to you, to a subset of the Fisher Class, or to the entire Fisher Class;
(5) Identify all class action settlements by name, date, and court to which you have previously objected;
(6) The name and contact information of any and all lawyers representing, advising, or in any way assisting you in connection with your objection;
(7) Copies of all documents that you wish to submit in support of your position; and
(8) Your signature.

You must also file your objection with the Court and mail or deliver a copy of your letter or brief to Class Counsel and Plains' Counsel listed below by certified mail postmarked no later than [**objection deadline**]. Finally, for an objection to be valid, you and any lawyer(s) representing, advising, or in any way assisting you in connection with your objection must appear and speak at the Final Approval Hearing. If you hire an attorney (at your own expense) to represent you for purposes of objecting, your attorney must serve a notice of appearance on counsel listed below and file it with the Court (at the address set out above) by no later than **XXX Date, 2022.**

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

10

2414409.1

| **Class Counsel** | **Counsel for Defendants** |
|---|---|
| Robert J. Nelson | Henry Weissmann |
| LIEFF CABRASER HEIMANN BERNSTEIN LLP | MUNGER TOLLES & OLSON LLP |
| 275 Battery Street, 29th Floor | 350 S. Grand Avenue, 50th Floor, Los |
| San Francisco, CA  94111-3339 | Angeles, CA 90071 |
| (415) 956-1000 | (213) 683-9150 |

Juli E. Farris
KELLER ROHRBACK L.L.P.
801 Garden Street
Santa Barbara, CA  93101
(805) 456-1497

Any Class Member who does not make their objection in the manner provided above will be deemed to have waived such objection and will forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as set forth in the Settlement Agreement, to the Plan of Distribution, or to the award of fees and expenses to Class Counsel or any service awards to Plaintiffs, unless otherwise ordered by the Court.

Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

### OBLIGATIONS AND RELEASED CLAIMS

#### 15.   What are my rights and obligations under the Settlement?

If you are a Fisher Class Member and did not exclude yourself from the Fisher Class during the initial notice period, you may receive the benefit of the Settlement by submitting a Claim Form, and you will be bound by, the terms of the Settlement described in this Notice and the Settlement Agreement, upon final approval by the Court.

#### 16.   What claims will be released by the Settlement?

If the Settlement is approved by the Court, the Court will enter a Judgment. If the Judgment becomes Final pursuant to the terms of the Settlement Agreement, all Class Members will be deemed to have, and by operation of the Final Judgment will have, fully, finally, and forever released, relinquished, and discharged any and all claims of any kind or nature whatsoever for any property damage or any economic losses of any kind or nature whatsoever against Plains arising from the May 19, 2015 Oil Spill, including claims for victims' restitution. The specific claims you are giving up against Plains are described in the Settlement Agreement at www.PlainsOilSpill.com. The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question X for free or you can, of course, talk to your own lawyer if you have questions about what this means.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2414409.1

FINAL APPROVAL HEARING

| 17. May I attend the Final Approval Hearing? |
|---|

Yes. The Court will hold a Final Approval Hearing on XXX Date, at XXX Time, before the Honorable Phillip S. Gutierrez at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565. At the hearing the Court will determine whether: (1) the Settlement as set forth in the Settlement Agreement for $184,000,000 in cash should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Settlement Agreement should be entered; (3) to award Class Counsel attorneys' fees and expenses out of the Fisher Class Common Fund and, if so, in what amount; (4) to award Plaintiffs service awards in connection with their representation of the Class out of the Fisher Class Common Fund and, if so, in what amount; and (5) the Plan of Distribution should be approved by the Court. The Court may adjourn or continue the Final Approval Hearing without further notice to Members of the Class.

Any Class Member may appear at the Final Approval Hearing, provided they have complied with the procedures described in Question 14, above.

Unless directed by the Court, any Class Member who does not object in the manner provided will be deemed to have waived all objections to this Settlement and will be barred from raising (in this or any other proceeding or on any appeal) any objection and any untimely objection will be barred.

| 18. Do I have to come to the Final Approval Hearing? |
|---|

No. Class Counsel will answer any questions the Court may have, but you are welcome to come at your own expense. If you send a comment, you do not have to come to Court to talk about it. However, if you object to the Settlement, you do have to come to the hearing, along with any lawyer who has represented or otherwise advised you. See Question 14.

GETTING MORE INFORMATION

| 19. How can I get more information? |
|---|

This Notice summarizes the Settlement. You can get more details and print the Settlement Agreement at www.PlainsOilSpill.com. You may also write with questions or notify the Settlement Administrator regarding address changes to *Plains Oil Spill Settlement* c/o Settlement Administrator, P.O. Box 0000, City, ST 00000, email at [insert] or call the Settlement Administrator at [insert call number]. Before doing so however, please read this full Notice carefully. You may also call Class Counsel listed in response to Question X.

**Please do not call the Court or the Court Clerk's Office to inquire about this Settlement as they cannot answer your questions.**

DATED: _____        BY ORDER OF THE COURT
                                   HON. PHILIP S. GUTIERREZ
                                   UNITED STATES DISTRICT COURT
                                   CENTRAL DISTRICT OF CALIFORNIA

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

12

2414409.1

# - EXHIBIT C -

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
*Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-cv-04113 (PSG:JEM)

# If you owned or leased Residential Beachfront Property or had a Private Easement to a Beach affected by the 2015 Santa Barbara Oil Spill, you may be entitled to a payment from a class action settlement

*A Federal Court authorized this Notice. You are <u>not</u> being sued.*
*This is not a solicitation from a lawyer.*

*Para una notificación en español, visite: www.PlainsOilSpill.com*
*(Vietnamese)*
*(Mandarin)*

- A Settlement has been reached in a class action lawsuit involving a coastal oil spill in 2015, near Santa Barbara.

