Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

***Class Counsel***
(*additional counsel listed at signature*)

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Leila J. Noël (CSB No. 114307)
lnoel@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

***Lead Trial Counsel***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>Defendants. | Case No.  2:15-cv-04113-PSG-JEMx<br><br>**[PROPOSED] PLAN OF DISTRIBUTION FOR THE FISHER CLASS** |

# I.    BACKGROUND

1.      This document describes the Plan of Distribution for the Fisher Class ("Fisher Plan" or "Distribution Plan"). The Fisher Plan shall govern the distribution of the Settlement funds provided for the Fisher Class in accordance with the Settlement Agreement executed on May 12, 2022 between Plaintiffs and Defendants in the above-captioned case ("Settlement Agreement" or "Settlement"). The Settlement Agreement is attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval [Dkt. 944-1].

2.      The Distribution Plan utilizes California Department of Fish and Wildlife ("CDFW") landings receipt records previously obtained by Class Counsel to identify Fisher Class members and establish each individual fisher's pro-rata share of the Settlement, based upon their fishing activity before and after the Spill, minimizing the need for the submission of, or reliance upon, individual records. The claims process can be completed electronically or by mail. The claim form must be signed and submitted by the person or an authorized representative of the entity that holds the license for which the claim is submitted.

3.      The Settlement Agreement provides that Plains shall pay $184 million to the Fisher Class (the "Fisher Class Settlement Amount"), in exchange for a full release of claims alleged on behalf of the Fisher Class in this litigation. This Settlement relates to an oil spill on May 19, 2015 from Plains' Line 901 pipeline in Santa Barbara County that Plaintiffs allege caused damage to commercial fishers and processors ("Oil Spill" or "Spill"). Settlement Agreement, Articles I.4; II.16; II.19.

4.      The Fisher Class Common Fund shall be administered by the Settlement Administrator. The Settlement provides that the Settlement Administrator shall disburse funds from the Fisher Class Common Fund pursuant to the terms of the Settlement Agreement and in accordance with the orders of the Court. Settlement Agreement, Article III.

5.      The Settlement Agreement also directs that Class Counsel shall propose a method for distributing the Fisher Class Common Fund to members of the Fisher Class before Class Members must decide whether to object to the Settlement. The Parties further agreed that "the rulings of the Court regarding the Plans of Distribution, and any claim or dispute relating thereto, will be considered by the Court separately from the approval of the Settlement Agreement," and that Final Approval of the Settlement is not contingent upon resolution of any appeals, modifications, or reversal of orders regarding the Plan of Distribution. Settlement Agreement, Articles IV.1; IV.2.

6.      As set forth in Article IV.3 of the Settlement Agreement, portions of the Settlement Fund shall be used to pay certain costs and fees prior to determining a net amount that is available for distribution to class members, to include:

    a.  Fees and Costs Awards, subject to Court approval;

    b.  Service Awards to Class Representatives, subject to Court approval; and

    c.  Costs of Notice and Administration of Settlement, including fees and expenses of the Settlement Administrator, costs of generation and mailing checks, fees, and costs of escrow, if any.

7.      The net amount available for distribution will depend upon the amount of costs deducted for items listed above, and the number of claims submitted and verified. The mechanics of the Distribution Plan are not dependent upon the amount available for distribution.

## II.    DEFINITIONS

8.      The capitalized terms used in this Plan of Distribution for the Fisher Class have the same meaning as defined in the Settlement Agreement and Order Granting Preliminary Approval of the Proposed Settlement, [Dkt. 949], unless otherwise indicated.

9.      "CDFW" means the California Department of Fish and Wildlife.

10.     "CDFW Landing Records" means the landings receipt data provided by the California Department of Fish and Wildlife for the period of 2010–2020, consistent with

the definition of the Fisher Class certified by the Court on November 22, 2019 [Dkt. 577].

11.    "Claim" means a completed hard copy or electronic claim form submitted by a Class Member, together with the necessary attestations and supporting documentation, if any.

12.    "Claim Deadline" is the last day on which to submit a Claim, October 31, 2022, or as the Court directs.

13.    "Claim Period" means the 90-day period during which Claims may be submitted, starting July 31, 2022 (or earlier), and ending on October 31, 2022.

14.    "Class Catch" are landings reflected in the CDFW Landing Records, during the period from May 19, 2010 through May 19, 2020 (before and after the Spill), from blocks that are identified in the Fisher Class Definition, for the purpose of determining the Settlement Distribution.

