Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Class Counsel*
(*additional counsel listed at signature*)

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
Leila J. Noël (CSB No. 114307)
lnoel@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>Defendants. | Case No. 2:15-cv-04113-PSG-JEMx<br><br>**[PROPOSED] PLAN OF DISTRIBUTION FOR THE PROPERTY CLASS** |

## I. BACKGROUND

1. This document describes the Plan of Distribution for the Property Class ("Property Plan" or "Distribution Plan"). The Property Plan shall govern the distribution of the Settlement funds provided for the Property Class in accordance with the Settlement Agreement executed on May 12, 2022 between Plaintiffs and Defendants in the above-captioned case. ("Settlement Agreement" or "Settlement"). The Settlement Agreement is attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval [Dkt. 944-1].

2. The Distribution Plan utilizes real property records previously obtained by Plaintiffs' real property expert, Landmark Research Group, to identify Property Class members and to determine individual property owner's or long-term lessee's pro-rata share of the Settlement, based upon the Loss of Use Value attributed to each property by Plaintiffs' expert. The claims process can be completed electronically or by mail. The claim form must be signed and submitted by the person or authorized representative of the entity that owned the property or held the long-term lease for the property for which the claim is submitted.

3. The Settlement Agreement provides that Plains shall pay $46 million to the Property Class (the "Property Class Settlement Amount"), in exchange for a full release of claims alleged on behalf of the Property Class in this litigation. This Settlement relates to an oil spill on May 19, 2015 from Plains' Line 901 pipeline in Santa Barbara County that Plaintiffs allege caused damage to real property owners and long-term lessees ("Oil Spill" or "Spill"). Settlement Agreement, Articles I.5; II.26; II.29.

4. The Property Class Common Fund shall be administered by the Settlement Administrator. The Settlement provides that the Settlement Administrator shall disburse funds from the Property Class Common Fund pursuant to the terms of the Settlement Agreement and in accordance with the orders of the Court. Settlement Agreement, Article III.

5. The Settlement Agreement also directs that Class Counsel shall propose a method for distributing the Property Class Common Fund to members of the Property Class before Class Members must decide whether to object to the Settlement. The Parties further agreed that "the rulings of the Court regarding the Plans of Distribution, and any claim or dispute relating thereto, will be considered by the Court separately from the approval of the Settlement Agreement," and that Final Approval of the Settlement is not contingent upon resolution of any appeals, modifications, or reversal of orders regarding the Plan of Distribution. Settlement Agreement, Articles IV.1; IV.2.

6. As set forth in Article IV.3 of the Settlement Agreement, portions of the Settlement Fund shall be used to pay certain costs and fees prior to determining a net amount that is available for distribution to Class members, to include:

    a. Fees and Costs Awards, subject to Court approval;

    b. Service Awards to Class Representatives, subject to Court approval; and

    c. Costs of Notice and Administration of Settlement, including fees and expenses of the Settlement Administrator, costs of generation and mailing checks, fees, and costs of escrow, if any.

7. The net amount available for distribution will depend upon the amount of costs deducted for the items listed above, and the number of claims submitted and verified. The mechanics of the Distribution Plan are not dependent upon the amount available for distribution.

## II. DEFINITIONS

8. The capitalized terms used in this Plan of Distribution for the Property Class have the same meaning as defined in the Settlement Agreement and Order Granting Preliminary Approval of the Proposed Settlement, [Dkt. 949], unless otherwise indicated.

9. "APN Number" means the assessor's parcel number assigned to a property.

10. "Claim" means a completed hard copy or electronic claim form submitted by a Class Member, together with the necessary attestations and supporting documentation, if any.

11. "Claim Deadline" is the last day on which to submit a Claim, October 31, 2022, or as the Court directs.

12. "Claim Period" means the 90-day period during which Claims may be submitted starting July 31, 2022 (or earlier), and ending on October 31, 2022.

13. "Designated Recipient" is a Claimant to whom the Settlement Administrator is directed to make a Designated Recovery.

14. "Designated Recovery" is the amount that a Verified Claimant, at their sole discretion, may direct the Settlement Administrator to designate to long-term lessees or others from the Verified Claimant's Verified Claim.

15. "Distribution Plan" means the process and procedures established by this Plan as effectuated by the Settlement Administrator.

16. "Distribution Share" means the share allocated to each owner or long-term lessee based on the property's Loss of Use Value determined by Landmark Research Group. The Distribution Share includes a Variable Share and may include a Fixed Share, if applicable.

17. "Fixed Share" refers to that portion of the Oiled Properties' Share Pool that is allocated in equal shares to all Verified Claimants entitled to participate in that Share Pool.

