Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

*Lead Trial Counsel*
*(additional counsel listed at signature)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>Defendants. | Case No. 2:15-cv-04113-PSG-JEMx<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        September 16, 2022<br>Time:        1:30 p.m.<br>Judge:       Hon. Philip S. Gutierrez<br>Courtroom:  6A |

TO ALL THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Philip S. Gutierrez in Courtroom 6A of the above-entitled court, located at 350 West First Street, Los Angeles, CA 90012-4565, Plaintiffs will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

A. Granting final approval of the proposed Settlement;

B. Confirming certification of the litigation classes for purposes of Settlement, including the Court's prior appointment of Class Representatives and Class Counsel; and

C. Finding that notice to the Classes was directed and completed in a reasonable manner.

This motion is based on the attached supporting memorandum; the accompany declarations and exhibits; the pleadings, papers, and records on file in this action, including Plaintiffs' Motion for Preliminary Approval (Dkt. 949); any further papers filed in support of this motion; and arguments of counsel.

Dated:  July 29, 2022

Respectfully submitted,

By:  _____*/s/Robert J. Nelson*_____

Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956.1000
Facsimile: (415) 956.1008

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.

801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Lynn Lincoln Sarko (*Pro Hac Vice*)
Gretchen Freeman Cappio (*Pro Hac Vice*)
Michael D. Woerner (*Pro Hac Vice*)
Raymond Farrow (*Pro Hac Vice*)
Daniel Mensher (*Pro Hac Vice*)
Laura R. Gerber (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*

3

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
abc@cappellonoel.com
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

*Lead Trial Counsel*
*(additional counsel listed at signature)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDREWS, an individual, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al.,<br><br>                    Defendants. | Case No. 2:15-cv-04113-PSG-JEMx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          September 16, 2022<br>Time:          1:30 p.m.<br>Judge:          Hon. Philip S. Gutierrez<br>Courtroom: 6A |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .............................................................................................. 1

    A.  Investigation and Consolidation .................................................... 2

    B.  Discovery ........................................................................................ 2

    C.  Class Certification ........................................................................... 3

        1.  Fisher Class ............................................................................ 3

        2.  Property Class ........................................................................ 5

    D.  Summary Judgment ......................................................................... 6

    E.  Trial Plan ......................................................................................... 6

    F.  Trial Preparation ............................................................................. 7

    G.  Mediation and Settlement ............................................................... 7

III.  SUMMARY OF SETTLEMENT TERMS .................................................... 8

IV.  ARGUMENT ................................................................................................. 8

    A.  The proposed Settlement is fair, reasonable, and adequate. ............... 8

        1.  Plaintiffs and Class Counsel have vigorously represented
            the Classes. ............................................................................ 9

        2.  The Settlement is the result of arm's length negotiations. ....... 10

        3.  The Settlement relief is outstanding. ..................................... 11

        4.  The Settlement will effectively distribute relief to the
            classes and treats class members equitably relative to each
            other. 15

    B.  Plaintiffs have provided adequate notice under Rule 23(b)(3)
        and Rule 23(c)(2)(B) ..................................................................... 17

    C.  The Court already certified the Classes. ......................................... 18

V.  CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews, et al., v. Plains All American Pipeline, et al,*
Case No. 18-80054 (June 27, 2018)...................................................5

*Andrews, et al., v. Plains All American Pipeline, et. al,*
Case No. 19-80167 (July 27, 2020) ...................................................4

*Baker v. SeaWorld Ent., Inc.,*
2020 WL 4260712 (S.D. Cal. July 24, 2020) .............................10, 13

*Campbell v. Facebook, Inc.,*
951 F.3d 1106 (9th Cir. 2020)...........................................................9

*Cheng Jiangchen v. Rentech, Inc.,*
No. 17-1490, 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .........11, 14

*Fleming v. Impax Lab'ys Inc.,*
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ..................................16

*Greer v. Dick's Sporting Goods, Inc.,*
2020 WL 5535399 (E.D. Cal. Sept. 15, 2020)....................................9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)..........................................................11

*Hawkins v. Kroger Co.,*
2021 WL 2780647 (S.D. Cal. July 2, 2021) ......................................18

*Hefler v. Wells Fargo & Co.,*
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)....................................10

*Hilsley v. Ocean Spray Cranberries, Inc.,*
2020 WL 520616 (S.D. Cal. Jan. 31, 2020)........................................17

*Hudson v. Libre Tech. Inc.,*
2020 WL 2467060 (S.D. Cal. May 13, 2020).......................................9

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011).......................................................10, 11

*In re Critical Path, Inc.,*
2002 WL 32627559 (N.D. Cal. June 18, 2002) ..................................12

*In re Elec. Carbon Prods. Antitrust Litig.,*
447 F. Supp.2d 389 (D.N.J. 2006) ....................................................16

