1  Robert J. Nelson (CSB No. 132797)
   rnelson@lchb.com
2  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
3  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
4  Facsimile:  (415) 956-1008

5  Juli E. Farris (CSB No. 141716)
   jfarris@kellerrohrback.com
6  KELLER ROHRBACK L.L.P.
   801 Garden Street, Suite 301
7  Santa Barbara, CA 93101
   Telephone: (805) 456-1496
8  Facsimile: (805) 456-1497

9  *Class Counsel*

10 A. Barry Cappello (CSB No. 037835)
   abc@cappellonoel.com
11 CAPPELLO & NOËL LLP
   831 State Street
12 Santa Barbara, CA 93101-3227
   Telephone: (805)564-2444
13 Facsimile: (805)965-5950

14 *Lead Trial Counsel*
   *(additional counsel listed at signature)*
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19

20 KEITH ANDREWS, an individual,        Case No. 2:15-cv-04113-PSG-JEMx
   et al.,
21                                      **PLAINTIFFS' NOTICE OF**
              Plaintiffs,               **MOTION AND MOTION FOR**
22                                      **ATTORNEYS' FEES, EXPENSES,**
       v.                               **AND SERVICE AWARDS UNDER**
23                                      **RULE 23(H)**

24 PLAINS ALL AMERICAN
   PIPELINE, L.P., a Delaware limited   Date:       September 16, 2021
25 partnership, et al.,                 Time:       1:30 p.m.
                                        Location:   Courtroom 6A
26            Defendants.               Judge:      Hon. Philip S. Gutierriez

27

28

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Philip S. Gutierrez in Courtroom 6A of the above-entitled court, located at 350 West First Street, Los Angeles, CA 90012-4565, Plaintiffs will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order:

A.   Approving the request for attorneys' fees to Class Counsel in the amount of $73,600,000, or 32% of each of the Settlement Funds;

B.   Approve reimbursement of litigation expenses of $6,085,336; and

C.   Approve service awards of $15,000 to compensate ten Fisher Class Representatives and four Real Property Class Representatives in the Consolidated Second Amended Complaint (Dkt. 31) and Settlement Agreement (Dkt. 944-1, Exhibit 1, Art. II.18 and 28), for a total of $210,000.

This motion is based on the attached supporting memorandum; the accompanying declarations and exhibits; the pleadings, papers, and records on file in this action, including those submitted in support of Plaintiffs' Motion for Final Approval; any further papers filed in support of this motion; and arguments of counsel.

Dated:  July 29, 2022                          Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   _s/Robert J. Nelson_

Robert J. Nelson (CSB No. 132797)
rnelson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor

2433864.14

1

San Francisco, CA  94111-3339

2

Telephone:   (415)956-1000

Facsimile:    (415) 956-1008

3

4

Lynn Lincoln Sarko (*Pro Hac Vice*)

Gretchen Freeman Cappio (*Pro Hac Vice*)

5

Michael D. Woerner (*Pro Hac Vice*)

6

Raymond Farrow (*Pro Hac Vice*)

Daniel Mensher (*Pro Hac Vice*)

7

Laura R. Gerber (*Pro Hac Vice*)

8

KELLER ROHRBACK L.L.P.

1201 Third Ave, Suite 3200

9

Seattle, WA 98101

10

Telephone: (206) 623-1900

Facsimile: (206) 623-3384

11

12

*Class Counsel*

13

A. Barry Cappello (CSB No. 037835)

14

Leila J. Noël (CSB No. 114307)

Lawrence J. Conlan (CSB No. 221350)

15

David L. Cousineau (CSB No. 298801)

16

CAPPELLO & NOËL LLP

831 State Street

17

Santa Barbara, CA 93101-3227

18

Telephone: (805) 564-2444

Facsimile: (805) 965-5950

19

20

*Lead Trial Counsel*

21

William M. Audet (CSB No. 117456)

22

Ling Y. Kuang (CSB No. 296873)

AUDET & PARTNERS, LLP

23

711 Van Ness Avenue, Suite 500

24

San Francisco, CA 94102

Telephone: (415) 568-2555

25

Facsimile: (415) 568-2556

26

27

*Class Counsel*

28

2433864.14

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

1   Robert J. Nelson (CSB No. 132797)
    rnelson@lchb.com
2   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:  (415) 956-1008

5   Juli E. Farris (CSB No. 141716)
    jfarris@kellerrohrback.com
6   KELLER ROHRBACK L.L.P.
    801 Garden Street, Suite 301
7   Santa Barbara, CA 93101
    Telephone: (805) 456-1496
8   Facsimile: (805) 456-1497

9   *Class Counsel*

10  A. Barry Cappello (CSB No. 037835)
    abc@cappellonoel.com
11  CAPPELLO & NOËL LLP
    831 State Street
12  Santa Barbara, CA 93101-3227
    Telephone: (805)564-2444
13  Facsimile: (805)965-5950

14  *Lead Trial Counsel*
    *(additional counsel listed at signature)*

15

16                  **UNITED STATES DISTRICT COURT**

17                  **CENTRAL DISTRICT OF CALIFORNIA**

18

19

20  KEITH ANDREWS, an individual,       Case No. 2:15-cv-04113-PSG-JEMx
    et al.,
21                                       **PLAINTIFFS' MEMORANDUM OF**
                    Plaintiffs,          **POINTS AND AUTHORITIES IN**
22                                       **SUPPORT OF MOTION FOR**
          v.                             **ATTORNEYS' FEES, EXPENSES,**
23                                       **AND SERVICE AWARDS UNDER**
    PLAINS ALL AMERICAN                  **RULE 23(H)**
24  PIPELINE, L.P., a Delaware limited
    partnership, et al.,                 Date:        September 16, 2022
25                                       Time:        1:30 p.m.
                    Defendants.          Judge:       Hon. Philip S. Gutierrez
26                                       Courtroom:   6A
27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ..................................................................................... 3

