Juli E. Farris (CSB No. 141716)
jfarris@kellerrohrback.com
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
*Class Counsel*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ANDREWS, an individual, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PLAINS ALL AMERICAN PIPELINE, L.P., a Delaware limited partnership, et al., <br><br> Defendants. | Case No. 2:15-cv-04113-PSG-JEMx <br><br> **DECLARATION OF JULI E. FARRIS IN SUPPORT OF MOTIONS FOR FINAL SETTLEMENT APPROVAL, PLANS OF DISTRIBUTION, AND ATTORNEYS' FEES AND COSTS** <br><br> Date:      September 16, 2022 <br> Time:      1:30 p.m. <br> Location: Courtroom 6A <br> Judge:     Hon. Philip S. Gutierrez |

I, Juli E. Farris, declare as follows:

1.     I am a partner in the law firm of Keller Rohrback L.L.P., and I am counsel of record for Plaintiffs and the certified classes in this matter. I make this Declaration of my own personal knowledge.

2.     I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Settlement, Motion for Approval of the Plans of Distribution, and Petition for Award of attorneys' fees, costs, and class representative service awards.

3.     Since being appointed Class Counsel in 2015 (Dkts. 257, 454, 577), my co-counsel and I have personally supervised and directed every aspect of the prosecution and resolution of this litigation on behalf of the Plaintiffs and Classes.

4.     It is my judgment that the proposed Settlement is outstanding, readily meets the Rule 23 "fair, reasonable, and adequate," standard, and is in the best interest of the Fisher and Property Classes. Further, the Plans of Distribution represent a fair and equitable allocation of the settlement proceeds, grounded in the class-wide damage models that Plaintiffs' experts developed over the course of many years and that Class Counsel were prepared to present at trial.

**Keller Rohrback's Assignment and Time-Keeping Practices**

5.     My firm litigated this case on a purely contingent basis, foregoing other work in order to handle this complex matter, with no guarantee of recovery. While Class Counsel request attorneys' fees as a percentage of the common fund, I report Keller Rohrback's summary time, lodestar, and costs incurred in and for the benefit of the settling Classes, for the Court's reference.

6.     All Keller Rohrback time-keepers are directed to contemporaneously record work performed and to document all time to the nearest tenth of an hour. Staff working under my direction and supervision audited the time records supporting this fee application, to confirm their accuracy. This included removing any time exclusively attributed to the Oil Industry and Tourism Classes, which are not part of this Settlement,

and deletion of time expended in the criminal restitution proceedings on behalf of the Fisher and Property classes. We have also deleted hours for timekeepers with fewer than 10 hours in the case, time related to the submission of this fee petition, and removed some additional time as a matter of judgment. The figures do not include time incurred after July 22, 2022, one week prior to the submission of this declaration.

7.      Keller Rohrback allocated work to maximize efficiency. To the extent practicable, senior attorneys did not perform work that could be accomplished by more junior attorneys, and attorneys did not perform work that could be completed by paralegals.

8.      Class Counsel assigned tasks depending on a number of considerations, with the goal of minimizing duplication of effort. Class Counsel requested and exchanged periodic time records from the four firms to monitor the time and effort contributed by each firm, and to ensure that work was conducted efficiently. If Class Counsel had not undertaken these efforts, the lodestar for this case would have been higher.

**Keller Rohrback's Billing Rates**

9.      The 2022 billing rates charged by Keller Rohrback in Class Counsel's fee petition range from $90 to $1,200 per hour and fall within the range of market rates charged by staff and attorneys of equivalent experience, skill, and expertise. The rates reflected in Keller Rohrback's fee petition are the firm's 2022 billing rates unless the attorney or support staff no longer works with Keller Rohrback, then the billing rate is the rate for that individual in their final year of work with the firm.

10.     Keller Rohrback's rates are subject to annual review and increases, and are set by the firm's Managing Partner and Executive Committee after a thorough review of costs, prevailing rates, and other market indicia.

11.     Keller Rohrback's rates are consistent with market rates in the markets within which Keller Rohrback's primary offices are located and from which this matter has been handled, including the Central District of California.

12.     The billing rates charged by Keller Rohrback in this Action are similar to rates that have been approved by courts in other class action cases in judicial settlement hearings. *See e.g.*, Order Granting Motion for Final Approval of Settlement and Motions for Attorneys' Fees pp. 10–11, *Rollins v. Dignity Health, et al.*, No. 13-cv-01450 (N.D. Cal. July 15, 2022) ECF No. 320 (approving billing rates for partners and counsel between $625–$1060), attached as Exhibit 1 to this declaration. The Honorable Jon S. Tigar recently approved Plaintiffs' fee petition, including the billing rates submitted by Keller Rohrback and stated, "[t]he Court finds these rates reasonable in light of prevailing market rates in this district and the complexity and novelty of the issues presented by this case…Class Counsel have justified their rates based on the prevailing rates in this district for attorneys with similar skill, experience, and reputation." *Id.* at 11.

13.     District courts around the country have granted final approval and awarded fees to Keller Rohrback based on the firm's then-current rates in numerous other class action cases. *See, e.g.*, Order and Judgment Granting Final Approval of Class Action Settlement and Award of Attorneys' Fees, Costs, Expenses and Representative Service Awards at 6, *Stringer v. Nissan North America, Inc., et al.*, No. 21-cv-00099 (M.D. Tenn. Mar. 23, 2022), ECF No. 126 (awarding attorneys' fees at then-current attorneys' rates between $550 and $1200); Order Granting Final Approval of Class Action Settlement and Awarding Attorneys' Fees, Litigation Expenses, and Class Representative Service Awards Unopposed Motion for Final Approval of Class Action Settlement at 4, *Ryder v. Wells Fargo Bank,* No. 19-cv-638 (S.D. Ohio Jan. 25, 2022), ECF No. 57 (awarding attorneys' fees at then-current attorneys' rates between $525 and $1,035); *Beach v. JPMorgan Chase Bank*, No. 17-cv-563 (S.D.N.Y. Oct. 7, 2020), ECF No. 232 (awarding attorneys' fees at then-current attorneys' rates between $400 and $1,035); Order & Final Judgment ¶ 20, *Holcomb v. Hospital Sisters Health Sys.*, No. 16-441 (C.D. Ill. Feb. 25, 2019) (awarding attorneys' fees at then-current attorneys' rates between $565 and $1,035); Final Judgment & Approving Class Action Settlement at 15, *Spires v. Schools*,

No. 16-616 (D.S.C. Sept. 5, 2018), ECF No. 152 (awarding then-current attorneys' rates between $230 and $940); Order Finally Approving Class Settlement ¶ 10, *Griffith v. Providence Health & Servs.*, No. 14-1720 (W.D. Wash. Mar. 21, 2017), ECF No. 69 (awarding attorneys' fees at then-current attorneys' rates between $400 and $940); and Order Awarding Attorneys' Fees, Service Awards, & Reimbursement of Litigation Expenses ¶ 5, *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, MDL No. 2335 (S.D.N.Y. Sept. 24, 2015), ECF No. 637 (awarding then-current attorneys' rates between $475 and $895).

14.    Additionally, Keller Rohrback's rates are on a par with, or even below, other plaintiffs' firms performing similar work. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding a lodestar cross-check supports the reasonableness of Class Counsel's requested fees and approving partner billing rates ranging from $275 to $1,600).

15.    Keller Rohrback's rates are also comparable to those of the major national defense firms, including defense counsel in this matter. For example, a recent bankruptcy court petition shows 2019 billing rates for partners at Munger, Tolles & Olson LLP, Plains' counsel in this matter, ranging from $860 to $1,421.32.[1] The 2020 billing rates for Munger, Tolles paralegals ranged from $345 to $395, $490–$860 for associates, and $950–$1500 for partners. The 2020 billing rate for Henry Weissman, who also billed time to this matter, was $1400 per hour. *Id.*

16.    Attached as Exhibit 3 is a true and correct summary lodestar chart for timekeepers at my firm which lists: (1) the name of each Keller Rohrback timekeeper who recorded time in this Action; (2) their title or position; (3) the total number of hours

---

[1] *See* Final Fee Application of Munger, Tolles, & Olson LLP for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession for Certain Matters from January 29, 2019 through July 1, 2020, *In re PG&E Corporation*, No., 19-30088, (N.D. Bankr. Cal. Aug. 31, 2020), ECF No. 8943, 8943-4, at Ex. D, attached as Exhibit 2 to this declaration.

they worked on the Action through and including July 22, 2022; (4) their current billing rate; and (5) their lodestar. For attorneys or support staff who no longer work with Keller Rohrback, the current billing rate is the rate for that individual in their final year of work with the firm.

17.     As reflected in Exhibit 3, the total number of professional hours expended on this matter by Keller Rohrback through July 22, 2022 is 33,292.80. The total lodestar for that period is $24,202,191.75.

**Case Expenses Advanced by Keller Rohrback**

18.     From May 19, 2015 through July 22, 2022, Keller Rohrback expended $370,402.22 in costs, expenses, and charges in order to investigate, effectively prosecute and eventually settle this Action, against multiple branches of a large and well-funded conglomerate. The costs and expenses advanced by Keller Rohrback during the pendency of this case included: computer-based research fees; court costs and filing fees; delivery fees (express delivery, service of process, postage and messenger services); printing, copying, and records retrieval charges; Relativity database and licensing costs; telecommunications charges; travel expenses (transportation, meals, and lodging) for client meetings, depositions, court appearances, and mediation. Expenses such as these are typically billed by attorneys to paying clients and were reasonably and necessarily incurred. Keller Rohrback maintains appropriate back-up documentation for each expense in its books and records. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred. Keller Rohrback's expenses are in line with expenses the firm has incurred in countless other complex class action lawsuits that we have successfully prosecuted. The expenses are presented in summary form in Exhibit 3 to this declaration.

**Case Expenses Advanced by Co-Counsel Through the Common Fund**

19.     Class Counsel maintained a Common Fund for expenses incurred during the course of this litigation, which was managed by Keller Rohrback, at my direction. The

four co-counsel firms all made contributions to the Common Fund at periodic intervals, as costs were incurred. Keller Rohrback maintained the books and records for the Common Fund and disbursed monies to cover case expenses as needed.

20.     From May 19, 2015 through July 22, 2022, Class Counsel incurred $5,009,394.41 in costs, expenses, and charges paid from the Common Fund in connection with the investigation, prosecution and settlement of this case. The expenses that were paid out of the Common Fund included: court reporter expenses (including charges for deposition transcripts and videographers), expert witness fees, costs associated with providing class notice, mediators' charges, jury consultant fees, website hosting, and conference room rental charges. With the exception of the costs for class notice, these are the type of expenses typically billed by attorneys to paying clients and reflect the actual costs of these services. The case expenses for the Common Fund are presented in summary form in Exhibit 4, attached to this declaration. Keller Rohrback tracked and paid Common Fund case expenses attributable to the criminal restitution proceedings separately, as set out in summary form in Exhibit 5, also attached. *See infra* ¶ 24.

21.     All of these Common Fund expenses were reasonably and necessarily incurred in Class Counsel's efforts to prosecute claims on behalf of the Property and Fisher Classes. The expenses incurred are commercially reasonable and are reflected on the books and records of Keller Rohrback. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred. The Common Fund expenses here are in line with expenses Class Counsel has incurred in the countless other complex class action lawsuits they have successfully prosecuted.

22.     These Common Fund expenses were advanced by Class Counsel with no guarantee of recovery. As a result, Class Counsel had a strong incentive to keep costs to a reasonable level and did so.

**Summary of Keller Rohrback Fee and Expenses**

23.     In total, Keller Rohrback has invested 33,292.80 hours, $24,202,191.75 in lodestar, and $370,402.22 in costs. I expect each of these numbers will increase through final settlement approval and settlement administration, meaning that any multiplier that Class Counsel receive on their lodestar will continue to decrease over time.

24.     In addition, Class Counsel pursued claims on behalf of the Property and Fisher Classes in criminal restitution proceedings in Santa Barbara Superior Court. This included preparing detailed and lengthy presentations summarizing the Classes' liability and damages claims (akin to closing argument at trial), and also engaging in a court-directed mediation process. While these efforts have not yet been successful, as the matter is in the State Court of Appeal, the work performed directly benefitted the prosecution of the Classes' claims in this action: it sharpened Class Counsel's trial strategy and settlement evaluation, and advanced the ongoing mediation efforts to resolve this action. Keller Rohrback also incurred expenses in the course of the criminal restitution proceeding, for many of the same categories of case expenses as set out in Paragraph 18, *supra*. Keller Rohrback expended $1,117,581.75 in lodestar and $27,731.86 in expenses in furtherance of the criminal restitution proceeding, a significant portion of which was for the benefit of the Property and Fisher Subclasses. The lodestar and case expenses for the criminal restitution proceeding are presented in summary form in Exhibit 5, attached hereto. Class Counsel separately expended $20,715.91 for Common Fund expenses for the criminal restitution proceeding. *See* Exhibit 4.

**Service Awards**

25.     During the course of this nearly seven year litigation, I and others at my firm worked closely with the Class Representatives, primarily for the Fisher Class. These individuals worked very hard to provide all of the information requested from them, and the testimony asked of them, and stayed abreast of the developments in the litigation over the course of nearly seven years, through appeals, multiple class certification motions,

motions for decertification, disappointing efforts at restitution, testimonial support for the criminal trial that resulted in a conviction of Plains, and so much more, all for the benefit of the Fisher and Property Classes. The Class Representatives were asked to provide documents many different times, including sensitive financial documents. Their commitment to this litigation required personal sacrifice and perseverance in the face of odds. Their dedication to this cause for nearly seven years was exemplary, and we feel proud and honored to have represented them. I believe that payment of Service Awards to the Class Representatives are justified in this Action, and that the amount requested of $15,000 per Class Representative is fair and reasonable, in light of the burdens the Class Representatives undertook and the benefits that the Class Representatives helped achieve for the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of July 2022, at Seattle, Washington.

Juli E. Farris

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STARLA ROLLINS, et al.,

           Plaintiffs,

    v.

DIGNITY HEALTH, et al.,

           Defendants.

Case No. 13-cv-01450-JST

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTIONS FOR ATTORNEY'S FEES**

Re: ECF Nos. 310, 311, 312

Before the Court are a motion for a final approval of a settlement agreement and two motions for attorney's fees, expenses, and incentive awards filed by class counsel for Plaintiffs and class counsel for Intervenor Plaintiffs. ECF Nos. 310, 311, 312. The Court will grant all three motions.

## I.    BACKGROUND

### A.    Factual and Procedural Background

The factual and procedural background to this putative class action is more fully described in the Court's previous orders denying Plaintiffs' motions for preliminary settlement approval and preliminary class certification. *See* ECF Nos. 289, 292. In short, Plaintiffs sued Defendants Dignity Health and Dignity Health Retirement Plans Subcommittee as well as two individual defendants over the administration of the Dignity Health Pension Plan ("the Plan"). Second Amended Complaint ("SAC"), ECF No. 268 ¶ 3. The crux of the dispute is whether the Plan qualifies for the church plan exemption to the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* ¶ 4.

This case has travelled a long road.  Plaintiffs filed suit in 2013.  ECF No. 1.  In 2019, after the case progressed through the District Court, Ninth Circuit, Supreme Court, and then the District Court again, the parties eventually reached a settlement.  ECF No. 278.  Plaintiffs filed an unopposed motion for preliminary approval of the settlement agreement – which included provisions for differing payments to two subgroups – and to preliminarily certify the class.  ECF No. 284.  The Court denied approval without prejudice and deferred ruling on preliminary class certification.  ECF No. 289.  Plaintiffs revised the agreement and filed a renewed, unopposed motion for preliminary approval and class certification.  ECF No. 290.  The Court reluctantly denied the renewed motion, recognizing that subclass certification was required because the interests of the Vesting Subclass conflicted with those of the general settlement class.  ECF No. 292 at 16.

Following the second denial order, three members of the Vesting Subclass obtained separate counsel and filed a motion to intervene, ECF No. 294, which the Court granted, ECF No. 297.  The subgroup's counsel, Mark Kindall of Izard, Kindall & Raabe, negotiated with counsel for Dignity Health, ECF No. 306 at 12, and the parties arrived at a proposed settlement as articulated in the second revised settlement agreement, ECF No. 306-1.

After the parties addressed the Court's concerns, the Court entered an order granting preliminary approval of the class action settlement, preliminarily certifying a putative class and subclass for settlement purposes.  ECF No. 307.  A final approval hearing was conducted on March 3, 2022.

### B.  Terms of Settlement[1]

The terms of the settlement agreement pertaining to the Settlement Class – "[a]ll participants, former participants, or beneficiaries of the Dignity Health Pension Plan," ECF No. 306-1 § 1.32 – are discussed at length in the Court's previous order denying preliminary approval, ECF No. 292 at 2-4, and the Court's previous order granting preliminary approval, ECF No. 307

---

[1] This order incorporates by reference the definitions in the Second Restated and Amended Class Action Settlement Agreement, and all terms used shall have the same meanings as set forth in the Settlement Agreement.

United States District Court
Northern District of California

at 2-3.  The Court incorporates its discussion of the parties' settlement agreement here by reference.

## II.   JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1332(d).

## III.   MOTION FOR FINAL SETTLEMENT APPROVAL

Having reviewed the parties' briefs and supplemental submission, the Court will grant Plaintiffs' motion for final approval of the Settlement.

1. The Court confirms that the class preliminarily certified under Rule 23 is appropriate for the reasons set forth in its preliminary approval order, and hereby certifies the following non-opt-out classes:

   Settlement Class: Includes "[a]ll participants, former participants, or beneficiaries of the Dignity Health Pension Plan as of the date of full execution of [the] settlement agreement."  ECF No. 310-1 at 5.

   Vesting Subclass: "the members of the Settlement Class who are former Participants in the Cash Balance portion of the Plan who terminated employment on or after April 1, 2013, and on or before March 27, 2019, and completed at least three (3) but less than five (5) years of vesting service." *Id.*

2. The "Effective Date of Settlement" as defined at Section 1.14 of the Settlement Agreement, is the date on which this order becomes final.

3. For purposes of the Settlement, the Court hereby finally certifies Plaintiffs Starla Rollins and Patricia Williams as class representatives and Intervenors Jenifer Heiner, Christine Montoya, and Michele Hall as Vesting Subclass representatives.  The Court also finally certifies Keller Rohrback L.L.P., including but not limited to Ron Kilgard, Christopher Graver, Lynn L. Sarko, Matthew M. Gerend, and Juli E. Farris, and Cohen Milstein Sellers & Toll PLLC, including but not limited to Karen L. Handorf and Michelle C. Yau, as Settlement Class Counsel.  The Court finally certifies Izard, Kindall & Raabe, LLP, including but not limited to Mark P. Kindall, as

United States District Court
Northern District of California

Vesting Subclass counsel and Angeion Group as settlement administrator.