- Plaintiffs claim that Plains All American Pipeline L.P. and Plains Pipeline L.P. ("Defendants") caused an underground pipeline to rupture, resulting in an oil spill along the coast in Santa Barbara County on May 19, 2015 that washed up onto coastal properties and beaches. Plaintiffs also claim that the oil spill caused the residents of coastal homes to lose the use and enjoyment of their homes, and caused damage to the fishing industry.

- A Property Class was previously certified by this Court. This Notice provides information regarding the $46 million Property Class Settlement. The Settlement is also on behalf of certain commercial fishers and fish processors ("the Fisher Class Settlement"). The Fisher and Property Class Settlement, if approved by the Court, will resolve all remaining claims in the class action litigation pending in the United States District Court for the Central District of California.

- You are a Property Class Member if you owned or leased residential beachfront property or property with a private easement to a beach where oil from the 2015 Santa Barbara oil spill washed up and the oiling was categorized as heavy, moderate, or light. You can find out if your property is included by going to www.PlainsOilSpill.com, where a list of properties Plaintiffs claim were impacted is posted.

- If your property was leased as of May 19, 2015 (the date of the oil spill), you are requested to forward this Notice to the leaseholder.

- You are no longer a Property Class Member if you previously excluded yourself from the Property Class during the initial notice period, or entered a separate settlement with Defendants for which you signed a full release.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

1

**PLEASE READ THIS NOTICE CAREFULLY. THE SETTLEMENT WILL AFFECT
YOUR RIGHTS IF YOU ARE A MEMBER OF THE PROPERTY CLASS.**

| YOUR LEGAL RIGHTS AND OPTIONS | | |
|---|---|---|
| **FILE A CLAIM** | • Receive a payment from the Settlement<br>• Be bound by the Settlement | Submit online or postmarked by **Month x, 2022** |
| **OBJECT** | • Tell the Court what you do not like about the Settlement<br>• You and any lawyer(s) representing, advising, or in any way assisting you in connection with your objection <u>must appear and speak</u> at the Final Approval Hearing<br>• You will still be bound by the Settlement, and you may still file a Claim | Served/Filed no later than **Month x, 2022** |
| **DO NOTHING** | • Receive no payment from the Settlement<br>• Be bound by the Settlement | |

- This Notice explains your rights and options **and the deadlines to exercise them**.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be distributed to all qualifying Class Members who timely submit a Claim Form, only if the Court approves the Settlement and after potential appeals are resolved.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

2

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ................................................................................**PAGE 4**

    1.   Why was this Notice issued?

    2.   What is this case about?

    3.   Why is there a Settlement?

**WHO'S INCLUDED IN THE SETTLEMENT?** ........................................**PAGE 5**

    4.   How do I know if I am in the Class?

**THE SETTLEMENT BENEFITS** ..................................................................**PAGE 6**

    5.   What does the Settlement provide?

    6.   How will the lawyers be paid?

    7.   What are the reasons for the Settlement?

**HOW TO GET BENEFITS** ............................................................................**PAGE 8**

    8.   How will I find out how much money I am personally getting?

    9.   How can I get a payment?

    10.  Am I definitely going to get money from this Settlement?

**THE LAWYERS REPRESENTING YOU** .....................................................**PAGE 9**

    11.  Do I have a lawyer in the litigation?

**EXCLUSIONS** ...............................................................................................**PAGE 10**

    12.  Can I exclude myself from this Settlement?

**OBJECTING TO THE SETTLEMENT** ......................................................**PAGE 10**

    13.  How do I object to the Settlement?

**OBLIGATIONS AND RELEASED CLAIMS** ..............................................**PAGE 11**

    14.  What are my rights and obligations under the Settlement?

    15.  What claims will be released by the Settlement?

**FINAL APPROVAL HEARING** ....................................................................**PAGE 12**

    16.  May I attend the Final Approval Hearing?

    17.  Do I have to come to the Final Approval Hearing?

**GETTING MORE INFORMATION** .............................................................**PAGE 13**

    18.  How can I get more information?

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

3

**BASIC INFORMATION**

| 1.    Why was this Notice issued? |
|---|

A Federal Court authorized this Notice because you have a right to know about this proposed Settlement and about all of your options before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the proposed Property Class Settlement Amount of $46,000,000, your legal rights, and the hearing ("Final Approval Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement between the certified Property Class (as defined above) and Defendants.

The Honorable Chief Judge Philip S. Gutierrez of the United States District Court for the Central District of California is overseeing this case. The case is called *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, Case No. 2:15-cv-04113. The persons who have filed the class action lawsuit and were appointed by the Court as Property Class Representatives are Baciu Family LLC, Alexandra Geremia, Jacques Habra, and Mark and Mary Kirkhart. (The Court appointed additional Class Representatives to represent the Fisher Class.) As explained above, the Defendants in the lawsuit are Plains All American Pipeline, L.P. and Plains Pipeline, L.P. ("Plains").

| 2.    What is this case about? |
|---|

On May 19, 2015, an underground pipeline known as Line 901 ruptured, resulting in a discharge of crude oil along the coast near Refugio State Beach in Santa Barbara County.

Plaintiffs allege that owners and lessors of certain residential beachfront property or property with a private easement to beaches were unable to fully use and enjoy their properties as a result of the spill, because oil from the spill washed up onto their properties or onto neighboring beaches. See Question X below. Plains denies any claims of wrongdoing and disputes Plaintiffs' claims.

Plaintiffs filed this case in 2015, and this case has been actively litigated since then. Trial was set to begin on June 2, 2022.

| 3.    Why is there a Settlement? |
|---|

The Court has not decided whether Plaintiffs or Defendants should win this litigation. Plaintiffs and Defendants do not agree on whether Plaintiffs would have prevailed on any of their claims against Plains at trial. They also do not agree on the amount of damages, if any, that would be recoverable if the Class prevailed on the claims alleged at trial. Instead, both sides agreed to the Settlement. That way, they avoid the uncertainties and expenses associated with continuing the litigation, and Class Members will get compensation sooner rather than later, if at all. Here, the $46 million Property Class Settlement represents over half of claimed compensatory damages. Counsel appointed by the Court to represent the Property Class believe that this is an exceptionally strong Settlement given the claims and defenses at issue in this long-fought litigation and that the Property Class Settlement

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

4

represents a substantial portion of the damages alleged on behalf of the Property Class. For more information, please see Question X, below.