15.    "Crew," unless otherwise noted, refers to all members of the Fisher Class who hold a CDFW Commercial Fishing License. When used to modify another defined term, Crew refers to all members of the Fisher Class with a Commercial Fishing License to whom the defined term applies.

16.    "Damage Period" means the five-year period after the Spill, from May 19, 2015 through May 19, 2020, used to determine Distribution Shares. A "Full Damage Period" refers to a Claim asserted for the entire five year Damage Period. A "Partial Damage Period" refers to a Claim that is asserted for fewer than five years.

17.    "Designated Recipient" is a Claimant to whom the Settlement Administrator is directed to make a Designated Recovery.

18.    "Designated Recovery" is an amount that a Verified Claimant, at their sole discretion, may direct the Settlement Administrator to designate to another person or entity from the Verified Claimant's Verified Claim.

19.     "Distribution Plan" means the process and procedures established by this Plan as effectuated by the Settlement Administrator.

20.     "Distribution Share" means the share allocated to each license or vessel based on fishing or purchasing activity reflected in the CDFW Landing Records during the Damage Period. The Distribution Share includes a Fixed Share and a Variable Share, if applicable.

21.     "Fisher," unless otherwise noted, refers to all members of the Fisher Class. When used to modify another defined term, Fisher refers to all members of the Fisher Class to whom the defined term applies.

22.     "Fisher Class" means the Class certified by the Court on November 22, 2019 [Dkt. 577].

23.     "Fisher Class Definition" means the definition provided in the Court's Order certifying the Fisher Class, defined as: "All persons and businesses (Fishers) who owned or worked on a vessel that was in operation as of May 19, 2015 and that: (1) landed any commercial seafood in California Department of Fish and Wildlife ("CDFW" fishing blocks 654, 655, 656; or (2) landed any commercial seafood, except groundfish or highly migratory species (as defined by the CDFW and the Pacific Fishery Management Council), in CDFW fishing blocks 651–66, 664–670, 678–686, 701–707, 718–726, 739–746, 760–765, or 806–809; from May 19, 2010 to May 19, 2015, inclusive; and All persons and businesses (Processors) in operation as of May 19, 2015 who purchased such commercial seafood directly from the Fishers and re-sold it at the retail or wholesale level. Excluded from the proposed Subclass are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, or assigns and successors; (2) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family, and (3) businesses that contract directly with Plains for use of the Pipeline." [Dkt. 577 at 3].

24.     "Fisher Net Settlement Fund" means the amount available for distribution to the Fisher Class, after deduction of the Fees and Costs Awards, Service Awards, and administrative fees and costs, as contemplated by the Settlement Agreement, subject to Court approval.

25.     "Fixed Share" refers to that portion of the Processor, Vessel or Crew Share, respectively, that is allocated in equal shares to all Verified Claimants entitled to participate in that Share.

26.     "Preliminary Approval Order" means the Order entered by this Court on May 25, 2022, [Dkt. 949], which directs the procedures and schedule for approval of the Settlement, including submission of this Distribution Plan.

27.     "Processor," unless otherwise noted, refers to all members of the Fisher Class who hold a CDFW Fishing Business License. When used to modify another defined term, Processor refers to all Processor members of the Fisher Class to whom the defined term applies.

28.     "Qualifying Catch" are landings reflected in the CDFW Landing Records for the relevant species and from the relevant fishing blocks identified in the Fisher Class Definition, during the period from May 19, 2010 through May 19, 2015 (before the Spill), for the purpose of determining membership in the Fisher Class.

29.     "Recovery" is the net distribution attributed to a Verified Claimant by the Settlement Administrator, reflecting the Distribution Share, less any necessary adjustments or deductions.

30.     "Release" means the release of claims reflected in the Settlement Agreement. Settlement Agreement, Article VII.

31.     "Settlement Administration" means actions carried out by JND Legal Administration in its capacity as Settlement Administrator.

32.     "Settlement Administrator" means JND Legal Administration, the administrator selected by Class Counsel and appointed by this Court. [Dkt. 949 at ¶7].

33.     "Settlement Agreement," "Settlement," or "Agreement" means the Settlement Agreement executed on May 12, 2022 and attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval [Dkt. 944-1].

34.     "Settlement Website" means the dedicated website maintained by the Settlement Administrator at www.PlainsOilSpillSettlement.com.

35.     "Spill" means the May 19, 2015 oil spill from Plains' Line 901 pipeline in Santa Barbara County that Plaintiffs allege caused damage to the Fisher Class and Property Class.