18. "Long-Term Lessee" means the lessee of any piece of real property identified by Plaintiffs' experts as meeting the Property Class definition, for a term of one year or longer, that includes the three-month period after the date of the Spill, May 19, 2015.

19. "Loss of Use Value" means the comparative loss attributed to a property that meets the Property Class Definition, based on the differential amount in the appraised rental value of a real property identified by Plaintiffs' expert.

20. "Oiled Properties" means real properties identified by Plaintiffs' experts as meeting the Property Class definition, and which either directly abut the mean high tide line or have a private easement that directly abuts the mean high tide line.

21. "Owner" means the owner of any piece of real property identified by Class Counsel's experts as meeting the Property Class definition, as of May 19, 2015.

22. "Preliminary Approval Order" means the Order entered by this Court on May 25, 2022 [Dkt. 949], which directs the procedures and schedule for approval of the Settlement, including submission of this Distribution Plan.

23. "Property Class" means the Class certified by the Court on April 17, 2018. [Dkt. 454].

24. "Property Class Definition" means the definition provided in the Court's Order certifying the Property Class, defined as: "Residential beachfront properties on a beach and residential properties with a private easement to a beach (collectively "Included Properties") where oil from the 2015 Santa Barbara oil spill washed up, and where the oiling was categorized as Heavy, Moderate or Light, as identified in [an exhibit prepared by Plaintiffs' experts]." "Excluded from the proposed Subclass are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, or assigns and successors; and (2) the judge to whom this case is assigned, the judge's staff, and any member of the judge's immediate family." [Dkt. 454 at 18].

25. "Property Net Settlement Fund" means the amount available for distribution to the Property Class, after deduction of the Fees and Costs Awards, Service Awards, and administrative fees and costs, as contemplated by the Settlement Agreement, subject to Court approval.

26. "Recovery" is the net distribution attributed to a Verified Claimant by the Settlement Administrator, reflecting the Distribution Share, less any necessary adjustments or deductions.

27. "Release" means the release of claims reflected in the Settlement Agreement. Settlement Agreement, Article VII.

28. "Settlement Administration" means actions carried out by JND Legal Administration in its capacity as Settlement Administrator.

29. "Settlement Administrator" means JND Legal Administration, the administrator selected by Class Counsel and appointed by this Court. [Dkt. 949 at ¶7].

30. "Settlement Agreement," "Settlement," or "Agreement" means the Settlement Agreement executed on May 12, 2022 and attached as Exhibit 1 to Plaintiffs' Motion for Preliminary Approval [Dkt. 944-1].

31. "Settlement Website" means the dedicated website maintained by the Settlement Administrator at www.PlainsOilSpillSettlement.com.

32. "Share Pool" means the amount allocated to the Oiled Properties or the Unoiled Properties, respectively, as described below in this Distribution Plan.

33. "Spill" means the May 19, 2015 oil spill from Plains' Line 901 pipeline in Santa Barbara County that Plaintiffs allege caused damage to the Fisher Class and the Property Class.

34. "Unoiled Properties" means real properties identified by Class Counsel's experts as meeting the Property Class Definition, and which neither directly about the mean high tide line nor have a private easement that directly abuts the mean high tide line.

35. "Variable Share" means the proportional share allocated to Verified Claimants based on the Loss of Use Value amounts calculated by Landmark Research Group.

36. "Verified Claim" means a timely, correct and complete Claim Form, signed and submitted to the Settlement Administrator by a Verified Claimant, supported by such evidence as required by the Settlement Administrator, that complies with this Plan, the Settlement Agreement and any other applicable orders of the Court. A Verified Property Claim or Claimant is any member of the Property Class who has a Verified Claim. A Verified Owner or Long-Term Lessee Claim refers to a Verified Claim submitted by an Owner or Long-Term Lessee, respectively.

37. "Verified Claimant" means a Class Member whose membership in the Class has been verified by the Settlement Administrator in response to the timely submission of a Verified Claim.

### III. DISTRIBUTION PLAN OVERVIEW

38. Subject to Court approval, the Property Net Settlement Fund will be paid to Verified Property Claimants.

39. The Distribution Plan is intended to be user friendly. Claims can be submitted electronically, or by mail. The Distribution Plan includes a list of real properties whose abutting or adjacent beach was oiled at the level of Heavy, Moderate or Light (as set forth in the Property Class Definition) pursuant to the work of Plaintiffs' expert, Igor Mezic.[1] The owners and long-term lessees of these properties are the Property Class members. The Distribution Plan then utilizes Loss of Use Value calculations prepared by Plaintiffs' expert, Landmark Research Group, to establish each Verified Claimant's share of the Settlement. Property Class members are not required to submit individual property records, appraisals or other valuation documentation to obtain a Distribution Share, unless necessary to verify identity, membership in the Class, to resolve disputes, or as otherwise requested by the Settlement Administrator.