*In re Extreme Networks Inc. Sec. Litig.,*
2019 WL 32907708 (N.D. Cal. Jul. 22, 2018)....................................17

*In re High-Tech Emp. Antitrust Litig.,*
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .....................................16

*In re Illumina, Inc. Sec. Litig.,*
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) .....................................16

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000)............................................................12

*In re Signet Jewelers Ltd. Sec. Litig.,*
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...............................12, 13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  2019 WL 13020734 (N.D. Cal. May 14, 2019) ....................................................11

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) .........................................................16

*Loomis v. Slendertone Distrib., Inc.*,
  2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ......................................................9, 16

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) .....18

*ODonnell v. Harris County*,
  2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ......................................................18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022)...............................................................................14

*Rodriguez v. W. Pub. Corp.*,
  563 F.3d 948 (9th Cir. 2009)...............................................................................16

*Soto v. Diakon Logistics (Del.), Inc.*,
  2015 WL 13344896 (S.D. Cal. Feb. 5, 2015) ......................................................10

*Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*,
  2019 WL 8647819 (C.D. Cal. Nov. 4, 2019)..........................................................9

**Statutes**

California Code Section 8670, *et seq.* ..........................................................................2

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*......2

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................19

Fed. R. Civ. P. 23(e) ...........................................................................................passim

Fed. R. Civ. P. 23(f)............................................................................................4, 5

**Treatises**

William B. Rubenstein,
  *Newberg on Class Actions* (5th ed. Dec. 2021 update)......................10, 11, 15, 21

## I.     INTRODUCTION

After nearly seven years of hard-fought litigation, Plaintiffs secured an outstanding Settlement of $184 million for the Fisher Class and $46 million for the Property Class, inclusive of attorneys' fees and costs.[1] Pursuant to the Court's order preliminarily approving the Settlement (Dkt. 949), Plaintiffs now file three motions to complete the approval process.[2]

In this motion, Plaintiffs seek final approval of the Settlement, which readily satisfies the "fair, adequate, and reasonable" settlement approval standard of Rule 23. The Settlement was reached after an extraordinary degree of discovery and motion practice, and with the aid of experienced mediators who oversaw hard fought negotiations over the course of many years. The Settlement represents a substantial and impressive percentage of the Classes' maximum recoverable damages, and it heads off the unpredictable risks of trial and appeals – risks that are amplified in this case given its complexity, novelty, and scale.

## II.     BACKGROUND

This litigation arises from an oil spill at Refugio State Beach in Santa Barbara County on May 19, 2015. Defendants owned and operated an onshore pipeline that runs along the coast. When the pipeline ruptured, oil spilled into the Pacific Ocean, and spread along the coast of Santa Barbara County, Ventura County, and Los Angeles County. Dkt. 88 ¶¶ 1, 2.

---

[1] The Settlement Agreement (the "Settlement") is Exhibit 1 to the previously filed Declaration of Robert J. Nelson in Support of Preliminary Settlement Approval ("Nelson Decl."). Dkt. 944-1, Ex. 1. Unless otherwise specified, capitalized terms herein refer to and have the same meaning as in the Settlement.

[2] In addition to this motion for final approval, Plaintiffs have concurrently filed a motion to approve the Plans of Distribution, and a motion to award fees, costs, and Class Representative service awards.

2431194.2

1

### A.  <u>Investigation and Consolidation</u>

In the aftermath of the oil spill, and as early as June 1, 2015, certain plaintiffs filed the first of several class action complaints. On November 9, 2015, this Court consolidated many of the cases into this lead case, *Andrews, et al. v. Plains All American Pipeline, L.P. et al.*, and administratively closed all other related cases. *See* Dkt. 40. The operative pleading in this lead case is now the Second Amended Complaint ("SAC"), filed on April 6, 2016. Dkt. 88.

Plaintiffs brought claims for strict liability under the Lempert-Keene-Seastrand Oil Spill Prevention and Response Act (California Code Section 8670, *et seq.*) and under the common law for ultrahazardous activities. Plaintiffs also brought common law claims for negligence, public nuisance, negligent interference with prospective economic advantage, trespass, continuing private nuisance, and a permanent injunction. Finally, Plaintiffs brought a claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. Dkt. 88 ¶¶ 261-359.

### B.  <u>Discovery</u>

This case involved an extraordinary amount of discovery. There were approximately 360,000 documents produced by the parties and third parties, totaling over 1.5 million pages, including numerous highly technical documents and data sets relating to pipeline integrity, spill volume, and fish landings. Nelson Decl., ¶ 11. Among the document productions were over 7,000 documents (36,000 pages) produced by Plaintiffs, including financially sensitive documents that required careful pre-production review by Class Counsel. *Id*. ¶ 13.