III.  ARGUMENT ......................................................................................... 3

      A.    Class Counsel's Requested Fee is Fair and Reasonable ....................... 3

            1.    Class Counsel have obtained an exceptional result for the Class. ......................................................................................... 5

            2.    The Settlement resulted from Class Counsel's zealous representation in this extremely complex litigation. .................. 8

            3.    This was an extraordinarily risky case to litigate on contingency. ................................................................................ 10

            4.    Public benefits obtained beyond the immediate generation of a cash fund support the requested award ............................. 11

            5.    Class Counsel's requested fee percentage is in line with similar cases and standard contingency fee agreements. ......... 12

            6.    A lodestar cross-check confirms the requested fees are reasonable. .............................................................................. 14

      B.    Class Counsel's expenses are reasonable and appropriate. ............... 17

      C.    The requested Class Representative service awards are reasonable and well-deserved. ........................................................ 18

IV.   CONCLUSION .......................................................................................... 19

2433864.14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andrews et. al. v. Plains All American Pipeline, et. al.*,
Case No. 18-55850 (July 3, 2019) ..................................................11

*Andrews et. al. v. Plains All American Pipeline, et. al.*,
Case No. 19-80167 (July 27, 2020) ...................................................9

*Andrews et. al., v. Plains All American Pipeline, et. al*,
Case No. 18-80054 (June 27, 2018)...................................................9

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)............18

*Boyd v. Bank of Am. Corp.*,
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)......................................6

*Brown v. CVS Pharmacy, Inc.*,
2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ................................3, 17

*Calhoun v. Celadon Trucking Servs.*, No. 16-CV-1351 PSG (FFM),
2017 U.S. Dist. LEXIS 234899 (C.D. Cal. Nov. 13, 2017)................16

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019)......................................6

*Dickey v. Advanced Micro Devices, Inc.*,
2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .....................................15

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ..............................................14, 16

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2017 WL 4685536 (C.D. Cal. May 8, 2017) ........................1, 5, 12, 16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................................19

*Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012)........................................14

*Hale v. State Farm*,
No. 12-00660-DRH-SCW (S.D. Ill. Dec. 16, 2018)........................13

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ..............................10

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .................................9

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................10, 13

*In re Apple Inc. Device Performance Litig.*,
2021 WL 1022866 (N.D. Cal. Mar. 17, 2021),
*judgment entered*, 2021 WL 1702606 (N.D. Cal. Mar. 23, 2021)...........passim

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).....................................................3

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*In re Capacitors Antitrust Litig.*,
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .................................................... 14

4

*In re Cathode Ray Tube Antitrust Litig.*,
  2017 WL 11679811 (N.D. Cal. June 8, 2017) .................................................... 11

5

6

*In re Combustion Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997) .................................................................... 13

7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2013 WL 12387371 (N.D. Cal. Nov. 5, 2013),
  *report and recommendation adopted sub nom. In re Dynamic Random Access
  Memory Antitrust Litig.*,
  2014 WL 12879521 (N.D. Cal. June 27, 2014) .................................................... 5

8

9

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................................. 6, 10

10

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................. 8, 13

11

12

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) .............................................................. 6, 12

13

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
  2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ...................................................... 3

14

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ........................................ 12, 13, 15

15

16

*In re Linerboard Antitrust Litig.*,
  2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended,*
  2004 WL 1240775 (E.D. Pa. June 4, 2004) ........................................................ 14

17

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .................................................... 13

18

19

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd,*
  768 F. App'x 651 (9th Cir. 2019) .............................................................. 14, 18

20

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 5

21

22

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  959 F.3d 922 (9th Cir. 2020) ............................................................................ 4, 13

23

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................... 8, 11

24

*In re PG&E Corporation*,
  No. 19-30088 (N.D. Bankr. Cal. Aug. 31, 2020) ................................................ 16

25

26

*In re Relafen Antitrust Litig.*,
  No. 01-12239 (D. Mass. Apr. 9, 2004) ............................................................... 13

27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ........................................ 8, 13, 15

28

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Tricor Direct Purchaser Antitrust Litig.*,
No. 05-340-SLR (D. Del. Apr. 23, 2009) ...................................................13

*In re Vitamins Antitrust Litig.*,
2001 WL 34312839 (D.D.C. July 16, 2001) .............................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..........................................11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................4, 10

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) ..............................................18

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*,
845 F. App'x 563 (9th Cir. 2021) .............................................................5

*In re: Syngenta AG MIR 162 Corn Litig.*,
357 F.Supp.3d 1094 (D. Kan. 2018) ........................................................12

*In re: Urethane Antitrust Litig.*,
2016 WL 4060156 (D. Kan. July 29, 2016) .........................................12, 14

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016) ...............................................................................4

*Lopez v. Youngblood*,
2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ............................................7

*Richardson v. THD At-Home Servs., Inc.*,
2016 WL 1366952 (E.D. Cal. Apr. 6, 2016) ...............................................6

*Rodman v. Safeway, Inc.*,
2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ............................................5

*Rodriguez v. W. Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009) ...................................................................18

*Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*,
2021 WL 4786889 (C.D. Cal. Aug. 24, 2021) ...........................................16

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ....................................................................16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................3, 17, 19

*Syed v. M-I, L.L.C.*,
2017 WL 3190341 (E.D. Cal. July 26, 2017) .............................................6

*Tait v. BSH Home Appliances Corp.*,
2015 WL 4537463 (C.D. Cal. July 27, 2015) .............................................4

*Van Vraken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ..........................................................18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...........................................................passim

iv

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Willner v. Manpower Inc.*,
    No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015)................17

**Statutes**

5

Cal. Penal Code § 1202.4 .......................................................................12

6

**Rules**

7

Fed. R. Civ. P. 23(h) .............................................................................17