4.  The parties complied in all material respects with the second revised notice plan, ECF No. 306-5, and distribution plan, ECF No. 284 at 37. The Court finds that Plaintiffs' notice to the settlement class constituted due and sufficient notice to the class of the pending of the litigation, the existence and terms of the Settlement, class member's right to make claims or object, and the matters to be decided at the final approval hearing. Further, the notice plan satisfied the requirements of the United States Constitution, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law. All requirements of the Class Action Fairness Act, 29 U.S.C. § 1711, et seq., have been met.

5.  The Court finds that full opportunity has been given, including at the final approval hearing held on March 3, 2022, for class members to object to the terms of the Settlement and the requests for attorney's fees. No class members objected at the hearing. The Court received one objection from Jessica Jensen on the docket. ECF No. 313. It appears that her objection is based on a misunderstanding of the Settlement; the Settlement will not affect any of her claims regarding the amount of her individualized pension benefits and it does not dictate the amount of her accruals. Instead, the Settlement involves mandated Plan contributions and direct payments to certain subgroups. Class Counsel contacted Jensen by phone and had a discussion with her about her objection. ECF No. 316 at 8. Although it is not clear whether Jensen believes the discussion resolved her objection, the Court finds that her concerns do not relate to the Settlement in this case.

6.  None of the other statements received by the Court and/or Class Counsel appear to be objections. Monika Poje, counsel for Vladosa Brencic Hamrla, filed a notice and inquiry with the Court. ECF No. 314. The notice informs

the Court of the death of Nicholos Migorodsky and that his pension benefit is in the process of being transferred to his only heir, Brencic Hamrla. The notice also requested information about whether the decedent is a "member of The Vesting Subclass and is entitled to one-time payment." ECF No. 314 at 2. Class Counsel responded to Poje on January 27, 2022, letting her know that it is unlikely that Mirgorodsky is a member of the Vesting Subclass because he has been receiving retirement benefits from 1994 until his recent death. ECF No. 316 at 10; ECF No. 316-5 ¶ 7. Class counsel sent a follow-up email on February 17, 2022. *Id.* Neither email prompted a response. The Court finds that the notice and inquiry do not constitute an objection to the Settlement.

7. Class Counsel also received a hand-written letter from "Grace T." that discusses missed Dignity Health pension payments but does not include any discernible objection to the Settlement. ECF No. 316-2 at 5; ECF No. 316 at 4.

8. Finally, the Settlement Administrator received a letter from a person expressing concern that the Settlement could interfere with her Social Security benefits. ECF No. 316-2 ¶ 11. The Settlement Administrator responded with a letter containing additional information about the Settlement and contact information for Class Counsel. ECF No. 316-1 ¶ 8. As of the date of this order, the letter's author has neither contacted Class Counsel nor filed an objection. The Settlement Administrator also received other inquiries via email, none of which constitute objections to the Settlement. ECF No. 316-1 ¶ 9.

9. The Court finds that the Settlement is fair, reasonable, and adequate. The Court further finds that the Settlement was the product of arms-length negotiations between competent, able counsel and conducted with the

United States District Court
Northern District of California

oversight and involvement of a neutral mediator; the record was sufficiently developed and complete through meaningful discovery and motion proceedings enabled counsel for the parties to adequately evaluate and consider the strengths and weaknesses of their respective positions; the litigation involved disputed claims, which underscores the uncertainty and risks of the outcome in this matter; and the Settlement provides meaningful remedial benefits for the disputed claims.

\* \* \*

Accordingly, the motion for final approval of the Settlement is hereby granted. Pursuant to and in accordance with Rule 23, the Court fully and finally approves the Settlement in all respects including, without limitation, the terms of the Settlement, the releases provided for therein, and the dismissal with prejudice of the claims asserted in this action, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and is in the best interests of the settlement class representatives, intervenor class representatives, class, and the intervenors.

The Court retains continuing and exclusive jurisdiction over the implementation, administration and enforcement of this Judgement and the Settlement and all matters ancillary thereto. The parties are directed to implement and perform the Settlement in accordance with the terms and provisions of the Settlement.

In accordance with the Settlement, and to effectuate the Settlement, Defendants shall provide Cash Contributions and Minimum Funding to the Plan Trust in accordance with the terms of the Settlement. In addition, Defendants shall provide a one-time payment to the PEP Plus Claimants and one-time payment to the Vesting Subclass as described in Section 7 of the Settlement Agreement. The terms of the Settlement and this order shall be binding on the Settlement Class, including the scope of the Released Claims described in Section 3 of the Settlement Agreement.

Finding no just reason to delay entry of this order as a final judgment with respect to the claims asserted in this action, the Clerk of the Court is directed to enter judgment pursuant to Rule

54(b).

IV.    **PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS**

Plaintiffs filed a motion for attorney's fees, reimbursement of expenses, and incentive awards.  ECF No. 311.  They request that the Court approve $5,766,193.12 in attorney's fees, a reimbursement of $363,806.88 for litigation costs, and $10,000 in incentive awards to each of the two named plaintiffs.  These fees will not impact Dignity Health's contribution of $100,000,000 to the Plan.  Instead, the funds will be taken from a separate allocation of $6.15 million that Defendants have agreed to pay in attorney's fees, expenses, and incentive awards.  ECF No. 311 at 16.

A.    **Attorney's Fees Award**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' argument, . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted).  "The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances: the lodestar method or the percentage-of-recovery method."  *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *1 (N.D. Cal. March 17, 2021) (citation omitted).

The lodestar method "is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."  *In re Bluetooth*, 654 F.3d at 941.  "The lodestar method is also appropriate for 'claims-made' settlements."  *In re Apple*, 2021 WL 1022866, at *2 (citation omitted).

In contrast, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery

method" to assess the reasonableness of the requested attorney's fee award. *In re Bluetooth*, 654 F.3d at 942. "Because the benefit to the class is easily quantified in common-fund settlements, [the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*

In choosing the proper methodology, courts must exercise their discretion "in a way that achieves a reasonable result." *In re Apple*, 2021 WL 1022866, at *1 (citing *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)). Thus, the first question before this Court is which method to employ.

### 1. Method of Fee Calculation

Plaintiffs acknowledge that "this settlement is not technically structured as a common fund because class members do not have ascertainable claims to a portion of the $100 million payment" but argue that "it is nevertheless appropriate to treat the settlement as a common benefit fund for the purpose of determining the reasonableness of the requested attorney[']s fees because it provides a sum certain common benefit." ECF No. 311 at 9. Plaintiffs calculate the fund as $106,975,000.00 by combining Dignity Health's baseline contributions of $100 million with the Plan's Trust plus payments of $825,000 and $6,150,000 in requested attorney's fees, expenses, and incentive awards.[2] ECF No. 311 at 10. For purposes of this motion, the Court will calculate the reasonableness of the fee requests based on the $100 million baseline contribution.

The requested fees, expenses, and awards in this case "will not reduce the monetary recovery to the Settlement Class." ECF No. 311 at 6. However, this case is distinguishable from cases that have found no "common fund" where the attorney's fees "come directly from defendant as opposed to from a fund created by the settlement." *Create-a-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at *1 (N.D. Cal. Sept. 22, 2009). Here, the parties agree that "if the Court awards a lesser amount than $6.15 million, the difference between the amount

---

[2] The Court also notes that Dignity Health may ultimately pay as much as $747,000,000 to the Fund. ECF No. 311 at 7. The Court does not use this figure to calculate the reasonableness of the attorney's fees, expenses, or incentive awards, but notes that this fact further supports approving these requests. ECF No. 292 at 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    awarded and $6.15 million will be added to the amounts contributed to the Plan." ECF No. 311 at

2    6. In other words, while the requested fees will not reduce the minimum monetary recovery to the

3    Settlement class, the fees will still impact the recovery available to the class. *Cf. id.* ("the amount

4    of attorney's fees awarded will have no impact on the recovery available to the class members").

5           Because the Settlement includes a fixed, minimum, non-reversionary sum of $100,000,000

6    and because the attorney's fees award will have an impact on the recovery available to the class,

7    the Court finds that the Settlement does contain a common fund for purposes of this motion.[3] *See*

8    *In re Apple*, 2021 WL 1022866, at *2 (applying the percentage-of-the-fund method where there is

9    a fixed minimum amount for the class and distinguishing cases where the amount of attorney's

10   fees awarded "did not have any impact on the recovery available to the class").

11          "Nonetheless, the Ninth Circuit has made clear that in 'megafund' cases, such as this one,

12   courts may 'employ the lodestar method instead' if rote application of the 25% benchmark 'would

13   yield windfall profits for class counsel in light of the hours spend on the case.'" *In re High-Tech*

14   *Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *7 (N.D. Cal. Sept. 2,

15   2015) (quoting *In re Bluetooth*, 654 F.3d at 942). For example, in *In re Washington Public Power*

16   *Supply System Securities Litig.*, 19 F.3d 1291, 1297-98 (9th Cir. 1994), the Ninth Circuit found

17   that the district court "acted well within the bounds of its discretion" when it decided to apply the

18   lodestar method, rather than the percentage-of-the-fund method, to a motion for attorney's fees out

19   of a $687 million common fund. Although class counsel requested an award of 13.6 percent of the

20   fund, well below the 25 percent benchmark, the district court found the request "arbitrary" because

21   class counsel "could just as easily have requested 3.6 percent or 36.1 percent." *Id.* (internal

22   quotation marks omitted). The Court finds that in this case, as in *In re Washington*, there is

23   "nothing inherently reasonable about an award of" approximately 6 percent of the megafund.

24   Therefore, the Court finds that the lodestar method – tying the fee awards for counsel to the actual

25   hours they reasonably expending on the litigation – is the best method to employ in this case,

26   ─────────────────

27   [3] The $100,000,000 fixed minimum amount for the Class does not include the additional $925,000
     being paid to the Vesting Subclass because that Subclass is represented by separate counsel who
28   negotiated a separate settlement and are requesting separate fees. ECF No. 311 at 6 n.3.

along with a percentage-of-the-fund cross-check. *See In re Bluetooth*, 654 F.3d at 944 (encouraging courts to "cross-check[] their calculations against a second method").

### 2. Lodestar Method

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentations) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Although "the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941-42 (citations and internal quotation marks omitted). These factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942 (citations omitted). The most important factor is the benefit obtained for the class. *Id.*

#### a. Billing Rates

In determining reasonable hourly rates, courts balance "granting sufficient fees to attract qualified counsel" with the need to "avoid[] a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Courts achieve this balance by ensuring that counsel is compensated at "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The forum district is generally considered the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

The billing rates in this case vary based on the attorneys' level of experience. Partners' and Counsels' rates range from $625 to $1,060. The billing rates for non-partner and non-counsel

10

attorneys, including associates, litigation assistants, and document analysts range from $215-$625, with most under $600. *See* ECF No. 310-2 at 80-91. The Court finds these rates reasonable in light of prevailing market rates in this district and the complexity and novelty of the issues presented by this case. *See, e.g., Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2022 WL 45057, at *7 (N.D. Cal. Jan. 5, 2022) (approving rates ranging from $625 to $1,145 for partners and counsel, $425 to $650 for associates, $300-$370 for paralegals); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals). In addition, Class Counsel provides documentation demonstrating that the billing rates in this case are similar to hourly rates in other church plan cases that they have litigated jointly and separately across the country. ECF No. 310-2 ¶¶ 64-66.

The billing rates are further justified by the particular skill and experience many of the attorneys brought to this case. For example, Michelle C. Yau, a partner at Cohen Milsein "has played an instrumental role in some of the most significant ERISA lawsuits in recent U.S. history" and was named "a Rising Star Under 40 in 2014 . . . for her work in cutting-edge ERISA litigation." ECF No. 310-2 at 76-77. Similarly, Scott M. Lampert who is Of Counsel at Cohen Milstein "is currently engaged in litigating a number of so-called 'church plan lawsuits.'" *Id.* at 78. He "has over 20 years of experience litigating complex commercial class actions on behalf of employees, retirees, and consumers in retiree benefits, employment, consumer protection and antitrust matters." *Id.* As of December 2021, he "serves as lead or co-lead counsel in 12 separate cases in various jurisdictions throughout the U.S." *Id.*

Therefore, the Court finds that Class Counsel have justified their rates based on the prevailing rates in this district for attorneys with similar skill, experience, and reputation.

### b.    Reasonable Hours

In determining whether the hours expended on litigation are reasonable, the inquiry "must be limited to determining whether the fees requested by this particular legal team are justified for

United States District Court
Northern District of California

1  the particular work performed and the results achieved in this particular case." *Moreno v. City of*

2  *Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  A district court must "exclude from this initial

3  fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424,

4  434 (1983) (citation omitted).

5      This case—which has been in active litigation since 2013— required a significant amount

6  of Class Counsel's time as they litigated complex and unsettled areas of the law in the district

7  court, appellate court, and Supreme Court.  The case was first assigned to Judge Thelton

8  Henderson, who concluded that only a church or a convention or association of churches may

9  establish a church plan under the exemption.  Because the Plan was not established by one of

10  those qualifying entities, Judge Henderson granted Plaintiffs' motion for partial summary

11  judgment.  ECF No. 175.  Judge Henderson then granted Defendants' motion to stay the case and

12  certified the partial summary judgment order for interlocutory appeal.  ECF No. 205.  Before the

13  case was stayed, the parties submitted three joint case management statements and participated in

14  four case management conferences.  ECF No. 10-2 ¶ 8.  During this time, Rollins also served two

15  sets of interrogatories, four sets of requests for production of documents, and one set of requests

16  for admissions.  Plaintiffs also responded to one set of Defendants' interrogatories and one set of

17  requests for production.  *Id.*  Plaintiffs took the depositions of two Dignity Health witnesses and

18  was in the midst of scheduling a third deposition when the case was stayed.  *Id.*  The parties also

19  briefed two discovery disputes and held conferences among themselves to try and resolve a variety

20  of discovery issues.  *Id.*

21      The Ninth Circuit agreed to hear Defendants' interlocutory appeal over Plaintiffs'

22  objection.  After full briefing (which included nine *amici curiae* briefs), the parties argued the

23  Ninth Circuit appeal.  The parties also filed post-argument briefs on issues raised at oral argument

24  as well as "additional briefing on subsequently-issued opinions." *Id.* ¶ 9.  Ultimately, the Ninth

25  Circuit affirmed the district court's interpretation of the church plan.  *Rollins v. Dignity Health*,

26  830 F.3d 900 (9th Cir. 2016).

27      Defendants then petitioned the Supreme Court for a writ of certiori.  *Id.* ¶ 10.  The

28

Supreme Court granted review in this case and two other cases in two other circuits that reached similar conclusions. *Id.* The Court consolidated all three appeals, heard argument, and ultimately reversed all three circuit courts. *Id.* The Court "held that pension plans need not be established by churches in order to qualify as ERISA-exempt church plans, as long as they otherwise meet the requirements to be church plans." *Id.* (citing *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1663 (2017)). The case was then remanded to this Court for further proceedings on Plaintiffs' other claims. ECF No. 234.

Following remand, Plaintiff Patricia Wilson joined Plaintiff Rollins and they jointly filed an amended class action complaint. ECF No. 249. After full briefing and argument, the Court denied in large part Defendants' motion to dismiss, concluding that Plaintiffs adequately alleged that the Plan did not qualify as a church plan under the *Stapleton* Court's construction of the exemption. The Court granted the motion to dismiss in part with leave to amend. Plaintiffs then filed a second amended class action complaint, which expanded on Plaintiff Rollins' initial complaint. ECF No. 310-2 ¶ 12. Defendants answered the complaint. ECF No. 272. In November 2018, concurrently with the resumption of discovery, the parties initiated settlement discussions. ECF No. 310-2 ¶¶ 13-14. To prepare for mediation, the parties exchanged confidential information and documents on an expedited basis and wrote confidential mediation statements to the mediator. *Id.* ¶ 14. Plaintiffs also hired an actuary to assist in analyzing information and help prepare for mediation. *Id.* ¶ 15. The settlement negotiations spanned several months, which included two day-long in-person mediation sessions in January and February 2019. The parties communicated between the two sessions as they tried to work out the terms of possible settlement. After "innumerable phone conferences, more than a dozen drafts, and after considering all relevant factors" the parties reached an agreement in principle to settle the case. *Id.* ¶ 17.

After reaching a settlement, the parties filed a motion for preliminary approval, which the Court denied due to concerns regarding certain features of the provision for payment of attorney's fees, expenses, and incentive awards; whether subgroups required subclass certification; and the

need for additional evidence regarding the value of the settlement and the claims being settled. ECF No. 289 at 10-16. The parties engaged in further negotiations, amended their settlement agreement, and filed a renewed motion for approval of the settlement agreement. ECF No. 290. The Court denied the motion again, finding that the subgroup preliminarily certified as the Vesting Subclass required separate representation before the Court could determine whether their recovery was adequate. ECF No. 292 at 16.

Prompted by the Court's order, three members of the Vesting Subclass moved to intervene in this matter. ECF No. 294, 297. The Defendants and Intervenor Plaintiffs proceeded to engage in months-long negotiations and were able to reach an agreement that did not adversely affect the Settlement Class members. The resulting Settlement Agreement was preliminarily approved by this Court. ECF No. 307.

The Court provides this lengthy narrative to demonstrate the reasonableness of expending over 10,789 professional hours litigating and settling this action. The Court further notes Class Counsel's decision not to include timekeepers with less than 20 hours in this case and to exclude any time incurred in the settlement approval proceedings themselves, even though they estimate that the dollar value of that time would be valued at more than $1,000,000 at counsel's current hourly rates. ECF No. 310-2 at 18.

For these reasons, the Court accepts Class Counsel's calculated lodestar of $8,070,034.50.

### c. Multipliers

Class Counsel requests a fee award of $5,766,193.12, which results in a fractional multiplier of 0.71 of the lodestar. The Court approves this multiplier, which is below the range that other courts have approved for similar megafund settlements. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (in a bare majority of cases surveyed where the common fund was $50-200 million, the multiplier was in the 1.5-3.0 range); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 532 (N.D. Cal. 2020) (approving a 2.7 multiplier for a megafund of $240 million).

### 3. Percentage-of-Recovery Cross-Check

Class counsel requests a fee award of $5,766,193.12, which is approximately six percent of the common fund.[4] The Court finds this reasonable. *See Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-5923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (awarding nine percent of $203 million megafund and listing cases with comparable awards).

* * *

For the foregoing reasons, the Court grants class counsel's motion for an attorney's fee award of $5,766,193.12.

### B. Reimbursement of Expenses

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation and citations omitted).

In addition to attorney's fees, class counsel requests a reimbursement of $363,806.88 for litigation costs. Keller Rohrback claims it incurred $172,247.64 in expenses and Cohen Milstein claims $191,559.24 in expenses. After reviewing the exhibits containing the firm's itemized lists of costs, the Court finds these costs reasonable. ECF No. 310-2 at 99-101. The expenses incurred all relate to common and routinely reimbursed litigation expenses, such as filing fees, travel fees, court appearances and mediation, copying, deliveries, legal research charges, and mediator's charges. *Id.* The Court's conclusion in this regard is further supported by the fact that the reimbursement will not reduce the baseline amount that Dignity Health will contribute to the Fund and instead will be taken from the $6.15 million allocated for attorney's fees, incentive awards, and expenses.