## WHO'S INCLUDED IN THE SETTLEMENT?

| **4.    How do I know if I am in the Class?** |
| --- |

The Court has decided that everyone who owned or leased a property that fits the following description is a member of the Property Class:

- Residential beachfront properties on a beach and residential properties with a private easement to a beach (collectively "Included Properties") where oil from the 2015 Santa Barbara oil spill washed up, and where the oiling was categorized as Heavy, Moderate or Light, as identified in Exhibit A to Plaintiffs' renewed motion [ECF 300-3, Ex. 14 of the Action].

The properties referred to in this exhibit are contained in a list located at www.PlainsOilSpill.com, under the tab "Property Class Parcels."

As described in the Settlement Agreement, those excluded from the Property Class are Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; and the judge to whom this case is assigned, the judge's staff, and any members of the judge's immediate family.

In addition, you are no longer a Property Class Member if you previously excluded yourself from the Property Class during the initial notice period, or entered a separate settlement with Plains for which you signed a full release.

The proposed  Settlement, if approved by the Court, will settle all claims of the Property Class against Plains.

**PLEASE NOTE:** Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement.  **If you are a Class Member and  you wish to participate in the distribution of proceeds from the Settlement, you are required to submit a Claim Form** available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you. Your Claim Form and, if necessary, any required supporting documentation as set forth therein must be postmarked (if mailed) or submitted online on or before **XXX, 2022**. See Question X for more information.

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

**THE SETTLEMENT BENEFITS**

| 5.   What does the Settlement provide? |
|---|

The Property Class Settlement, if approved, will result in the creation of a cash settlement fund of $46,000,000 (the "Property Class Settlement Amount"). The Property Class Settlement Amount, together with any interest earned thereon, is the "Property Class Common Fund." The Property Class Common Fund less (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; and (c) any attorneys' fees and costs and any service awards to Class Representatives in connection with their representation of the Class, awarded by the Court (the "Net Settlement Fund"), will be distributed to eligible Class Members pursuant to a proposed plan of distribution ("Plan of Distribution") that is described in the next section of this Notice.

If you are entitled to relief under the Property Class Settlement, the Settlement Administrator will determine the portion of the Property Class Common Fund payable to you pursuant to the Court-approved Plan of Distribution.

A more detailed description of the Property Class Settlement can also be found in the Settlement Agreement at www.PlainsOilSpill.com.

| 6.   How will the lawyers be paid? |
|---|

Class Counsel (see Question X below) will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the total amount of the Property Class Settlement (or $15,180,000), plus their litigation expenses (not to exceed $1.3 million from the Property Settlement), and interest earned on these amounts, at the same rate as earned by the Property Class Common Fund. (Class Counsel's fee and litigation expenses application will also include a request for an equivalent percentage from the Property Class Settlement, plus additional litigation expenses.) Since the first case was filed in June 2015, Class Counsel have expended considerable time and effort prosecuting this case, including preparing for trial, retaining and working with specialized experts on a variety of issues, including the pipeline's integrity, how much oil spilled, where the oil traveled, and how much damage the spill caused. These specialized experts included scientists, engineers, an economist, and a property appraiser. Class Counsel have advanced all of the expenses incurred during the litigation of this case, with the expectation that they would be reimbursed if they succeeded in obtaining a recovery for the Class. Class Counsel will also ask the Court to award up to $15,000 to each Class Representative as a service award, in recognition of their considerable time and effort spent on behalf of the Class in achieving this Settlement. Each Class Representative assisted Class Counsel with building the factual record and case strategy, cooperated with discovery including the production of records, submitted to depositions and travel to the district in which the lawsuit was filed.

The Court may award less than the amount requested by Class Counsel. Under the Settlement Agreement, any amount awarded to Class Counsel or Class Representatives will be paid out of the

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

Property Class Common Fund.

Class Counsel will file their motion for attorneys' fees and expenses no later than [insert date] and a copy of the motion will also be available at www.PlainsOilSpill.com.

| 7. | What are the reasons for the Settlement? |
|----|------------------------------------------|

The Settlement was reached after years of contested litigation, including at the motion to dismiss, class certification, and summary judgment stages. The Parties also completed fact and expert discovery and were preparing for trial to commence on June 2, 2022. Nevertheless, a jury has not rendered any verdict in connection with Plaintiffs' claims against Plains. Instead, Plaintiffs and Plains have agreed to this Settlement to avoid the cost, delay, and uncertainty of further litigation.

As in any litigation, Plaintiffs and the Class would face an uncertain outcome if they did not agree to a Settlement. If Plaintiffs succeeded at trial, Plains would likely file appeals that would postpone final resolution of the case for years. Continuation of the litigation against Plains could result in a judgment greater than this Settlement. Conversely, continuing the case could result in no recovery at all or a recovery that is less than the amount of the Settlement.

Plaintiffs' principal reason for entering into the Settlement with Plains is the substantial benefit to the Class now, without further risk or the delays inherent in continued litigation. The $46 million Property Class Settlement Amount must be considered against the significant risk that a smaller recovery—or, indeed, no recovery at all—might be achieved after trial, and likely appeals, a process that could last several years into the future. The Settlement provides a substantial award for Class Members, without protracted delay.

Plaintiffs and Class Counsel believe that this Settlement is fair and reasonable to the Class for several reasons. First, Plaintiffs and Class Counsel believe that $46 million is a significant recovery. Second, if the Settlement becomes final, the Class will receive a certain and prompt monetary recovery. Third, Class Counsel believe that the significant and immediate benefits of the Settlement, when weighed against the significant risk, delay, and uncertainty of continued litigation, are a very favorable result for the Class.