36.     "Variable Share" means the proportional share allocated to Verified Claimants, based on fishing or purchasing activity reflected in the CDFW Landing Records.

37.     "Verified Claim" means a timely, correct and complete Claim Form, signed and submitted to the Settlement Administrator by a Verified Claimant, supported by such evidence as required by the Settlement Administrator, that complies with this Plan, the Settlement Agreement, and any other applicable orders of the Court. A Verified Fisher Claim or Claimant is any member of the Fisher Class who has a Verified Claim. A Verified Processor, Vessel, or Crew Claim refers to a Verified Claim submitted by a Processor, Vessel or Crew Claimant, respectively.

38.     "Verified Claimant" means a Class Member whose membership in the Class has been verified by the Settlement Administrator in response to the timely submission of a Verified Claim.

39.     "Vessel," unless otherwise noted, refers to all members of the Fisher Class who hold a CDFW Vessel ID. When used to modify another defined term, Vessel refers to all Vessel ID holders of the Fisher Class to whom the defined term applies.

## III.   DISTRIBUTION PLAN OVERVIEW

40.     Subject to Court approval, the Fisher Net Settlement Fund will be paid to Verified Fisher Claimants.

41.     The Distribution Plan is intended to be user-friendly. Claims can be submitted electronically, or by mail. The Distribution Plan utilizes CDFW Landing Records previously obtained by Class Counsel to identify Fisher Class members and establish each Verified Fisher Claimants' share of the Settlement, based upon their fishing activity before and after the Spill. Fisher Class members are not required to submit individual landing records, proof of income, or financial records to obtain a Distribution Share, unless necessary to verify identity, membership in the Class, to resolve disputes, or as otherwise requested by the Settlement Administrator.

## IV.     CLAIMS SUBMISSION

42.     Each Fisher Class Member wishing to receive proceeds from the Net Settlement Fund must submit a Claim Form, signed under penalty of perjury, including the Claimant's contact information, the license or Vessel ID number for which the Claim is submitted, verification of Class membership, verification of economic harm resulting from the Spill in each year for which recovery is sought, as well as any supporting data, documents and other proof as required by the Settlement Administrator, by the deadline set by the Court.

43.     Claim Forms and the Distribution Plan will be available on the Settlement Website, or from the Settlement Administrator upon request, on or before July 31, 2022. The Claim Form may be completed online or printed and submitted by mail. The Claim Form must be submitted on or before October 31, 2022. Claim Forms submitted by mail will be deemed timely submitted if postmarked on or before October 31, 2022.

44.     The Settlement Administrator will assign a Unique ID to each mailed Notice issued consistent with this Court's Preliminary Approval Order. To ensure authenticity and protect privacy the Unique ID must be used to submit, supplement, or review a Claim. Those who wish to file a Claim, but have not received a Notice or Unique ID may request one by contacting the Settlement Administrator. Receipt of a Notice or Unique ID does not confirm membership in the Fisher Class. Claimants may review the status of

their Claim or Class membership, or submit additional documentation to confirm their fishing activity or membership in the Class, by visiting the Settlement Website, using their Unique ID.

45.     A separate Claim Form is required for each vessel ID, fishing license, or (processor) fishing business license, for which recovery is sought. A separate Recovery will be calculated for each license. The Claim Form must be signed under penalty of perjury, and submitted by the person, or entity representative, who is identified on the relevant license.

46.     The Settlement Administrator will rely on CDFW Landing Records, together with the Claim File, to identify Fisher Class members and determine Distribution Shares and eligibility. Those whose purchase or sale of Class Catch is reflected in CDFW Landing Records do not need to submit any additional proof of their fishing activity. This information has already been obtained from the CDFW.

47.     Settlement Class Members who are not identified in the CDFW Landing Records may timely submit Claims and provide other documentation for evaluation by the Settlement Administrator. To the extent Class membership can be verified, such individuals will be treated as Verified Claimants.

48.     Verified Fisher Claimants (Vessel, Processor or Crew) who receive Recoveries may, at their sole discretion, direct the Settlement Administrator to designate a portion of their Recovery to another person or entity ("Designated Recovery"). Each Designated Recipient who wishes to receive a Designated Recovery must also submit a Claim Form in order to receive funds directly from the Settlement Administrator. If the Designated Recovery is not claimed, the amount designated will be distributed to the Verified Claimant.

49.     The Settlement Administrator will use CDFW licensing records, together with other information or documents submitted by the Claimant, to verify identity, contact information, and to determine Class membership and fishing activity.