---

[1] The list will be available on the Settlement Website.

# IV. CLAIMS SUBMISSION

40. Each Property Class Member wishing to receive proceeds from the Property Net Settlement Fund must submit a Claim Form, signed under penalty of perjury, including the Claimant's contact information, and the street address or APN Number of the property for which the Claim is submitted, as well as any supporting data, documents and other proof as required by the Settlement Administrator, by the deadline set by the Court.

41. Claim Forms and the Distribution Plan will be available on the Settlement Website, or from the Settlement Administrator upon request, on or before July 31, 2022. The Claim Form may be completed online or printed and submitted by mail. The Claim Form must be submitted on or before October 31, 2022. Claim Forms submitted by mail will be deemed timely submitted if postmarked on or before October 31, 2022.

42. The Settlement Administrator will assign a Unique ID to each mailed Notice issued consistent with this Court's Preliminary Approval Order. To ensure authenticity and protect privacy the Unique ID must be used to submit, supplement or review a Claim. Those who wish to file a Claim, but have not received a Notice or Unique ID, may request one by contacting the Settlement Administrator. Receipt of a Notice or Unique ID does not confirm membership in the Property Class. Receipt of a Notice or Unique ID does not confirm membership in the Property Class. Claimants may review the status of their Claim or determine whether they have been identified as members of the Property Class by visiting the Settlement Website. Property Class members may file a Claim, and provide documentation to establish their membership in the Class and entitlement to a Recovery, even if they are not identified as members of the Property Class on the website. Only those meeting the Property Class Definition should submit Claims.

43. A separate Claim Form is required for each street address or property APN number for which recovery is sought. A separate Recovery will be calculated

1  for each street address or property APN Number. The Claim Form must be signed
2  under penalty of perjury, and submitted by the person, or entity representative, who
3  is identified on the relevant property records.

4      44. The Settlement Administrator will rely on the analyses of Plaintiffs'
5  experts to identify Property Class members and determine Distribution Shares and
6  eligibility.

7      45. Verified Property Claimants who receive Recoveries may, at their sole
8  discretion, direct the Settlement Administrator to designate a portion of their
9  Recovery to another person or entity ("Designated Recovery"). Each Designated
10 Recipient who wishes to receive a Designated Recovery must also submit a Claim
11 Form in order to receive funds directly from the Settlement Administrator. If the
12 Designated Recovery is not claimed, the amount designated will be distributed to
13 the Verified Claimant.

14     46. The Settlement Administrator may, at its discretion and in consultation
15 with Class Counsel, or as directed by the Court, implement additional procedures,
16 or require additional verification, proof of identity, or proof of Claim, before
17 disclosing information or disbursing funds, to ensure that funds are equitably
18 disbursed and to protect against fraud, theft, or inadvertent disclosure of personal
19 information, or as otherwise necessary to protect the Settlement and Distribution.

20                 **V. REVIEW AND VERIFICATION OF CLAIMS**

21     47. Following receipt of each Property Claim, the Settlement
22 Administrator will issue a confirmation receipt to the Claimant.

23     48. The Settlement Administrator will review each Property Claim against
24 the Property Class definition and the list of properties in the Property Class as
25 compiled by Class Counsel's experts, to determine whether the Claimant is a
26 Property Class Member. Claims submitted by persons or entities who are not
27 Property Class Members, or by Property Class Members who have previously opted
28

out of the Property Class,[2] or executed a full release of claims as part of a negotiated settlement, will be rejected.

49. The Property Class definition requires determination that the Claimant is the owner or long-term lessee of residential beachfront property on a beach or residential property with a private easement to a beach where oil from the Spill washed up, and where oiling was categorized as Heavy, Moderate or Light, as determined by Plaintiffs' experts. [Dkt. 454 at 18.]

50. The Settlement Administrator will review each Claim to determine whether the Claim is submitted in accordance with these requirements. Claims that are not submitted in accordance with these requirements will be rejected, as outlined below.

51. Timely submitted Claims that meet all requirements above shall be considered Verified Claims, for which a Distribution Share will be calculated. Only Property Claimants with proof that they meet the Property Class Definition, and who meet the other elements of Class membership described above, will be counted as Verified Claimants entitled to a Recovery. All Verified Claimants will receive a Variable Share, as set forth below. Verified Claimants with Oiled Properties at the oiling levels Heavy or Moderate also will receive a Fixed Share, as set forth below.