The case required extensive expert discovery, as Class Counsel had to support class certification and merits arguments for two distinct classes. The parties disclosed a total of 27 subject matter experts across highly technical concepts, including integrity management, spill volume, control room operations, oil transport and oil fate, marine biology, lost fish catch regression analyses, fisher

1  industry accounting and lost profits, real estate appraisal and mass appraisal
2  techniques, and lost rental value damages. *Id.* ¶ 15. Together, these experts
3  produced and served approximately 52 reports, inclusive of declarations submitted
4  in connection with key motions, such as class certification and summary judgment.
5  *Id.* ¶ 16. The parties took over 100 depositions in this matter, inclusive of 46 expert
6  depositions. *Id.* ¶ 18.

7       Finally, discovery efforts were highly contentious throughout, and were
8  successful only due to Class Counsel's dogged meet and confer efforts, closely
9  negotiated stipulations and informal agreements, and motions to compel. *Id.* ¶ 11.

10      **C.**    <u>**Class Certification**</u>

11         **1.**    <u>**Fisher Class**</u>

12       On August 22, 2016, Plaintiffs moved to certify a Class of fishers and fish
13  processors impacted by Plains' spill, supported by reports from five experts. Dkt.
14  123. Plains deposed each Class representative, deposed each Plaintiffs' expert (and
15  moved to strike three of them), and submitted nine expert reports in support of its
16  opposition to class certification. After extensive briefing and oral argument, on
17  February 28, 2017, this Court certified a Fisher and Fish Industry Class based on
18  Plaintiffs' experts' initial estimates of where the oil traveled and which fishing
19  blocks were impacted. Dkt. 257.

20       Following two years of additional fact and expert discovery, on August 31,
21  2019, Plaintiffs sought to amend the Fisher Class definition to conform it to the
22  evidence of the fishing blocks most impacted by the oil spill, supported by amended
23  reports from two of their experts. Dkt. 531. Plains again deposed Plaintiffs' experts,
24  moved to strike their reports, and opposed certification, serving amended reports
25  from two of its own experts. Dkt. 545. Following voluminous briefing, this Court
26  granted Plaintiffs' motion to amend the Fisher Class, certified the Fisher Class

27
28

1  under Plaintiffs' proposed amended definition, and denied Plains' *ex parte*

2  application to strike the reports of Plaintiffs' experts. Dkt. 577.[3]

3  Following that order, Plains petitioned the Ninth Circuit Court of Appeals to

4  review the certification decision pursuant to Fed. R. Civ. P. 23(f). Plaintiffs

5  opposed, and the Ninth Circuit denied the petition. *See Andrews, et al., v. Plains All*

6  *American Pipeline, et. al*, Case No. 19-80167, Dkt. 3 (July 27, 2020).

7  Plains moved to decertify the Fisher Class no less than three times. Plains

8  moved to decertify the original Fisher Class and moved to exclude the opinions of

9  two of Plaintiffs' experts, filing three expert reports in support of that motion. Dkts.

10  566, 567, 568. Plaintiffs opposed (Dkts. 595-597), and this Court denied Plains'

11  motion as moot after it granted certification of the amended Fisher Class in January

12  2020. Dkt. 630. Plains then filed a decertification motion as to the amended Fisher

13  Class in 2020, along with a motion to strike the expert reports of Plaintiffs'

14  economics expert Dr. Peter Rupert and Plaintiffs' marine biology expert Dr. Hunter

15  Lenihan. Dkts. 647, 649. After extensive briefing and oral argument, the Court

16  issued an order denying Plains' motion to decertify and motion to strike. Dkts. 668-

17  670, 714. In June 2021, Plains filed a third motion to decertify the Fisher Class,

18  which this Court also denied. Dkt. 874.

19

20  ―――――――――――――

[3] The amended and operative definition is: "All persons and businesses (Fishers)

21  who owned or worked on a vessel that was in operation as of May 19, 2015 and

22  that: (1) landed any commercial seafood in California Department of Fish and

Wildlife ("CDFW") fishing blocks 654, 655, or 656; or (2) landed any commercial

23  seafood, except groundfish or highly migratory species (as defined by the CDFW

and the Pacific Fishery Management Council), in CDFW fishing blocks 651-656,

24  664-670, 678-686, 701-707, 718-726, 739-746, 760-765, or 806-809; from May 19,

2010 to May 19, 2015, inclusive; and All persons and businesses (Processors) in

25  operation as of May 19, 2015 who purchased such commercial seafood directly

from the Fishers and re-sold it at the retail or wholesale level. Excluded from the

26  proposed Class are: (1) Defendants, any entity or division in which Defendants

have a controlling interest, and their legal representatives, officers, directors,

27  employees, assigns and successors; (2) the judge to whom this case is assigned, the

judge's staff, and any member of the judge's immediate family, and (3) businesses

28  that contract directly with Plains for use of the Pipeline." *Id.* at 3.