**Treatises**

8

William B. Rubenstein,
    *Newberg on Class Actions* (5th ed. 2020).............................................4

9

**Other Authorities**

10
11

Theodore Eisenberg, Geoffrey Miller & Roy Germano,
    *Attorney's Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937 (2017) ....16

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2433864.14

## I.   INTRODUCTION

After seven years of hard-fought and high-risk litigation, Class Counsel negotiated a Settlement of $184 million for the Fisher Class and $46 million for the Property Class, for a total Settlement amount of $230 million.[1]

Class Counsel now move the Court for an attorneys' fees award of 32% of the Settlement Funds, or $73.6 million. This request "falls within the 30 to 33 percent range allowed in common fund cases," *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *7 (C.D. Cal. May 8, 2017) (Gutierrez, J.), and is strongly supported by each of the factors to be considered under Ninth Circuit law.[2]

*First*, the Settlement represents an outstanding result for the Classes. The settlement amounts represent large percentages of total classwide damages, and should result in meaningful payments to all Class Members. *Second*, the result is even more impressive in light of the complexity, novelty, and scale of this litigation. The Settlement was reached on the eve of trial, and was preceded by the production and review of over a million pages of discovery, 100 depositions, 52 reports submitted by 27 experts covering a broad range of highly technical subject matter, and a seemingly endless series of dispositive or case-altering motions by Plains related to expert opinions, class certification, summary judgment, and the trial plan.

*Third*, Class Counsel pursued this case over seven years purely on contingency and thus endured substantial risk. Indeed, of the four classes initially pled, one was not certified, and another was certified but reversed on appeal. Even

---

[1] All capitalized terms used herein have the meaning set forth in the Class Action Settlement Agreement ("Settlement Agreement" or "Settlement") (Dkt. 944-1, Exhibit 1), unless otherwise indicated.

[2] *See generally* the accompanying Declaration of Brian Fitzpatrick In Support of Class Counsel's Motion for Attorneys' Fees.  Professor Fitzpatrick, a scholar at Vanderbilt Law School, has provided a comprehensive analysis of attorneys' fees in class actions, as well as the factors courts consider when evaluating the propriety of a fee request, and opines that Class Counsel's fee request here is fair and reasonable.

as to the two Classes now being settled, class certification was in question until the trial plan dispute was resolved in January 2022, and Plains would have continued its challenge through trial and appeal. Thus, unlike cases that settle shortly after class certification, here, the substantial risks of the case lasted the entirety of the seven years of litigation, during which time Class Counsel invested tens of millions of dollars of time and over $6 million in out-of-pocket costs. This was an extraordinarily risky case to pursue on contingency, and a higher percentage fee than the Ninth Circuit's benchmark is well justified as a result.

*Fourth*, the Settlement robustly supplements the public prosecutorial efforts of the California State Attorney General and the Santa Barbara District Attorney arising out of Plains' 2015 spill. This civil prosecution and Settlement will help ensure that many of the victims of Plains' criminal misconduct are fairly compensated, and that there is greater accountability for oil and pipeline companies entrusted with work in environmentally sensitive areas.

*Fifth*, the requested 32% fee request compares well with similar settlements, meaning, those with a similar litigation history and complexity, as well as settlement size. When cases are as heavily litigated as this one – not to mention yielding this successful of a result – courts do not hesitate to award fees up to one-third of the common fund.

*Sixth*, and finally, the requested 32% fee results in a multiplier of only 1.26, which is at the lower end of the range considered presumptively reasonable in this Circuit, and is far lower than multipliers in comparably-sized "megafund" settlements. In sum, given the quality of the Settlement and the substantial risks undertaken, an award of 32 percent of the Funds is appropriate.

In addition to attorneys' fees, Class Counsel also respectfully request that the Court award reimbursement of $6,085,336 in litigation expenses, all of which were reasonably incurred and necessary for the prosecution of the case. § III.B. Finally, the Class Representatives each seek $15,000 service awards in recognition of their

time and effort on behalf of the Classes. § III.C.

## II.     BACKGROUND

Plaintiffs have also detailed the extensive history of this litigation in their accompanying motion for final approval and the concurrently-filed Nelson Declaration. In the interest of efficiency, Class Counsel will not repeat that history here, but rather incorporate it by reference. In sum, this litigation was hotly contested over a seven-year period, involved countless complex and highly technical factual disputes as well as cutting-edge legal arguments, and only settled on the eve of trial.

## III.    ARGUMENT

### A.     Class Counsel's Requested Fee is Fair and Reasonable

Attorneys' fee awards in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and costs. The Court's role is to "'carefully assess' the reasonableness of the fee award." *Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *5 (C.D. Cal. Apr. 24, 2017) (Gutierrez, J.) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011). However, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). The percentage-of-the-fund method confers "significant benefits…including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the

highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *see* 5 William B. Rubenstein, *Newberg on Class Actions* §§ 15:62, 15:65 (5th ed. 2020).[3] The key purpose of the common fund doctrine is to share the burden of a party's litigation expenses among those who benefit from them. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Under the percentage method, courts often begin with a benchmark of 25% of the fund. *Vizcaino*, 290 F.3d at 1048. While the Ninth Circuit has cautioned that this benchmark "may be of little assistance" in so-called megafund cases, i.e., settlements in excess of $100 million, it has also repeatedly *rejected* a "sliding-scale" requiring fee percentages to decline as the size of the fund increases. *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 931, 933 (9th Cir. 2020) (citation omitted). Rather, in all cases, including megafund cases, the selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Courts may appropriately consider the benchmark as part of this evaluation. *See*, *e.g.*, *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021), *judgment entered,* 2021 WL 1702606 (N.D. Cal. Mar. 23, 2021) (starting with 25% benchmark in $310 million settlement).