### C. Incentive Awards

Plaintiffs request that the Court award $10,000 in incentive fees to named plaintiffs Rollins

---

[4] The common fund consists of a minimum of $100 million that Dignity Health will contribute to the Plan's Trust. It may also include the Trust plus payments of $825,000 to the PEP Plus subgroup, as well as an additional $6.15 million for requested attorney's fees, expenses, and incentive awards. Regardless of how it is calculated, the fee award represents approximately six percent of the common fund.

United States District Court
Northern District of California

1    and Wilson.

2         "Incentive awards are payments to class representatives for their service to the class in

3    bringing the lawsuit." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

4    "It is well-established in this circuit that named plaintiffs in a class action are eligible for

5    reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory*

6    *Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011),

7    *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).  An incentive

8    award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is

9    considered "quite high."  *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal.

10   2014) (*citing Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D.

11   Cal. Feb. 6, 2012)).  Nonetheless, a higher award may be appropriate where class representatives

12   expend significant time and effort on the litigation and face the risk of retaliation or other personal

13   risks; where the class overall has greatly benefitted from the class representatives' efforts; and

14   where the incentive awards represent an insignificant percentage of the overall recovery.  *Wren*,

15   2011 WL 1230826, at *32.  In addition, although the Court gives this factor only modest weight,

16   larger awards are more common in "megafund" cases.  *See In re High-Tech*, 2015 WL 5158730, at

17   *18 (collecting cases).

18        In this case, Plaintiffs have demonstrated that named plaintiffs Wilson and Rollins are each

19   entitled to an incentive award of $10,000.  Rollins has been involved with the litigation since its

20   inception in 2013 and was the only named plaintiff until 2015.  ECF No. 310-13 ¶ 6.  During the

21   time the case was pending in the district court, Rollins played an active role in meeting with

22   attorneys to discuss, among other things, motion practice, litigation strategy, and discovery

23   requests and responses.  *Id.*  ¶¶ 7-13.  After the case was stayed, Rollins continued to communicate

24   with counsel, albeit on a less frequent basis (1-2 times a month).  *Id.*  Once the case returned to the

25   district court, Rollins once again participated in strategic decisions and provided further

26   information about Dignity Health.  *Id.*  She also supported counsel during months of settlement

27   discussions.  *Id.* ¶¶ 14-20.  She estimates that she spent a few hours per month on the case every

28

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    year for the past nine years.  *Id.* ¶ 26.  Thus, the Court finds that Rollins' demonstrated

2    commitment and hard work entitles her to the requested incentive award of $10,000.  *See, e.g.,*

3    *Chu v. Wells Fargo Invs., LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *5

4    (N.D. Cal. Feb. 16, 2011) (approving a $10,000 incentive award to plaintiffs who actively

5    participated in 5-6 years of litigation).

6          Although Wilson joined the litigation two years after Rollins, the Court finds that her

7    efforts and significant contribution to this case also entitle her to a $10,000 inventive award.

8    Wilson produced over 1,500 pages of documents concerning the Plan, worked with counsel as

9    they drafted the amended complaint, and traveled to Washington, DC for Supreme Court

10   arguments.  ECF No. 310-14 at 3-4.  According to Class Counsel, "the PEP Plus claim would

11   never have been brought but for her efforts," ECF No. 311 at 17, because Wilson was the one who

12   spotted the issue.  *Id.*  Besides for identification of the problem, Wilson provided counsel with an

13   analysis of the issue via detailed graphs and spreadsheets.  *Id.*  She has been actively involved in

14   assisting the attorneys through her actuarial expertise and even engaged in direct communications

15   with mediators.  *Id.*  Because she is a current employee of Dignity Health, she also held a

16   reasonable fear of retaliation and has, in fact, experienced negative ramifications due to her work

17   on this case.  *Id.* 17-18; ECF No. 310-14 at 6-7.

18         Based on these considerations, the Court finds that both named Plaintiffs are entitled to

19   incentive awards of $10,000.  The Court again notes that the baseline contribution to the Plan will

20   not be impacted by these awards.  Instead, the awarded amounts will be taken from the $6.15

21   million allocated for attorney's fees, expenses, and awards.

22   **V.    INTERVENOR PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND
            INCENTIVE AWARDS**

23

24         The Court denied Plaintiffs' original motion for preliminary approval of settlement.  ECF

25   No. 289.  Among other reasons, the Court had "concerns regarding the two subgroups of class

26   members who will receive direct payments."  *Id.* at 16.  The Court informed Plaintiffs that any

27   future motion should "(1) support the propriety of providing payments to these subgroups without

28   subclass certification and (2) provide sufficient information regarding the value of the subgroups'

claims for the Court to evaluate whether the Settlement treats those claims equitably." *Id.* In accordance with the Court's ruling, the parties negotiated a revised and amended settlement agreement, ECF No. 290-1, and filed a renewed motion for preliminary approval, ECF No. 290. The Court ultimately denied the renewed motion, finding that there was "a fundamental conflict of interest between the vesting subgroup and the rest of the class that must be addressed by subclass certification." *Id.* at 16.

After the Court denied the renewed motion, attorneys from the law firm of Izard, Kindall & Raabe ("IKR") came forward to represent the Vesting Subclass. ECF No. 306-6 ¶¶ 1, 3. Attorney Mark Kindall from IKR subsequently engaged in discussions with several potential subclass members and investigated their potential claims. Following these efforts, "Jenifer Heiner, Michele Hall and Christine Montoya determined that they wanted to intervene in the suit to represent the Vesting Subclass" and filed a motion to intervene. *Id.* ¶ 4. To prepare for settlement discussions, IKR needed more precise data concerning the accrued benefits that members of the Vesting Subclass forfeited when they left Dignity. *Id.* ¶ 5. This involved negotiations with Defendants to obtain the necessary data. *Id.* IKR then analyzed the data and formulated a strategy with the Intervenor Plaintiffs. Defendants and Intervenors engaged in settlement discussions from November 2020 through February 2021. The Intervenor Plaintiffs were primarily concerned with three issues: "(1) increasing the overall amount of money going to the Vesting Subclass; (2) revising the allocation of those amounts to conform to the amounts that individual Vesting Subclass Members had lost; and (3) including language to ensure that the Settlement did not result in prejudice to Vesting Subclass Members who might return to work at Dignity." *Id.* ¶ 6. After reaching agreements on each of these issues, Intervenor Counsel then negotiated payments for attorney's fees, expenses, and incentive awards. *Id.* ¶ 8.

Before the negotiations with IKR occurred, Defendants had agreed to pay the Vesting Subclass $660,000. ECF No. 312 at 13. After those negotiations, Defendants increased compensation to the Vesting Subclass to $950,000. Counsel for the Vesting Subclass now request for $50,000 in attorney's fees and expenses. ECF No. 312 at 12. The three Intervenor Plaintiffs

1    request $2,500 each in incentive awards.  ECF No. 312 at 19.

2        **A.**    **Attorney's Fees**

3        The Court finds attorney's fees reasonable under the percentage-of-the-fund method

4    regardless of whether it calculates the common fund as $950,000 (the total amount that

5    Defendants will pay the Vesting Subclass) or $290,000 (the increased amount Defendants agreed

6    to pay after negotiations with Intervenor Plaintiffs' counsel).  The requested fees are 5% of

7    $950,000 and 17% of $290,000.  The fees are reasonable based on the benefit counsel provided to

8    the Vesting Subclass and because the requested fees fall well below the Ninth Circuit's 25%

9    benchmark.

10       The award is also reasonable under a lodestar cross-check.  IKR spent 107 hours on this

11   case generating a lodestar of $78,975.  ECF No. 310-3 ¶ 19.  These hours were spent on

12   appropriate litigation tasks like negotiations with Defendants over data issues, communicating

13   with Intervenor Plaintiffs, and reviewing the terms of the original and revised settlement

14   agreements.  *Id.*  ¶ 20.  Exhibits provide the following rates for the hours spent on this litigation:

15   $850 per hour for a senior partner with 33 years of experience, $350 per hour for an associate with

16   5 years of experience, and $180 per hour for time billed by two paralegals.  *Id.* ¶¶ 21-24.  The

17   Court finds these rates reasonable.  *See, e.g., Haralson v. U.S. Aviation Serv. Corp.,* No. 16-CV-

18   05207-JST, 2021 WL 5033832, at *8 (N.D. Cal. Feb. 3, 2021) (approving, for purposes of the

19   lodestar cross-check, rates "between $300 and $500 for associates, and between $750 and $850 for

20   partners and senior attorneys"); *Hefler v. Wells Fargo & Co.,* No. 16-CV-05479-JST, 2018 WL

21   6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates "from $650 to $1,250 for partners or

22   senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" for

23   purposes of a lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc,* 802 F. App'x 285 (9th Cir.

24   2020).

25       The requested attorney's fees in this case are 63% of counsel's lodestar.  This "contrasts

26   with the majority of common fund settlements, in which the fees awarded are typically greater

27   than, or a multiple of, counsel's lodestar."  *Flores v. TFI Int'l Inc.,* No. 12-CV-05790-JST, 2019

28

United States District Court
Northern District of California

1    WL 1715180, at *10 (N.D. Cal. Apr. 17, 2019) (citing *Vizcaino,* 290 F.3d at 1051 n.6 for the

2    proposition that lodestar multiples between 1 and 4 are common).  For these reasons, the Court

3    grants an attorney's fees award of $50,000 to counsel for Intervenor Plaintiffs.

        **B.      Incentive Awards**

4

5           Intervenor Plaintiffs request that the Court award $2,500 in incentive fees to Intervenor

6    Plaintiffs Michelle Hall, Jenifer Heiner, and Christina Montoya.  The Court finds these awards

7    reasonable in light of Intervenor Plaintiffs' active and valuable assistance to counsel.  ECF No.

8    312 at 18-19.  The awards are also well below the "presumptively reasonable" amount of $5,000.

9    *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) ("In this district, $5,000 for each class

10   representative is presumptively reasonable.").

11                                        **CONCLUSION**

12          For the reasons stated above, the Court grants Plaintiffs' motion for final approval of the

13   class action settlement.  The Court also grants Plaintiffs' and Intervenor Plaintiffs' motions for

14   attorney's fees, expenses, and incentive awards.  Class counsel is awarded $5,766,193.12 in

15   attorney's fees and $363,806.88 in costs.  The Court also awards $50,000 in attorney's fees to

16   counsel for Intervenor Plaintiffs.  Named plaintiffs are each awarded $10,000 and Intervenor

17   Plaintiffs are each awarded $2,500 in incentive awards.

18          Class counsel shall file a post-distribution accounting within 21 days after the distribution

19   of settlement funds.  In addition to the information contained in the Northern District of

20   California's Procedural Guidance for Class Action Settlements, available at

21   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-

22   distribution accounting shall discuss any significant or recurring concerns communicated by class

23   members to the settlement administrator or counsel since final approval, any other issues in

24   settlement administration since final approval, and how any concerns or issues were resolved.

25          The Court will withhold 10% of the attorney's fees granted in this order until the post-

26   distribution accounting has been filed.  Class counsel shall file a proposed order releasing the

27   remainder of the fees when they file their post-distribution accounting.

28

United States District Court
Northern District of California

1    This matter is set for a further case management conference on January 24, 2023 at 2:00

2    p.m., with a case management statement due January 17, 2023. The parties may request that the

3    case management conference be continued if additional time is needed to complete the

4    distribution. The conference will be vacated if the post-distribution accounting has been filed and

5    the Court has released the remaining attorney's fees.

6    **IT IS SO ORDERED.**

7    Dated: July 15, 2022



8    JON S. TIGAR
9    United States District Judge

United States District Court
Northern District of California

21

# EXHIBIT 2

1   BRAD BRIAN (State Bar No. 79001)
    Brad.Brian@mto.com
2   THOMAS B. WALPER (State Bar No. 96667)
    thomas.walper@mto.com
3   HENRY WEISSMANN (State Bar No. 132418)
    henry.weissmann@mto.com
4   BRADLEY SCHNEIDER (State Bar No. 235296)
    bradley.schneider@mto.com
5
6   **MUNGER, TOLLES & OLSON LLP**
    350 South Grand Avenue
7   Fiftieth Floor
    Los Angeles, California 90071
8   Telephone:     (213) 683-9100
    Facsimile:     (213) 683-3702
9

10  *Attorneys for Reorganized Debtors*

11              **UNITED STATES BANKRUPTCY COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

                **SAN FRANCISCO DIVISION**
13

| | |
|---|---|
| 14   In re: | Bankruptcy Case No. 19-30088 (DM) |
| 15   PG&E CORPORATION, | Chapter 11 |
| 16        - and – | (Lead Case) |
| 17   PACIFIC GAS AND ELECTRIC COMPANY, | (Jointly Administered) |
| 18                          Debtors. | **FINAL FEE APPLICATION OF MUNGER, TOLLES & OLSON LLP FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES AS ATTORNEYS TO THE DEBTORS AND DEBTORS IN POSSESSION FOR CERTAIN MATTERS FROM JANUARY 29, 2019 THROUGH JULY 1, 2020** |
| 19   ☐ Affects PG&E Corporation | |
| 20   ☐ Affects Pacific Gas and Electric Company | |
| 21   ☒ Affects both Debtors | |
| 22   *\* All papers shall be filed in the Lead Case No. 19-30088 (DM).* | **Hearing: Not Set** Objection Deadline: September 15, 2020 |

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

Jurisdiction and Basis for Relief ........................................................................................... 3

Background ............................................................................................................................. 4

    A.    The Bankruptcy Filing and General Case Background ................................ 4

    B.    Debtors' Retention of MTO ......................................................................... 4

    C.    No Adverse Interest with Respect to the Specific Matters ......................... 8

Summary of Compliance with Interim Compensation Order .................................................. 9

Fees and Expenses Incurred During the Fee Period ............................................................. 12

    A.    Customary Billing Disclosures .................................................................. 12

    B.    Fees Incurred During the Fee Period ......................................................... 11

    C.    Expenses Incurred During the Fee Period ................................................. 13

Summary of Legal Services Rendered During the Fee Period .............................................. 13

Actual and Necessary Expenses Incurred by MTO .............................................................. 17

Client Review of Billing Statements ..................................................................................... 18

Reasonable and Necessary Services Provided by MTO ........................................................ 18

    A.    Reasonable and Necessary Fees and Expenses Incurred in Providing Services to
    the Debtors ................................................................................................. 18

MTO's Requested Compensation and Reimbursement Should be Allowed .......................... 18

Statement Regarding United States Trustee Guidelines ........................................................ 21

Notice .................................................................................................................................... 21

No Prior Request ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp. of America),*
  544 F.2d 1291 (5th Cir. 1977) .................................................................... 16

*Burgess v. Klenske (In re Manoa Finance Co., Inc.),*
  853 F.2d 687 (9th Cir. 1988) ...................................................................... 16

*Johnson v. Georgia Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ................................................................. 16, 17

*Kerr v. Screen Extras Guild, Inc.,*
  526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976) ................. 16

*NextEra Energy, Inc., et al. v. Pacific Gas and Electric Company,*
  FERC Docket No. 19-35-000 ......................................................................... 6

*PG&E Corp. et al. v. Federal Energy Regulatory Commission,*
  Adv. Proc. No. 19-03003 (N.D. Cal.) .......................................................... 6

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet MPC
  Corp.),*
  251 B.R. 103 (9th Cir. BAP 2000) ............................................................. 17

**FEDERAL STATUTES**

11 U.S.C. § 105(e) ......................................................................................... 3

11 U.S.C. § 327 ............................................................................................ 15

11 U.S.C. § 327(e) ......................................................................................... 4

11 U.S.C. § 330 ..................................................................................... passim

11 U.S.C. § 330(a) ................................................................................. 16, 17

11 U.S.C. § 330(a)(1) ................................................................................... 15

11 U.S.C. § 330(a)(3) ................................................................................... 16

11 U.S.C. § 331 .............................................................................................. 3

11 U.S.C. § 1107(a) ....................................................................................... 4

11 U.S.C. § 1108 ............................................................................................ 4

28 U.S.C. § 157 .............................................................................................. 3

28 U.S.C. § 157(b) ............................................................................................................... 3

28 U.S.C. § 1334 ................................................................................................................... 3

28 U.S.C. § 1408 ................................................................................................................... 3

28 U.S.C. § 1409 ................................................................................................................... 3

42 U.S.C. § 2000 ................................................................................................................. 16

**FEDERAL RULES**

Fed. R. Bankr. P. 1015(b) ..................................................................................................... 4

Fed. R. Bankr. P. 2014(a) ............................................................................................. 1, 4, 5

Fed. R. Bankr. P. 2016 .............................................................................................. 1, 3, 4, 5

Fed. R. Bankr. P. 2016(b) ..................................................................................................... 8

**STATE RULES**

Local Rules Rule 2016-1(a) ................................................................................................... 3

Local Rules Rule 5011-1(a) ................................................................................................... 3

**STATE REGULATIONS**

Order Instituting Rulemaking to Implement Public Utilities Code Section 451.2 ................................... 5

Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 ......................................................................................................................... 3

**LEGISLATIVE MATERIALS**

Senate Bill 901 ..................................................................................................................... 5

*General Information*

| Name of Applicant: | Munger, Tolles & Olson LLP |
|---|---|
| Authorized to Provide Services to: | PG&E Corporation and Pacific Gas and Electric Company |
| Petition Date: | January 29, 2019 |
| Date of Retention Order: | April 25, 2019, *nunc pro tunc* to January 29, 2019[1] |

*Summary of Fees and Expenses Sought In the Fee Application*

| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | January 29, 2019 through July 1, 2020 |
|---|---|
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $41,011,523.90 ($1,657,356.90 incurred for June 1, 2020 through July 1, 2020) |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $1,534,945.09 ($4,947.50 incurred for June 1, 2020 through July 1, 2020) |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $42,546,468.99 ($1,662,304.40 incurred for June 1, 2020 through July 1, 2020) |

*Rate Increases Applicable to the Fee Period*

| Total Amount of Compensation Sought For the Period, Calculated Using Rates as of the Date of Retention: | $39,852,754.00 |
|---|---|

*Summary of Past Requests for Compensation and Prior Payments*

| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $40,744,167.00 (Jan. 29, 2019 – May 31, 2020) |
|---|---|

---

[1] The *Order Authorizing Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Counsel for Certain Matters the Debtors Effective as of the Petition Date* [Docket No. 1677] was entered on April 25, 2019, as amended by the order entered on October 2, 2019 [Docket No. 4083] and the order entered November 15, 2019 [Docket No. 4757] (the "Retention Order").

| | |
|---|---|
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $1,529,997.59 (Jan. 29, 2019 – May 31, 2020) |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $29,540,693.50 (January 29, 2019 – January 31, 2020) |
| Total Expense Reimbursement Approved pursuant to the Interim Compensation Order to Date: | $857,456.26 (January 29, 2019 – January 31, 2020) |
| Total Compensation and Expense Reductions in Connection with Approved Interim Fee Applications: | $1,060,000.00 (January 29, 2019 – January 31, 2020) $330,000 pending approval for Fourth Interim Fee Application |
| Total Allowed Compensation Paid to Date: | $25,628,542.00 (January 29, 2019 – January 31, 2020) |
| Total Allowed Expenses Paid to Date: | $857,456.26 (January 29, 2019 – January 31, 2020) |
| Compensation Sought in This Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $5,071,970.40 (Feb. 1, 2020 – May 31, 2020) |
| Expenses Sought in This Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $368,095.38 (Feb. 1, 2020 – May 31, 2020) |

In accordance with the Local Rules for the Northern District of California (the "**Local Rules**"), Munger, Tolles & Olson LLP ("**MTO**"), attorneys to the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for certain matters, hereby submits its final fee application (this "**Fee Application**") for allowance on a final basis of compensation for professional services provided in the amount of $41,011,523.90 (of which $1,657,356.90 was incurred from June 1, 2020 through July 1, 2020) and reimbursement on a final basis of actual and necessary expenses in the amount of $1,534,945.09 (of which $4,947.50 was incurred from June 1, 2020 through July 1, 2020) that MTO incurred for the period from January 29, 2019 through July 1, 2020 (the "**Fee Period**").  In support of this Fee Application, MTO has filed the Declaration of Seth Goldman (the **"Goldman Declaration"**) concurrently with this Fee Application.  In further support of this Fee Application, MTO respectfully states as follows.