Plains has denied and continues to deny the claims alleged by Plaintiffs. Plains admits that oil leaked from Line 901, and that some of that oil reached the Pacific Ocean, but disputes the amount of oiling and the amount of damage that the oiling caused. For Plains, the principal reason for the Settlement is to eliminate the burden, expense, uncertainty and risks inherent in any litigation, especially in complex cases such as this. Plains has determined that it is desirable and beneficial that the lawsuit be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement.

**THE COURT HAS NOT RULED AS TO WHETHER PLAINS PIPELINE IS LIABLE TO PLAINTIFFS OR TO THE CLASS. THIS NOTICE IS NOT INTENDED TO BE AN EXPRESSION OF ANY OPINION BY THE COURT WITH RESPECT TO THE TRUTH**

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

**OF THE ALLEGATIONS IN THE LAWSUIT OR THE MERITS OF THE CLAIMS OR DEFENSES ASSERTED. THIS NOTICE IS SOLELY TO ADVISE YOU OF THE PROPOSED SETTLEMENT OF THIS LAWSUIT AS TO PLAINS PIPELINE AND YOUR RIGHTS IN CONNECTION WITH THAT SETTLEMENT.**

### HOW TO GET BENEFITS

| 8.    How will I find out how much money I am personally getting? |
| --- |

Class Counsel will submit the proposed Plan of Distribution to the Court xx days before Final Approval and post it at www.PlainsOilSpill.com.

The Plan of Distribution for each class property is based upon both Plaintiffs' expert Dr. Igor Mezić's oil transport model showing the extent to which coastal properties and beaches experienced oiling and Plaintiffs' damages expert Dr. Randall Bell's determination of the value of the premium paid to live on the beach that was lost as a result of the oiling. The Plan of Distribution for the Property Class will consider the above factors—the value of the property's beachfront premium and the number of days and the level of oiling in allocating the award to each Class Member.

If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Class Members who timely submit valid Claim Forms in accordance with a Court-approved Plan of Distribution. Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund, but will otherwise be bound by the Settlement. The Court may approve the proposed Plan of Distribution, or modify it, without additional notice to the Class. The Plan of Distribution will be made available at www.PlainsOilSpill.com, and any order modifying the Plan of Distribution will be posted on that website. The Plan of Distribution is intended to compensate Property Class Members who lost the value of their property's beachfront premium as a result of the 2015 Line 901 oil spill.

The Settlement Administrator will determine your qualifications to receive money from the Property Class Settlement and will also determine the amount of any distribution you will receive from the Settlement based upon your Claim Form and other available information, including available property data. Distributions will be made to Property Class Members after all claims have been processed, after the Court has finally approved the Settlement, and after any appeals are resolved.

If you are dissatisfied with the distribution determinations, you may ask the Court, which retains jurisdiction over all Property Class Members and the claims administration process, to decide the issue by submitting a written request. The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

| 9.    How can I get a payment? |
| --- |

In order to get a payment from the Settlement, Class Members must timely  complete and return a

Claim Form. Claim Forms are available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you by the Settlement Administrator. Read the instructions carefully; fill out the Claim Form; sign it; and mail or submit it online so that it is postmarked (if mailed) to the address below or received (if submitted online) no later than **XXX Date, 2022**. You do not need to contact Class Counsel.

*Plains Oil Spill Settlement*
c/o Settlement Administrator
Mailing Address
City, State, Zip
Email: [insert]
www.PlainsOilSpill.com
Telephone: [insert call number]

If you do not submit a timely Claim Form with all of the required information, you will not receive a payment, but you will still be bound in all other respects by the Settlement, the Judgment, and the release contained in them.

| **10.    Am I definitely going to get money from this Settlement?** |
| --- |

No. There will be no payments if the Settlement Agreement is not approved by the trial court and the appellate court, if it is appealed. If the Settlement Agreement is not approved, the lawsuit will proceed against Plains as if the Settlement Agreement had not been entered. If the Settlement is approved, you might not get money because you might not be a Class Member.

**THE LAWYERS REPRESENTING YOU**

| **11.    Do I have a lawyer in the litigation?** |
| --- |

Yes. The Court has appointed Lieff Cabraser Heimann Bernstein LLP, Keller Rohrback L.L.P., and Cappello & Noel LLP, and Audet & Partners, LLP ("Class Counsel") to be the attorneys representing the Property Class and Fisher Class. Class Counsel believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. If you wish to contact your Court-appointed lawyers, their contact information is below.

| | |
|---|---|
| Robert J. Nelson | Juli E. Farris |
| LIEFF CABRASER HEIMANN BERNSTEIN LLP | KELLER ROHRBACK L.L.P. |
| 275 Battery Street, 29th Floor | 801 Garden Street |
| San Francisco, CA 94111-3339 | Santa Barbara, CA  93101 |
| (415) 956-1000 | (805) 456-1497 |

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

9

A. Barry Cappello
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101
(805) 564-2444

William M. Audet
AUDET & PARTNERS, LLP.
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
(415) 568-2555

### EXCLUSIONS

| 12.   Can I exclude myself from this Settlement? |
| --- |

No. If you are a Class Member because you satisfy the Class definition, and you did not previously opt out of the Class or enter a separate settlement with Plains for which you signed a full release, you are a member of the Class and you will be bound by the release of claims as part of the Settlement. The Property Class was first certified on April 17, 2018, and you previously had an opportunity exclude yourself. If you did not exclude yourself then, you may not exclude yourself now.

### OBJECTING TO THE SETTLEMENT

| 13.   How do I object to the Settlement? |
| --- |

If you are a Class Member, you can object to the Settlement in writing if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file your letter or brief with the Clerk of the Court, at United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012-4565, stating that you object to the Settlement in *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-04113 (PSG) and identify all your reasons for your objections. You should include citations and supporting evidence and attach any materials that you rely on for your objections.