50.     The Settlement Administrator may, at its discretion and in consultation with Class Counsel, or as directed by the Court, implement additional procedures, or require additional verification, proof of identity, or proof of Claim, before disclosing information or disbursing funds, to ensure that funds are equitably disbursed and to protect against fraud, theft, or inadvertent disclosure of personal information, or as otherwise necessary to protect the Settlement and Distribution.

## V.     REVIEW AND VERIFICATION OF CLAIMS

51.     Following receipt of each Fisher Claim, the Settlement Administrator will issue a confirmation receipt to the Claimant.

52.     The Settlement Administrator will review each Fisher Claim, other materials submitted, CDFW Landing Records and the Fisher Class Definition, to determine whether the Claimant is a Fisher Class Member. Claims submitted by persons or entities who are not Fisher Class Members, or by Fisher Class Members who have previously opted out of the Fisher Class[1], or executed a full release of claims as part of a negotiated settlement, will be rejected.

53.     The Fisher Class Definition requires a determination that the Claimant is "in business" as of May 19, 2015. The Settlement Administrator will presume that any Claimant for whom the CDFW Landing Records reflects any catch or sales of catch in the twelve months before or after May 19, 2015, (or May 19, 2014 to May 19, 2016), was "in business as of May 19, 2015." [Dkt. 577 at 3]. Claimants may also submit alternate documentation to demonstrate that they were "in business" as of May 19, 2015.

54.     The Settlement Administrator will review each Claim to determine whether the Claim is submitted in accordance with these requirements. Claims that are not submitted in accordance with these requirements will be rejected, as outlined below.

---

[1] Fisher Class Members were provided notice and given the opportunity to opt-out of the Class. The final deadline for doing so was August 31, 2020.

55.     Timely submitted Claims that meet all requirements shall be considered Verified Claims, for which a Distribution Share will be calculated.

56.     Except as provided by the Designated Recovery described above, only Verified Claimants, or Designated Recipients, are entitled to Recovery. The Settlement Administrator is not responsible for, and shall not distribute, Recovery amounts to anyone who is not a Verified Claimant, except when directed to make a Designated Recovery by a Verified Claimant, from that Claimant's Recovery. The Settlement Administrator will not accept claims from or disburse funds to, third-party representatives or professional claims processors.

57.     The Settlement Administrator shall promptly notify all Claimants whose claims are rejected and state the reasons for the rejection. Claimants may contest the rejection within 30 days after receiving notice of rejection, by serving upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation. If a response is not received within 30 days, the Claim shall be deemed rejected.

58.     If the Claimant contests the notice of rejection, the Settlement Administrator will re-evaluate the Claim, together with any additional documentation. The Settlement Administrator may, in consultation with Class Counsel, adopt additional procedures to resolve disputes regarding contested Claims.

59.     Fisher Class Members who do not submit a Verified Claim, or whose Claim is rejected, are not entitled to participate in the Distribution. Under the terms of the Settlement Agreement, such Class Members shall be bound by the Settlement, including the terms of the Final Judgment and Release, and are enjoined from, and, upon the Order of the Court granting Final Approval of the Settlement, barred from bringing any action against the Defendants concerning the Released Claims. Settlement Agreement, Article VII.

# VI.   DISTRIBUTION SHARE CALCULATION

60.     After the time for filing claims has ended, the Settlement Administrator shall, within 180 days, or as otherwise directed by Class Counsel or this Court, complete all work required to allow or deny each Claim. This period may be extended if necessary, subject to Court approval. The Settlement Administrator shall issue to Class Counsel a report of the number of approved Claims, and the total amount of allowed Claims. The Settlement Administrator shall calculate the amount available for Distribution by deducting the cost of Court-approved Notice, Settlement Administration and other expenses, as well as approved attorneys' fees, litigation expenses, and service awards. The remaining balance available for Distribution will then be allocated as follows.

61.     To calculate each Verified Fisher Claimant's share of the Fisher Net Settlement Fund (the "Recovery"), the Settlement Administrator will first allocate the available funds between Fishers and Processors, consistent with the method determined by Dr. Peter Rupert, the economic expert retained by Plaintiffs to calculate damages alleged by the Fisher Class, based on industry guidelines. *See, e.g.*, Amended and Supplemental Expert Report of Peter Rupert, Ph.D., August 30, 2019 [Dkt. 606-19 at 9–10, 13]; *see also* Supplemental Expert Report of Peter Rupert, Ph.D., February 16, 2022 [Dkt. 929-2]. His analysis indicates that Processors retain as profit approximately 9.121% contribution on gross catch amounts. Accordingly, the Settlement Administrator will allocate 9.121% of the Fisher Net Settlement Amount to the Processors.