52. Except as provided by the Designated Recovery described above, only Verified Claimants, or Designated Recipients, are entitled to Recovery. The Settlement Administrator is not responsible for, and shall not distribute, Recovery amounts to anyone who is not a Verified Claimant, except when directed to make a Designated Recovery by a Verified Claimant, from that Claimant's Recovery. The Settlement Administrator will not accept claims from, or disburse funds to, third-party representatives or professional claims processors.

---

[2] Property Class Members were given notice and the opportunity to opt-out of the Property Class in 2018. The deadline for doing so has expired.

53. The Settlement Administrator shall promptly notify all Claimants whose claims are rejected and state the reasons for the rejection. Claimants may contest the rejection within 30 days after receiving notice of rejection, by serving upon the Settlement Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection, along with any supporting documentation. If a response is not received within 30 days, the Claim shall be deemed rejected.

54. If the Claimant contests the notice of rejection, the Settlement Administrator will re-evaluate the Claim, together with any additional documentation. The Settlement Administrator may, in consultation with Class Counsel, adopt additional procedures to resolve disputes regarding contested Claims.

55. Property Class Members who do not submit a Verified Claim, or whose Claim is rejected, will not participate in the Distribution. Under the terms of the Settlement Agreement, such Class Members shall be bound by the Settlement, including the terms of the Final Judgment and Release, and are enjoined from, and upon the Order of the Court granting Final Approval of the Settlement, and barred from bringing any action against the Defendants concerning the Released Claims. Settlement Agreement, Article VII.

## VI. DISTRIBUTION SHARE CALCULATION

56. After the time for filing claims has ended, the Settlement Administrator shall, within 180 days, or as otherwise directed by Class Counsel or this Court, complete all work required to allow or deny a Claim. This period may be extended, if necessary, subject to Court approval. The Settlement Administrator shall issue to Class Counsel a report of the number of approved claims, and the total amount of allowed Claims. The Settlement Administrator shall calculate the amount available for Distribution by deducting the amount of Court-approved Notice, Settlement Administration and other expenses, as well as approved

attorneys' fees, litigation expenses, and service awards. The remaining balance available for Distribution will then be allocated as follows.

57. To calculate each Verified Property Claimant's share of the Property Net Settlement Fund (the "Recovery"), the Settlement Administrator will first allocate the available funds between Oiled Properties and Unoiled Properties, based on the Loss of Use Value calculations previously performed by Landmark Research Group. This analysis indicates that Oiled Properties suffered approximately 81.1% of the total Loss of Use Value. Accordingly, the Settlement Administrator will allocate 81.1% of the Property Net Settlement Amount to the Oiled Properties ("Oiled Properties' Share Pool"). Landmark's analysis further indicates that the Unoiled Properties suffered approximately 18.9% of the total Loss of Use Value. Accordingly, the Settlement Administrator will allocate 18.9% of the Property Net Settlement Amount to the Unoiled Properties ("Unoiled Properties' Share Pool").

58. The Distribution of the Oiled Properties' Share Pool will have two components, a Variable Share and a Fixed Share. The Variable Share shall comprise 90% of the Oiled Properties' Share Pool and is intended to compensate Owners and Long-Term Lessees for their Loss of Use Value sustained. The Variable Share will be distributed to Verified Claimants in proportional shares based on each Oiled Property's Loss of Use Value amount as calculated by Landmark Research Group, in comparison to others who submit claims within that category. The Fixed Share shall comprise 10% of the Oiled Properties' Share Pool and is intended to provide additional compensation to Owners and Long-Term Lessees for the more severe oiling sustained at the Heavy and Moderate oiling levels. The Fixed Share will be distributed in equal shares to all Verified Claimants who submit claims within that category. The Fixed Share is intended to recognize the additional harm suffered by those Class members who experienced Heavy and Moderate oiling on their properties.

59.     The Distribution of the Unoiled Properties' Share Pool will have a single component, a Variable Share. The Variable Share therefore shall comprise 100% of the Unoiled Properties' Share Pool and is intended to compensate Owners and Long-Term Lessees for their Loss of Use Value sustained. The Variable Share will be distributed to Verified Claimants in proportional shares based on each Unoiled Property's Loss of Use Value amount as calculated by Landmark Research Group, in comparison to others who submit claims within that category. The Variable Share is intended to equitably distribute Settlement proceeds to all Unoiled Property Class members who suffered some measure of harm because of the Spill.