As recently as April 2022, after the Court denied Plains' motion to exclude Dr. Rupert's supplemental damages report regarding post-2017 damages, Plains advised that it intended to seek a six month extension of the June 2022 trial date in order to re-depose each of the Class Representatives, Dr. Rupert, and Dr. Lenihan; submit additional supplemental and rebuttal reports from its own experts; potentially file renewed motion to strike testimony of Plaintiffs' experts; and to again seek to decertify the Fisher Class. Dkt. 939.

### 2.   **Property Class**

On March 5, 2018, Plaintiffs moved to certify a Property Class, based on their experts' analyses of where Plains' oil traveled and which coastal properties were impacted. Dkt. 428-1. Plains opposed, submitting reports from three of its own experts in support of its opposition, and moved to strike Plaintiffs' two expert reports. Dkts. 430, 440. On April 17, 2018, this Court granted Plaintiffs' motion for certification of the Property Class and denied Plains' motions to strike. Dkt. 454.

Plains petitioned the Ninth Circuit Court of Appeals pursuant to Fed. R. Civ. P. 23(f), Plaintiffs opposed, and the Ninth Circuit denied the petition. *See Andrews, et al., v. Plains All American Pipeline, et al*, Case No. 18-80054, Dkt. 4 (June 27, 2018).

The Property Class was also subject to three decertification motions. Plains filed its first motion to decertify in October 2019 (Dkt. 555-1), and another round of motions to exclude the reports of Dr. Igor Mezić and Plaintiffs' real estate economist expert Dr. Randall Bell. Dkt. 556-1 (Mezić), Dkt. 557-1 (Bell). Plaintiffs opposed, and this Court denied Plains' motion to decertify and denied Plains' motions to strike the reports of these experts. Dkt. 624. In 2020, Plains again moved to decertify the Property Class, which Plaintiffs opposed, and this Court denied. Dkts. 663, 718, 720. A year later, in June 2021, Plains filed a third motion to decertify the Property Class, which this Court denied. Dkt. 874.

### D.     Summary Judgment

Plains also filed multiple summary judgment motions. As to the Fisher Class, Plains moved for summary judgment in 2019. Dkt. 646. After extensive briefing, with thousands of pages of documents in support of and in opposition to the motion, and lengthy oral argument, the Court denied Plains' motion for summary judgment in large part. Dkt. 714.[4]

As to the Property Class, Plains moved for summary judgment on October 21, 2019. Dkt. 554. After Plaintiffs opposed and Plains replied, the Court ordered supplemental briefing, which both parties submitted. Dkts. 635, 636. After additional oral argument, the Court issued an order on March 17, 2020, largely denying Plains' motion. Dkt. 720.[5]

In June 2020, Plains moved for reconsideration of the Court's summary judgment order. Plaintiffs opposed, and the Court denied Plains' motion. Dkt. 720.

### E.     Trial Plan

Many of these class certification and summary judgment issues came to a head yet again in the parties' briefing related to the trial plan. The parties submitted starkly opposed trial plans, with Plaintiffs seeking to implement the aggregate, classwide damages models used to support class certification, and Plains insisting on a trial with highly individualized and Class member-specific evidence. *See* Dkts. 637 (joint trial plan submission); 724 and 754 (Plaintiffs' Trial Plan submissions); 725 and 753 (Plains' Trial Plan submissions). Plaintiffs succeeded on this motion as

---

[4] The Court granted summary judgment against a subset of the Fisher Class, the fish processors, as to their ultrahazardous liability, negligence, and public nuisance claims. *Id*. at 19.

[5] The Court granted summary judgment only as to certain claims for certain groups within the Property Class. The Court dismissed the trespass claims for the Unoiled Properties, because the Court held that the group of properties did not suffer physical oiling and could not state a trespass claim. The Court similarly granted Plains' motion for summary judgment as to negligent interference with prospective economic advantage, violation of the UCL, and a permanent injunction, following Plaintiffs' concessions on these claims. *Id*. at 16.

well, and defeated Plains' effort to certify the resulting trial plan order for interlocutory appeal. Dkts. 911, 928.

### F.   Trial Preparation

This case was originally set to go to trial in September of 2020. The parties had prepared the case for trial, exchanging witness lists, a joint exhibit list with 4,705 entries, jury instructions, deposition designations and counter-designations, and contentions of law and fact. The parties also fully briefed 16 motions in limine and, as noted above, submitted multiple briefs regarding the trial plan.

The trial was postponed because of the COVID pandemic and was then re-set for June 2, 2022. This Court subsequently ruled on all 16 motions in limine and numerous other motions, including motions to amend the witness and exhibit lists, motions to submit additional supplemental expert reports and to strike other reports. *See, e.g.,* Dkts. 891-900 (orders on motions in limine), Dkts. 857, 867 (order on amending witness list and exhibits for trial). As noted above, the Court also adopted Plaintiffs' proposed trial plan over Plains' opposition. Dkt. 911.