In selecting an appropriate percentage, above or below the benchmark, courts are to consider the factors the Ninth Circuit has established, including:  (1) the results achieved by class counsel; (2) the complexity of the case and skill required; (3) the risk of litigation; (4) the benefits beyond the immediate generation of a cash fund; (5) awards made in similar cases; (6) the contingent nature of the

---

[3] The common fund approach is also endorsed by California law, a relevant consideration given that the Classes' claims are brought under this state's law. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) (endorsing percentage of the fund approach and affirming an award equal to one-third of the common fund); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

- 4 -

representation and financial burden carried by counsel; and (7) a lodestar cross-check. *Flo & Eddie*, 2017 WL 4685536, at *7 (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)); *Vizcaino*, 290 F.3d at 1048-52.

As detailed below, each of these factors strongly supports Class Counsel's 32% fee request. *See gene*rally Declaration of Brian Fitzpatrick in Support of Class Counsel's Motion for Fee Award ("Fitzpatrick Decl.), ¶¶ 6-36. Additionally, and as demonstrated by the lodestar cross-check, the requested award would not constitute a windfall to Class Counsel. The requested fee would constitute an extremely modest lodestar-multiplier of 1.26, and that modest multiplier will continue to decrease during the administration of the Settlement.

### 1. Class Counsel have obtained an exceptional result for the Class.

The benefit Class Counsel secured for the Classes is the single most important factor in evaluating the reasonableness of a requested fee. *Bluetooth*, 654 F.3d at 942; *Omnivision Techs.*, 559 F. Supp. 2d at 1046. Courts recognize that "the law appropriately provides for some upward adjustment [from the 25 percent benchmark] where the results achieved are significantly better than the norm." *Rodman v. Safeway, Inc.*, 2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 22, 2018).

That is precisely the case here. Whereas settlements are often approved where only small percentages of the damages are recovered,[4] here, Class Counsel secured very large shares of the Classes' maximum potential compensatory

---

[4] *See Omnivision Techs.*, 559 F. Supp. 2d at 1046 (settlement valued at nine percent of possible damages, more than triple the average recovery in securities class action settlements); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 522 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) ($240 million common fund compensating 6.9 to 9.6 percent of Plaintiffs' estimated losses); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12387371, at *16 (N.D. Cal. Nov. 5, 2013), *report and recommendation adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, 2014 WL 12879521 (N.D. Cal. June 27, 2014) (settlement fund representing 12 percent of the defendants' overcharges). *See also* Fitzpatrick Decl., ¶ 26.

damages (*i.e.*, assuming a *complete* victory at trial and appeal). The $46 million
Property Class Settlement represents over half of the maximum classwide
compensatory damages. The $184 million Fisher Class Settlement is over 90% of
the claimed damages through 2017, and 36% of damages through 2020.[5] Dkt. 929-
2, Ex. B at 9, ¶ 19.[6] Moreover, as detailed in the accompanying motions in support
of final settlement approval and the plans of distribution, these classwide settlement
amounts will result in meaningful payments to all members of each of the Classes.

Courts have repeatedly approved percentage fees at or near one-third when
counsel achieved similarly strong results. *See In re Heritage Bond Litig. ("Heritage
I")*, 2005 WL 1594389 (C.D. Cal. June 10, 2005) (awarding 33.33% of $27.8
million in fees to counsel that recovered 36% of the class's total net loss); *Boyd v.
Bank of Am. Corp.*, 2014 WL 6473804, at *9-12 (C.D. Cal. Nov. 18, 2014)
(awarding one-third in fees when the common fund represented 36% of damages);
*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1021, 1023 (E.D. Cal. 2019)
(awarding 33.3% of a $40 million common fund that represented 48% of damages);
*Syed v. M-I, L.L.C.*, 2017 WL 3190341, at *4, *6-8 (E.D. Cal. July 26, 2017)
(awarding one-third in fees where the common fund represented 35% of
damages); *Richardson v. THD At-Home Servs., Inc.*, 2016 WL 1366952, at *12
(E.D. Cal. Apr. 6, 2016) (awarding 30% of the gross fund amount as attorneys' fees
where per-class member damages awards were "substantial," averaging over
$5,000); *cf. In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y.
2009) (awarding 33.33% of $510.3 million when class members were estimated to
recover only about 2% of their damages).

---

[5] In April 2022, just before reaching the Settlement, the damages period was
extended to 2020 when the Court denied Plains' motion to strike Dr. Rupert's
supplemental report regarding damages from 2018-2020. Dkt. 929 at 5-6; Dkt. 937.
[6] Even with fees deducted, the Property Class recovers 35% of its damages, and the
Fisher Class recovers 65% of damages through 2017, or 25% through 2020.

- 6 -

As these cases demonstrate, on the strength of the result alone, the Court would be well within its discretion to award the requested 32% fee. However, the request has even stronger support here because Class Counsel achieved these impressive results in the face of an extraordinarily difficult and challenging case. As detailed in section V.A.3. of Plaintiffs' Motion for Final Approval, achieving the maximum claimed damages would have required Plaintiffs to run the table on complex issues of liability, injury, damages, and class certification at trial and through appeal. Plains vigorously disputed the negligence case, the amount of oil spilled, where the oil went, the proper measure of damages for both Classes, and the propriety of class certification. A loss on any of these issues at trial in this Court or on appeal might have erased the Classes' recoveries altogether. Alternatively, the Classes may well have won on liability, only to have the jury award fewer damages than requested. For example, based on Plains' most charitable estimate of Fisher Class damages, the proposed Settlement is *two-and-a-half times* the Fisher Class's damages through 2017. *See* Dkt. 872-11 at 9-10 (Defendants' expert opining that the *maximum possible damages* for the Fisher Class is $71.3 million).