MTO submits the Fee Application as a final fee application in accordance with the *Order Pursuant to 11 U.S.C §§ 331 and 105(e) and Fed. R. Bankr. P. 2016 for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, entered on February 28, 2019 [Docket No. 701] (the "**Interim Compensation Procedures Order**") and the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization* dated June 19, 2020 [Docket No. 8048] (the "**Plan**").

## Jurisdiction and Basis for Relief

The Court has jurisdiction over this Fee Application under 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Local Rules.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court under 28 U.S.C. §§ 1408 and 1409.

The basis for the relief requested herein is section 330 of the Bankruptcy Code, rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1(a) of the  Local Rules, and the Interim Compensation Procedures Order.  MTO has also prepared this Fee Application in accordance with the *United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees*, effective February 19, 2014 (the "**Local Guidelines**"), and the U*.S. Trustee Guidelines for Reviewing Applications for*

*Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

<u>**Background**</u>

**A.     The Bankruptcy Filing and General Case Background**

On January 29, 2019 (the "**Petition Date**"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, or examiner has been appointed in either of the chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).

On February 12, 2019, the United States Trustee (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Creditors Committee**").  On February 15, 2019, the U.S. Trustee appointed an Official Committee of Tort Claimants (the "**Tort Claimants Committee**" and, together with the Creditors Committee, the "**Committees**").  Additional information regarding the circumstances leading to the commencement of the chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the *Amended Declaration of Jason P. Wells in Support of the First Day Motions and Related Relief* [Docket No. 263] (the "**Wells Declaration**").

On June 20, 2020, the Court's order confirming the Plan was entered [Docket No. 8053].  On July 1, 2020, the Plan went effective [Docket No. 8252].  Section 2.2(a) of the Plan provides that all final fee applications are to be filed within 60 days after the Effective Date of the Plan.

**B.     Debtors' Retention of MTO**

On April 1, 2019, the Debtors filed the *Application of Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Attorneys for Certain Matters for the Debtors Effective as of the Peittion Date* [Docket No. 1167] (the "**Retention Application**").  The declaration of Janet Loduca was filed on April 1, 2019 [Docket No. 1169] in support of the Retention Application.  The declaration of Henry Weissmann was filed in support of the Retention Application on April 1, 2019 [Docket No. 1168], as amended and supplemented by the amended declaration filed on April 2, 2019 [Docket No. 1181], the first, second,

third, and fourth supplemental declarations of Henry Weissmann filed on April 10, 2019 [Docket No. 1301], June 14, 2019 [Docket No. 2522], February 4, 2020 [Docket No. 5614] and May 8, 2020 [Docket No. 7137], the declaration in support of the first application to amend the retention order filed on September 18, 2019 [Docket No. 3929-1] and the declaration in support of the second application to amend the retention order filed on October 30, 2019 [Docket No. 4527-3] (collectively, the "**Weissmann Declarations**").

The *Order Authorizing Debtors Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Counsel for Certain Matters for the Debtors Effective as of the Petition Date* [Docket No. 1677] was entered on April 25, 2019.  On September 18, 2019, the Debtors filed an application to amend the April 25, 2019 retention order to clarify and expand the scope of the specific matters on which MTO is engaged to advise the Debtors [Docket No. 3929], and on October 2, 2019, the Court's order granting that application was entered [Docket No. 4083].  On October 30, 2019, the Debtors filed the second application to amend the April 25, 2019 retention order to clarify and expand the scope of the specific matters on which MTO is engaged to advise the Debtors [Docket No. 4527], and on November 15, 2019, the Court's order granting that second application was entered [Docket No. 4757].  The April 25, October 2, and November 15 orders authorizing the retention of MTO (collectively, the "**Retention Order**") are attached hereto as **Exhibit A.**

The Retention Order authorizes MTO to provide services as described in the Retention Application and Weissmann Declarations (the "**Specific Matters**"), including:

a.  Advising and representing the Debtors with respect to federal, state, and local laws and regulations as they relate to (1) wildfires and the effects of wildfire liabilities on the Debtors' businesses; (2) the relative jurisdiction of the California Public Utilities Commission ("**CPUC**"), the Federal Energy Regulatory Commission ("**FERC**"), and federal courts, including the Bankruptcy Court; and (3) motions and other negotiations and proceedings in the chapter 11 cases, and other legal proceedings, that may affect the interests of the CPUC and/or parties in CPUC proceedings involving the Debtors,

1  including matters that may affect or relate to the Debtors' management, governance,
2  structure, and rates;

3     b.  Advising and representing the Debtors in CPUC Proceedings, including but not limited
4  to: (a) R.19-01-006, Order Instituting Rulemaking to Implement Public Utilities Code
5  Section 451.2 Regarding Criteria and Methodology for Wildfire Cost Recovery
6  Pursuant to Senate Bill 901 ("**CPUC Proceeding R.19-01-006**"); (b) I.15-08-019,
7  Order Instituting Investigation on the Commission's Own Motion to Determine
8  Whether Pacific Gas and Electric Company and PG&E Corporation's Organizational
9  Culture and Governance Prioritize Safety ("**CPUC Proceeding I.15-08-019**"); (c)
10  A.19-02-016, Application of Pacific Gas and Electric Company for a Waiver of the
11  Capital Structure Condition ("**CPUC Proceeding A.19-02-016**"); (d) A.18-11-001,
12  Application of Pacific Gas and Electric Company to issue, sell, and deliver one or more
13  series of Debt Securities and to guarantee the obligations of others in respect of the
14  issuance of Debt Securities; to execute and deliver one or more indentures; to sell, lease,
15  assign, mortgage, or otherwise dispose of or encumber utility property; to issue, sell and
16  deliver in one or more series, cumulative Preferred Stock -- $25 Par Value, Preferred
17  Stock -- $100 Par Value, Preference Stock or any combination thereof; to utilize various
18  debt enhancement features; and enter into interest rate hedges ("**CPUC Proceeding**
19  **A.18-11-001**"); and (e) A.18-10-003, Application of Pacific Gas and Electric Company
20  to increase its authority to finance short-term borrowing needs and procurement-related
21  collateral costs by $2.0 billion to an aggregate amount not to exceed $6.0 billion
22  ("**CPUC Proceeding A.18-10-003**");

23     c.  Advising and representing the Utility regarding its rights and obligations under various
24  power purchase agreements, including in connection with *NextEra Energy, Inc., et al. v.*
25  *Pacific Gas and Electric Company*, FERC Docket No. 19-35-000, and *PG&E Corp. et*
26  *al. v. Federal Energy Regulatory Commission*, Adv. Proc. No. 19-03003 (N.D. Cal.);
27  advising and representing the Utility on any appeal from these matters and, potentially,
28  as an amicus curiae in other proceedings involving similar legal issues;

d.  Advising the Debtors regarding compliance with laws and regulations governing public utilities, including Division 1, Part 1 of the California Public Utilities Code and the CPUC's affiliate transaction rules (including Decision 06-12-029 and related decisions);

e.  Advising and representing the Debtors as necessary and appropriate with respect to potential actions by state government actors, including the legislature and the CPUC, that may affect or relate to the Debtors' reorganization, plan, and operations, including with respect to liability standards, insurance and related cost-spreading regimes, recovery of costs in rates and the Debtors' management, governance and structure;

f.  Advising and representing the Debtors with respect to issues arising under California law that may affect or relate to the Debtors' reorganization, plan and operations; California corporate law including but not limited to fiduciary duties and opinions regarding due authority; California law governing corporate forms; the California Public Records Act;

g.  Representing and advising the Debtors with regard to regulatory, corporate, transactional, and other legal issues associated with potential structural options in relation to electric distribution systems;

h.  Advising and representing the Debtors with regard to potential criminal, civil, and administrative liability in connection with the 2017 and 2018 Northern California wildfires, including:

   i.   Advising and representing the Debtors in civil or administrative proceedings relating to the 2017 and 2018 Northern California wildfires;

   ii.  Advising and representing the Debtors concerning the Butte County Settlement;

   iii. Coordinating with Debtors' counsel in civil actions and administrative proceedings arising from wildfires to provide advice regarding potential impact on and coordination with the Debtors' response to and positions in the criminal investigations and any resulting prosecutions;

iv.   Advising and representing the Debtors and coordinating with other counsel in connection with any possible or proposed resolutions or settlements of criminal, civil, or administrative liability arising from California wildfires;

i.   Representing the Debtors as co-counsel at trial in the first trial in the consolidated action captioned California North Bay Fire Cases, JCCP No. 4995 (Cal. Super. Ct.) (the "**Tubbs Fire Action**");

j.   Representing and advising the Debtors in connection with any other civil actions or proceedings arising out of or related to the Northern California wildfires;

k.   Representing and advising the Debtors in connection with CPUC Decision No. 18-01-022 and any related administrative or civil proceedings;

l.   Representing and advising the Debtors in connection with any civil, administrative, or criminal investigations or proceedings arising from the Kincade fire; and

m.   Providing all other necessary legal services for the Debtors, as related to the above matters, in connection with the above captioned chapter 11 cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

The terms of MTO's engagement are detailed in the engagement letters attached as Exhibits 1 through 6 to the initial Weissmann Declaration.

**C.    No Adverse Interest with Respect to the Specific Matters**

To the best of the Debtors' knowledge and as disclosed in the Weissmann Declarations, MTO does not hold or represents an interest adverse to the Debtors or their estates with respect to the Specific Matters.  MTO may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases. In the Weissmann Declarations, MTO disclosed its connections with parties in interest that it has been able to ascertain using its reasonable efforts.  MTO will update its disclosures as appropriate if MTO becomes aware of relevant and material new information.

MTO performed the services for which it is seeking compensation on behalf of the Debtors and

1    their estates, and not on behalf of any committee, creditor, or other entity.

2            Except to the extent of the advance payments paid to MTO that MTO previously disclosed to

3    this Court in the Weissmann Declarations, MTO has received no payment and no promises for

4    payment from any source other than the Debtors for services provided or to be provided in any

5    capacity whatsoever in connection with these chapter 11 cases.

6            Pursuant to Bankruptcy Rule 2016(b), MTO has not shared, nor has MTO agreed to share (a)

7    any compensation it has received or may receive with another party or person other than with the

8    partners, counsel, and associates of MTO or (b) any compensation another person or party has received

9    or may receive.

10                          **Summary of Interim Compensation and Monthly Fee Statements**

11           MTO has submitted monthly fee statements pursuant to the Interim Compensation Order for

12   professional services rendered and expenses incurred during the first interim fee period from January

13   29, 2019 through May 31, 2019.

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received | Amount of Expenses Received |
|---|---|---|---|---|---|---|
| 7/19/2019 | 1/29/2019 - 5/31/2019 | $6,653,996.00 | $99,363.65 | 8/9/2019 | $6,443,996.00 | $99,363.65 |
| **TOTAL** | --- | **$6,653,996.00** | **$99,363.65** | --- | **$6,443,996.00** | **$99,363.65** |

18           On July 15, 2019, MTO filed the *First Interim Fee Application of Munger, Tolles & Olson LLP*

19   *for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and*

20   *Debtors in Possession for Certain Matters from January 29, 2019 Through May 31, 2019* [Docket No.

21   2996] (the "**First Interim Application**").  That application was approved by the Court on February 4,

22   2020 in the amount of $6,543,359.65 ($6,443,996.00 in fees and $99,363.65 in expenses), which

23   incorporated a compromise reached with the Fee Examiner [Docket No. 5621].

24           MTO has filed monthly fee statements for June, July, August, and September of 2019 [Docket

25   Nos. 3807, 4117, 4576, & 4730].

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received (80%) | Amount of Expenses Received (100%) |
|---|---|---|---|---|---|---|
| 9/4/2019 | 6/1/2019 - 6/30/2019 | $2,181,357.00 | $32,451.74 | 9/25/2019 | $1,745,085.60 | $32,451.74 |
| 10/4/2019 | 7/1/2019 | $2,537,288.50 | $37,449.33 | 10/25/2019 | $2,029,830.80 | $37,449.33 |

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received (80%) | Amount of Expenses Received (100%) |
|---|---|---|---|---|---|---|
| | - 7/31/2019 | | | | | |
| 11/5/2019 | 8/1/2019 - 8/31/2019 | $2,100,807.00 | $20,385.85 | 11/26/2019 | $1,680,645.60 | $20,385.85 |
| 11/14/2019 | 9/1/2019 - 9/30/2019 | $2,432,283.00 | $25,717.21 | 12/5/2019 | $1,945,826.40 | $25,717.21 |
| **TOTAL** | --- | **$9,251,735.50** | **$116,004.13** | --- | **$7,401,388.40** | **$116,004.13** |

On November 15, 2019, MTO filed the *Second Interim Fee Application of Munger, Tolles & Olson LLP for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession for Certain Matters from June 1, 2019 Through September 30, 2019* [Docket No. 4758] (the "**Second Interim Application**").

MTO has filed monthly fee statements for October, November, December of 2019 and January of 2020 [Docket Nos. 4996, 5895, 6255, & 6437].

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received (80%) | Amount of Expenses Received (100%) |
|---|---|---|---|---|---|---|
| 12/5/2019 | 10/1/2019 - 10/31/2019 | $3,940,101.00 | $37,240.58 | 12/26/2019 | $3,152,080.80 | $37,240.58 |
| 2/25/2020 | 11/1/2019 - 11/30/2019 | $4,441,179.50 | $283,541.58 | 3/17/2020 | $3,552,943.60 | $283,541.58 |
| 3/11/2020 | 12/1/2019 - 12/31/2019 | $3,179,151.50 | $62,785.01 | 4/1/2020 | $2,543,321.20 | $62,785.01 |
| 3/11/2020 | 1/1/2020 - 1/31/2020 | $3,168,515.00 | $258,521.31 | 4/13/2020 | $2,534,812.00 | $258,521.31 |
| **TOTAL** | --- | **$14,728,947.00** | **$642,088.48** | | **$11,783,157.60** | **$642,088.48** |

On March 25, 2020, MTO filed the *Amended Third Interim Fee Application of Munger, Tolles & Olson LLP for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and Debtors in Possession for Certain Matters from October 1, 2019 Through January 31, 2020* [Docket No. 6485] (the "**Amended Third Interim Application**").  This reflected a reduction of $33,985 from the monthly fee statement for October 2019 to reflect the Court's ruling on non-working travel time and resulted in a request for $14,694,962.00 in fees for that interim fee period.

MTO reached agreement with the Fee Examiner regarding a compromise on the allowed amount of the Second and Amended Third Interim Applications, which was noticed for hearing on August 4 [D.N. 8389].  The Second Interim Application and Amended Third Interim Application were

approved by the Court on August 10, 2020 in the aggregate amount of $23,854,790.11
($23,096,697.50 in fees and $758,092.61 in expenses), which incorporated that compromise [Docket
No. 8389].

MTO has filed monthly fee statements for February, March, April and May of 2020 [Docket
Nos. 6812, 7404, 7693, & 8330].

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received (80%) | Amount of Expenses Received (100%) |
|---|---|---|---|---|---|---|
| 4/20/2020 | 2/1/2020 - 2/29/2020 | $3,226,216.50 | $53,526.73 | 5/11/2020 | $2,580,973.20 | $53,526.73 |
| 5/18/2020 | 3/1/2020 - 3/31/2020 | $3,113,746.50 | $314,568.65 | 6/8/2020 | $2,490,997.20 | $314,568.65 |
| 6/1/2020 | 4/1/2020 - 4/30/2020 | $2,344,579.00 | $195,573.83 | 6/22/2020 | - | - |
| 7/8/2020 | 5/1/2020 - 5/31/2020 | $1,458,931.50 | $108,872.12 | 7/29/2020 | - | - |
| **TOTAL** | **---** | **$10,143,473.50** | **$672,541.33** | | **$5,071,970.40** | **$368,095.38** |

On July 15, 2020, MTO filed the *Fourth Interim Fee Application of Munger, Tolles & Olson
LLP for Compensation for Services and Reimbursement of Expenses as Attorneys to the Debtors and
Debtors in Possession for Certain Matters from February 1, 2020 Through May 31, 2020* [Docket No.
8406] (the "**Fourth Interim Application**").

MTO reached agreement with the Fee Examiner regarding a compromise on the allowed
amount of the Fourth Interim Applications.  On August 30, 2020, the Fee Examiner noticed the Fourth
Interim Application for hearing on September 22, 2020 [Docket No. 8389], which reflects a reduction
of $330,000 in fees.  The amounts requested in this final Fee Application reflect this compromise and
reduction.

MTO has filed a monthly fee statement for June 1 through July 1 of 2020 [Docket No. 8852].

| Date Served | Period Covered | Total Fees | Total Expenses | Objection Deadline | Amount of Fees Received (80%) | Amount of Expenses Received (100%) |
|---|---|---|---|---|---|---|
| 8/24/2020 | 6/1/2020 - 7/1/2020 | $1,657,356.90 | $4,947.50 | 9/14/2020 | - | - |
| **TOTAL** | **---** | **$1,657,356.90** | **$4,947.50** | | **-** | **-** |

MTO seeks final approval of compensation for professional services rendered to the Debtors

during the Fee Period in the amount of $41,011,523.90 , and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $1,534,945.09, in each case net of the amounts paid as interim compensation awarded under section 331 of the Bankrutpcy Code.  During the Fee Period, MTO attorneys and paraprofessionals expended a total of 58,402.3 hours for which compensation is requested.

As disclosed in the First Interim Application, the retainer balance of $750,745.61 is being held by MTO until the conclusion of its engagement and applied to any fees or expenses awarded in this final Fee Aplication, with the remaining balance, if any, to be returned to the Debtors.