If you have your own lawyer, they must file an appearance in this case and submit your objection through the Court's e-filing system. Your letter or brief must also include:

(1) Your name, current address, and telephone number;
(2) Proof of class membership including documents such as property records;
(3) A statement indicating whether the objection is to the proposed Settlement, the Plan of Distribution, the application for attorneys' fees and expenses, and/or the Class Representative service award;
(4) A statement of the factual and legal reasons for your objection and whether it applies only to you, to a subset of the Property Class, or to the entire Property Class;
(5) Identify all class action settlements by name, date, and court to which you have previously objected;
(6) The name and contact information of any and all lawyers representing, advising, or in any way

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

10

assisting you in connection with your objection;

(7) Copies of all documents that you wish to submit in support of your position; and

(8) Your signature.

You must also file your objection with the Court and mail or deliver a copy of your letter or brief to Class Counsel and Plains' Counsel listed below by certified mail postmarked no later than [**objection deadline**]. Finally, for an objection to be valid, you and any lawyer(s) representing, advising, or in any way assisting you in connection with your objection must appear and speak at the Final Approval Hearing. If you hire an attorney (at your own expense) to represent you for purposes of objecting, your attorney must serve a notice of appearance on counsel listed below and file it with the Court (at the address set out above) by no later than **XXX Date, 2022**.

| Class Counsel | Counsel for Defendants |
|---|---|
| Robert J. Nelson | Henry Weissmann |
| LIEFF CABRASER HEIMANN BERNSTEIN LLP | MUNGER TOLLES & OLSON LLP |
| 275 Battery Street, 29th Floor | 350 S. Grand Avenue, 50th Floor, Los |
| San Francisco, CA  94111-3339 | Angeles, CA 90071 |
| (415) 956-1000 | (213) 683-9150 |

Juli E. Farris
KELLER ROHRBACK L.L.P.
801 Garden Street
Santa Barbara, CA  93101
(805) 456-1497

Any Class Member who does not make their objection in the manner provided above will be deemed to have waived such objection and will forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement as set forth in the Settlement Agreement, to the Plan of Distribution, or to the award of fees and expenses to Class Counsel or any service awards to Plaintiffs, unless otherwise ordered by the Court.

Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

### OBLIGATIONS AND RELEASED CLAIMS

| 14.   What are my rights and obligations under the Settlement? |
|---|

If you are a Property Class Member and did not exclude yourself from the Property Class during the initial notice period, you may receive the benefit of the Settlement by submitting a Claim Form, and you will be bound by the terms of the Settlement described in this Notice and the Settlement

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

Agreement, upon final approval by the Court.

---

**15.   What claims will be released by the Settlement?**

---

If the Settlement is approved by the Court, the Court will enter a Judgment. If the Judgment becomes Final pursuant to the terms of the Settlement Agreement, all Class Members will be deemed to have, and by operation of the Final Judgment will have, fully, finally, and forever released, relinquished, and discharged any and all claims of any kind or nature whatsoever for any property damage or any economic losses of any kind or nature whatsoever against Plains arising from the May 19, 2015 Oil Spill, including claims for victims' restitution. The specific claims you are giving up against Plains are described in the Settlement Agreement at www.PlainsOilSpill.com. The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question X for free or you can, of course, talk to your own lawyer if you have questions about what this means.

FINAL APPROVAL HEARING

---

**16.   May I attend the Final Approval Hearing?**

---

Yes. The Court will hold a Final Approval Hearing on XXX Date, at XXX Time, before the Honorable Phillip S. Gutierrez at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565. At the hearing the Court will determine whether: (1) the Settlement as set forth in the Settlement Agreement for $46,000,000 in cash should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Settlement Agreement should be entered; (3) to award Class Counsel attorneys' fees and expenses out of the Property Class Common Fund and, if so, in what amount; (4) to award Plaintiffs' service awards in connection with their representation of the Class out of the Property Class Common Fund and, if so, in what amount; and (5) the Plan of Distribution should be approved by the Court. The Court may adjourn or continue the Final Approval Hearing without further notice to Members of the Class.

Any Class Member may appear at the Final Approval Hearing, provided they have complied with the procedures described in Question 14, above.

Unless otherwise directed by the Court, any Class Member who does not object in the manner provided will be deemed to have waived all objections to this Settlement and will be barred from raising (in this or any other proceeding or on any appeal) any objection and any untimely objection will be barred.

---

**17.   Do I have to come to the Final Approval Hearing?**

---

No. Class Counsel will answer any questions the Court may have, but you are welcome to come at your own expense. If you send a comment, you do not have to come to Court to talk about it.

However, if you object to the Settlement, you do have to come to the hearing, along with any lawyer who has represented or otherwise advised you. See Question 14.

GETTING MORE INFORMATION

| 18.   How can I get more information? |
| --- |

This Notice summarizes the Settlement. You can get more details and print the Settlement Agreement at www.PlainsOilSpill.com. You may also write with questions or notify the Settlement Administrator regarding address changes to *Plains Oil Spill Settlement* c/o Settlement Administrator, P.O. Box 0000, City, ST 00000, email at [insert] or call the Settlement Administrator at [insert call number]. Before doing so however, please read this full Notice carefully. You may also call Class Counsel listed in response to Question X.