62.     After allocating to Processors, the remainder of the Fisher Net Settlement will be distributed between vessel owners/proprietors ("Vessels") and Crew. Again, using the industry guidelines identified by Dr. Rupert, the conventional proportional division of revenue between Vessels and Crew is 80%/20% with the larger share to Vessels. Accordingly, after deducting the Processor Share, the Settlement Administrator will allocate 80% of the remainder of the Fisher Net Settlement Funds as the Vessel Share and 20% as the Crew Share.

63.     The Distributions of the Processor Share, Vessel Share, and Crew Share will each have two components, a Fixed Share and a Variable Share. The Fixed Share will be distributed in equal shares to each Verified Claimant who submits a Claim related to that Share Pool (Processor, Vessel and Crew, respectively) for each year during which the Claimant attests to have suffered economic harm from the Spill. The Fixed Share is intended to recognize that all Fisher Class members suffered some measure of harm as a result of the Spill and should receive compensation for those losses in exchange for releasing their claims as part of this Settlement, to compensate those who suffered harm but who may not be able to demonstrate their fishing activity through CDFW Landing Records, and to equitably distribute Settlement proceeds to a broad number of claimants who suffered harm. The Variable Share is calculated by taking the Verified Claimant's average annual proportional share of catch value/purchase value in comparison to other Verified Claimants who submit claims within that category (Processor, Vessel or Crew), for each year during which Class Catch is attributed to the license.

64.     Claimants who previously opted out of the Fisher Class or have already executed a full release of all claims against Plains, for example, as the result of a prior individual settlement, payment pursuant to the OPA claims program, or the criminal restitution process,[2] shall not be entitled to participate in the Settlement and such claims will be rejected by the Claims Administrator. Verified Claimants who have received payments through the OPA claims process or criminal restitution, but have not fully released their respective individual claims, are entitled to participate in the Settlement, however, any such Recovery may be reduced by the amount of the prior payment.

65.     To be eligible to receive a Recovery, Verified Claimants must, on penalty of perjury, identify each year of the Damage Period, 2015 through 2020, for which they

_____

[2] The criminal restitution process refers to court-ordered restitution awards made to victims of Plains' criminal conduct in *People v Plains All American Pipeline, L.P.*, No. 1495091 (Cal. Superior Ct.).

seek recovery and attest that they suffered economic harm because of the Spill, in each year for which recovery is sought. Those who did not suffer economic harm as a result of the Spill (for example, they left the industry, or stopped fishing in the CDFW fishing blocks that are part of the Fisher Class Definition, for reasons unrelated to the Spill), are not entitled to a Recovery. Verified Claimants may seek a Recovery for a Full Damage Period or a Partial Damage Period. The Distribution Share for those who are entitled to a Recovery for a Partial Damage Period will be adjusted, based on the number of years for which they are entitled to receive a Recovery (e.g., the Distribution Share for a single year of damages is 20% of the Distribution Share that would be received for the Full Damage Period).

66.     The Fisher Class Definition generally excludes catch of Groundfish and Highly Migratory Species, except for those Class Members who landed fish in (or purchased fish directly from) blocks 654, 655, 656, which were closed for a 41-day period immediately after the Spill. Class Members whose Qualified Catch is based solely on Groundfish or Highly Migratory Species from these blocks will be entitled to one year of damages, reflecting the fact that the closure occurred only in the first year after the Spill.

67.     Catch or shares of Catch attributed to non-Class members, to those who have opted out of the Fisher Class, to those who have previously released their claims, to those who fail to submit a Verified Claim, or who are otherwise ineligible for Recovery, will be excluded from the distribution allocation by the Settlement Administrator. Adjustments for excluded or rejected Claims, Partial Damage Period Claims, and prior payments, will increase the funds available for distribution to Verified Claimants.