60.     Claimants who previously opted out of the Property Class or have already executed a full release of all claims against Plains, for example, as the result of a prior individual settlement, payment pursuant to the OPA claims program, or the criminal restitution process,[3] shall not entitled to participate in the Settlement and such claims will be rejected by the Claims Administrator. Verified Claimants who have received payments through the OPA claims process or criminal restitution, but have not fully released their respective individual claims, are entitled to participate in the Settlement, however, any such Recovery may be reduced by the amount of the prior payment.

61.     To be eligible to receive a Recovery, Verified Claimants must, on penalty of perjury, identify their property address or APN Number and submit proof of ownership or long-term lease as of May 19, 2015.

62.     Class Counsel has identified 8,075 properties in the Property Class: 3,847 Oiled Properties and 4,228 Unoiled Properties. Of the Oiled Properties, 298 were oiled at the Heavy or Moderate level according to the analysis of Plaintiffs' expert and are eligible for a Fixed Share. If all the properties in the Property Class

---

[3] The criminal restitution process refers to court-ordered restitution awards made to victims of Plains' criminal conduct in *People v Plains All American Pipeline, L.P.*, No. 1495091 (Cal. Superior Ct.).

meet all the requirements to be Verified Claimants, Class Counsel estimates that Recoveries may range from approximately $200 to more than $100,000, with the median payment of $1,550 and average payments of $3,500.[4] Adjustments for opt-outs, excluded or rejected claims, and prior payments will increase the funds available for distribution to Verified Claimants.

## VII. DISTRIBUTION AND RECOVERY

63. The Settlement Administrator shall, after the expiration of the 180-day period set forth above, including review of contested claims, determine: (a) the total Verified Claims; (b) the Variable and Fixed share allocations for Oiled Property and Unoiled Property Claims; and (c) the Recovery for each Verified Claim.

64. Distributions shall be made to each Verified Claimant, or as directed by the Verified Claimant, based on the Recovery amount for each Claimant, as directed above. If a Verified Claimant is entitled to Recovery from more than one Verified Claim, the Settlement Administrator may aggregate multiple Recoveries into a single payment.

65. Recoveries will be issued by check or may be transmitted electronically, if requested by the Verified Claimant, subject to verification or additional procedures of the Settlement Administrator.

66. To ensure that the costs of administration and distribution of each Recovery do not exceed the value of the Recovery itself, in the unlikely event that any Recovery is less than $25.00, it does not meet the minimum threshold for Distributions and no such payment shall be made. Depending on the claim rate, Recovery amounts estimated by the Settlement Administrator, and processing costs to distribute payments, Class Counsel may at their discretion lower the minimum threshold before any Distributions are made.

---

[4] These estimates are calculated after deduction of the maximum allowable Fees and Costs Awards, but do not reflect all anticipated deductions or expenses described above. *See* ¶6; Settlement Agreement, Article IV.3.

## VIII.  RESIDUAL FUNDS

67.  Designated Recoveries that are not claimed within 120 days after payment is issued will be returned to the Verified Claimant.

68.  To the extent that any part of the Property Settlement Fund remains unclaimed for more than 180 days after the Claims Administrator has distributed funds to all Verified Property Claimants and Designated Recipients, Class Counsel will seek Court approval for distributing the remainder of the Property Net Settlement Fund. The Claims Administrator will follow the directions approved by the Court.

## IX.  COURT REVIEW

69.  All proceedings with respect to the administration, processing, and determination of Claims, and the determinations of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. Those persons whose Claims are rejected by the Settlement Administrator, either in whole or in part, will be advised in writing of the reasons for the rejection, and they will have the opportunity to seek Court review of the Settlement Administrator's rejection. All Claimants expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to the Court's determination.

Dated: June 27, 2022

Respectfully submitted,

CAPPELLO & NOËL LLP

By: */s/ Leila J. Noël*
A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444

*Lead Trial Counsel*

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
Alison Chase (CSB No. 226976)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496

Lynn Lincoln Sarko
(*Admitted Pro Hac Vice*)
Gretchen Freeman Cappio
(*Admitted Pro Hac Vice*)
Michael D. Woerner
(*Admitted Pro Hac Vice*)
Raymond Farrow
(*Admitted Pro Hac Vice*)
Daniel Mensher
(*Admitted Pro Hac Vice*)
Laura R. Gerber
(*Admitted Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900

Robert L. Lieff (CSB No. 037568)
Elizabeth J. Cabraser (CSB No. 083151)
Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
Jacob H. Polin (CSB No. 311203)
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956.1000

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA  94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*

**CERTIFICATE OF SERVICE**

I, Juli E. Farris, hereby certify that on June 27, 2022, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

                                        */s/ Juli E. Farris*