In sum, this case was fully mature at the time the parties reached the proposed Settlement. Plaintiffs were prepared to try the case, and the case was ready for trial. As a result of the many years of litigation, there should be no doubt that Plaintiffs – and the Court – are fully equipped to evaluate the strengths and weaknesses of the case and the adequacy of the proposed Settlement.

### G.   Mediation and Settlement

The proposed Settlement is the product of arm's length negotiations. The parties and their counsel participated in three formal full-day mediations over the course of three years with Judge Daniel Weinstein (Ret.) and Robert Meyer of JAMS, in addition to informal negotiations and innumerable telephone conferences over this same time. The first two mediations were in the fall of 2019 and the fall of 2020, respectively. The third mediation took place on March 22, 2022, after which the parties still had not reached agreement. On April 13, 2022, the mediators

submitted a so-called mediator's proposal that both parties ultimately accepted. After reaching an agreement in principle, the parties worked diligently to draft the Settlement Agreement, notices, and other settlement exhibits, and to select the proposed Settlement Administrator. Nelson Decl., ¶ 5. Following preliminary approval, Plaintiffs worked with the Administrator to execute the notice plan, and prepared the Plans of Distribution and associated claims documents. *Id.*

## III.   SUMMARY OF SETTLEMENT TERMS

Under the proposed Settlement, Plains will pay $184 million to the Fisher Class. The Fisher Class Settlement Amount, together with interest earned thereon, will constitute the Fisher Class Common Fund. Separately, Plains will pay $46 million to the Property Class. The Property Class Settlement Amount, together with interest thereon, will constitute the Property Class Common Fund. The total combined value of the two Funds is $230 million. No portion of the combined $230 million will revert to Defendants. After deduction of notice-related costs and any Court-approved award of attorneys' fees, reimbursement of litigation expenses, and service awards to Class Representatives, all of the remaining monies will be distributed to the Class members in accordance with Plaintiffs' proposed Plans of Distribution, which were filed with the Court on June 27, 2022. Dkt. 951. Alongside this motion, Plaintiffs have filed a separate motion for approval of the Plans of Distribution.

## IV.   ARGUMENT

### A.   The proposed Settlement is fair, reasonable, and adequate.

A court may approve the parties' settlement after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23 sets out the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These include whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arms-

8

length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[6] The proposed Settlement readily satisfies these criteria.

### 1. Plaintiffs and Class Counsel have vigorously represented the Classes.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis includes "the nature and amount of discovery" undertaken in the case. Fed. R. Civ. P. 23(e), 2018 adv. comm. note; *see also* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:49 (5th ed. Dec. 2021 update) ("*Newberg*").

At the outset, the Rule 23(e)(2)(A) "analysis is redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (Curiel, J.) (quotes omitted). Because the Court has already appointed Class Representatives and Class Counsel (Dkts. 257, 454, 577), "the adequacy factor under Rule 23(e)(2)(A) is also met." *Id.*

The Court's prior findings remains true, and this factor is easily satisfied even if it is evaluated anew. As detailed in § III, *supra*, Class Counsel aggressively pursued fact and expert discovery, obtained and repeatedly defended class certification, defeated summary judgment motions, and prevailed on a hotly-contested trial plan. *See Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, 2019 WL 8647819, at *6 (C.D. Cal. Nov. 4, 2019); *Hefler v. Wells Fargo & Co.*, 2018

---

[6] The Rule substantively tracks the Ninth Circuit's test for evaluating a settlement's fairness. *Loomis v. Slendertone Distrib., Inc.*, 2021 WL 873340, at *4 n.4 (S.D. Cal. Mar. 9, 2021). Plaintiffs' analysis accounts for the Ninth Circuit's factors and discusses them where applicable. Those factors are: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (citation omitted).

WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (class counsel "vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation").

The Class Representatives were also actively engaged in the case—each produced numerous documents, sat for a deposition, prepared declarations, and regularly communicated with Class Counsel up to and including evaluating and approving the proposed Settlement. Nelson Decl., ¶ 14, 35, Exs. 3-16.

### 2.    The Settlement is the result of arm's length negotiations.

The Court must also consider whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This "procedural concern[]" requires the Court to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note. There is "no better evidence" of "a truly adversarial bargaining process . . . than the presence of a neutral third party mediator." *Newberg*, *supra*, § 13:50.

Here, the parties engaged in vigorous and contested settlement negotiations with the aid of Hon. Daniel Weinstein (Ret.) and Robert A. Meyer, Esq., both "neutral and experienced mediators." *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 4260712, at *6 (S.D. Cal. July 24, 2020). The mediation efforts spanned three years, punctuated by three all-day mediation sessions. With Judge Weinstein and Mr. Meyer's assistance, the parties separately negotiated the Fisher Class Settlement Amount and the Property Class Settlement Amount, and were only able to agree when the mediators finally issued their own "mediators' proposal" as to each Class to resolve the case. Nelson Decl., ¶ 5.