With the risks of continued litigation and appeal in mind, the Settlement is all the more impressive and worthy of a high percentage fee. *Vizcaino*, 290 F.3d at 1048 (affirming the district court's finding that counsel "achieved exceptional results for the class" despite "the absence of supporting precedents," in the face of difficult facts, and "against [Defendant]'s vigorous opposition throughout the litigation") (citation omitted); *Lopez v. Youngblood*, 2011 WL 10483569, at *6-7 (E.D. Cal. Sept. 2, 2011) (exceeding the benchmark where "[t]he authority upon which Plaintiffs were able to rely was relatively scant," but "[d]espite these obstacles, Plaintiffs' counsel succeeded in obtaining a favorable determination from this Court, and succeeded in reaching a mediated settlement"). *See* Fitzpatrick Decl., ¶¶ 27-30.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS CASE NO. 2:15-CV-04113-PSG-JEMX

**2.   The Settlement resulted from Class Counsel's zealous representation in this extremely complex litigation.**

Courts recognize that higher percentages are warranted where Class Counsel achieve a positive result in a complex case. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% fee "justified because of the complexity of the issues and the risks"); *In re Heritage Bond Litig. ("Heritage II")*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (same); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011) (awarding attorneys' fees of 30% of the $405 million settlement in a case "involving complex and difficult issues of fact and law").

As detailed in the accompanying Nelson Declaration, this case required an extraordinary degree of skill and experience to prosecute. Factually, it touched on numerous highly technical matters concerning oil transport and oil fate, pipeline integrity, spill volume, pipeline control room operations, fish biology, lost fish catch regression analyses, fisher industry accounting and lost profits, real estate mass appraisal, and lost rental value damages. Nelson Decl., at ¶¶ 11, 14, 15. Written discovery was extensive. The case involved the production of over 360,000 documents, totaling over 1.5 million pages and spanning the many technical topics outlined above. Class Counsel were also charged with comprehensively reviewing and understanding Plains' documents, which required substantial time by counsel and consultation with experts and consultants. *Id.* ¶ 11.

The case was expert heavy, with 27 disclosed experts producing 52 reports and sitting for 46 depositions, an extraordinary number by any measure. *Id.* ¶¶ 15, 16, 18. Counting both fact and expert discovery, the parties took over 100 depositions in this matter. *Id.* ¶ 18. Courts do not hesitate to award large percentage fees when Class Counsel take on such a significant litigation effort. *See Heritage II*, 2005 WL 1594403, at *7 (one-third fee where counsel had "reviewed approximately 1.1 million pages of documents produced by various defendants and

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS CASE NO. 2:15-CV-04113-PSG-JEMX

1    [had] taken thirty-four depositions”).

2          Legally, the certification of both classes was novel, which also supports a

3    higher percentage fee. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL

4    3960068, at *12 (N.D. Cal. Aug. 17, 2018) (awarding 27% of the $115 million

5    settlement where “class certification was not guaranteed, in part because Plaintiffs

6    had a scarcity of precedent to draw on”). While Class Counsel are confident in the

7    propriety of class treatment for both Classes, it is noteworthy that there is no direct

8    precedent for a property tort class or for a fisher lost profits class under California

9    law. Nelson Decl., ¶ 9.

10         Not surprisingly, then, class certification was hotly disputed over the course

11   of numerous motions. For the Property Class, Plains submitted three expert reports

12   opposing class certification, (Dkt. 430), moved to strike Plaintiffs’ two experts that

13   were key to certification (Dkts. 440, 556-1, 557-1), filed Rule 23(f) petitions to

14   overturn class certification,[7] and filed three motions to decertify the Class (Dkts.

15   555-1, 663, 874). Likewise, for the Fisher Class, Plaintiffs certified a highly unique

16   if not unprecedented lost-profit class, successfully amended the Fisher Class

17   definition to significantly broaden its scope (Dkt. 577), and defeated Plains’

18   petition to the Ninth Circuit,[8] three motions to decertify (Dkts. 566, 647, 874), and

19   numerous motions to exclude and strike the opinions of Plaintiffs’ experts (Dkts.

20   567, 568, 649, 929). In addition, Plains’ trial plan was itself a *de facto*

21   decertification effort that argued that each member of the Classes would have to

22   present individualized evidence. Dkt. 754 at 3-6. Class Counsel successfully

23   opposed all of these efforts, but only through painstaking and thorough expert

24   discovery and legal advocacy.

25

26   ───────────────

27   [7] *Andrews et. al., v. Plains All American Pipeline, et. al*, Case No. 18-80054, Dkt. 4
     (June 27, 2018).

28   [8] *Andrews et. al. v. Plains All American Pipeline, et. al.*, Case No. 19-80167, Dkt. 1
     (July 27, 2020).

PLAINTIFFS’ MOTION FOR ATTORNEYS’ FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

Finally, Class Counsel successfully handled this protracted litigation against a company with significant financial and legal resources, and represented by a prominent litigation firm. "In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014); *see, e.g.*, *In re Apple*, 2021 WL 1022866, at *6 ("Class Counsel faced a company with significant financial and legal resources," that "was represented in this case by two national, highly respected law firms, . . . which weighs in favor of a fee award."). This, too, favors Class Counsel's request.

### 3.  <u>This was an extraordinarily risky case to litigate on contingency.</u>

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *Heritage I*, 2005 WL 1594389, at *14; *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) ("An upward departure from the 25% benchmark figure is warranted in this case because an exceptional result was achieved and it was extremely risky for Class Counsel to pursue this case through seven years of litigation."). Courts properly reward attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all. *See Wash. Pub. Power*, 19 F.3d at 1299. This encourages the legal profession to assume such risks and promotes competent representation for plaintiffs who could not otherwise hire an attorney. *Id*.