**Fees and Expenses Incurred During the Fee Period**

**A.    Customary Billing Disclosures**

MTO's hourly rates are set at a level designed to compensate MTO fairly for the work of its attorneys and paraprofessionals and to cover overhead and operating expenses.  The hourly rates and corresponding rate structure utilized by MTO in these chapter 11 cases are the same as the hourly rates and corresponding rate structure MTO uses for other corporate, regulatory, litigation, and restructuring related matters, whether in court or otherwise, regardless of whether a fee application is required.  MTO's rates and rate structure reflect the complex and time sensitive nature of the matters handled by MTO.  For the convenience of the Bankruptcy Court and all parties in interest, attached hereto as **Exhibit B** is MTO's budget and staffing plan for this Fee Period, and attached hereto as **Exhibit C** is a summary of blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.    Fees Incurred During the Fee Period**

MTO maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit D** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at MTO's current billing rates; and

- the number of rate increases since the inception of the cases (of which there has been one, effective as of January 1, 2020 [Docket No. 4922]).

## C.  Expenses Incurred During the Fee Period

MTO maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary, setting forth the total amount of reimbursement for the Fee Period with respect to each category of expenses for which MTO is seeking reimbursement.

### Summary of Legal Services Rendered During the Fee Period

Below is a summary, by subject matter categories (each, a "Matter Category") that MTO established for these chapter 11 cases in consultation with the Debtors, of the fees and hours billed for each Matter Category in the Fee Period (see **Exhibit F**):[2]

| Matter Number | Project Category Description | Hours | | Total Compensation | | Expenses | Total |
|---|---|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed | | |
| 020 | Legislative | 1,203 | 735.3 | $1,054,050.00 | $625,863.50 | - | $625,863.50 |
| 021 | Non-Bankruptcy Litigation – Criminal Wildfire Investigation | 75,698 | 29,127.2 | $40,151,558.00 | $19,162,723.00 | - | $19,149,546.00 |
| 022 | Non-Working Travel | 904 | 729.8 | $957,231.00 | $713,796.50 | - | $713,710.50 |
| 023 | Power Purchase Agreements (including Adversary Proceedings) | 1,015 | 1,460.7 | $979,113.00 | $1,172,533.00 | | $1,101,763.40 |
| 025 | Regulatory | 16,774 | 16,347.4 | $13,657,988.00 | $14,115,959.50 | | $14,115,959.50 |
| 026 | MTO Retention and Fee Applications | 915 | 764.2 | $738,713.00 | $518,179.50 | | $517,962.50 |
| 033 | TUB - Tubbs Fire state court litigation | 0 | 6,682.3 | $0.00 | $4,485,510.00 | | $4,485,510.00 |
| 034 | TUF - Tubbs Fire Estimation & Discovery and Investigation Related to Estimation | 21,548 | 0.0 | $12,131,940.00 | $0.00 | | $0.00 |
| 035 | Kincade | 4,230 | 2,515.2 | $3,021,775.00 | $1,651,857.50 | | $1,651,857.50 |

---

[2]   For each Matter Category, the chart also shows the amount budgeted by MTO in accordance with the staffing and budget plan provided to the Debtors as required under the guidelines adopted by the Office of the United States Trustee.

| Matter Number | Project Category Description | Hours | | Total Compensation | | Expenses | Total |
|---|---|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed | | |
| 036 | Inverse Condemnation Appeal | 125 | 40.2 | $126,250.00 | $39,351.00 | | $39,351.00 |
| Subtotal | | **122,412** | **58,402.3** | **$72,819,742.00** | **$42,486,773.50** | **$1,534,945.09** | **$44,021,718.59** |
| | Credit (1/29/19 -5/31/19) | | | | ($14,480.00) | | ($14,480.00) |
| | Credit (5/1/20 – 5/31/20) | | | | ($30,446.96) | | ($30,446.96) |
| | Credit (6/1/20 – 7/1/20) | | | | ($40,322.64) | | ($40,322.64) |
| | Interim Fee Reductions | | | | ($1,390,000.00) | | ($1,390,000.00) |
| **Total** | | **122,412** | **58,402.3** | **$72,819,742.00** | **$41,011,523.90** | **$1,534,945.09** | **$42,546,468.99** |

A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by MTO partners, associates and paraprofessionals by Matter Category, and the aggregate fees associated with each Matter Category is attached hereto as **Exhibit G**.  In addition, MTO's computerized records of time expended and expenses incurred providing professional services to the Debtors and their estates for January 29, 2019 through May 31, 2020 were attached to the four prior Interim Fee Applications and for the period June 1, 2020 through July 1, 2020 are attached hereto as **Exhibit H**.

The following paragraphs provide summary descriptions of the most significant services rendered by MTO during the Fee Period.  The descriptions are organized by Matter Category.[3]

### Legislative [Matter No. 020]

Total Fees:    $625,863.50
Total Hours:   735.3

This Matter Category records time spent by MTO attorneys and paraprofessionals related to legislative issues being considered by the state of California.  This work included review, analysis, research, and revision of proposed legislation related to wildfire liabilities and utility entities and their affiliates.  This work included advising the Debtors on these matters and representing the interests of the Debtors with the state of California and other stakeholders.

### Non-Bankruptcy Litigation / Wildfire (Criminal) [Matter No. 021]

Total Fees:    $19,162,723.00
Total Hours:   29,127.2

---

[3] For simplicity, the amounts shown for fees and hours do not reflect the compromises reached with the Fee Examiner on the First, Second, Third, and Fourth Interim Fee Applications.

This Matter Category relates to investigations and analysis of potential criminal liability in connection with the 2017 and 2018 Northern California wildfires.  This work includes extensive investigation and other discovery by MTO of the Debtors and communications with district attorneys offices within California and the Office of the Attorney General of the State of California.  It also involves the provision of information and documents to those offices, including in response to specific requests for documents and other information.  The investigation and discovery have required extensive travel by MTO and numerous interviews of the Debtors' personnel and former personnel and significant time for the review and analysis of substantial records and documents.  MTO also spent substantial time analyzing the information gathered and preparing presentations to, and meeting with, the Debtors as well as the district attorneys offices within California and the Office of the Attorney General of the State of California.  This matter category includes performing legal research and analysis and advising the Debtors on these matters and the October 2018 settlement with Butte County relating to the 2017 wildfires, and substantial time spent  preparing for and advising the Debtors regarding court proceedings on the 2018 Camp Fire.  Our work helped the Debtors reach resolutions related to the 2017 and 2018 Norther California wildfires.

### **Non-Working Travel [Matter No. 022]**

Total Fees:     $714,796.50
Total Hours:    729.8

This Matter Category reflects non-working travel time of MTO attorneys in providing services to the Debtors.  This includes travel to Northern California and other locations for board meetings, court hearings, meetings with government entities, and various interviews, data or document collection, and other meetings related to the Specific Matters.  The amount requested reflects the Court's ruling on the Fee Examiner motion heard on October 7, 2019 and further discussion with the Fee Examiner regarding non-working car travel time under which the first 1.5 hours of car travel time was not billed and the remaining time was billed at 50%.

**Power Purchase Agreements (including Adversary Proceedings) [Matter No. 023]**

Total Fees:    $1,172,533.00
Total Hours:   1,460.7

This Matter Category includes time spent by MTO attorneys and paraprofessionals providing services related to analysis of issues and appeals of disputes over the rejection of power purchase agreements in the Debtors' cases. This work has included analysis of legal issues, precedent, and the adversary proceeding before this court involving counterparties to these agreements and FERC, briefing on the appeals and other work to prepare for the appeal hearing, and advice to the Debtors regarding these matters.

**Regulatory Issues [Matter No. 025]**

Total Fees:    $14,115,959.50
Total Hours:   16,347.40

This Matter Category includes time spent by MTO attorneys and paraprofessionals regarding regulatory matters before the CPUC. This work has involved a number of CPUC matters, including those referenced above under Specific Matters, as well as the Order Instituting Investigation with respect to any plan of reorganization proposed in the Bankruptcy Cases (I.19-09-016) and related activities. MTO has also represented the Debtors in an application to issue securitized bonds in the amount of $7.5 billion based on the customer harm threshold decision of the CPUC (A.20-04-023), which bonds will allow the Debtors to retire the $6 billion of temporary utility debt, accelerate payments to fire victims, and improve the utility's credit ratings for the benefit of customers. In these various matters, MTO spent time reviewing filings and actions by the CPUC as well as other parties, conducting research on the issues raised by the CPUC, preparing submissions by the Debtors in the various CPUC matters, communicating with othe stakeholders (including the Governor's Office), and consulting with the Debtors. Significantly, MTO represented the Debtors before the CPUC in the Order Instituting Investigation, which culminated in the CPUC's approval of the Plan on June 1, 2020 and subsequent statement in these cases on June 26, 2020 [Docket No. 8132].

### Retention / Billing / Fee Applications: MTO [Matter No. 026]

Total Fees:     $518,179.50
Total Hours:   764.2

This Matter Category reflects time spent by MTO attorneys and paraprofessionals related to the retention of MTO by the Debtors.  This category includes time spent preparing the original and supplemental retention application, montly fee staetments, budgets, and interim fee applications.

### TUB - Tubbs Fire State Court Litigation (Judge Jackson) [Matter No. 033]

Total Fees:     $4,485,510.00
Total Hours:   6,682.3

This Matter Category includes time spent by MTO attorneys and paraprofessionals regarding the state court trial for the Tubbs fire in which MTO is co-counsel.  MTO worked alongside co-counsel to prepare the case for trial in early 2020 under intense time contraints.  Through theses efforts and the efforts to reach a global resolution of these cases, the Debtors reached agreement with all major constituents on the Plan without the need and additional expense of a state court trial.

### Kincade [Matter No. 035]

Total Fees:     $1,651,857.50
Total Hours:   2,515.2

This Matter Category includes time spent by MTO attorneys and paraprofessionals regarding the Kincade wildfire that occurred in 2019.  This work has involved analysis and review of relevant documents and records, interviews of relevant personnel, presentations to the Debtors, and coordination with co-counsel and the Debtors regarding the investigation.  This matter is ongoing and will continue after the Effective Date of the Plan.

### Actual and Necessary Expenses Incurred by MTO

As set forth in **Exhibit H** attached hereto, and as summarized in **Exhibit E** attached hereto, MTO has incurred a total of $1,534,945.09 in expenses on behalf of the Debtors during the Fee Period, of which $4,947.50 was incurred in the period from June 1, 2020 through July 1, 2020.  These charges are intended to reimburse MTO's direct operating costs, which are not incorporated into the MTO hourly billing rates.  MTO charges external copying at the provider's cost without markup.  Only

clients who actually use services of the types set forth in **Exhibit H** of this Fee Application are
separately charged for such services.

### Client Review of Billing Statements

Pursuant to the Local Guidelines, a cover letter was sent to the Debtors with a copy of the Fee
Application concurrently with the filing of this Fee Application.  The letter invites the Debtors to
discuss with MTO and/or the U.S. Trustee any objections, concerns, or questions the Debtors may
have with regard to the requested compensation and reimbursement set forth in the Fee Application.  A
copy of the transmittal letter is attached hereto as **Exhibit I**.

### Reasonable and Necessary Services Provided by MTO

**A.**     **Reasonable and Necessary Fees and Expenses Incurred in Providing Services to the
Debtors**

MTO respectfully submits that the professional services provided to the Debtors during the Fee
Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and
related matters.  MTO makes every reasonable effort to ensure that travel meals, hotel rates, and
airfares are reasonable and appropriate expenses for which to seek reimbursement.

MTO regularly reviews its bills to ensure that the Debtor is only billed for services that were
actual and necessary and, where appropriate, prorates expenses.

### MTO's Requested Compensation and Reimbursement Should be Allowed

Section 330 of the Bankruptcy Code provides that a court may award a professional employed
under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services
rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330
also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to
> an examiner, trustee under chapter 11, or professional person, the court
> shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;

(c)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske* (*In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988). In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F.2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases.).

In making a fee award, bankruptcy courts should consider the circumstances of the case, and the manner in which professional services were performed, as well as the results achieved. *Roberts,*

*Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet MPC Corp.)*, 251 B.R. 103, 108
(9th Cir. BAP 2000).  When determining whether the services were actual and necessary, "a
professional need demonstrate only that the services were reasonably likely to benefit the estate at the
time rendered." *Id.* at 108.  Thus, while it is a relevant factor, § 330(a) "does not require that the
services result in a material benefit to the estate in order for the professional to be compensated." *Id.*

MTO respectfully submits that the services for which is seeks compensation in this Fee
Application were, at the time rendered, beneficial to the Debtors and necessary to the administration of
these chapter 11 cases.  MTO believes that it performed the services for the Debtors economically,
effectively, and efficiently, and the results obtained benefited not only the Debtors, but were necessary
for the administration of the Debtors' cases.  MTO further submits that the compensation requested
herein is reasonable in light of the nature, extent and value of such services to the Debtors, and all
parties in interest and satisfy the *Johnson* factors.

During the Fee Period, MTO's hourly billing rates for attorneys ranged from $315.00 to
$1,500.00.  **Exhibit C** contains information regarding the blended hourly rates for MTO professionals
and paraprofessionals who rendered services to the Debtors in the Fee Period.  The hourly rates and
corresponding rate structure utilized by MTO in these chapter 11 cases are equivalent to the hourly
rates and corresponding rate structure used by MTO for corporate, regulatory, litigation, and
restructuring related matters, whether in court or otherwise, regardless of whether a fee application is
required.  MTO strives to be efficient in the staffing of matters.  These rates and the rate structure
reflect that such matters are typically national in scope and involve great complexity, are of significant
and material importance to our clients, and involve severe time pressures—all of which are present in
these chapter 11 cases.  MTO believes that its hourly rates are consistent with the rates charged
elsewhere by comparable professionals, including those retained in these chapter 11 cases.

In sum, MTO respectfully submits that the professional services provided by MTO on behalf of
the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the
complexity of these chapter 11 cases, the time expended by MTO, the nature and extent of MTO's
services provided, the value of MTO's services, and the cost of comparable services outside of
bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.

1    Accordingly, MTO respectfully requests approval of the compensation sought herein.

2    **Statement Regarding United States Trustee Guidelines**

3    The following information is provided in response to information requested in the guidelines

4    promulgated by the U.S. Trustee:

5    **Question:** Did MTO agree to any variations from, or alternatives to, MTO's standard or customary billing arrangements for this engagement?

6

7    **Response:** No.

8    **Question:** If the fees sought in this Fee Application as compared to the fees budgeted for the time period covered by this Fee Application are higher by 10% or more, did you discuss the reasons for the variation with the Debtors?

9

10   **Response:** The fees sought are not higher by 10% or more than budgeted.

11

12   **Question:** Have any of the professionals whose fees are sought in the Fee Application varied their rate based on the geographic location of the Debtors chapter 11 cases?

13

14   **Response:** No.

15   **Question:** Does the Fee Application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

16

17

18   **Response:** MTO is seeking compensation with respect to the approximately 6.8 hours and $4,197.00 in fees for the period June 1, 2020 through July 1, 2020 and approximately 287.2 hours and $198,840.00 in fees for the Fee Period spent reviewing or revising time records and preparing, reviewing, and revising invoices for privileged or confidential information.

19

20

21

22   **Question:** If the Fee Application includes any rate increase since retention, (i) Did your client review and approve those rate increases in advance?; and (ii) Did your client agree when retaining the law firm to accept all future rate increases?

23

24   **Response:** Yes.

     **Notice**

25   The Debtors will provide notice of this Fee Application in accordance with the Interim

26   Compensation Order.

27   **No Prior Request**

28   No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, MTO respectfully requests that the Bankruptcy Court enter an order: (a) awarding MTO compensation on a final basis for professional and paraprofessional services provided during the Fee Period in the amount of $41,011,523.90 and reimbursement on a final basis of actual and necessary expenses in the amount of $1,534,945.09, in each case net of the amounts paid as interim compensation awarded under section 331 of the Bankrutpcy Code; (b) authorizing and directing the Debtor to remit payment to MTO for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: August 31, 2020

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP


By:  /s/ Bradley Schneider
     Bradley Schneider

*Attorneys for Reorganized Debtors*

# EXHIBIT A

**<u>Exhibit A</u>**

**Retention Orders**

**Entered on Docket**
**April 25, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: April 24, 2019

_(signature)_

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

1  BRAD BRIAN (State Bar No. 79001)
   Brad.Brian@mto.com
2  THOMAS B. WALPER (State Bar No. 96
   thomas.walper@mto.com
3  HENRY WEISSMANN (State Bar No. 13
   henry.weissmann@mto.com
4  BRADLEY SCHNEIDER (State Bar No.
   bradley.schneider@mto.com
5  **MUNGER, TOLLES & OLSON LLP**
   350 South Grand Avenue
6  Fiftieth Floor
   Los Angeles, California 90071
7  Telephone:    (213) 683-9100
   Facsimile:    (213) 683-3702

8

9  _Proposed Attorneys for Debtors_
   _and Debtors in Possession_

10

11                 **UNITED STATES BANKRUPTCY COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
12                     **SAN FRANCISCO DIVISION**

13
   In re                                    Bankruptcy Case
14                                          No. 19-30088 (DM)
   PG&E CORPORATION,
15                                          Chapter 11
          -and-
16                                          (Lead Case)

17 PACIFIC GAS AND ELECTRIC
   COMPANY,                                 (Jointly Administered)
18              Debtors.
                                            **ORDER PURSUANT TO 11 U.S.C. § 327(e)**
19 ☐ Affects PG&E Corporation              **AND FED. R. BANKR. P. 2014(a) AND**
                                            **2016 FOR AUTHORITY TO RETAIN**
20 ☐ Affects Pacific Gas and Electric Company **AND EMPLOY MUNGER, TOLLES &**
   ☒ Affects both Debtors                   **OLSON LLP AS COUNSEL FOR**
21                                          **CERTAIN MATTERS THE DEBTORS**
                                            **EFFECTIVE AS OF THE PETITION**
22                                          **DATE**

23

24

25

26

27

28

Upon the Application, dated February 13, 2019 (the "**Application**"), of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to section 327(e) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for authority to retain and employ Munger, Tolles & Olson LLP ("**MTO**" or "**Firm**") as counsel for certain matters for the Debtors effective as of the Petition Date, under a general retainer, all as more fully set forth in the Application; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application, the Weissmann Declaration, the Loduca Declaration, and the Wells Declaration; and upon the record of the Hearing (if any was held) and all of the proceedings had before the Court; and this Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. This Application is granted as provided herein.

2. The Debtors are authorized, pursuant to section 327(e) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, to retain and employ MTO as counsel under the terms and conditions set forth in the Application and the Weissmann Declaration effective *nunc pro tunc* to the Petition Date.