**Please do not call the Court or the Court Clerk's Office to inquire about this Settlement as they cannot answer your questions.**

DATED: _____       BY ORDER OF THE COURT
                                     HON. PHILIP S. GUTIERREZ
                                     UNITED STATES DISTRICT COURT
                                     CENTRAL DISTRICT OF CALIFORNIA

QUESTIONS? PLEASE CALL [insert call number]
OR VISIT www.PlainsOilSpill.com

# - EXHIBIT D -

Updated Legal Notice

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-cv-04113 (PSG:JEM)

# If you are a Commercial Fisher or Fish Processor that was in operation as of May 19, 2015, and fished or purchased fish from certain Southern California Fishing Blocks, you may be entitled to a payment from a class action settlement

*A Federal Court authorized this Notice.*

*Para una notificación en español, visite: www.PlainsOilSpill.com*
*(Vietnamese)*
*(Mandarin)*

A Settlement has been reached in the class action lawsuit claiming that Plains All American Pipeline L.P. and Plains Pipeline L.P. ("Plains" or "Defendants") caused an underground pipeline to rupture, resulting in an oil spill along the coast in Santa Barbara County on May 19, 2015. Plaintiffs allege the spill caused long term harm to commercial fishing in the affected class blocks, including significant financial losses. Plains denies any claims of wrongdoing and disputes Plaintiffs' claims. A Fisher Class was previously certified by this Court. This Notice provides information regarding the $184 million Fisher Class Settlement. A settlement has also been reached on behalf of certain property owners and lessees ("the Property Class Settlement"). The Fisher and Property Class Settlement, if approved by the Court, will resolve all remaining claims in the class action litigation pending in the United States District Court for the Central District of California.

You are a Fisher Class Member if you are a person or business who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish & Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; or if you are a person or business in operation as of May 19, 2015 who purchased such commercial seafood directly from the Commercial Fishers and re-sold it at the retail or wholesale level. You can find out if you are a Fisher Class Member by going to www.PlainsOilSpill.com.

## What does the Settlement provide?

The Fisher Class Settlement, if approved, will result in the creation of a cash settlement fund of $184,000,000 (the "Fisher Class Settlement Amount"). The Fisher Class Settlement Amount, together with any interest earned thereon, is the "Fisher Class Common Fund." The Fisher Class Common Fund less (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; and (c) any attorneys' fees and costs and any service awards to Class Representatives in connection with their representation of the Class, awarded by the Court (the "Net Settlement Fund"), will be distributed to eligible Class Members pursuant to a proposed plan of distribution ("Plan of Distribution"). If you are entitled to relief under the Fisher Class Settlement, the Settlement Administrator will determine the portion of the Fisher Class Net Settlement Fund payable to you pursuant to the Court-approved Plan of Distribution.

## What are the reasons for the Settlement?

The Court has not decided whether Plaintiffs or Defendants should win this Litigation. The Settling Parties do not agree on whether Plaintiffs would have prevailed on any of their claims against Plains, or the amount of damages, if any, that would be recoverable if the Class prevailed on the claims alleged. Instead, both sides agreed to the Settlement after years of contested litigation, including at the motion to dismiss, class certification, and summary judgment stages. The Parties had also completed substantial discovery and were preparing for trial to commence on June 2, 2022.

Updated Legal Notice

### Who represents the Class?

The Court has appointed Lieff Cabraser Heimann Bernstein LLP, Keller Rohrback L.L.P., Cappello & Noel LLP, and Audet & Partners, LLP ("Class Counsel") to be the attorneys representing the Class. You will not be charged for these lawyers. Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the total amount of the Fisher Settlement (or $60,720,00), plus their litigation expenses (not to exceed $5.2 million). (Class Counsel's fee and litigation expenses application will also include a request for an equivalent percentage from the Property Class Settlement, plus additional litigation expenses.) If you want to be represented by your own lawyer, you may hire one at your own expense.

### What do I need to do to?

**If you are a Class Member and you wish to get money from the Settlement, you are required to submit a Claim Form** available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you. Your Claim Form and, if necessary, any required supporting documentation as set forth therein must be postmarked (if mailed) or submitted online on or before **XXX, 2022.**

*Plains Oil Spill Settlement*
c/o Settlement Administrator
Mailing Address
City, State, Zip
Email: [insert]
www.PlainsOilSpill.com
Telephone: [insert call number]

If you are a Class Member, you may object or tell the Court what you do not like about the Settlement. You will still be bound by the Settlement, and you may still file a Claim. Objections must be served/filed no later than **XXX Date, 2022.** Go to www.PlainsOilSpill.com for details on how to object to the Settlement.

If you are a Class Member and you did not previously opt out of the Fisher Class or enter a separate settlement with Plains for which you signed a full release, you are a member of the Class and you will be bound by the release of claims as part of the Settlement. The Fisher Class was first certified on February 28, 2017, and later amended on November 22, 2019, and you previously had an opportunity exclude yourself. If you did not exclude yourself then, you may not exclude yourself now.

### What happens next?

The Court will hold a Final Approval Hearing on **XXX Date, at XXX Time,** before the Honorable Phillip S. Gutierrez at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565. At the hearing the Court will determine whether: (1) the Settlement as set forth in the Settlement Agreement for $184,000,000 in cash should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Settlement Agreement should be entered; (3) to award Class Counsel attorneys' fees and expenses out of the Fisher Class Common Fund and, if so, in what amount; (4) to award Plaintiffs' service awards (Class Counsel is requesting $15,000 for each Fisher Class Representative) in connection with their representation of the Class out of the Fisher Class Common Fund and, if so, in what amount; and (5) the Plan of Distribution should be approved by the Court.

### How do I get more information?

For more details and to print the Settlement Agreement go to www.PlainsOilSpill.com. You may also write with questions or notify the Settlement Administrator regarding address changes to *Plains Oil Spill Settlement* c/o Settlement Administrator, P.O. Box 0000, City, ST 00000, email at [insert] or call the Settlement Administrator at [insert call number].