**A.     Processor Share**

68.     The Processor Share will be distributed among Fisher Claimants who submit a Processor Claim (based on a valid CDFW Fishing Business License) to which the CDFW Landings Records attributes purchases of Qualifying Catch. Processor Claims

that reflect purchases of Qualifying Catch, and otherwise comply with the Claim requirements, shall be considered Verified Claims entitled to Distribution. The Distribution Share for each Verified Processor Claimant includes the Fixed Share and Variable Share attributed to that Processor. The amount of Recovery for each Verified Processor Claimant will depend upon the total number of Verified Processor Claims submitted, the purchases of Class Catch attributed to that Fishing Business License in the CDFW Landing Records, compared to the total Class Catch for all Processors with Verified Claims entitled to Recovery, and the number of years for which each Verified Processor Claimant is entitled to Recovery.

69.     The Processor Fixed Share will represent a percentage of the Processor Share, that would yield equal payments of $5,000 to each Verified Processor Claimant, or the amount closest to $5,000 that can be achieved with whole-number percentages (e.g., 8% rather than 8.2%), up to a maximum of 20% of the total Processor Share. The precise amount allocated to the Fixed Share will vary depending upon the total number of Verified Processor Claims submitted. The percentage allocated to the Fixed Share will increase as the number of Verified Processor Claimants increases, up to a maximum of 20% of the total Processor Share. If more than 20% of the total Processor Share would be required to achieve a Fixed Share of $5,000 for each Processor, then the percentage allocated to the Fixed Share shall remain at 20%, and that amount will be divided equally among the Verified Processor Claimants.

70.     The Processor Variable Share will be based on the purchases of Class Catch attributed to each Business License, based on CDFW Landing Records, as described above. The precise amount of the Recovery for each Verified Processor Claimant will depend upon the number of Verified Processor Claims that are submitted, the amount allocated to the Processor Fixed Share, and the number of years for which each Verified Processor Claimant is entitled to Recovery.

71.     Class Counsel has identified fewer than two hundred (200) Processors that meet all requirements of Verified Claimants, but the actual number may increase based on the claims filed by Processors. If more than 400 Verified Processor Claims are submitted, the Processor Fixed Share may yield less than $5,000 per Claimant. If fewer than 200 Verified Claims are submitted, Class Counsel estimates that Recoveries (Processor Variable Shares plus Processor Fixed Shares) may range from $5,000 to $800,000 with the median payment of $10,000 and average payments of $50,000 or more (assuming a Full Damage Period without offsets for prior payments).[3]

## B.     Vessel Share

72.     The Vessel Share will be distributed among Fisher Claimants who submit a Vessel ID Claim for which the CDFW Landing Records attribute Qualified Catch. Vessel ID Claims that reflect Qualified Catch, and otherwise comply with the Claims requirements, shall be considered Verified Vessel Claims entitled to Distribution. The Distribution Share for each Vessel includes the Fixed Share and Variable Share attributed to the Vessel, as described below. The amount of Recovery for each Vessel will depend upon the total number of Verified Vessel ID Claims submitted, the share of Class Catch attributed to that Vessel ID in the CDFW Landings Reports, compared to the total Class Catch for all Vessels with Verified Claims entitled to Recovery, and the number of years for which each Verified Vessel Claimant is entitled to Recovery.

73.     The Vessel ID Fixed Share will represent the percentage of the Vessel Share that would yield equal payments of $5,000 to each Verified Vessel Claimant, or the amount closest to $5,000 that can be achieved with whole-number percentages (e.g., 8% rather than 8.2%), up to a maximum of 10% of the total Vessel Share. The precise amount allocated to the Fixed Share will vary depending upon the total number of

---

[3] These estimates (for Processors, Vessels and Crew), *see infra* ¶¶ 75, 80, are calculated after deduction of the maximum allowable Fees and Costs Awards, but do not reflect all anticipated deductions or expenses described above. *See* ¶6; Settlement Agreement, Article IV.3.

Verified Vessel ID Claims submitted. The percentage allocated to the Fixed Share will increase as the number of Verified Vessel Claimants increases, up to a maximum of 20% of the total Vessel Share. If more than 20% of the total Vessel Share would be required to achieve a Fixed Share of $5,000 for each Vessel, then the percentage allocated to the Fixed Share shall remain at 20%, and that amount will be divided equally among the Verified Vessel Claimants.

74.     The Vessel Variable Share will be based on the Class Catch attributed to each Vessel ID in the CDFW Landing Records. The precise amount of the Recovery for each Verified Vessel Claimant will depend upon the number of Verified Vessel Claims that are submitted, the amount allocated to the Vessel ID Fixed Share, the number of years for which each Verified Vessel Claimant is entitled to Recovery.