Nor does the Agreement contain any signs of collusion. *See generally In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Class Counsel has applied for an award of attorneys' fees of 32 percent of both Common Funds. This award will be "separate from the approval of the Settlement, and neither

[Plaintiffs nor Class Counsel] may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019). In addition, there is no "clear sailing" arrangement whereby Plains has agreed in advance not to oppose Class Counsel's request for fees. Finally, no portion of the Common Funds will revert to Defendants or their insurers.

In summary, this Settlement is the result of strenuous, arm's length settlement negotiations informed by nearly seven years of hard-fought litigation, and the Settlement was finally reached on the eve of trial.

### 3.    The Settlement relief is outstanding.

The Court must ensure "the relief provided for the class is adequate," taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed distribution plan, including the claims process; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement made in connection with the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). These factors overwhelmingly support preliminary approval.

#### a.    The Settlement relief outweighs the costs, risks, and delay of trial and appeal.

Rule 23(e)(2)(C)(i) requires that the Court "evaluate the adequacy of the settlement in light of the case's risks." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 2019 WL 13020734, at *5 (N.D. Cal. May 14, 2019). This requires weighing "[t]he relief that the settlement is expected to provide" against "the strength of the plaintiffs' case [and] the risk, expense, complexity, and likely duration of further litigation." *Id.* (internal cites and quotes omitted).

Here, the $46 million Property Class settlement represents over half of maximum compensatory damages, and the $184 million Fisher Class settlement is over 90 percent of the claimed damages through 2017, and approximately 36% of

its damages through 2020.[7] Dkt. 929-2, Ex. B at p.9, ¶ 19.[8] In light of the myriad challenges and years of delay the Classes would have each faced in obtaining their maximum claimed damages – essentially requiring them to run the table on complex issues of liability, injury, damages, and class certification at trial and all the way through appeal – the Settlement represents an exceptional result for both Classes. *Cf. In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (recovery of "roughly one-sixth of the potential recovery" was not unfair or inadequate in light of "the difficulties in proving the case"); *In re Critical Path, Inc.*, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002) (8.75% of damages); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020) (14% of damages).

These recoveries are all the more impressive when weighed against the serious risks of ongoing litigation. Plains' negligence and punitive damage exposure was hotly contested and turned on technical issues regarding Plains' integrity management of its pipeline and its handling of the spill. Plaintiffs, through their experts, contended that Plains should have known about the pipeline's corrosion years before it ruptured, including through inspections performed in 2007 and 2012. However, in the view of Plains and its experts, Plains acted reasonably by performing in-line inspections and repairs.

As important, Plains also submitted expert opinions that the spill volume was a fraction of what Plaintiffs' asserted. If credited, those opinions could have harmed the liability case and substantially limited the scope of damages for both Classes.

In addition, Plains intended to continue its attack on class certification. In the weeks prior to the parties reaching this Settlement, Plains previewed its requests for

---

[7] In April 2022, just before reaching the Settlement, the damages period was extended to 2020 when the Court denied Plains' motion to strike Dr. Rupert's supplemental report regarding damages from 2018-2020. Dkt. 929 at 5-6; Dkt. 937.

[8] Even with fees deducted, the Property Class recovers 35% of its damages, and the Fisher Class recovers 65% of damages through 2017, or 25% through 2020.

re-depositions of Class Representatives and Plaintiffs' experts. Plains also sought to renew *Daubert* motions, and to pursue renewed decertification motions, as well as a request to delay the trial by another six months. Dkt. 939.

Even if Plains lost on its efforts to defeat the case outright (through decertification or a defense verdict on liability), it was prepared to aggressively challenge Plaintiffs' damages models, as evidenced by the many summary judgment and *Daubert* motions referenced above. Thus, Plains' expert contended that even if the Fisher Class won on liability, its *maximum* damages were $71.3 million. Dkt. 872-11 at 9-10. The $184 million settlement far exceeds that amount. For the Property Class, Plains argued against any and all damages based on alleged ongoing use of beaches. Given that Plaintiffs may have secured only a partial victory at trial – liability with less than desired damages – the Settlement value is especially impressive. *Cf. Signet*, 2020 WL 4196468, at *12 ("Defendants' experts contend that, even if Lead Plaintiff successfully established liability on all claims, damages would be no more than $130 million—an amount that is substantially less than the proposed Settlement.").