It is difficult to overstate the risks Class Counsel bore to achieve this result. Class Counsel took the case purely on contingency, devoting tens of thousands of hours and advancing many millions of dollars in litigation expenses, all with no guarantee of reimbursement. Nelson Decl., ¶¶ 24, 30-33, Exs. 1 and 2. In so doing, Class Counsel "turn[ed] down opportunities to work on other cases to devote the

appropriate amount of time, resources, and energy necessary to responsibly handle this complex case." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017). This factor strongly supports Class Counsel's request.

This risk was of course increased by the length and novelty of the litigation, as summarized above and in section V.A.3. of Plaintiffs' Motion for Final Approval. Further underscoring that risk, of the four classes initially pled, Plaintiffs were unsuccessful in certifying one of them (the tourism class), and had the certification of another (the oil industry class) reversed on appeal. *Andrews et. al. v. Plains All American Pipeline, et. al.*, Case No. 18-55850, Dkt. 77-1 (July 3, 2019) (decertifying the Oil Industry subclass). Realistically, until the Court approved the trial plan in January 2022 (Dkt. 911), class certification even as to the settling Classes remained disputed. This means that substantial risk accompanied Class Counsel and their extraordinary investment in the case during virtually the entire seven-year litigation.

Given the outsized risks borne by Class Counsel for seven years in pursuing this novel and complex class action, the requested 32% fee is well justified. *Cf. In re Cathode Ray Tube Antitrust Litig.*, 2017 WL 11679811, at *2 (N.D. Cal. June 8, 2017) (awarding class counsel 30% of the $84.75 million settlement in "a contested and well-litigated case where a substantial jury award was by no means assured"); *Pac. Enters.*, 47 F.3d at 379 (33% of the common fund as attorneys' fees was justified because of the complexity of the issues and the risks). *See* Fitzpatrick Decl., ¶¶ 26-31.

### 4. Public benefits obtained beyond the immediate generation of a cash fund support the requested award.

Beyond the Class, there are significant benefits to the public flowing from this litigation. "Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance" (*Vizcaino*, 290 F.3d at 1049), and courts may "consider the

public benefits of counsel's efforts in determining the level of reasonable
compensation." *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408
(D.C. Cir. 1986). While this litigation brings monetary relief to the Class, it also
delivers important relief to all California residents by holding a multi-billion dollar
corporation accountable for its oil spill, thereby sharply raising the cost of causing
environmental harm in the California and putting similar corporations on notice.
Moreover, given that Plains was convicted of a crime, the Class Members had a
right to criminal restitution from the company (Cal. Penal Code § 1202.4) – a
function now served in one fell swoop for thousands of Plains' victims through this
Settlement. This public benefit provides further support for the requested 32% fee
award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1049 ("by clarifying the law of temporary
worker classification," "many workers…received the benefits associated with full
time employment."); *Bebchick*, 805 F.2d at 408 (placing significant weight on the
public benefit of persuading the court that defendant had set transit fares
unreasonably high).

### 5.     Class Counsel's requested fee percentage is in line with similar cases and standard contingency fee agreements.

A court should also consider fee awards from similar cases. *Vizcaino*, 290
F.3d at 1049-50. This Court has recognized that a requested percentage that "falls
within the 30 to 33 percent range allowed in common fund cases" generally favors
the award. *Flo & Eddie*, 2017 WL 4685536, at *7 (citing numerous cases granting
fee awards above the 25 percent benchmark); *see also In re Lidoderm Antitrust
Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) ("[A] fee award of one-
third is within the range of awards in this Circuit."). Further, courts frequently
award fees of about one-third in cases as large as (or even larger than) this one.[9]

---

[9] *In re: Syngenta AG MIR 162 Corn Litig.*, 357 F.Supp.3d 1094, 1110 (D. Kan.
2018) (33 1/3% of $1.5 billion); *In re: Urethane Antitrust Litig.*, 2016 WL
4060156, at *6 (D. Kan. July 29, 2016) (33.33% of $835 million); *In re Initial Pub.
Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (33% of $510

To the extent a court compares a proposed settlement to others, the comparison should take into account the complexity, duration, and amount of work that class counsel dedicated to the litigation. *See Heritage II*, 2005 WL 1594403, at *9; *Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."). The size of the fund is one of these circumstances but is not controlling; in fact, the Ninth Circuit has repeatedly rejected a sliding-scale rule regarding the size of a settlement fund in relation to the percentage of attorneys' fees that may be awarded. *Optical*, 959 F.3d at 933. *See also* Fitzpatrick Decl. ¶ 22.

Here, the requested 32% award falls within the range in this Circuit, and is also reasonable when compared to fees awarded in similar settlements – those of comparable settlement value, litigation history, and complexity. For example, in *Apollo*, the parties settled for $145 million after seven years of litigation. 2012 WL 1378677, at *3, *7. Considering that the case was heavily litigated, and that class counsel had "pursued the litigation despite great risk" and expended an "exceptional amount of time and money," the court awarded class counsel a 33.33% fee, which amounted to a 1.74 multiplier. *Id.* at *7.

*Apollo* is not an outlier. Courts regularly grant high percentage awards under similar circumstances. *See Lidoderm*, 2018 WL 4620695, at *1 (awarding 1/3 of $105 million, resulting in a 1.37 multiplier, after several years of risky litigation); *TFT-LCD*, 2011 WL 7575003, at *1 (30% of $405 million settlement after six years

---

million); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10, *14 (D.D.C. July 16, 2001) (34% of $359 million); *Hale v. State Farm*, No. 12-00660-DRH-SCW, 2018 WL 6606079, at *13 (S.D. Ill. Dec. 16, 2018) (33.33% of $250 million); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, 2009 WL 10744518, at *5 (D. Del. Apr. 23, 2009) (33% of $250 million); *In re Relafen Antitrust Litig.*, No. 01-12239, Dkt. 297 (D. Mass. Apr. 9, 2004) (33% of $175 million); *In re Combustion Inc.*, 968 F. Supp. 1116, 1142 (W.D. La. 1997) (36% of $127 million); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *6 (N.D. Cal. Dec. 10, 2020) (awarding "just under 30%" of the $113.45 million fund).

of litigation "involving complex and difficult issues of fact and law"); *Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 904, 907 (S.D. Ill. 2012) (33.33% of $105 million, equivalent to a 1.34 multiplier, in a seven-year long pollution case); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended,* 2004 WL 1240775 (E.D. Pa. June 4, 2004) (30% of $202.5 million settlement, a 2.66 multiplier, following six years of risky litigation). Professor Fitzpatrick likewise observes that fee percentages should be significantly higher for cases that settle further into the case. Fitzpatrick Decl., ¶¶ 25, 31.