3. The Weissmann Declaration sets for the services being provided by, and to be provided by, MTO to the Debtors with respect to the following matters (the "**Specific Matters**"):

   a. Advising and representing the Debtors with respect to federal, state, and local laws and regulations as they relate to (1) wildfires and the effects of wildfire liabilities on the Debtors' businesses; (2) the relative jurisdiction of the California Public Utilities Commission ("**CPUC**"), the Federal Energy Regulatory Commission ("**FERC**"), and federal courts, including the Bankruptcy Court; and (3) motions and other negotiations and proceedings in the Chapter 11 Cases, and other legal proceedings, that may affect the interests of the CPUC and/or parties in CPUC proceedings involving the Debtors, including matters that may affect or relate to the Debtors' management, governance, structure, and rates;

   b. Advising and representing the Debtors in CPUC Proceedings, including but not limited to: (a) R.19-01-006, Order Instituting Rulemaking to Implement Public Utilities Code Section 451.2 Regarding Criteria and Methodology for Wildfire Cost Recovery Pursuant to Senate Bill 901 ("**CPUC Proceeding R.19-01-006**"); (b) I.15-08-019, Order Instituting Investigation on the Commission's Own Motion to Determine Whether Pacific Gas and Electric Company and PG&E Corporation's Organizational Culture and Governance Prioritize Safety ("**CPUC Proceeding I.15-08-019**"); (c) A.19-02-016, Application of Pacific Gas and Electric Company for a Waiver of the Capital Structure Condition ("**CPUC Proceeding A.19-02-016**"); (d) A.18-11-001, Application of Pacific Gas and Electric Company to issue, sell, and deliver one or more series of Debt Securities and to guarantee the obligations of others in respect of the issuance of Debt Securities; to execute and deliver one or more indentures; to sell, lease, assign, mortgage, or otherwise dispose of or encumber utility property; to issue, sell and deliver in one or more series, cumulative Preferred Stock -- $25 Par

1   Value, Preferred Stock -- $100 Par Value, Preference Stock or any combination

2   thereof; to utilize various debt enhancement features; and enter into interest rate

3   hedges ("**CPUC Proceeding A.18-11-001**"); (e) A.18-10-003, Application of

4   Pacific Gas and Electric Company to increase its authority to finance short-term

5   borrowing needs and procurement-related collateral costs by $2.0 billion to an

6   aggregate amount not to exceed $6.0 billion ("**CPUC Proceeding A.18-10-**

7   **003**"); and (f) any other related or similar CPUC proceeding or other CPUC

8   proceeding arising from the matters for which MTO is representing the

9   Debtors;

10  c.   Advising and representing the Utility regarding its rights and obligations under

11       various power purchase agreements, including in connection with *NextEra*

12       *Energy, Inc., et al. v. Pacific Gas and Electric Company*, FERC Docket No. 19-

13       35-000, and *PG&E Corp. et al. v. Federal Energy Regulatory Commission*,

14       Adv. Proc. No. 19-03003 (N.D. Cal.); advising and representing the Utility on

15       any appeal from these matters and, potentially, as an amicus curiae in other

16       proceedings involving similar legal issues;

17  d.   Advising the Debtors regarding compliance with laws and regulations

18       governing public utilities, including Division 1, Part 1 of the California Public

19       Utilities Code and the CPUC's affiliate transaction rules (including Decision

20       06-12-029 and related decisions);

21  e.   Advising and representing the Debtors as necessary and appropriate with

22       respect to potential actions by state government actors, including the legislature

23       and the CPUC, that may affect or relate to the Debtors' reorganization, plan,

24       and operations, including with respect to liability standards, insurance and

25       related cost-spreading regimes, recovery of costs in rates and the Debtors'

26       management, governance and structure;

27  f.   Advising and representing the Debtors with respect to issues arising under

28       California law that may affect or relate to the Debtors' reorganization, plan and

operations; California corporate law including but limited to fiduciary duties and opinions regarding due authority; California law governing corporate forms; the California Public Records Act;

g. Advising and representing the Debtors with regard to potential criminal, civil, and administrative liability in connection with the 2017 and 2018 Northern California wildfires, including:

   i. Advising and representing the Debtors in civil or administrative proceedings relating to the 2017 and 2018 Northern California wildfires;

   ii. Advising and representing the Debtors concerning the Butte County Settlement;

   iii. Coordinating with Debtors' counsel in civil actions and administrative proceedings arising from wildfires to provide advice regarding potential impact on and coordination with the Debtors' response to and positions in the criminal investigations and any resulting prosecutions;

   iv. Advising and representing the Debtors and coordinating with other counsel in connection with any possible or proposed resolutions or settlements of criminal, civil, or administrative liability arising from California wildfires; and

h. Providing all other necessary legal services for the Debtors, as related to the above matters, in connection with the above captioned Chapter 11 Cases, including fact investigation, legal researching, briefing, argument, discovery, reorganization, plan and disclosure statement matters, appearance and participation in hearings, and communications and meetings with parties in interest.

4. MTO shall be compensated in accordance with, and will file, interim and final fee applications for allowance of its compensation and expenses and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Fee Guidelines, and any further order of the Court;

5.  MTO shall be reimbursed for reasonable and necessary expenses as provided by the Fee Guidelines;

6.  MTO is authorized without further order of the Court to apply amounts from the Retainer to compensate and reimburse MTO and the Economic Consultants for fees or expenses incurred prior to the Petition Date consistent with their ordinary course billing practices.  Notwithstanding anything to the contrary in the Engagement Letter, the Debtors are not obligated to replenish the Retainer.  MTO shall hold the balance of the Retainer until the conclusion of the MTO engagement and the payment of the fees, costs, and expenses of MTO as approved in the MTO final fee application, after which MTO shall return any remaining balance of the Retainer to the Debtors.

7.  MTO shall use its best efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases;

8.  Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application;

9.  MTO shall provide reasonable notice to the Debtors and the U.S. Trustee of any increase of MTO's hourly rates as set forth in the Weissmann Declaration;

10. To the extent the Application is inconsistent with this Order, the terms of the Order shall govern;

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**END OF ORDER**

**Entered on Docket**
**October 03, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   BRAD BRIAN (State Bar No. 79001)
    Brad.Brian@mto.com
2   THOMAS B. WALPER (State Bar No. 96
    thomas.walper@mto.com
3   HENRY WEISSMANN (State Bar No. 13
    henry.weissmann@mto.com
4   BRADLEY SCHNEIDER (State Bar No.
    bradley.schneider@mto.com
5   **MUNGER, TOLLES & OLSON LLP**
    350 South Grand Avenue
6   Fiftieth Floor
    Los Angeles, California 90071
7   Telephone:      (213) 683-9100
    Facsimile:      (213) 683-3702

8

9   *Proposed Attorneys for Debtors*
    *and Debtors in Possession*

10

Signed and Filed: October 2, 2019

DENNIS MONTALI
U.S. Bankruptcy Judge

11              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12                   **SAN FRANCISCO DIVISION**

13  | In re | Bankruptcy Case |
    |---|---|
    | PG&E CORPORATION, | No. 19-30088 (DM) |

14  Chapter 11

15       -and-                              (Lead Case)

16  PACIFIC GAS AND ELECTRIC
    COMPANY,                               (Jointly Administered)
                     Debtors.

17  ☐ Affects PG&E Corporation            **ORDER AMENDING ORDER**
                                          **PURSUANT TO 11 U.S.C. § 327(a) AND**
18  ☐ Affects Pacific Gas and Electric Company  **FED. R. BANKR. P. 2014(a) AND 2016**
    ☒ Affects both Debtors                **FOR AUTHORITY TO RETAIN AND**
19                                        **EMPLOY MUNGER, TOLLES & OLSON**
                                          **LLP AS COUNSEL FOR CERTAIN**
20                                        **MATTERS AS OF THE PETITION DATE**

21                                        [No hearing requested]

22                                        [Relates to Dkt. No. 1677]

23

24

25

26

27

28

Upon the application, dated September 18, 2019 (the "**Application to Amend**"), of PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), to amend *Order Pursuant to 11 U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger, Tolles & Olson LLP as Counsel for Certain Matters Effective as of the Petition Date* (the "**Retention Order**") [Dkt No. 1677]; and this Court having jurisdiction to consider the Application to Amend and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"); and consideration of the Application to Amend and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application to Amend and the Weissmann Declaration; and upon the record of the Hearing (if any was held) and all of the proceedings had before the Court; and this Court having found and determined that the relief sought in the Application to Amend is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and that the legal and factual bases set forth in the Application to Amend establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application to Amend is granted as provided herein.

2. The Retention Order is hereby amended to provide that the Specific Matters include:

    a. Representing and advising the Debtors with regard to regulatory, corporate, transactional, and other legal issues associated with potential structural options in relation to electric distribution systems;

   b. Representing the Debtors as co-counsel at trial in the first trial in the consolidated action captioned *California North Bay Fire Cases*, JCCP No. 4995 (Cal. Super. Ct.) (the "**Tubbs Fire Action**");

   c. Representing and advising the Debtors in connection with any other civil actions or proceedings arising out of or related to the Northern California wildfires.

3. Subject to the foregoing clarifying amendment, the Retention Order remains in effect and is incorporated herein by reference.

4. Notice of the Application to Amend as provided therein shall be deemed good and sufficient notice of the Application to Amend;

5. To the extent the Application to Amend is inconsistent with this Order, the terms of the Order shall govern;

6. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**END OF ORDER**

**Entered on Docket**
**November 15, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BRAD BRIAN (State Bar No. 79001)
   Brad.Brian@mto.com
2  THOMAS B. WALPER (State Bar No. 96
   thomas.walper@mto.com
3  HENRY WEISSMANN (State Bar No. 13
   henry.weissmann@mto.com
4  BRADLEY SCHNEIDER (State Bar No.
   bradley.schneider@mto.com
5  **MUNGER, TOLLES & OLSON LLP**
   350 South Grand Avenue
6  Fiftieth Floor
   Los Angeles, California 90071
7  Telephone:    (213) 683-9100
   Facsimile:    (213) 683-3702

8

9  *Proposed Attorneys for Debtors*
   *and Debtors in Possession*

10

Signed and Filed: November 14, 2019

DENNIS MONTALI
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Bankruptcy Case No. 19-30088 (DM) |
| PG&E CORPORATION, | |
|     -and- | Chapter 11 |
| PACIFIC GAS AND ELECTRIC COMPANY, | (Lead Case) |
|                Debtors. | (Jointly Administered) |
| ☐ Affects PG&E Corporation<br>☐ Affects Pacific Gas and Electric Company<br>☒ Affects both Debtors | **ORDER AMENDING ORDER PURSUANT TO 11 U.S.C. § 327(e) AND FED. R. BANKR. P. 2014(a) AND 2016 FOR AUTHORITY TO RETAIN AND EMPLOY MUNGER, TOLLES & OLSON LLP AS COUNSEL FOR CERTAIN MATTERS AS OF THE PETITION DATE** |
| | [No hearing requested] |
| | [Relates to Dkt. No. 1677] |

1        Upon the application, dated October 28, 2019 (the "**Second Application to Amend**"), of

2   PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as

3   debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-

4   captioned chapter 11 cases (the "**Chapter 11 Cases**"), to amend *Order Pursuant to 11 U.S.C.*

5   *§ 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ Munger,*

6   *Tolles & Olson LLP as Counsel for Certain Matters Effective as of the Petition Date* [Dkt No.

7   1677] (the "**Retention Order**"), as amended by that *Order Amending Order Pursuant to 11*

8   *U.S.C. § 327(e) and Fed. R. Bankr. P. 2014(a) and 2016 for Authority to Retain and Employ*

9   *Munger, Tolles & Olson LLP as Counsel for Certain Matters as of the Petition Date* [Dkt. No.

10  4083] (the "**First Amended Retention Order**"); and this Court having jurisdiction to consider the

11  Application to Amend and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and

12  the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24

13  and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the

14  Northern District of California (the "**Bankruptcy Local Rules**"); and consideration of the Second

15  Application to Amend and the requested relief being a core proceeding pursuant to 28 U.S.C.

16  § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

17  due and proper notice of the Second Application to Amend having been provided to the parties

18  listed therein, and it appearing that no other or further notice need be provided; and this Court

19  having reviewed the Second Application to Amend and the Weissmann Declaration; and upon the

20  record of the Hearing (if any was held) and all of the proceedings had before the Court; and this

21  Court having found and determined that the relief sought in the Second Application to Amend is

22  in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest;

23  and that the legal and factual bases set forth in the Second Application to Amend establish just

24  cause for the relief granted herein; and after due deliberation and sufficient cause appearing

25  therefor,

26        **IT IS HEREBY ORDERED THAT:**

27        1.   The Second Application to Amend is granted as provided herein.

28

2.  The Retention Order is hereby further amended to provide that the Specific Matters include:

    a.  Representing and advising the Debtors in connection with CPUC Decision No. 18-01-022 and any related administrative or civil proceedings;

    b.  Representing and advising the Debtors in connection with any civil, administrative, or criminal investigations or proceedings arising from the Kincade fire.

3.  Subject to the foregoing clarifying amendment and the First Amended Retention Order, the Retention Order remains in effect and is incorporated herein by reference;

4.  Notice of the Second Application to Amend as provided therein shall be deemed good and sufficient notice of the Second Application to Amend;

5.  To the extent the Second Application to Amend is inconsistent with this Order, the terms of this Order shall govern;

6.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**\*\*END OF ORDER\*\***

# EXHIBIT B

## Exhibit B

### Budget and Staffing Plan

### Aggregate for Matter Categories for the Period Beginning on January 29, 2019 and Ending on July 1, 2020

| Matter Number | Project Category Description | Hours Budgeted | Total Compensation Budgeted |
|---|---|---|---|
| **Applicable to the Debtors** | | | |
| 020 | Legislative Issues | 1,203 | $1,054,050.00 |
| 021 | Non-Bankruptcy Litigation / Wildfire (Criminal) | 75,698 | $40,151,558.00 |
| 022 | Non-Working Travel | 904[1] | $957,231.00 |
| 023 | Purchase Power Agreements (including Adversary Proceedings) | 1,015 | $979,113.00 |
| 025 | Regulatory Issues | 16,774 | $13,657,988.00 |
| 026 | Retention / Billing / Fee Applications: MTO | 915 | $738,713.00 |
| 033 | TUB - Tubbs Fire state court litigation | N/A | N/A |
| 034 | TUF – Tubbs Fire Estimation & Discovery and Investigation Related to Estimation | 21,548 | $12,131,940.00 |
| 035 | Kincade | 4,230 | $3,021,775.00 |
| 036 | Inverse Condemnation Appeal | 125 | $126,250.00 |
| **Total** | | **122,412** | **$72,819,742.00** |

---

[1] Non-working travel time is budgeted in accordance with the local guidelines of Judge Montali, which provide for up to two hours of non-working travel time for air travel to account for unavoidable non-working time such as going through airport security, and in accordance with an agreement with Mr. Bruce Markell, the fee examiner, for non-working time for car travel, which provides no compensation for the first 90 minutes of car travel and a 50% reduction for car travel in excess of 90 minutes.  The reduction of 50% is implemented by a 50% reduction in the car travel hours recorded by the timekeeper.

**Aggregate Staffing Plan Across All Matter Categories
for the Period Beginning on January 29, 2019 and Ending on July 1, 2020**

| Category of Timekeeper | Number of Timekeepers Expected to Work on the Matter Categories During the Budget Period | Weighted Average Hourly Rate |
|---|---|---|
| Partner | 17 | $1,139 |
| Of Counsel | 2 | $890 |
| Associate | 8 | $752 |
| Jr. Associate | 8 | $584 |
| Staff Attorney | 16 | $439 |
| eDiscovery Attorney | 1 | $593 |
| Paralegal | 8 | $369 |
| ALS | 3 | $416 |
| Case Clerks | 3 | $113 |
| Litigation Analyst | 1 | $113 |
| Library | 1 | $295 |
| **Total Attorney** | 51 | $681 |
| **Total Non-Attorney** | 16 | $305 |
| **Total** | 67 | $613 |

# EXHIBIT C

# Exhibit C

## Voluntary Rate Disclosures

Below is the blended hourly rate (billed amount / billed hours) by timekeeper category that was
billed to the Debtors during the Fee Period from January 29, 2019 through July 1, 2020.

| *Fees Billed by date Worked* | |
|---|---|

| Timekeeper Category | Blended Hourly Rates |
| | Billed in this Fee Application 1/29/19-7/1/20 (PG&E Timekeepers) |
|---|---|
| Partner | $ 1,142 |
| Of Counsel | $ 894 |
| Associate | $ 661 |
| eDiscovery Attorney | $ 575 |
| Staff Attorney | $ 426 |
| **Attorneys Total** | $ 768 |
| Paralegal | $ 353 |
| ALS | $ 415 |
| Case Clerk | $ 110 |
| Litigation Analyst | $ 110 |
| Library | $ 279 |
| **Paraprofessionals Total** | $ 372 |
| **Grand Total** | $ **727** |