4863-0

2414410.2

# - EXHIBIT E -

Updated Legal Notice

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-cv-04113 (PSG:JEM)

# If you owned or leased Residential Beachfront Property or had a Private Easement to a Beach affected by the 2015 Santa Barbara Oil Spill, you may be entitled to a payment from a class action settlement

### *A Federal Court authorized this Notice.*

*Para una notificación en español, visite: www.PlainsOilSpill.com*
*(Vietnamese)*
*(Mandarin)*

A Settlement has been reached in the class action lawsuit claiming that Plains All American Pipeline L.P. and Plains Pipeline L.P. ("Plains" or "Defendants") caused an underground pipeline to rupture, resulting in an oil spill along the coast in Santa Barbara County on May 19, 2015. Plaintiffs allege that owners and lessees were unable to use and enjoy their properties as a result of the spill because oil washed up onto their properties and onto beaches adjacent to their properties. Plains denies any claims of wrongdoing and disputes Plaintiffs' claims. A Property Class was previously certified by this Court. This Notice provides information regarding the $46 million Property Class Settlement. A settlement has also been reached on behalf of commercial fishers and fish processors ("the Fisher Class Settlement"). The Fisher and Property Class Settlement, if approved by the Court, will resolve all remaining claims in the class action litigation pending in the United States District Court for the Central District of California.

You are a Property Class Member if you owned or leased residential beachfront property or property with a private easement to a beach where oil from the 2015 Santa Barbara oil spill washed up and the oiling was categorized as heavy, moderate, or light. You can find out if your property is included by going to www.PlainsOilSpill.com, where a list of properties Plaintiffs claim were impacted is posted.

### What does the Settlement provide?

The Property Class Settlement, if approved, will result in the creation of a cash settlement fund of $46,000,000 (the "Property Class Settlement Amount"). The Property Class Settlement Amount, together with any interest earned thereon, is the "Property Class Common Fund." The Property Class Common Fund less (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; and (c) any attorneys' fees and costs and any service awards to Class Representatives in connection with their representation of the Class, awarded by the Court (the "Net Settlement Fund"), will be distributed to eligible Class Members pursuant to a proposed plan of distribution ("Plan of Distribution"). If you are entitled to relief under the Property Class Settlement, the Settlement Administrator will determine the portion of the Property Class Net Settlement Fund payable to you pursuant to the Court-approved Plan of Distribution.

### What are the reasons for the Settlement?

The Court has not decided whether Plaintiffs or Defendants should win this Litigation. The Settling Parties do not agree on whether Plaintiffs would have prevailed on any of their claims against Plains, or the amount of damages, if any, that would be recoverable if the Class prevailed on the claims alleged. Instead, both sides agreed to the Settlement after years of contested litigation, including at the motion to dismiss, class certification, and summary judgment stages. The Parties had also completed substantial discovery and were preparing for trial to commence on June 2, 2022.

### Who represents the Class?

The Court has appointed Lieff Cabraser Heimann Bernstein LLP, Keller Rohrback L.L.P., Cappello & Noel LLP,

Updated Legal Notice

and Audet & Partners, LLP ("Class Counsel") to be the attorneys representing the Class. You will not be charged for these lawyers. Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the total amount of the Property Class Settlement (or $15,180,00), plus their litigation expenses (not to exceed $1.3 million). (Class Counsel's fee and litigation expenses application will also include a request for an equivalent percentage from the Fisher Class Settlement, plus additional litigation expenses.) If you want to be represented by your own lawyer, you may hire one at your own expense.

### What do I need to do to?

**If you are a Class Member and  you wish to get money from the Settlement, you are required to  submit a Claim Form** available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you. Your Claim Form and  if necessary,  any required supporting documentation as set forth therein must be postmarked (if mailed) or submitted online on or  before XXX, 2022.

*Plains Oil Spill Settlement*
c/o Settlement Administrator
Mailing Address
City, State, Zip
Email: [insert]
www.PlainsOilSpill.com
Telephone: [insert call number]

If you are a Class Member you may object or tell the Court what you do not like about the Settlement. You will still be bound by the Settlement, and you may still file a Claim. Objections must be served/filed no later than XXX Date, 2022. Go to www.PlainsOilSpill.com for details on how to object to the Settlement.

If you are a Class Member and you did not previously opt out of the Property Class or enter a separate settlement with Plains for which you signed a full release, you are a member of the Class and you will be bound by the release of claims as part of the Settlement. The Property Class was first certified on April 17, 2018, and you previously had an opportunity exclude yourself. If you did not exclude yourself then, you may not exclude yourself now.

### What happens next?

The Court will hold a Final Approval Hearing on **XXX Date, at XXX Time**, before the Honorable Phillip S. Gutierrez at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565. At the hearing the Court will determine whether: (1) the Settlement as set forth in the Settlement Agreement for $46,000,000 in cash should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Settlement Agreement should be entered; (3) to award Class Counsel attorneys' fees and expenses out of the Property Class Common Fund and, if so, in what amount; (4) to award Plaintiffs' service awards (Class Counsel is requesting $15,000 for each Property Class Representative) in connection with their representation of the Class out of the Property Class Common Fund and, if so, in what amount; and (5) the Plan of Distribution should be approved by the Court.

### How do I get more information?

For more details and to print the Settlement Agreement go to www.PlainsOilSpill.com. You may also write with questions or notify the Settlement Administrator regarding address changes to *Plains Oil Spill Settlement* c/o Settlement Administrator, P.O. Box 0000, City, ST 00000, email at [insert] or call the Settlement Administrator at [insert call number].

2414408.2

# - EXHIBIT F -

# If you were affected by the 2015 Santa Barbara Oil Spill, you may be entitled to a payment from a class action settlement

*A Federal Court authorized this Notice.*

*Para una notificación en español, visite:* www.PlainsOilSpill.com
*(Vietnamese)*
*(Mandarin)*

A Settlement has been reached in the class action lawsuit called *Andrews et al. v. Plains All American Pipeline, L.P. et al.*, No. 2:15-cv-04113 (PSG:JEM) (C.D. Cal.).