75.     Class Counsel has identified approximately 500 Vessels that meet all requirements of Verified Claimants, but the actual number remains to be seen. If more than 1,500 Verified Vessel Claims are submitted, the Vessel Fixed Share may yield less than $5,000 per claimant. If fewer than 500 Verified Vessel ID Claims are submitted, Class Counsel estimates that Recoveries may range from $5,000 to more than $1 million with the median payment of $30,000 and average payments of $100,000 or more, (assuming a Full Damage Period without offsets for prior payments).

## C.     Crew Share

76.     The Crew Share will be distributed among Fisher Claimants who submit a Fisher License Claim for which the CDFW Landings Reports attribute Qualifying Catch. Fisher License Claims that reflect Qualifying Catch, and otherwise comply with the Claims requirements, shall be considered Verified Claims entitled to Distribution. The Distribution Share will depend upon the total number of Verified Crew Claims submitted and the amount of Class Catch attributed to the relevant Crew License in the CDFW Landing Records, compared to the total Class Catch for all Crew Licenses with Verified Claims entitled to Recovery.

77.   The Crew Fixed Share will represent a percentage of the Crew Share that would yield equal payments of $5,000 to each Verified Crew Claimant, or the amount closest to $5,000 that can be achieved with whole-number percentages (e.g., 8% rather than 8.2%), up to a maximum of 20% of the total Crew Share. The precise amount allocated to the Fixed Share will vary depending upon the total number of Verified Crew Claims submitted. The percentage allocated to the Fixed Share will increase as the number of Verified Crew Claimants increases, up to a maximum of 20% of the total Crew Share. If more than 20% of the total Crew Share would be required to achieve a Fixed Share of $5,000 for each Verified Crew Claimant, then the percentage allocated to the Fixed Share shall remain at 20%, and that amount will be divided equally among the Verified Crew Claimants.

78.   The Crew Variable Share will be based on the Class Catch attributed to each Crew License in the CDFW Landing Records. The Variable Share for each Verified Crew Claimant will be based on the cumulative Class Catch attributable to their License, as well as Class Catch attributed to a Verified Vessel on the same day in which their License also appears in any landings attributed to that Vessel.

79.   As stated above, the Settlement Administrator cannot independently verify Class membership for individuals who may be entitled to compensation but are not identified in the CDFW Landing Records. Accordingly, Class Counsel expects that a number of claimants who may be entitled to a Crew Share have not yet been identified. Such individuals will be permitted to submit Claims, under penalty of perjury, accompanied by supporting documentation that verifies their Class membership and fishing activity. To the extent Class membership and fishing activity can be verified, such individuals will be treated as Verified Claimants. Verified Claimants will receive a Fixed Share, even if their fishing activity cannot be verified.

80.   The precise amount of the Crew Recoveries will depend upon the number of Verified Crew Claims that are submitted, the amount allocated to the Crew Fixed Share,

the impact of pro rata shares, and other factors. Class Counsel has identified approximately 600 Fisher Licenses that meet all requirements of Verified Crew Claimants, but the actual number is expected to be higher, as the CDFW Landing Records only identify one Fishing License for each landing, while there may be several licensed fishers on the Vessel. If more than 800 Verified Crew Claims are submitted, the Crew Fixed Share may yield less than $5,000 per claimant. If fewer than 600 Verified Crew Claims are submitted, Class Counsel estimates that Recoveries may range from $5,000 to more than $300,000, with a median payment of $8,000 and average payments of $25,000 or more (assuming a Full Damage Period without offsets for prior payments).

81.     Verified Fisher Claimants (Vessel, Processor, or Crew) who receive Recoveries may direct the Settlement Administrator to designate one or more business partners or crew members not identified in the landing receipts who also suffered economic harm and are entitled to a share of the Recovery for landings associated with the license ("Designated Recovery"). Each identified individual who wishes to receive a Designated Recovery must also submit a Claim Form in order to receive funds directly from the Settlement Administrator, but will not be required to demonstrate attributable fishing or purchase activity, Class Catch, or Qualifying Catch to receive the Designated Recovery. If the Designated Recovery is not claimed, the amount designated will be distributed to the Verified Claimant.

## VII.   DISTRIBUTION AND RECOVERY

82.     The Settlement Administrator shall, after the expiration of the 180-day period set forth above, including review of contested claims, determine: (a) the total Verified Claims; (b) the Fixed and Variable share allocations for Processor, Vessel and Crew Claims; (c) the Recovery for each Verified Claim.

83.     Distribution shall be made to each Verified Claimant, or as directed by the Verified Claimant, based on the Recovery amount for each Claimant, as directed above.