Had Plaintiffs secured a *complete* victory at trial (both on liability and damages), Defendants undoubtedly would have engaged in "vigorous post-trial motion practices…and likely appeals to the Ninth Circuit—delaying any recovery for years." *Baker*, 2020 WL 4260712, at *7. Plains has arguably preserved all of its myriad arguments for appeal, which would therefore likely include a broad attack on every aspect of this lengthy litigation. Of course, Class Counsel were prepared to defend their clients' case against each of these challenges, just as they have repeatedly done in the face of the dozen or more case-dispositive challenges to date. Nonetheless, risks remained, and significant and painful delays to recovery would have been inevitable.[9]

---

[9] This case could very well have ended up at the United States Supreme Court, adding additional years of delay. For example, Plains continued to argue that the

Finally, experienced counsel's support for the proposed Settlement also weighs in favor of final approval. *See Cheng Jiangchen*, 2019 WL 5173771, at *6 ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (citation omitted). This is especially true given that extensive discovery and motion practice allowed both sides to gain "a good understanding of the strengths and weaknesses of their respective cases," reinforcing "that the settlement's value is based on…adequate information." *Newberg*, *supra*, § 13:49. Here, Class Counsel strongly support the proposed Settlement. *See* Nelson Decl., ¶¶ 2-7; Farris Decl., ¶ 4; Noël Decl., ¶ 4; Audet Decl., ¶ 9.

In summary, the proposed Settlement offers impressive monetary relief and avoids the substantial risk and years-long delays required for a successful trial verdict and defense on appeal. This reality, and the potential risks outlined above, underscore the strength of the proposed Settlement.

### b.    Plaintiffs seek reasonable attorneys' fees and expenses.

The Court should also evaluate Class Counsel's "proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiffs have separately filed a motion in support of their requested fees and costs award. As explained in that motion, the requested fee is reasonable and represents a modest multiplier on Class Counsel's lodestar. The fee request is independent of this final approval motion, and payment to Class Counsel is made only once there is a grant of final settlement approval. Dkt. 944-1, Ex. A at pp.3, 10-11.

---

Court did not evaluate the number of class members who suffered injury, and could not do so on the basis of Plaintiffs' evidence. While the Ninth Circuit recently held that a court need not determine what percentage of class members suffered injury in order to certify a class, *see Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), the dissent in that case asserts that the circuits are split on this issue. The propriety of certification here could conceivably have led to Supreme Court review.

### c. No other agreements exist.

Finally, Plaintiffs must identify any agreements "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); *see* Fed. R. Civ. P. 23(e)(2)(C)(iv). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2), 2003 adv. comm. note.  Plaintiffs have not entered into any such agreements.

### 4. The Settlement will effectively distribute relief to the classes and treats class members equitably relative to each other.

The Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, the final Rule 23(e)(2) factor asks whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Both factors are readily met here.[10] The Settlement and accompanying Plans of Distribution provide for straightforward claims processes that minimize the burdens on claimants while ensuring that only harmed Class members recover. The payments to Verified Claimants (i.e., those whose claim forms establish Class membership) are anchored in the very damages models Class Counsel and Plaintiffs' experts developed over the course of years and were prepared to present at trial. The distributions are driven by awarding Class Members their proportional share of the loss as determined through these models, and are supplemented by modest "fixed share" payments meant to account for discrete issues unique to each Class, while also ensuring that all Verified Claimants receive meaningful payments

---

[10] The Plans are described in further detail in the concurrently filed Motion for Approval of Plaintiffs' Plans of Distribution. Approval of the Settlement Agreement is meant to be separate and distinct from the Court's approval of the Plans of Distribution as well as Class Counsel's request for attorneys' fees and costs. Dkt. 944-1, Ex. A at p.3. The purpose of this provision is to protect the Class and to help ensure that the Settlement becomes final and effective as soon as possible.

in exchange for releasing their claims against Defendants. Plans of distribution such as these are routinely approved by courts. *See, e.g., In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (finding a plan of distribution that provided each class member with a "fractional share" to be "cost-effective, simple, and fundamentally fair") (citation omitted). *See also In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp.2d 389, 404 (D.N.J. 2006) (approving pro rata distribution to claimants based on their direct purchases as "eminently reasonable and fair to the class members"); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *5 (S.D. Cal. Mar. 17, 2021) ("[I]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.") (citation omitted).

In addition to their distributions, the Court-appointed Class Representatives have requested service awards of $15,000 to compensate them for the time and effort they spent pursing the matter on behalf of the Class, including participating in discovery and settlement. Each of these Class Representatives sat for deposition, and each followed the case throughout this lengthy litigation and also reviewed and approved the proposed Settlement. Nelson Decl., ¶¶ 14, 35; *see also id.*, Exs. 3-16 (Class Representative declarations); Farris Decl., ¶ 25; Noël Decl., ¶ 19. Such service awards "are fairly typical in class action cases." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). *See also Illumina*, 2021 WL 1017295, at *8 (granting $25,000 service award); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (granting $25,000 service awards to each institutional investor plaintiff). The service awards do not raise any equitable concerns about the Settlement itself. *Fleming v. Impax Labs. Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (service awards "are not per se unreasonable" and "this factor weighs in favor of preliminary approval"); *see Loomis*, 2021 WL 873340, at *8 (granting final approval to settlement with service

16

award for lead plaintiff); *In re Extreme Networks Inc. Sec. Litig.*, 2019 WL
3290770, at *8 (N.D. Cal. Jul. 22, 2018) (same).