Thus, the requested 32% award is consistent with fee awards in class action cases generally, and in cases of similar size and complexity. This factor clearly supports Class Counsel's request.

### 6.   <u>A lodestar cross-check confirms the requested fees are reasonable.</u>

Courts sometimes employ a "streamlined" lodestar analysis to "cross-check" the reasonableness of a requested award. *Vizcaino*, 290 F.3d at 1050. "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The aim is to do rough justice, not to achieve auditing perfection." *In re Apple*, 2021 WL 1022866, at *7 (citation omitted); *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (cross-check does not require "mathematical precision [or] bean-counting").

In the Ninth Circuit, a multiplier ranging from 1.0 to 4.0 is considered "presumptively acceptable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014); *Vizcaino*, 290 F.3d at 1051 n.6 (finding most multipliers range from 1.0–4.0). In cases that result in larger settlement funds, courts tend to accept an even higher range of multipliers. *Urethane*, 2016 WL 4060156, at *7; *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement).

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS CASE NO. 2:15-CV-04113-PSG-JEMX

Here, the lodestar cross-check reveals that the requested fee is eminently reasonable: the resulting multiplier is on the low end of the acceptable range, and is especially low when compared to other large and successful settlements. First, as detailed in the accompanying Nelson Declaration, Class Counsel devoted a substantial number of hours to this seven-year, complex class action case that settled on the eve of trial. Nelson Decl., ¶¶ 4, 30, Ex. 1. Class Counsel were careful and thorough, but also tried to coordinate their efforts to gain efficiencies. *Id.* at ¶¶ 23, 26. The considerable efforts were important to manage this large litigation: over a million pages of discovery, 100 depositions, 27 experts who served 52 reports, and the seemingly endless dispositive or case-altering motions related to expert opinions, class certification, summary judgment, and the trial plan. Indeed, given how heavily litigated the case was, and that it settled shortly before trial, the number of hours expended compares well to other large cases, and is evidence of Class Counsel's efforts at coordination. *Cf. In re Apple*, 2021 WL 1022866, at \*4-5, \*8 (approximately 70,000 hours were "reasonable and necessary" in three-year litigation that settled before summary judgment); *TFT-LCD*, 2011 WL 7575003, at \*1 (250,000 hours of work in complex antitrust class action).

Second, Class Counsel's rates are consistent with market rates in their area. Nelson Decl., ¶ 27; Farris Decl., ¶¶ 12-13, ; Noël Decl., ¶¶ 10-11; Audet Decl., ¶¶ 12-13; *see also Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at \*8 (N.D. Cal. Feb. 21, 2020) (approving rates between $275 and $1,000 for attorneys); *Lidoderm*, 2018 WL 4620695, at \*2 (approving rates between $300 and $1,050). Other courts have recently affirmed the rates of several of the Class Counsel firms. Nelson Decl., ¶ 28; Farris Decl., ¶¶ 12-13; Audet Decl. ¶ 12. *See also* Noel Decl. ¶¶ 12-13 (citing 2015 order approving rates). With some limited exceptions, Class Counsel's rates are largely in line with the *2021 Real Rate Report: The Industry's*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

*Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report").[10] The Real Rate Report provides Los Angeles[11] rates of $412 to $841 for litigation associates, $527 to $1,145 for partners, and a median rate of $255 for paralegals. Real Rate Report at 10, 26, 32.[12] Similarly, Class Counsel's rates align with Plains' counsel in this matter, per a 2020 bankruptcy court petition shows its 2019 billing rates for partners ranging from $860 to $1,421.32.[13]

The resulting lodestar of $58,525,944 yields a modest multiplier of 1.26 for work performed to date. That multiplier will only decrease as Class Counsel continue two work on the approval and implementation of this proposed Settlement. Nelson Decl., ¶ 32.[14]  Despite the quality of the result, and the substantial effort and resources Class Counsel devoted to achieving that result, the lodestar multiplier is on the very low end of the "presumptively acceptable range of 1.0-4.0" in this Circuit. *Dyer*, 303 F.R.D. at 334; *see also Vizcaino*, 290 F.3d at 1051 n.6 (approving 3.65 multiplier); *Flo & Eddie*, 2017 WL 4685536, at *9 (approving multiplier of up to 2.5); *Calhoun v. Celadon Trucking Servs.*, 2017 WL 11631979, at *8 (C.D. Cal. Nov. 13, 2017) (multiplier of 1.3 is "lower than the accepted range").

---

[10] *See* Noël Decl., ¶ 10, Ex. 3.

[11] The relevant community is that in which the Court sits. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

[12] While the Real Rate Report does not provide data for professional litigation support staff, courts in this district and others have approved rates ranging from $146 to $275. *See Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, 2021 WL 4786889, at *4 (C.D. Cal. Aug. 24, 2021).

[13] *See* Final Fee Application of Munger, Tolles & Olson LLP for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession for Certain Matters from January 29, 2019 through July 1, 2020, *In re PG&E Corporation*, No. 19-30088, Dkt. Nos. 8943, 8943-4 (N.D. Bankr. Cal. Aug. 31, 2020).