# EXHIBIT D

**Exhibit B**
**Summary of Timekeepers for the period**
**Jan. 29, 2019 - July 1, 2020**

| NAME OF PROFESSIONAL: | POSITION | YEAR ADMITTED | 2019 HOURLY RATE | 2019 TOTAL HOURS BILLED | 2019 COMPENSATION | 2020 HOURLY RATE | 2020 TOTAL HOURS BILLED | 2020 COMPENSATION | TOTAL HOURS BILLED | TOTAL COMPENSATION | AREA OF PRACTICE / CONCENTRATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kevin S. Allred | Partner | 1986 | $950.00 | 552.8 | $525,160.00 | $1,020.00 | 864.2 | $881,484.00 | 1,417.0 | $1,406,644.00 | Litigation |
| Brad D. Brian | Partner | 1977 | $1,421.32 | 679.3 | $965,500.00 | $1,500.00 | 380.7 | $571,050.00 | 1,060.0 | $1,536,550.00 | Litigation |
| Zachary M. Briers | Partner | 2012 | $860.00 | 0.9 | $774.00 | | | | 0.9 | $774.00 | Litigation |
| Jennifer C. Broder | Partner | 2011 | $860.00 | 0.2 | $172.00 | | | | 0.2 | $172.00 | Corporate |
| Erin J. Cox | Partner | 2009 | $895.00 | 268.4 | $240,218.00 | $950.00 | 343.4 | $326,230.00 | 611.8 | $566,448.00 | Litigation |
| Robert L. Dell Angelo | Partner | 1992 | | | | $1,060.00 | 10.2 | $10,812.00 | 10.2 | $10,812.00 | Litigation |
| Lisa J. Demsky | Partner | 1996 | $995.00 | 1,807.2 | $1,798,164.00 | $1,060.00 | 439.5 | $465,870.00 | 2,246.7 | $2,264,034.00 | Litigation |
| Michael R. Doyen | Partner | 1982 | $1,300.00 | 1,559.4 | $2,027,220.00 | $1,320.00 | 735.1 | $970,332.00 | 2,294.5 | $2,997,552.00 | Litigation |
| David H. Fry | Partner | 1997 | $995.00 | 507.0 | $504,465.00 | $1,150.00 | 6.9 | $7,935.00 | 513.9 | $512,400.00 | Litigation |
| Elaine J. Goldenberg | Partner | 1997 | $995.00 | 373.7 | $371,831.50 | $1,060.00 | 95.6 | $101,336.00 | 469.3 | $473,167.50 | Appellate |
| David B. Goldman | Partner | 1991 | $995.00 | 26.5 | $26,367.50 | $1,150.00 | 32.7 | $37,605.00 | 59.2 | $63,972.50 | Taxation |
| Seth Goldman | Partner | 2002 | $995.00 | 194.0 | $193,030.00 | $1,150.00 | 599.7 | $689,655.00 | 793.7 | $882,685.00 | Restructuring |
| Bryan H. Heckenlively | Partner | 2009 | $895.00 | 60.7 | $54,326.50 | | | | 60.7 | $54,326.50 | Litigation |
| Jeffrey A. Heintz | Partner | 1985 | $950.00 | 1.5 | $1,425.00 | | | | 1.5 | $1,425.00 | Real Estate |
| Miriam Kim | Partner | 2002 | $895.00 | 314.1 | $281,119.50 | $950.00 | 90.7 | $86,165.00 | 404.8 | $367,284.50 | Litigation |
| Judith T. Kitano | Partner | 1988 | $1,100.00 | 6.9 | $7,590.00 | $1,220.00 | 36.4 | $44,408.00 | 43.3 | $51,998.00 | Corporate |
| Kelly L.C. Kriebs | Partner | 1999 | $1,100.00 | 9.5 | $10,450.00 | $1,150.00 | 127.0 | $146,050.00 | 136.5 | $156,500.00 | Corporate |
| Jeremy A. Lawrence | Partner | 2010 | | | | $920.00 | 4.6 | $4,232.00 | 4.6 | $4,232.00 | Litigation |
| C. David Lee | Partner | 1999 | | | | $1,220.00 | 41.7 | $50,874.00 | 41.7 | $50,874.00 | Corporate |
| Joseph D. Lee | Partner | 1982 | $995.00 | 6.3 | $6,268.50 | | | | 6.3 | $6,268.50 | Litigation |
| Cary B. Lerman | Partner | 1972 | | | | $1,320.00 | 6.1 | $8,052.00 | 6.1 | $8,052.00 | Litigation |
| Luis Li | Partner | 1991 | $1,300.00 | 401.9 | $522,470.00 | $1,400.00 | 0.4 | $560.00 | 402.3 | $523,030.00 | Litigation |
| Matthew A. MacDonald | Partner | 2008 | $895.00 | 632.1 | $565,729.50 | $950.00 | 0.4 | $380.00 | 632.5 | $566,109.50 | Litigation |
| Kathleen M. McDowell | Partner | 1984 | $895.00 | 611.3 | $547,113.50 | $920.00 | 65.7 | $60,444.00 | 677.0 | $607,557.50 | Appellate |
| Fred A. Rowley, Jr. | Partner | 1997 | $995.00 | 2.4 | $2,388.00 | $1,060.00 | 6.7 | $7,102.00 | 9.1 | $9,490.00 | Appellate/ Complex Litigation |
| James C. Rutten | Partner | 1997 | $995.00 | 546.8 | $544,066.00 | $1,060.00 | 467.7 | $495,762.00 | 1,014.5 | $1,039,828.00 | Litigation |
| Donald B. Verrilli | Partner | 1983 | $1,400.00 | 55.1 | $77,140.00 | $1,500.00 | 17.0 | $25,500.00 | 72.1 | $102,640.00 | Appellate |
| Thomas B. Walper | Partner | 1980 | $1,400.00 | 4.4 | $6,160.00 | | | | 4.4 | $6,160.00 | Restructuring |
| Henry Weissmann | Partner | 1987 | $1,300.00 | 1,627.7 | $2,116,010.00 | $1,400.00 | 1,310.9 | $1,835,260.00 | 2,938.6 | $3,951,270.00 | Litigation |
| Jeffrey R. Wu | Partner | 2007 | | | | $950.00 | 42.3 | $40,185.00 | 42.3 | $40,185.00 | Litigation |
| Mark R. Yohalem | Partner | 2005 | $895.00 | 13.1 | $11,724.50 | $990.00 | 24.7 | $24,453.00 | 37.8 | $36,177.50 | Appellate |
| Patrick J. Cafferty | Of Counsel | 1976 | $995.00 | 1.2 | $1,194.00 | | | | 1.2 | $1,194.00 | Environmental / Litigation |
| Kimberly A. Chi | Of Counsel | 2006 | | | | $920.00 | 11.0 | $10,120.00 | 11.0 | $10,120.00 | Finance |
| Sarah J. Cole | Of Counsel | 2002 | $890.00 | 495.5 | $440,995.00 | $890.00 | 1,302.9 | $1,159,581.00 | 1,798.4 | $1,600,576.00 | Litigation |
| Alan V. Friedman | Of Counsel | 1966 | $890.00 | 0.9 | $801.00 | | | | 0.9 | $801.00 | Appellate |
| Michael E. Greaney | Of Counsel | 1996 | $890.00 | 60.6 | $53,934.00 | | | | 60.6 | $53,934.00 | Corporate / Real Estate |
| Bradley R. Schneider | Of Counsel | 2004 | $890.00 | 69.3 | $61,677.00 | $950.00 | 127.4 | $121,030.00 | 196.7 | $182,707.00 | Restructuring |
| Matthew S. Schonholz | Of Counsel | 2005 | | | | $920.00 | 30.2 | $27,784.00 | 30.2 | $27,784.00 | Taxation |
| Shannon Aminirad | Associate | 2018 | $460.00 | 114.8 | $52,808.00 | | | | 114.8 | $52,808.00 | Litigation |
| Grant R. Arnow | Associate | 2017 | $535.00 | 1,236.5 | $661,527.50 | $665.00 | 13.4 | $8,911.00 | 1,249.9 | $670,438.50 | Litigation |
| Nick Axelrod | Associate | 2013 | $775.00 | 2,351.9 | $1,822,722.50 | $845.00 | 839.8 | $709,631.00 | 3,191.7 | $2,532,353.50 | Litigation |
| Michael C. Baker | Associate | 2016 | $625.00 | 1,508.7 | $942,937.50 | $725.00 | 318.1 | $230,622.50 | 1,826.8 | $1,173,560.00 | Litigation |
| Sean P. Barry | Associate | 2018 | $460.00 | 655.7 | $301,622.00 | | | | 655.7 | $301,622.00 | Litigation |
| Andre W. Brewster | Associate | 2015 | $685.00 | 635.1 | $435,043.50 | $780.00 | 512.4 | $399,672.00 | 1,147.5 | $834,715.50 | Litigation |
| Wesley T.L. Burrell | Associate | 2011 | $810.00 | 329.9 | $267,219.00 | | | | 329.9 | $267,219.00 | Litigation |
| Graham B. Cole | Associate | 2014 | | | | $820.00 | 309.1 | $253,462.00 | 309.1 | $253,462.00 | Litigation |

**Exhibit 9**
Summary of Timekeepers for the period
Jan. 29, 2019 - July 1, 2020

| NAME OF PROFESSIONAL: | POSITION | YEAR ADMITTED | 2019 HOURLY RATE | 2019 TOTAL HOURS BILLED | 2019 COMPENSATION | 2020 HOURLY RATE | 2020 TOTAL HOURS BILLED | 2020 COMPENSATION | TOTAL HOURS BILLED | TOTAL COMPENSATION | AREA OF PRACTICE / CONCENTRATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Anne K. Conley | Associate | 2015 | $685.00 | 7.6 | $5,206.00 | | | | 7.6 | $5,206.00 | Litigation |
| Allison M. Day | Associate | 2015 | $685.00 | 311.4 | $213,309.00 | $780.00 | 2.9 | $2,262.00 | 314.3 | $215,571.00 | Litigation |
| Raquel E. Dominguez | Associate | 2019 | $460.00 | 170.0 | $78,200.00 | $490.00 | 671.6 | $329,084.00 | 841.6 | $407,284.00 | Litigation |
| Matthew K. Donohue | Associate | 2015 | $750.00 | 0.3 | $225.00 | | | | 0.3 | $225.00 | Litigation |
| Nicholas D. Fram | Associate | 2012 | | | | $860.00 | 43.3 | $37,238.00 | 43.3 | $37,238.00 | Litigation |
| Brendan Gants | Associate | 2016 | $750.00 | 324.6 | $243,450.00 | $820.00 | 117.2 | $96,104.00 | 441.8 | $339,554.00 | Litigation |
| Alexander S. Gorin | Associate | 2017 | $535.00 | 693.5 | $371,022.50 | $665.00 | 315.4 | $209,741.00 | 1,008.9 | $580,763.50 | Litigation |
| Skylar B. Grove | Associate | 2015 | $685.00 | 196.2 | $134,397.00 | $780.00 | 534.4 | $416,832.00 | 730.6 | $551,229.00 | Litigation |
| Lauren M. Harding | Associate | 2015 | $685.00 | 1,863.1 | $1,276,223.50 | $780.00 | 411.2 | $320,736.00 | 2,274.3 | $1,596,959.50 | Litigation |
| Jan W. Jorritsma | Associate | 2018 | $460.00 | 392.8 | $180,688.00 | | | | 392.8 | $180,688.00 | Litigation |
| Erinma E. Kalu | Associate | 2019 | $460.00 | 293.8 | $135,148.00 | | | | 293.8 | $135,148.00 | Litigation |
| Natalie A. Karl | Associate | 2017 | | | | $665.00 | 343.1 | $228,161.50 | 343.1 | $228,161.50 | Corporate |
| Lloyd Marshall | Associate | 2018 | $460.00 | 254.7 | $117,162.00 | $565.00 | 528.0 | $298,320.00 | 782.7 | $415,482.00 | Litigation |
| Megan L. McCreadie | Associate | 2017 | $535.00 | 337.0 | $180,295.00 | $665.00 | 681.1 | $452,931.50 | 1,018.1 | $633,226.50 | Litigation |
| Michele C. Nielsen | Associate | 2016 | $625.00 | 485.0 | $303,125.00 | $725.00 | 2.6 | $1,885.00 | 487.6 | $305,010.00 | Litigation |
| Alexandra Peacock | Associate | 2016 | | | | $725.00 | 4.9 | $3,552.50 | 4.9 | $3,552.50 | Litigation |
| Anthony J. Ramirez | Associate | 2016 | $625.00 | 108.4 | $67,750.00 | | | | 108.4 | $67,750.00 | Corporate |
| Teresa A. Reed Dippo | Associate | 2015 | $685.00 | 594.4 | $407,164.00 | $780.00 | 677.6 | $528,528.00 | 1,272.0 | $935,692.00 | Litigation |
| Lauren Ross | Associate | 2016 | $625.00 | 336.5 | $210,312.50 | | | | 336.5 | $210,312.50 | Litigation |
| Giovanni S. Saarman Gonzalez | Associate | 2016 | $625.00 | 1,606.0 | $1,003,750.00 | $725.00 | 1,122.5 | $813,812.50 | 2,728.5 | $1,817,562.50 | Litigation |
| Tori N. Stilwell | Associate | 2019 | $315.00 | 63.3 | $19,939.50 | | | | 63.3 | $19,939.50 | Litigation |
| Trevor N. Templeton | Associate | 2016 | $685.00 | 665.7 | $456,004.50 | | | | 665.7 | $456,004.50 | Litigation |
| Cobus van der Ven | Associate | 2017 | | | | $665.00 | 113.3 | $75,344.50 | 113.3 | $75,344.50 | Litigation |
| David W. Walchak | Associate | 2018 | $460.00 | 218.3 | $100,418.00 | | | | 218.3 | $100,418.00 | Litigation |
| Bobby Malhotra | eDiscovery Attorney | 2008 | $575.00 | 1.9 | $1,092.50 | | | | 1.9 | $1,092.50 | N/A |
| Mark M. Chowdhury | Staff Counsel | 1991 | $380.00 | 1,026.2 | $389,956.00 | $405.00 | 116.2 | $47,061.00 | 1,142.4 | $437,017.00 | N/A |
| Lisa A. Clark | Staff Counsel | 2001 | $460.00 | 94.5 | $43,470.00 | | | | 94.5 | $43,470.00 | N/A |
| Michael Y. Doko | Staff Counsel | 1998 | $405.00 | 815.4 | $330,237.00 | $430.00 | 93.3 | $40,119.00 | 908.7 | $370,356.00 | N/A |
| Candice Fuller | Staff Counsel | 2014 | $460.00 | 299.9 | $137,954.00 | $490.00 | 76.7 | $37,583.00 | 376.6 | $175,537.00 | N/A |
| Eric J. Kananen | Staff Counsel | 2001 | $460.00 | 20.2 | $9,292.00 | | | | 20.2 | $9,292.00 | N/A |
| Kevin Y. Kim | Staff Counsel | 2018 | $405.00 | 117.6 | $47,628.00 | | | | 117.6 | $47,628.00 | N/A |
| Michael L. Lerew | Staff Counsel | 1993 | $380.00 | 561.7 | $213,446.00 | $405.00 | 45.1 | $18,265.50 | 606.8 | $231,711.50 | N/A |
| Shelley Lipman | Staff Counsel | 1993 | $380.00 | 834.2 | $316,996.00 | $405.00 | 114.9 | $46,534.50 | 949.1 | $363,530.50 | N/A |
| Susan Liu | Staff Counsel | 2001 | $460.00 | 750.4 | $345,184.00 | $490.00 | 124.8 | $61,152.00 | 875.2 | $406,336.00 | N/A |
| Terence M. McKiernan | Staff Counsel | 1999 | $460.00 | 694.0 | $319,240.00 | $490.00 | 178.1 | $87,269.00 | 872.1 | $406,509.00 | N/A |
| Lisa M. McLean | Staff Counsel | 2001 | $380.00 | 345.3 | $131,214.00 | $405.00 | 44.6 | $18,063.00 | 389.9 | $149,277.00 | N/A |
| Hadi Motiee | Staff Counsel | 2007 | $460.00 | 205.0 | $94,300.00 | $490.00 | 51.4 | $25,186.00 | 256.4 | $119,486.00 | N/A |
| Marcia B. Osborne | Staff Counsel | 1989 | $405.00 | 854.8 | $346,194.00 | $430.00 | 23.5 | $10,105.00 | 878.3 | $356,299.00 | N/A |
| Doris R. Perl | Staff Counsel | 1990 | $460.00 | 547.8 | $251,988.00 | $490.00 | 97.8 | $47,922.00 | 645.6 | $299,910.00 | N/A |
| Mark M. Perl | Staff Counsel | 1991 | $460.00 | 566.4 | $260,544.00 | $490.00 | 114.0 | $55,860.00 | 680.4 | $316,404.00 | N/A |
| Allison E. Rector | Staff Counsel | 2018 | $405.00 | 235.2 | $95,256.00 | $430.00 | 109.8 | $47,214.00 | 345.0 | $142,470.00 | N/A |
| Jarett D. Reid | Staff Counsel | 2010 | $405.00 | 398.1 | $161,230.50 | $430.00 | 54.7 | $23,521.00 | 452.8 | $184,751.50 | N/A |
| Barni Rothman | Staff Counsel | 1985 | $405.00 | 273.0 | $110,565.00 | $430.00 | 42.8 | $18,404.00 | 315.8 | $128,969.00 | N/A |
| Arjang Seraji | Staff Counsel | 1997 | $460.00 | 725.0 | $333,500.00 | $490.00 | 103.0 | $50,470.00 | 828.0 | $383,970.00 | N/A |
| Steven D. Valentine | Staff Counsel | 1997 | $460.00 | 204.8 | $94,208.00 | | | | 204.8 | $94,208.00 | N/A |
| Francoise Baldwin | Paralegal | N/A | $270.00 | 55.9 | $15,093.00 | | | | 55.9 | $15,093.00 | N/A |
| Alicia Barlow | Paralegal | N/A | $325.00 | 26.6 | $8,645.00 | | | | 26.6 | $8,645.00 | N/A |
| Ramon K. Castillo | Paralegal | N/A | | | | $345.00 | 965.9 | $333,235.50 | 965.9 | $333,235.50 | N/A |