**What is this about?**

The lawsuit claims that Plains All American Pipeline L.P. and Plains Pipeline L.P. ("Plains" or "Defendants") caused an underground pipeline to rupture, resulting in an oil spill along the coast in Santa Barbara County on May 19, 2015. The Settlement is on behalf of members of the Fisher Class and Property Class previously certified by this Court. Plaintiffs for the Fisher Class allege the spill caused long term harm to commercial fishing in the affected class blocks, including significant financial losses. Plaintiffs for the Property Class allege that owners and lessees were unable to use and enjoy their properties as a result of the spill because oil washed up onto their properties and onto beaches adjacent to their properties. Plains denies any claims of wrongdoing and disputes all claims. The Settlement, if approved by the Court, will resolve all remaining claims in the class action litigation pending in the United States District Court for the Central District of California. The Fisher Class Settlement is $184 million, and the Property Class Settlement is $46 million, inclusive of attorneys' fees and costs.

The Court has not decided whether Plaintiffs or Defendants should win this Litigation. The Settling Parties do not agree on whether Plaintiffs would have prevailed on any of their claims against Plains, or the amount of damages, if any, that would be recoverable if the Class prevailed on the claims alleged. Instead, both sides agreed to the Settlement after years of contested litigation, including at the motion to dismiss, class certification, and summary judgment stages. The Parties had also completed substantial discovery and were preparing for trial to commence on June 2, 2022.

**Who is affected?**

You are a Fisher Class Member if you are a person or business who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish & Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656, 664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19, 2010 to May 19, 2015, inclusive; or if you are a person or business in operation as of May 19, 2015 who purchased such commercial seafood directly from the Commercial Fishers and re-sold it at the retail or wholesale level. You can find out if you are a Fisher Class Member by going to www.PlainsOilSpill.com.

You are a Property Class Member if you owned or leased residential beachfront property or property with a private easement to a beach where oil from the 2015 Santa Barbara oil spill washed up and the oiling was categorized as heavy, moderate, or light. You can find out if your property is included by going to www.PlainsOilSpill.com, where a list of properties Plaintiffs claim were impacted is posted.

**What does the Settlement provide?**

The Settlement, if approved, will result in the creation of two cash settlement funds of $184,000,000 (the "Fisher Class Settlement Amount") and $46,000,000 ("the Property Class Settlement Amount"), together with any interest earned thereon, the "Fisher Class Common Fund" and "Property Class Common Fund," respectively. Each of the common funds less (a) any Taxes and Tax Expenses; (b) any Notice and Administration Expenses; and (c) any attorneys' fees and costs and any service awards to Class Representatives in connection with their representation of the Class, awarded by the Court (the "Net Settlement Funds"), will be distributed to eligible

2414422.1

Class Members pursuant to a proposed plan of distribution ("Plan of Distribution"). If you are entitled to relief under the Settlement, the Settlement Administrator will determine your portion of the Net Settlement Fund payable to you pursuant to the Court-approved Plan of Distribution.

**Who represents the Class?**

The Court has appointed Lieff Cabraser Heimann Bernstein LLP, Keller Rohrback L.L.P., Cappello & Noel LLP, and Audet & Partners, LLP ("Class Counsel") to be the attorneys representing the Class. You will not be charged for these lawyers. Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the total Settlement Amount (no more than $60,720,000 from the Fisher Class Settlement Amount and $15,180,000 from the Property Class Settlement Amount). In addition, Class Counsel will apply to the Court for reimbursement of their litigation expenses (in an amount not to exceed $5.2 million from the Fisher Class Settlement Amount and $1.3 million from the Property Class Settlement Amount). If you want to be represented by your own lawyer, you may hire one at your own expense.

**What do I need to do to?**

**If you are a Class Member and  you wish to get money from the Settlement, you are required to  submit a Claim Form** available at www.PlainsOilSpill.com, or by calling the toll-free number [insert call number] to request that a hard copy Claim Form be mailed to you. Your Claim Form and, if necessary, any required supporting documentation as set forth therein must be postmarked (if mailed) or submitted online to the address below on or before **XXX, 2022.**

*Plains Oil Spill Settlement*
c/o Settlement Administrator
Mailing Address
City, State, Zip
Email: [insert]
www.PlainsOilSpill.com
Telephone: 1-xxx-xxx-xxxx

If you are a Class Member you may object or tell the Court what you do not like about the Settlement. You will still be bound by the Settlement, and you may still file a claim. Objections must be served/filed no later than **XXX Date, 2022.** Go to www.PlainsOilSpill.com for details on how to object to the Settlement. If you are a Class Member and you did not previously opt out of the Class or enter a separate settlement with Plains for which you signed a full release, you are a member of the Class and you will be bound by the release of claims as part of the Settlement. The Fisher Class was first certified on February 28, 2017, and later amended on November 22, 2019. The Property Class was certified on April 17, 2018. You previously had an opportunity exclude yourself from the Fisher Class and the Property Class. If you did not exclude yourself then, you may not exclude yourself now.

**What happens next?**

The Court will hold a Final Approval Hearing on **XXX Date**, at **XXX Time**, before the Honorable Phillip S. Gutierrez at the United States District Court for the Central District of California, First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565. At the hearing the Court will determine whether: (1) the Settlement of $184,000,000 for the Fisher Class and $46,000,000 for the Property Class should be approved by the Court as fair, reasonable and adequate; (2) the Judgment as provided under the Settlement Agreement should be entered; (3) to award Class Counsel attorneys' fees and expenses out of the Fisher and Property Class Common Funds and, if so, in what amount; (4) to award Plaintiffs' service awards (Class Counsel is requesting $15,000 for each of the 14 Class Representatives) in connection with their representation of the Classes out of the Fisher and Property Class Common Funds and, if so, in what amount; and (5) the Plans of Distribution should be approved by the Court.

**How do I get more information?**

For more details and to print the Settlement Agreement, go to www.PlainsOilSpill.com. You may also write with

questions or notify the Settlement Administrator regarding address changes to *Plains Oil Spill Settlement* c/o Settlement Administrator, P.O. Box 0000, City, ST 00000, email at [insert] or call the Settlement Administrator at [insert call number].

2414422.1