If a Verified Claimant is entitled to Recovery from more than one Verified Claim, the Settlement Administrator may aggregate multiple Recoveries into a single payment.

84.    Recoveries will be issued by check, or may be transmitted electronically, if requested by the Verified Claimant, subject to verification or additional procedures of the Settlement Administrator.

85.    To ensure that the costs of administration and distribution of each Recovery do not exceed the value of the Recovery itself, in the unlikely event that any Recovery is less than $25.00, it does not meet the minimum threshold for Distributions and no such payment shall be made. Depending on the claim rate, Recovery amounts estimated by the Settlement Administrator, and processing costs to distribute payments, Class Counsel may, at their discretion, lower the minimum threshold before any Distributions are made.

## VIII.  RESIDUAL FUNDS

86.    Designated Recoveries that are not claimed within 120 days after payment is issued will be returned to the Verified Claimant.

87.    To the extent that any part of the Fisher Settlement Fund remains unclaimed for more than 180 days after the Claims Administrator has distributed funds to all Verified Fisher Claimants and Designated Recipients, Class Counsel will seek Court approval for distributing the remainder of the Fisher Net Settlement Fund. The Claims Administrator will follow the directions approved by the Court.

## IX.   COURT REVIEW

88.    All proceedings with respect to the administration, processing, and determination of Claims, and the determinations of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. Those persons whose Claims are rejected by the Settlement Administrator, either in whole or in part, will be advised in writing of the reasons for the rejection, and they will have the opportunity to seek Court review of the Settlement Administrator's rejection. All Claimants expressly waive trial by jury (to the

1   extent any such right may exist) and any right of appeal or review with respect to the

2   Court's determination.

3

4

5   Dated: June 27, 2022                    Respectfully submitted,

6                                           KELLER ROHRBACK L.L.P.

7                                           By: */s/ Juli E. Farris*

8                                           Juli E. Farris (CSB No. 141716)

9                                           Matthew J. Preusch (CSB No. 298144)
                                            Alison Chase (CSB No. 226976)

10                                          KELLER ROHRBACK L.L.P.

11                                          801 Garden Street, Suite 301

12                                          Santa Barbara, CA 93101
                                            Telephone: (805) 456-1496

13
                                            Lynn Lincoln Sarko
14                                          (*Admitted Pro Hac Vice*)

15                                          Gretchen Freeman Cappio
                                            (*Admitted Pro Hac Vice*)
16                                          Michael D. Woerner

17                                          (*Admitted Pro Hac Vice*)
                                            Raymond Farrow
18                                          (*Admitted Pro Hac Vice*)

19                                          Daniel Mensher
                                            (*Admitted Pro Hac Vice*)
20                                          Laura R. Gerber

21                                          (*Admitted Pro Hac Vice*)
                                            KELLER ROHRBACK L.L.P.
22                                          1201 Third Ave, Suite 3200

23                                          Seattle, WA 98101
                                            Telephone: (206) 623-1900
24

25

26

27

28

1       Robert L. Lieff (CSB No. 037568)
2       Elizabeth J. Cabraser (CSB No. 083151)
    Robert J. Nelson (CSB No. 132797)
3       Nimish Desai (CSB No. 244953)
4       Wilson M. Dunlavey (CSB No. 307719)
    Jacob H. Polin (CSB No. 311203)
5       LIEFF CABRASER
6       HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
7       San Francisco, CA  94111-3339
8       Telephone: (415) 956.1000

9       *Class Counsel*

10
11      A. Barry Cappello (CSB No. 037835)
    Leila J. Noël (CSB No. 114307)
12      Lawrence J. Conlan (CSB No. 221350)
    David L. Cousineau (CSB No. 298801)
13      CAPPELLO & NOËL LLP
14      831 State Street
    Santa Barbara, CA 93101-3227
15      Telephone: (805) 564-2444

16
17      *Lead Trial Counsel*

18      William M. Audet (CSB No. 117456)
    Ling Y. Kuang (CSB No. 296873)
19      AUDET & PARTNERS, LLP
20      711 Van Ness Avenue
    Suite 500
21      San Francisco, CA  94102
22      Telephone: (415) 568-2555

23      *Class Counsel*
24
25
26
27
28

PROPOSED PLAN OF DISTRIBUTION FOR THE
FISHER CLASS

2:15-CV-04113-PSG-JEMx

**CERTIFICATE OF SERVICE**

I, Juli Farris, hereby certify that on June 27, 2022, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Juli Farris*