Finally, no settlement funds will revert to Defendants, a "[s]ignificant[]" fact
that further demonstrates the Settlement's fairness and effectiveness. *Hilsley v.
Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020).

**B.** **Plaintiffs have provided adequate notice under Rule 23(b)(3) and Rule 23(c)(2)(B)**

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions
of Rule 23(c)(2), and upon preliminary approval of the settlement, "[t]he court must
direct notice in a reasonable manner to all class members who would be bound by
the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) prescribes the "best notice
that is practicable under the circumstances, including individual notice to all
members who can be identified through reasonable effort." Fed. R. Civ. P.
23(c)(2)(B).

Here, the settlement notice program is based largely on the Court-approved
notice plans Class Counsel implemented following the certification of the Classes.
Accordingly, the notice program is reasonable for the same reasons. *See* Dkt. 710
(Order finding the Fisher Class Plan of Notice reasonable and approving same);
Dkt. 463 (Order finding the Property Class Plan of Notice reasonable and
approving same). The accompanying declaration by the Settlement Administrator
details compliance with the notice program. *See generally* Keough Decl.

The Notices included all the information required under Rule 23(c)(2)(B):
they informed Class Members of the nature of the action, the class definition, the
class claims, that a Class Member may enter an appearance through an attorney,
and the binding effect of final approval. Keough Decl., Exs. B-E. In addition, the
prior litigation class notices indicated that the Court will grant timely exclusion
requests, and the time and manner for requesting exclusion.

17

The notices were delivered in a manner that satisfies both Rule 23 and due process. It included direct notice to all known Settlement Class Members via U.S. Mail and email notice to the Fisher Class Members for whom addresses were available, and was supplemented by robust publication notice. Keogh Decl., ¶¶ 6-12 (direct notice), 13-18 (publication notice). The notices direct Class Members to the case website, where they can view the entire Settlement, the long-form Class Notice, the Plans of Distribution, and other key case documents, including the claim forms. The website also directs inquiries to a toll-free number where Class Members can get additional information and communicate directly with the Settlement Administrator. *Id.* ¶ 19.

Importantly, as a result of the prior Court-approved notice, Class members were afforded an opportunity to opt out of the Classes, so their due process rights have been protected. *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1305-06 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018). Class members who did not previously opt out remain members of their respective Class, and no further opt out opportunity is warranted. *Id.* (holding that a second opt-out period was not necessary to protect absent class members' due process rights, and permitting a second opt out would be contrary to the policy of encouraging settlement).

## C.   The Court already certified the Classes.

The Settlement resolves claims on behalf of the previously-certified Classes. *See* Dkts. 257, 454, 577; Settlement Article VII, 2. As a result, the Court "does not need to re-certify [the Class] for settlement purposes." *Newberg*, *supra*, § 13:18; *accord ODonnell v. Harris County*, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019). Because "the proposed settlement [does not] call[] for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted" (Fed. R. Civ. P. 23(e)(1), 2018 adv. comm. note; *ODonnell*, 2019 WL 4224040, at *7), the Court need not take any further action under Rule 23(e)(1). *See, e.g.*, *Hawkins v. Kroger Co.*, 2021 WL 2780647, at *2–3 (S.D. Cal. July 2,

2021) (granting preliminary approval to previously certified class); *ODonnell*, 2019 WL 4224040, at *7 (same). Even if the Court were to evaluate the issue anew, class certification remains appropriate for all the reasons set out in the Court's prior orders. *See* § II.C., *supra*.

## V.   **CONCLUSION**

For all the reasons stated above, the Settlement Agreement resolves this litigation by providing outstanding monetary relief for Class Members. All of the factors and considerations set forth in Rule 23 for final approval have been met. Plaintiffs respectfully request that the Court grant their motion for final approval of the proposed Settlement.

Dated:  July 29, 2022                    Respectfully submitted,


By:   _____*/s/Robert J. Nelson*_____

Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956.1000
Facsimile: (415) 956.1008

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Lynn Lincoln Sarko (*Pro Hac Vice*)
Gretchen Freeman Cappio (*Pro Hac Vice*)
Michael D. Woerner (*Pro Hac Vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Raymond Farrow (*Pro Hac Vice*)
Daniel Mensher (*Pro Hac Vice*)
Laura R. Gerber (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*

MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:15-CV-04113-PSG