[14] Also, were Class Counsel to include in their application their time spent on behalf of the Classes in the criminal restitution proceedings – which as discussed in the Nelson Declaration inured to the benefit of the federal claims – the multiplier would be even smaller. Nelson Decl., ¶ 33.

1   Moreover, multipliers for large settlements like this one tend to fall on the

2   *high* end of this range. Fitzpatrick Decl., ¶ 35. The Eisenberg-Miller 2017 study, for

3   example, found that the average multiplier of 2.72 in cases between 2009-2013

4   valued at over $67.5 million. Theodore Eisenberg, Geoffrey Miller & Roy

5   Germano, *Attorney's Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937,

6   967 (2017). *See also In re Apple*, 2021 WL 1022866, at *8 (N.D. Cal. Mar. 17,

7   2021) (awarding $80,600,000, for a 2.232 multiplier).

8   Class Counsel's requested multiplier of 1.26 (at maximum) is therefore on

9   the very low end of the acceptable range, and significantly below the average

10   multiplier awarded in comparably valued cases. This factor strongly supports Class

11   Counsel's requested 32% fee, and demonstrates that such a fee will not result in a

12   "windfall" to Counsel.

13   **B.   Class Counsel's expenses are reasonable and appropriate.**

14   Class Counsel may "recover their reasonable expenses that would typically

15   be billed to paying clients in non-contingency matters." *Brown v. CVS Pharmacy,*

16   *Inc.*, 2017 WL 3494297, at *9 (C.D. Cal. Apr. 24, 2017) (citation omitted); *see also*

17   *Staton*, 327 F.3d at 974; Fed. R. Civ. P. 23(h). This includes expenses that are

18   reasonable, necessary, and directly related to the litigation. *See Willner v.*

19   *Manpower Inc.*, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015).

20   Here, the Class Counsel firm established a joint cost fund to manage the bulk

21   of the hard costs incurred, such as for depositions, transcripts, expert fees, and

22   mediation expenses. Farris Decl., ¶ 19. Combined with each firm's held costs, the

23   total costs for which Class Counsel seek reimbursement is $6,085,336. Nelson

24   Decl., ¶ 32. These costs benefited the Class and are commensurate with the stakes,

25   complexity, novelty, and intensity of this particular litigation. As indicated in the

26   accompanying declarations, Class Counsel expended costs on the typical categories,

27   *e.g.*, experts, depositions, document management systems, mediation fees, and

28   necessary travel, in addition to soft costs attributable to the litigation. Nelson Decl.,

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

¶ 31, Ex. 2; Farris Decl., ¶ 18, Ex. 3, Ex. 4; Noël Decl., ¶ 16, Ex. 4; Audet Decl., ¶ 15, Ex. C. While this lengthy and highly technical case was expensive to prosecute, "Class Counsel had a strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when the fee is contingent." *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

Especially given the risk and duration of the litigation, Class Counsel expended only that which they believed was necessary to advance the interests of the Classes. The requested costs are reasonable and should be reimbursed.

### C. The requested Class Representative service awards are reasonable and well-deserved.

In addition to any settlement distributions they receive, the Court-appointed Class Representatives request service awards of $15,000 to compensate them for the time and effort they spent pursuing this matter on behalf of their respective Class. Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See, e.g.*, *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Each of these Class Representatives searched for and provided facts used to compile the Second Amended Complaint, helped Class Counsel analyze claims, sat for deposition, followed the case throughout its seven-year trajectory, and reviewed and approved the proposed Settlement. They each have submitted declarations further explaining the time and effort they expended to benefit the class. Nelson Decl., Exs. 3-16.

Service awards of this size or even larger "are fairly typical in class action cases," and should be approved here. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Wells Fargo*, 445 F. Supp. 3d at 534 (granting $25,000 service awards to each institutional investor plaintiff); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd,* 768 F. App'x 651 (9th Cir. 2019)

(awarding each of the four class representatives $20,000 service awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting Ninth Circuit cases with service awards of $20,000 or higher). Moreover, a $15,000 service award to each of the fourteen Class Representatives amounts to a total payment $210,000, or less than 0.1 percent of the gross Settlement amount. This is well within the range the Ninth Circuit has found reasonable. *Staton*, 327 F.3d at 976-77.

## IV.     CONCLUSION

Class Counsel have dedicated their considerable time, skills, and resources to achieve an exceptional result in this complex, novel, and lengthy class action. Class Counsel respectfully submit that the Court approve their requested fee award of $73.6 million, representing 32% of the Funds and a modest 1.26 lodestar multiplier. Further, Class Counsel respectfully request that the Court approve reimbursement of $6,085,336 in expenses, which were reasonably incurred in the prosecution of this case, and service awards of $15,000 to each Class Representative.

Dated:  July 29, 2022                    Respectfully submitted,

By: _____*/s/ Robert J. Nelson*_____

Robert J. Nelson (CSB No. 132797)
Nimish Desai (CSB No. 244953)
Wilson M. Dunlavey (CSB No. 307719)
LIEFF CABRASER
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956.1000
Facsimile: (415) 956.1008

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

Juli E. Farris (CSB No. 141716)
Matthew J. Preusch (CSB No. 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497

Lynn Lincoln Sarko (*Pro Hac Vice*)
Gretchen Freeman Cappio (*Pro Hac Vice*)
Michael D. Woerner (*Pro Hac Vice*)
Raymond Farrow (*Pro Hac Vice*)
Daniel Mensher (*Pro Hac Vice*)
Laura R. Gerber (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

*Class Counsel*

A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
David L. Cousineau (CSB No. 298801)
CAPPELLO & NOËL LLP
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

*Lead Trial Counsel*

2433864.14

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS
CASE NO. 2:15-CV-04113-PSG-JEMX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Audet (CSB No. 117456)
Ling Y. Kuang (CSB No. 296873)
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

*Class Counsel*

- 21 -