**Exhibit**
**Summary of Timekeepers for the period**
**Jan. 29, 2019 - July 1, 2020**

| NAME OF PROFESSIONAL: | POSITION | YEAR ADMITTED | 2019 HOURLY RATE | 2019 TOTAL HOURS BILLED | 2019 COMPENSATION | 2020 HOURLY RATE | 2020 TOTAL HOURS BILLED | 2020 COMPENSATION | TOTAL HOURS BILLED | TOTAL COMPENSATION | AREA OF PRACTICE / CONCENTRATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jennifer Galindo | Paralegal | N/A | $380.00 | 152.9 | $58,102.00 | $395.00 | 15.1 | $5,964.50 | 168.0 | $64,066.50 | N/A |
| Bruce M. Gordon | Paralegal | N/A | $270.00 | 170.5 | $46,035.00 | $345.00 | 155.1 | $53,509.50 | 325.6 | $99,544.50 | N/A |
| Arn Jacobsen | Paralegal | N/A | $380.00 | 89.2 | $33,896.00 | $395.00 | 13.5 | $5,332.50 | 102.7 | $39,228.50 | N/A |
| Michael J. Lamb | Paralegal | N/A | $380.00 | 429.3 | $163,134.00 | $395.00 | 0.7 | $276.50 | 430.0 | $163,410.50 | N/A |
| Melissa Lee-Segovia | Paralegal | N/A | $325.00 | 45.2 | $14,690.00 | | | | 45.2 | $14,690.00 | N/A |
| Gary LeGault | Paralegal | N/A | $270.00 | 28.0 | $7,560.00 | | | | 28.0 | $7,560.00 | N/A |
| Nicholas Martin | Paralegal | N/A | $325.00 | 16.5 | $5,362.50 | | | | 16.5 | $5,362.50 | N/A |
| Danny R. Munson | Paralegal | N/A | $380.00 | 43.1 | $16,378.00 | $395.00 | 21.4 | $8,453.00 | 64.5 | $24,831.00 | N/A |
| Larry M. Polon | Paralegal | N/A | $325.00 | 174.9 | $56,842.50 | $345.00 | 220.1 | $75,934.50 | 395.0 | $132,777.00 | N/A |
| Cynthia R. Richardson | Paralegal | N/A | $380.00 | 265.8 | $101,004.00 | $395.00 | 254.8 | $100,646.00 | 520.6 | $201,650.00 | N/A |
| Steven Shao | Paralegal | N/A | $380.00 | 0.7 | $266.00 | | | | 0.7 | $266.00 | N/A |
| Justin A. Wilson | Paralegal | N/A | $325.00 | 21.3 | $6,922.50 | | | | 21.3 | $6,922.50 | N/A |
| Victor H. Gonzales | ALS | N/A | $350.00 | 541.0 | $189,350.00 | $370.00 | 58.9 | $21,793.00 | 599.9 | $211,143.00 | N/A |
| Lawrence Jayme | ALS | N/A | $350.00 | 11.6 | $4,060.00 | | | | 11.6 | $4,060.00 | N/A |
| Bowe Kurowski | ALS | N/A | $430.00 | 590.3 | $253,829.00 | $455.00 | 210.5 | $95,777.50 | 800.8 | $349,606.50 | N/A |
| Bryan D. Loper | ALS | N/A | $430.00 | 66.8 | $28,724.00 | | | | 66.8 | $28,724.00 | N/A |
| Phillip E. Nickels, Jr. | ALS | N/A | $430.00 | 119.8 | $51,514.00 | | | | 119.8 | $51,514.00 | N/A |
| Jason D. Troff | ALS | N/A | $430.00 | 854.1 | $367,263.00 | $455.00 | 149.9 | $68,204.50 | 1,004.0 | $435,467.50 | N/A |
| Marissa E. Andrea | Library | N/A | $245.00 | 25.2 | $6,174.00 | $345.00 | 4.3 | $1,483.50 | 29.5 | $7,657.50 | N/A |
| Agnes O. Villero | Library | N/A | $245.00 | 37.3 | $9,138.50 | $345.00 | 19.1 | $6,589.50 | 56.4 | $15,728.00 | N/A |
| Alan S. Shaw-Krivosh | Litigation Analyst | N/A | $110.00 | 29.4 | $3,234.00 | | | | 29.4 | $3,234.00 | N/A |
| Benjamin J. Shin | Litigation Analyst | N/A | $110.00 | 9.3 | $1,023.00 | | | | 9.3 | $1,023.00 | N/A |
| Nicholas C. Wiley | Litigation Analyst | N/A | $110.00 | 18.0 | $1,980.00 | | | | 18.0 | $1,980.00 | N/A |
| Noemi Contreras | Case Clerk | N/A | $110.00 | 3.0 | $330.00 | | | | 3.0 | $330.00 | N/A |
| Milagros R. D'Albert | Case Clerk | N/A | $110.00 | 4.3 | $473.00 | | | | 4.3 | $473.00 | N/A |
| Nelson Marinero | Case Clerk | N/A | $110.00 | 60.5 | $6,655.00 | | | | 60.5 | $6,655.00 | N/A |
| Jennifer C. Mendoza | Case Clerk | N/A | $110.00 | 17.2 | $1,892.00 | $115.00 | 9.6 | $1,104.00 | 26.8 | $2,996.00 | N/A |
| Frank G. Rivera | Case Clerk | N/A | $110.00 | 4.0 | $440.00 | | | | 4.0 | $440.00 | N/A |
| **Total Professionals:** | | | | **40,129.0** | **$27,446,658.50** | | **18,273.3** | **$15,040,115.00** | **58,402.3** | **$42,486,773.50** | |
| Credit (Adjustment of hourly rate from January 29, 2019 through May 31, 2019 by $100 (14.48 hours). | | | | | | | | | | -$14,480.00 | |
| Credit (Kelly LC Kriebs 5/1/20 - 5/31/20) | | | | | | | | | | -$30,446.96 | |
| Credit (Kelly LC Kriebs 6/1/20 - 7/1/20) | | | | | | | | | | -$40,322.64 | |
| Interim Fee Reductions | | | | | | | | | | -$1,390,000.00 | |
| **TOTAL HOURS AND FEES** | | | | | | | | | | **$41,011,523.90** | |

**Exhibit D**

**Summary of Timekeepers for the period**

**June 1, 2020 – July 1, 2020**

| NAME OF PROFESSIONAL | POSITION | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION | AREA OF PRACTICE / CONCENTRATION |
|---|---|---|---|---|---|---|
| Kevin S. Allred | Partner | 1986 | $1,020.00 | 84.1 | $85,782.00 | Litigation |
| Brad D. Brian | Partner | 1977 | $1,500.00 | 57.7 | $86,550.00 | Litigation |
| Erin J. Cox | Partner | 2009 | $950.00 | 45.3 | $43,035.00 | Litigation |
| Lisa J. Demsky | Partner | 1996 | $1,060.00 | 27.1 | $28,726.00 | Litigation |
| Michael R. Doyen | Partner | 1982 | $1,320.00 | 133.0 | $175,560.00 | Litigation |
| David H. Fry | Partner | 1997 | $1,150.00 | 0.5 | $575.00 | Litigation |
| Elaine J. Goldenberg | Partner | 1997 | $1,060.00 | 9.6 | $10,176.00 | Appellate |
| Seth Goldman | Partner | 2002 | $1,150.00 | 141.9 | $163,185.00 | Restructuring |
| Miriam Kim | Partner | 2002 | $950.00 | 2.6 | $2,470.00 | Litigation |
| Judith T. Kitano | Partner | 1988 | $1,220.00 | 30.6 | $37,332.00 | Corporate |
| Kelly LC Kriebs | Partner | 1999 | $1,150.00 | 52.6 | $60,490.00 | Corporate |
| Jeremy A. Lawrence | Partner | 2010 | $920.00 | 4.6 | $4,232.00 | Litigation |
| C. David Lee | Partner | 2000 | $1,220.00 | 10.6 | $12,932.00 | Corporate |
| Fred A. Rowley, Jr. | Partner | 1997 | $1,060.00 | 0.2 | $212.00 | Appellate/ Complex Litigation |
| James C. Rutten | Partner | 1997 | $1,060.00 | 41.4 | $43,884.00 | Litigation |
| Donald B. Verilli | Partner | 1983 | $1,500.00 | 3.2 | $4,800.00 | Appellate |
| Henry Weissmann | Partner | 1987 | $1,400.00 | 154.1 | $215,740.00 | Litigation |
| Jeffrey Y. Wu | Partner | 2007 | $950.00 | 16.4 | $15,580.00 | Litigation |
| Mark R. Yohalem | Partner | 2005 | $990.00 | 0.9 | $891.00 | Appellate |
| Kimberly A. Chi | Of Counsel | 2006 | $920.00 | 8.2 | $7,544.00 | Finance |
| Sarah J. Cole | Of Counsel | 2002 | $890.00 | 234.3 | $208,527.00 | Litigation |
| Nick Axelrod | Associate | 2013 | $845.00 | 120.0 | $101,400.00 | Litigation |
| Andre W. Brewster | Associate | 2015 | $780.00 | 45.9 | $35,802.00 | Litigation |
| Graham B. Cole | Associate | 2015 | $820.00 | 77.6 | $63,632.00 | Litigation |
| Raquel E. Dominguez | Associate | 2019 | $490.00 | 129.7 | $63,553.00 | Litigation |
| Nicholas D. Fram | Associate | 2012 | $860.00 | 5.4 | $4,644.00 | Litigation |

| NAME OF PROFESSIONAL | POSITION | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION | AREA OF PRACTICE / CONCENTRATION |
|---|---|---|---|---|---|---|
| Brendan Gants | Associate | 2016 | $820.00 | 13.6 | $11,152.00 | Litigation |
| Alexander S. Gorin | Associate | 2017 | $665.00 | 0.5 | $332.50 | Litigation |
| Skylar B. Grove | Associate | 2015 | $780.00 | 18.8 | $14,664.00 | Litigation |
| Lauren M. Harding | Associate | 2015 | $780.00 | 17.6 | $13,728.00 | Litigation |
| Natalie A. Karl | Associate | 2017 | $665.00 | 50.8 | $33,782.00 | Corporate |
| Lloyd Marshall | Associate | 2018 | $565.00 | 13.5 | $7,627.50 | Litigation |
| Megan L. McCreadie | Associate | 2017 | $665.00 | 6.7 | $4,455.50 | Litigation |
| Alexandra Peacock | Associate | 2017 | $725.00 | 2.8 | $2,030.00 | Corporate |
| Teresa A. Reed Dippo | Associate | 2015 | $780.00 | 15 | $11,700.00 | Litigation |
| Giovanni S. Saarman Gonzalez | Associate | 2016 | $725.00 | 91.2 | $66,120.00 | Litigation |
| Cobus van der Ven | Associate | 2017 | $665.00 | 2.8 | $1,862.00 | Litigation |
| Michael Y. Doko | Staff Counsel | 1998 | $430.00 | 16.0 | $6,880.00 | N/A |
| Susan Liu | Staff Counsel | 2001 | $490.00 | 22.9 | $11,221.00 | N/A |
| Terence M. McKiernan | Staff Counsel | 1999 | $490.00 | 3.0 | $1,470.00 | N/A |
| Allison E. Rector | Staff Counsel | 2018 | $430.00 | 5.2 | $2,236.00 | N/A |
| Ramon K. Castillo | Paralegal | N/A | $345.00 | 139.2 | $48,024.00 | N/A |
| Bruce M. Gordon | Paralegal | N/A | $345.00 | 7.7 | $2,656.50 | N/A |
| Larry M. Polon | Paralegal | N/A | $345.00 | 1.3 | $448.50 | N/A |
| Cynthia R. Richardson | Paralegal | N/A | $395.00 | 8.8 | $3,476.00 | N/A |
| Bowe Kurowski | ALS | N/A | $455.00 | 12.9 | $5,869.50 | N/A |
| Jason D. Troff | ALS | N/A | $455.00 | 2.5 | $1,137.50 | N/A |
| **Total Professionals:** | | | | **1,890.3** | **$1,728,126.50** | |
| Kelly LC Kriebs (Credit for May 1, 2020-May 31, 2020 fee period.) | Partner | 1999 | | | -$30,446.96 | |
| Kelly LC Kriebs (Credit for June 1, 2020-July 1, 2020 fee period.) | Partner | 1999 | | | -$40,322.64 | |
| **Total Hours and Fees** | | | | **1,890.3** | **$1,657,356.90** | |

# EXHIBIT 3

# KELLER ROHRBACK L.L.P.

*Keith Andrews, et al. v. Plains All American Pipeline, LP, et al.*

**Fisher & Property Class Lodestar** – Inception through July 22, 2022

| Timekeeper | Title | Hours Worked | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Cappio, Gretchen | Partner | 97.1 | $1,045 | $101,469.50 |
| Chase, Alison | Partner | 156.1 | $1,010 | $157,661.00 |
| Copley, T. David | Partner | 693.7 | $850 | $589,645.00 |
| Farris, Juli E. | Partner | 6536.8 | $1,065 | $6,961,692.00 |
| Farrow, Raymond | Partner | 1247.1 | $815 | $1,016,386.50 |
| Fierro, Eric J. | Partner | 312.1 | $795 | $248,119.50 |
| Gerber, Laura R. | Partner | 1717.3 | $1,010 | $1,734,473.00 |
| Gould, Benjamin B. | Partner | 27.3 | $815 | $22,249.50 |
| Hecht, Irene M. | Partner | 26.1 | $800 | $20,880.00 |
| Leland, Beth | Partner | 658.8 | $735 | $484,218.00 |
| Mensher, Daniel P. | Partner | 323.5 | $815 | $263,652.50 |
| Preusch, Matthew | Partner | 3823.1 | $700 | $2,676,205.00 |
| Sarko, Lynn Lincoln | Partner | 706.0 | $1,200 | $847,200.00 |
| Woerner, Michael | Partner | 3798.3 | $1,065 | $4,045,189.50 |
| Gray, Meredith L. | Associate | 193.3 | $400 | $77,320.00 |
| Gussin, Zachary | Associate | 701.3 | $585 | $410,237.10 |
| Karmand, Khesraw | Associate | 28.6 | $400 | $11,440.00 |
| Keech, Erika M. | Associate | 33.6 | $605 | $20,328.00 |
| Petak, Lisa F. | Associate | 127.3 | $455 | $57,921.50 |
| Springer, Christopher | Associate | 603.2 | $650 | $392,080.00 |
| Chukas, Jason P | Discovery Associate | 42.0 | $475 | $19,950.00 |
| Smith, Heather A. | Discovery Associate | 1489.7 | $415 | $618,225.50 |
| Wang, Eleanor W. | Discovery Associate | 94.2 | $415 | $39,093.00 |
| Wilson, S. Carolyn | Discovery Associate | 1083.6 | $415 | $449,694.00 |
| Hertzog, Kaitlyn R. | Law Clerk | 47.9 | $275 | $13,172.50 |
| Lankenau, Lauren M. | Law Clerk | 19.9 | $320 | $6,368.00 |
| Read, Sydney | Law Clerk | 36.2 | $300 | $10,860.00 |
| Bartlett, Kris P. | Paralegal | 24.1 | $300 | $7,230.00 |
| Brewer, Cate R. | Paralegal | 30.3 | $300 | $9,090.00 |
| Burnett, Elizabeth A. | Paralegal | 132.7 | $300 | $39,810.00 |
| Caldwell, Katherine | Paralegal | 156.5 | $260 | $40,703.00 |
| Daugherty, Tana M. | Paralegal | 20.6 | $260 | $5,356.00 |
| Dillman, Jason | Paralegal | 524.5 | $410 | $215,045.00 |

| | | | | |
|---|---|---|---|---|
| Gardner, Kathryn M. | Paralegal | 19.2 | $300 | $5,760.00 |
| Garrido, Joel M. | Paralegal | 328.2 | $350 | $114,887.50 |
| Green, Kellyn A. | Paralegal | 173.3 | $375 | $64,987.50 |
| Harris, Ardua | Paralegal | 17.5 | $270 | $4,725.00 |
| Heneghen, Rebecca | Paralegal | 131.8 | $250 | $32,950.00 |
| Hernandez, Stacy | Paralegal | 64.0 | $250 | $16,000.00 |
| Kruse, Jordan I. | Paralegal | 176.5 | $230 | $40,595.00 |
| LaPorte, Kait B. | Paralegal | 23.9 | $280 | $6,692.00 |
| Lenentine, Daniel | Paralegal | 367.3 | $270 | $99,184.50 |
| Marshall, Darla | Paralegal | 17.7 | $300 | $5,310.00 |
| Mersing, Jacob T. | Paralegal | 15.7 | $405 | $6,358.50 |
| Meyer, Wyatt W. | Paralegal | 16.3 | $90 | $1,467.00 |
| Mirzoyan, Rose | Paralegal | 62.3 | $275 | $17,132.50 |
| Morgan, Jennifer D. | Paralegal | 25.5 | $225 | $5,737.50 |
| Oldach, John E. | Paralegal | 101.5 | $300 | $30,450.00 |
| Rodenburg, Katie M. | Paralegal | 28.0 | $225 | $6,300.00 |
| Rodgers, Aubrey A. | Paralegal | 28.4 | $350 | $9,940.00 |
| Serino, Garrett C. | Paralegal | 1400.3 | $250 | $350,075.00 |
| Stevens, Sara J. | Paralegal | 218.8 | $410 | $89,708.00 |
| Tuato'o, Jennifer | Paralegal | 773.8 | $410 | $317,258.00 |
| Vries, A.J. de | Paralegal | 26.3 | $410 | $10,783.00 |
| White, Alisa E. | Paralegal | 68.1 | $225 | $15,311.25 |
| Wilcher, Debra Lynn | Paralegal | 157.1 | $300 | $47,136.00 |
| Wilkinson, Carrie A. | Paralegal | 3043.5 | $375 | $1,141,312.50 |
| Evans, John M. | Paralegal Information Specialist | 21.5 | $300 | $6,450.00 |
| Eyler, Carly D. | Paralegal Information Specialist | 49.8 | $230 | $11,454.00 |
| Gotto, Alex | Paralegal Information Specialist | 13.3 | $300 | $3,990.00 |
| Hill, Jennifer | Paralegal Information Specialist | 36.8 | $410 | $15,088.00 |
| Mittenthal, Robert O. | Paralegal Information Specialist | 208.7 | $410 | $85,567.00 |
| Parrilla, Cavin L. | Paralegal Information Specialist | 11.5 | $300 | $3,450.00 |
| Read, Sydney J. | Paralegal Information Specialist | 127.1 | $110 | $13,979.90 |
| Ward, RoxAnn | Paralegal Information Specialist | 26.3 | $350 | $9,187.50 |
| | **Total Lodestar:** | **33,292.8** | | **$24,202,191.75** |

**Fisher & Property Class Costs** – Inception through July 22, 2022

| Category | Amount |
|---|---|
| | |
| Computer-based Research | $60,970.02 |
| Court Costs & Filing Fees | $4,632.70 |
| Postage / Delivery | $23,089.78 |
| Printing, Copying & Records | $89,466.24 |
| Relativity Database & Licensing | $26,896.27 |
| Telecommunications Charges | $17,298.76 |
| Travel | $148,048.45 |
| | |
| **Total Costs:** | $370,402.22 |

# EXHIBIT 4

# KELLER ROHRBACK L.L.P.

*Keith Andrews, et al. v. Plains All American Pipeline, LP, et al.*

**Fisher & Property Class Common Fund Costs,** Inception – July 22, 2022

| Category | Amount |
|----------|--------|
| Court Reporters | $178,168.35 |
| Expert Witness Fees | $4,443,637.84 |
| Class Notice | $196,837.18 |
| Mediator Charges | $142,497.16 |
| Jury Consultant | $35,617.73 |
| Website Hosting | $1,138.65 |
| Conference Room Rental | $11,497.50 |
| | |
| **Total Common Fund Costs:** | $5,009,394.41 |

*People v. Plains All American Pipeline, L.P., No. 1495091*

**Restitution Common Fund Costs,** Inception – July 22, 2022

| Category | Amount |
|----------|--------|
| Expert Witness Fees | $16,612.50 |
| Mediator Charges | $1,912.50 |
| Postage/Delivery | $1,760.91 |
| Translation Services | $430.00 |
| | |
| **Total Restitution Common Fund Costs:** | $20,715.91 |

# EXHIBIT 5

# KELLER ROHRBACK L.L.P.

*People v. Plains All American Pipeline, L.P., No. 1495091*

**Restitution Lodestar** – Inception through July 22, 2022

| Timekeeper | Title | Hours Worked | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Farris, Juli E. | Partner | 300.7 | $1,065 | $320,298.75 |
| Gerber, Laura R. | Partner | 139.8 | $1,010 | $141,198.00 |
| Preusch, Matthew | Partner | 267.3 | $700 | $187,110.00 |
| Sarko, Lynn Lincoln | Partner | 11.8 | $1,200 | $14,160.00 |
| Woerner, Michael | Partner | 48.7 | $1,065 | $51,865.50 |
| Gussin, Zachary | Associate | 235.4 | $585 | $137,709.00 |
| Smith, Heather A. | Discovery Associate | 333.2 | $415 | $138,278.00 |
| Dillman, Jason | Paralegal | 11.0 | $410 | $4,510.00 |
| Garrido, Joel M. | Paralegal | 187.5 | $350 | $65,625.00 |
| Oldach, John E. | Paralegal | 169.8 | $300 | $50,940.00 |
| Wilkinson, Carrie A. | Paralegal | 15.7 | $375 | $5,887.50 |
| | **Total Lodestar:** | **1,720.9** | | **$1,117,581.75** |

**Restitution Costs** – Inception through July 22, 2022

| Category | Amount |
|---|---|
| Computer-based Research | $1,229.95 |
| Postage/Delivery | $338.96 |
| Printing & Copying | $18,262.25 |
| Telecommunications Charges | $1,727.28 |
| Travel | $6,173.42 |
| | |
| **Total Costs:** | $27,731.86 |

1